GRAHAM**HOLLIS** APC
GRAHAM S.P. HOLLIS (SBN 120577)
ghollis@grahamhollis.com
MARTA MANUS (SBN 260132)
mmanus@grahamhollis.com
3555 Fifth Avenue
San Diego, California  92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| DANETTE M. MOORE, LATRESA MYERS, ALANNA HARRISON and ALISA VALDEZ individually and on behalf of others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>PETSMART, INC, and Does 1 through 100, inclusive,<br><br>          Defendants. | Case No.:   12-CV-03577 EJD<br><br>**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ORDER (1) PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS; (2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (3) APPROVAL OF CLASS NOTICE AND NOTICE PLAN; (4) APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES; AND (5) SETTING A FINAL APPROVAL HEARING**<br><br>Date:      March 7, 2014<br>Time:      9:00 a.m.<br>Courtroom:  4 –5th Floor<br>Judge:    Hon. Edward J. Davila |

///
///
///
///
///
///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

I, Graham S.P. Hollis, state and declare:

1.      I am an attorney at law licensed to practice before all courts of the State of California.  I am a partner with the law firm of Graham**Hollis**, A.P.C. ("Graham**Hollis**") in San Diego, California.  I am thoroughly familiar with and have personal knowledge of all of the facts set forth herein.  If called as a witness, I could and would competently testify thereto.

2.      My law firm, Graham**Hollis** and my associate Marta Manus are the attorneys of record for Plaintiffs Danette Moore ("Moore"), Latresa Meyers ("Meyers"), Alanna Harrison ("Harrison"), and Alisa Valdez ("Valdez") (collectively "Plaintiffs").  I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement in the above captioned case which seeks an order for: (1) provisional certification of the settlement class; (2) preliminary approval of the class action settlement; (3) approval of notice and notice plan; (4) appointment of Graham**Hollis**, A.P.C. as Class Counsel, and Plaintiffs Danette Moore, Latresa Myers, Alanna Harrison, and Alisa Valdez Class Representatives; and (5) setting a final approval hearing.  The Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement") is attached hereto as Exhibit 1.

### Class Counsel's Class Action Experience

3.      I have been a member of the State Bar of California since 1985.  I am also admitted to practice in various Districts of United States District Court.  I have personally tried many bench and jury trials to verdict in various courts in California.  I have represented employees and employers in employment litigation matters since 1995. My involvement in various forms of class action litigation spans more than twenty years.

4.      Over the course of just the past six years, I have been appointed as class counsel in the following employment cases, all of which were successfully resolved: Birch v. Office Depot, Inc., United States District Court for the Southern District of California, No. 06 CV 1690 DMS (WMC) (16,722 class members - 40% fee award on $14 M settlement); Malone, et al. v. Praxair Corporation, Superior Court for the County of San Bernardino (approximately 57 class members, 40% Fee Award); Singer v. Becton Dickinson and Co., No. 08-cv-821-IEG, 2010 WL 2196104, (S.D. Cal. June 1, 2010) (266 class members, 33.33%  fee award); Weaver v. Hallmark Marketing Corporation, United States District Court for the Central District of California (3,846 class members, 33.33% fee award); Morales

Graham**Hollis** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  v. Sony Corporation Inc., Superior Court for the County of San Diego (4,742 class members) (injunctive

2  relief settlement—full amount of requested Lodestar fees awarded); Thomson v. LawInfo.com, Superior

3  Court for the County of San Diego (33.33% fee award); Solis v. Check Agencies of California, Superior

4  Court for the County of San Diego (33.33% fee award); Vest v. Scher Tire, Inc., Superior Court for the

5  County of Riverside (approximately 768 class members, 33.33% fee award); Jackson v. Vulcan

6  Materials, Superior Court for the County of Ventura (37.5% fee award); Demers v. IHOP, Superior

7  Court for the County of San Diego (33.33% fee award); Fennessey v. Round Table Pizza, Inc., Superior

8  Court for the County of San Diego, (16,333 class members, 28% fee award requested and granted due to

9  defendant's financial condition); Falcon v. Flight Suits, Inc., Superior Court for the County of San

10  Diego (approximately 550 class members, 33.33% fee award and San Diego Superior Court); Cantu, et

11  al. v. AT&T, Superior Court for the County of Los Angeles (33.33% fee award); Bracy v. Speedy Cash,

12  Superior Court for County of San Bernardino (approximately 222 class members, 22.69% fee request

13  and awarded); Cook v. Tiffany and Company, United States District Court for the Southern District of

14  California (1,584 class members,  $4,148,270 settlement); Irmen v. Raphael's Party Rentals, Superior

15  Court for the County of San Diego (845 class members, 40% fee award); Jeffries v. Praxair Services,

16  Inc., Superior Court for the County of San Bernardino (35% fee awarded); Julio v. L&M Tire Co., Inc.,

17  Superior Court for the County of San Diego (1,087 class members, 33% fee award); Calhoun v. General

18  Petroleum, Superior Court for the County of Los Angeles (approximately 300 class members, 40% fee

19  awarded); Scaglione, et al. v. M.O. Dion & Sons, Superior Court for the County of San Bernardino

20  (30% fee awarded); Johnson, et al., v. Anthony Charlton, Inc., d.b.a. Anthony's Auto Center, Superior

21  Court for the County San Diego; Mahoney v. AT&T Corp., Superior Court for the County of Los

22  Angeles, (approximately 719 class members, 33.33% fee awarded); Wright v. AMF Bowling Centers,

23  Inc., Superior Court for the County of Los Angeles (4,914 class members); Duarte v. Rainbow Disposal

24  Co., Inc., Superior Court for the County of Orange (110 class members, 40% fee awarded); Iskandaryan

25  v. Casual Male Retail Group, Inc., Superior Court for the County of Los Angeles (approximately 727

26  class members, 33% fee awarded); Lucarini v. Dresser, Inc., Superior Court for the County of Los

27  Angeles; Stevenson v. Falcon Critical Care Transport, et al., Superior Court for the County of Contra

28  Costa; Lopez v. GAT, United States District Court for the Southern District of California; Payton, et al.,

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

3

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1    v. Atlantic Aviation Investors, Inc., et al., Superior Court for the County of Orange (162 class members,

2    40% fee awarded); Chavez v. Real Time Staffing Services, Inc., Superior Court for the County of San

3    Diego; Wright v. Menzies Aviation, Superior Court for the County of Los Angeles; Williams v.

4    ABTTC, Superior Court for the County of Los Angeles; Turnage v. Park Management Corporation,

5    Superior Court for the County of Solano; Ellis v. Pacific Bell Telephone Company, et al., United States

6    District Court for the Central District of California (approximately 84 Class members, 33.33% fee

7    awarded); Casas, et al. v. Pacific Bell Company, Superior Court for the County of San Francisco; Laux

8    v. Van Nuys Skyways, Inc., et al., Superior Court for the County of Ventura; Green v. Lawrence Service

9    Company, United States District Court for the Central District of California; Well v. Hooters of

10   America, Superior Court for the County of San Diego; Escoto-Miranda v. Evans Tire Service Centers,

11   Inc., Superior Court for the County of San Diego; and

12        5.    I and my firm are serving as plaintiffs' counsel of record in the following wage/hour and

13   employment class action cases:  Jimenez v. Menzies Aviation, Inc., United States District Court for the

14   Northern District of California; Stoddart v. Express Services , Inc., United States District Court for the

15   Eastern District of California; Baldomero v. Isocare Convalescent Hospital, Superior Court for the

16   County of Los Angeles;; Ramos v. Okorocha, Individually and d.b.a. Isocare Convalescent Hospital of

17   Glendale, Superior Court for the County of Los Angeles; Huerta v. Venture Petroleum Company, Inc.,

18   Superior Court for the County of San Diego; Frugard v. Unified Protective Services, et al., Superior

19   Court for the County of Los Angeles; Clancy, et al. v. Scripps Health, Superior Court for the County of

20   San Diego; Ledbetter v. Entrepreneurial Ventures, Inc., Superior Court for the County of Santa Clara;

21   Lawton-Lewis v. Stronghold, LTD, Superior Court for the County of Contra Costa;  Fong v. Regis

22   Corporation, United States District Court for the Northern District of California; Solaberrieta v. Baker

23   Hughes Oilfield Operations, Inc., et al., Superior Court for the County of Los Angeles; Stafford v.

24   Dollar Tree Stores, Inc., United States District Court for the Eastern District of California; De La Rosa

25   v. Quten Research Institute, LLC, Superior Court for the County of San Diego; Flannery v. AGR Group

26   California, LLC, et al., Superior Court for the County of Orange; Radford v. ACD Direct, Inc., Superior

27   Court for the County of San Diego; Mora v. San Diego Auto Scrubber, Inc., Superior Court for the

28   County of San Diego; Madera v. Universal Alloy Corporation, Superior Court for the County of Orange;

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  Loveless v. ASM Affiliates, Superior Court for the County of San Diego; Jimenez v. Providian Staffing

2  Corporation, Superior Court for the County of Riverside; Letuligasenoa v. International Paper Company,

3  United States District Court for the Northern District of California; and Rodriguez v. Old Dominion

4  Freight Line, Inc., United States District Court for the Central District of California.

5        6.     I have served as defense counsel in the following class action cases: Garza, et al. v. SRH

6  Investments LLC, et al., Superior Court for the County of Los Angeles; Avila, et al. v. Gateway Ivey

7  Ranch Associates, et al., Superior Court for the County of San Diego; Cabrera, et al. v. Fieldstone

8  Communities, Inc., et al., Superior Court for the County of San Diego; Cheatwood, et al. v. Greystone

9  Homes, Inc., et al., Superior Court for the County of San Bernardino; Castro, et al. v. Kaufman & Broad

10  of Southern California, Inc. et al., Superior Court for the County of San Diego; Flores, et al. v. Eastlake

11  Trails Co. LLC et al., Superior Court for the County of San Diego; Pacheco, et al. v. WL Coral Gate

12  Associates, et al., Superior Court for the County of San Diego; Garcia, et al. v. Cambridge Homes, et al.,

13  Superior Court for the County of Riverside; Harris, et al. v. LNC Properties, LTD, et al., Superior Court

14  for the County of San Bernardino; Soriano, et al. v. Kaufman and Broad of Southern California, Inc., et

15  al., Superior Court for the County of Kern; Rodriguez, et al v. Epic Development Corporation, et al.,

16  Superior Court for the County of Kern; Gates, et al. v. Kaufman and Broad Coastal Valleys, Inc., et al.,

17  Superior Court for the County of Los Angeles; Zimmerman, et al. v. West Venture Development, Inc., et

18  al., Superior Court for the County of San Bernardino; Robles, et al. v. Rockfield Development

19  Corporation, et al., Superior Court for the County of San Bernardino; Riley, et al. v. So Cal Housing

20  Partners, LLC, et al., Superior Court for the County of San Bernardino; Castillo, et al. v. LNC Properties

21  LTD, et al., Superior Court for the County of San Bernardino; Reynoso, et al. v. DOES 1-50, inclusive,

22  Superior Court for the County of San Diego; Frais v. Forecast Group, Superior Court for the County of

23  Los Angeles; Haney v. The Presley Group, Superior Court for the County of Riverside; Le Doux v. KB

24  Homes, Superior Court for the County of Los Angeles; Long v. West Venture, Superior Court for the

25  County of Los Angeles; Manning v. Presley Homes, Superior Court for the County of Los Angeles;

26  McLellan v. Stratham Group, Superior Court for the County of Los Angeles; and Winkler v. West

27  Venture, Superior Court for the County of Los Angeles.

28        7.     In just the last 5 years my associate Marta Manus is or has served as plaintiffs' counsel,

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1   or class counsel of record in the following wage/hour and employment class action cases: <u>Stoddart v.</u>

2   <u>Express Services , Inc.</u>, United States District Court for the Eastern District of California; <u>Fong v. Regis</u>

3   <u>Corporation</u>, United States District Court for the Northern District of California; <u>Jimenez v. Providian</u>

4   <u>Staffing Corporation</u>, Superior Court for the County of Riverside; <u>Letuligasenoa v. International Paper</u>

5   <u>Company</u>, United States District Court for the Northern District of California; <u>Calhoun v. General</u>

6   <u>Petroleum</u>, Superior Court for the County of Los Angeles (approximately 300 class members, 40% fee

7   awarded); <u>Scaglione, et al. v. M.O. Dion & Sons</u>, Superior Court for the County of San Bernardino

8   (30% fee awarded); <u>Mahoney v. AT&T Corp.</u>, Superior Court for the County of Los Angeles,

9   (approximately 719 class members, 33.33% fee awarded); and <u>Cantu, et al. v. AT&T</u>, Superior Court for

10  the County of Los Angeles (33.33% fee award); <u>Ellis v. Pacific Bell Telephone Company, et al.</u>, United

11  States District Court for the Central District of California (approximately 84 Class members, 33.33% fee

12  awarded); <u>Casas, et al. v. Pacific Bell Company</u>, Superior Court for the County of San Francisco.

13       8.       Ms. Manus and I have extensive experience handling class actions, other complex

14  litigation and wage and hour claims, such as those asserted in this action.  Our knowledge of the

15  applicable wage and hour laws is evidenced by our representation of employees in numerous disputes

16  concerning receipt of pay in connection with their employment in state and federal courts in California.

17                                    **The Settlement Terms**

18       9.       The basic terms of the proposed Settlement Agreement are as follows:

19            a.       PetSmart is to pay the total and all inclusive Total Settlement Amount of

20  $10,000,000 (the "Settlement Sum"), which includes all payments to the Settlement Class Members,

21  Settlement Class Counsel, California Labor and Workforce Development Agency, all tax obligations of

22  Plaintiffs, Settlement Class Members and PetSmart arising out of the settlement and the costs of

23  settlement administration.

24            b.       Settlement Class Members who submit a timely Claim Form ("Claimant") will

25  receive a portion of the Settlement Sum in an amount based upon the total gross compensation paid to

26  each Settlement Class Member by PetSmart between May 23, 2008 and the date of preliminary approval

27  of the Settlement ("Covered Timeframe").

28            c.       To the extent any Settlement Class Member, who does not file a request for

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  exclusion fails to submit a Claim Form, the Individual Settlement Amount attributable to that Settlement

2  Class Member shall be distributed to Claimants within that Settlement Class Member's Settlement Class

3  ("Pet Stylist Settlement Class" or "Non-Exempt Employee Settlement Class") in proportion to their

4  Individual Settlement Amounts.

5          d.    Plaintiffs will request, and PetSmart will not object to, an award of attorneys' fees

6  and costs of up to $3,333,333 (33-1/3% ) of the Total Settlement Amount to be deducted from the Total

7  Settlement Amount of $10,000,000. Subject to Court approval, Class Counsel will be paid reasonable

8  and actual costs incurred in prosecuting this Litigation from the Total Settlement Sum ("Litigation

9  Costs").

10          e.    Plaintiffs will request, and PetSmart will not object to, service awards to each of

11  the Class Representatives, as an enhancement for their services as Class Representatives (a total of

12  $30,000).

13          f.    The Settlement Administrator, Simpluris, which has been mutually selected by the

14  parties, will administer the Settlement, with the reasonable costs of administration to be paid from the

15  Total Settlement Sum.

16      10.    The proposed Settlement satisfies all of the criteria for preliminary approval under federal

17  law and falls well within the range of possible approval. The proposed Settlement Class is appropriate

18  for provisional certification for settlement purposes. Accordingly, Plaintiffs move the Court to: (1)

19  provisionally certify the settlement class; (2) preliminarily approve the Class Action Settlement; (3)

20  approve the class notice and notice plan; (4) appoint Class Counsel and Class Representatives; and (5)

21  set a final approval hearing.

22  **Case Background and Procedural History**

23      11.    This case involves the wage and hour claims of approximately 16,400 current and former

24  non-exempt employees who are eligible to participate in the settlement and who were employed by

25  PetSmart, Inc. California between May 23, 2008 and the present, the period covered by this Settlement.

26      12.    On July 5, 2011, Class Counsel, on behalf of Plaintiff Danette Moore and Plaintiff

27  Latresa Myers filed a notice with the Labor and Workforce Development Agency ("LWDA") alleged

28  that PetSmart had violation the Private Attorneys General Act of 2004, Labor Code section 2698, *et seq.*

7

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  ("PAGA") and various provisions of the California Labor Code.  On August 30, 2011, the LWDA

2  provided notice to Plaintiff Moore and Plaintiff Myers and PetSmart of its intent not to investigate the

3  allegations.  On August 30, 2011, Class Counsel, on behalf of Plaintiff Alanna Harrison and Plaintiff

4  Alisa Valdez filed a notice with the LWDA alleged that PetSmart had violation the PAGA and various

5  provisions of the California Labor Code.  On October 24, 2011, the LWDA provided notice to Plaintiff

6  Harrison and Plaintiff Valdez and PetSmart of its intent not to investigate the allegations.

7    13.    On May 23, 2012, Plaintiffs filed this lawsuit in the Superior Court, County of Alameda

8  on behalf of Plaintiffs and certain non-exempt California employees of PetSmart. Defendant removed

9  the case to the United States District Court, Northern District of California on July 9, 2012.

10   14.    Plaintiffs' allege that PetSmart violated the California Labor Code, relevant Wage Order

11  of the California Industrial Welfare Commission, and the California Unfair Competition Law (Bus. &

12  Prof. Code § 17200, *et seq.* with PetSmart's alleged policy of: (1) failing to pay minimum and overtime

13  wages for all hours worked including time spent performing non-productive duties and working off-the-

14  clock; (2) failing to reimburse for reasonably incurred work-related expenses (including grooming tools

15  and equipment); (3) failing to compensate for meal and rest period violations; (4) failing to properly

16  calculate vacation pay; (5) failing to timely and properly pay wages due upon termination of

17  employment; (6) failing to provide suitable seats; and (7) engaging in unlawful/unfair business practices.

18  In addition to the class action wage and hour claims, each of the four named Plaintiffs has an individual

19  claim against PetSmart for failure to provide reasonable accommodation and failure to engage in the

20  interactive process in violation of the California Fair Employment and Housing Act (FEHA).  Plaintiff

21  Danette Moore also has an individual claim against PetSmart for wrongful termination in violation of

22  public policy.  The proposed Settlement relates only Plaintiffs' class action and representative action

23  claims.  Plaintiffs' individual claims have not yet been settled. The parties agreed to postpone settlement

24  discussions related to Plaintiffs' individual claims until after the resolution of the class and

25  representative action claims.

26   15.    Plaintiffs' allege that PetSmart's compensation scheme pays members of the Pet Stylists

27  Settlement Class ("Pet Stylists") on a piece-rate basis because Pet Stylists are compensated for grooming

28  services rendered at the rate of 50 % of the net sale price paid by the customer for the groom.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  PetSmart's compensation scheme pays Pet Stylists for time spent performing grooming services. Pet

2  Stylists have an hourly "fall back" rate. If a Pet Stylist's piece rate earnings in a given workweek do not

3  exceed what they would have earned at their fall back rate, PetSmart pays the hourly fall back rate for all

4  hours worked.  In these workweeks, it is undisputed that Pet Stylists are paid for all hours worked at

5  their fall back rate.  However, if the Pet Stylist earns more in piece rate in a given workweek than they

6  would have earned at their fall back rate, they are paid only the piece rate and are said to have

7  "commissioned out."  Plaintiffs' allege that in workweeks in which Pet Stylists commission out,

8  PetSmart fails to pay at least minimum wages for all hours worked because in addition to performing

9  grooming services, Pet Stylists are required to perform "non-productive" duties, work for which they do

10  not receive any additional compensation separate and apart from the piece-rate they earn while

11  grooming dogs. Non-productive duties include working in various departments throughout the store,

12  cashiering, assisting customers, stocking store shelves with product, taking inventory, cleaning the

13  grooming salon and grooming tools, making customer appointments, and answering the telephone in the

14  grooming salon.  Because Pet Stylists are not paid any additional wages during workweeks in which

15  they commission out, Plaintiffs allege that PetSmart fails to pay at any wages for the time spent

16  performing the non-productive duties. Defendant argued, that the existence of the fall back rate satisfied

17  their obligations to pay at least minimum wage for all hours worked in workweeks where the Pet Stylist

18  didn't commission out and that no additional wages were owed for time spent performing non-

19  productive duties or rest breaks. Defendant also argued that in workweeks in which Pet Stylists did

20  commission out, they earned more on average per hour than minimum wage and their fall back rate

21  when their piece rate compensation was averaged over the total number of hours worked in that

22  workweek.  Plaintiffs' argued that this pay averaging is illegal under California law. Additionally,

23  Plaintiffs allege that any time spent taking rest periods during workweeks when Pet Stylists

24  commissioned out was unpaid because Pet Stylists were only paid piece rate compensation in these

25  workweeks and were therefore not provided with paid rest breaks.

26      16.   Plaintiffs also allege that PetSmart failed to provide Pet Stylists with the necessary

27  grooming tools to perform their grooming job and failed to reimburse for the cost of grooming tools Pet

28  Stylists were required to purchase and maintain. PetSmart required Plaintiffs and other Pet Stylists to

GRAHAM **HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  purchase a grooming tool kit in order to participate in the PetSmart grooming academy, which

2  employees had to complete prior to becoming a Pet Stylist. The grooming tool kit cost hundreds of

3  dollars. Additionally, throughout the course of their grooming career with PetSmart, Pet Stylists had to

4  purchase various grooming supplies including, among other things, grooming clippers, replacement

5  blades, scissors, and brushes.  PetSmart purported to provide the necessary grooming tools in the

6  grooming salon for the use of Pet Stylists.  However, in pre-mediation discovery, Plaintiffs obtained the

7  Grooming Tool Sign Out Sheets which showed that typically only one pair of grooming clippers was

8  available at each store for Pet Stylists to check out to borrow.  The Grooming Tool Sign Out Sheets

9  showed which Pet Stylist had checked out the single pair of clippers each shift, supporting Plaintiffs'

10  claim that Pet Stylists were not provided with adequate grooming tools and were in fact required to

11  bring their own grooming tools, including grooming clippers, to work every shift.  Additionally,

12  Plaintiffs obtained anecdotal evidence from the Pet Stylists interviewed that supported their position.

13       17.    On behalf of the Non-Exempt Employee Settlement Class, Plaintiffs allege that PetSmart

14  failed to provide its non-exempt employees with legally compliant meal and rest periods and failed to

15  pay wages for work performed off-the-clock because these employees were frequently interrupted by

16  PetSmart's customers during meal and rest breaks. PetSmart's policy required employees to assist

17  customers and sometimes this occurred while they were on a break. A frequent scenario was when an

18  employee clocked out for lunch at the time clock and then had to walk through the store to the break

19  room. Oftentimes the employees—who would be in uniform—would be asked questions by customers

20  while the employee was "off the clock."

21       18.    During the course of investigation, Plaintiffs learned that PetSmart calculates the vacation

22  wages of Pet Stylists by averaging the piece rate wages earned in the previous 26 weeks to obtain an

23  average hourly rate, which is then used to pay vacation wages. Because Plaintiffs allege that Pet Stylist

24  were not paid for all hours worked in workweeks when they commissioned out, Pet Stylists' vacation

25  wages were miscalculated and underpaid.

26       19.    Additionally, Plaintiffs allege that from 2005 through April 2011, PetSmart maintained

27  an illegal written meal and rest break policy, providing that employees receive one 30 minute unpaid

28  meal break if employees worked more than six hours but less than eight and one 15 minute rest break if

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1 employees work more than four hours but less than six. Plaintiffs' position is that the correct standard is

2 that a meal break should be provided on shifts greater than five hours and rest breaks on shifts of three

3 and a half hours or more.

4      20.   Counsel for the parties negotiated and jointly drafted the Joint Rule 26(f)

5 Report/Conference Statement and filed it with the Court on November 11, 2012.  In the Joint Rule 26(f)

6 report, the parties indicated their willingness to attend mediation with a private mediator. The parties

7 agreed to postpone formal discovery to focus their efforts on mediation and settlement.

8      21.   Prior to commencement of formal discovery, the parties agreed to attend private

9 mediation with experienced employment law mediator Jeffrey Ross. The parties agreed that 10% of the

10 locations (selected randomly by Plaintiff's counsel utilizing an Excel Randomizer program) would

11 provide an adequate sample. PetSmart produced employment data and documents for non-exempt

12 employees from 14 stores of its 132 California stores, a 10.6% sample. PetSmart produced in excess of

13 33,000 pages of documents as well as electronic personnel and payroll data regarding PetSmart's

14 employees. Plaintiffs spent many hours analyzing this information and data. PetSmart provided

15 Plaintiffs with the names and contact information of all current and former non-exempt employees

16 employed at the 14 sample stores. Plaintiffs' counsel interviewed 47 putative class members, including

17 25 groomers, to obtain relevant information for mediation. Plaintiffs' counsel interviewed current and

18 former employees from the following California PetSmart locations: Freemont, Irvine, Merced,

19 Milpitas, Santa Maria, Sacramento, Mountain View, Lancaster, La Jolla, Palmdale, Pelandale, Rohnert

20 Park, Santa Cruz, San Jose, San Leandro, Santa Maria, Shingle Springs, Tustin, and Oceanside. Some of

21 the class members interviewed by Plaintiffs' counsel worked at multiple PetSmart locations throughout

22 California.

23      22.   In preparation for mediation, Class Counsel prepared a comprehensive damage analysis

24 based on information gathered from class member interviews and employment data provided by

25 PetSmart. Class Counsel prepared an extensive mediation brief containing detailed review of the

26 evidence and outlining the complex legal issues in this case. In February 2013, Plaintiffs took the

27 depositions of PetSmart's person most knowledgeable (PMK) about PetSmart's compensation policies

28 and practices for California employees as well as the PMK regarding PetSmart's compliance with IWC

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1   Wage Order 7-2001.  In March 2013, Defendant took the deposition of each of the four named Plaintiffs.

2   The parties each propounded one set of special interrogatories and requests for production of documents

3   but agreed to hold off on serving their responses until after the completion of mediation in order to

4   preserve the parties' resources and time and focus their efforts on resolving the case at mediation.  I

5   believe the information exchanged thus far is sufficient for the parties to make an informed decision

6   about the resolution of this case at this time.

7       23.    On April 9, 2013, the parties engaged in mediation with mediator Jeffrey Ross. PetSmart

8   was represented by Michelle Heverly from Littler Mendelson, P.C.  Plaintiffs were represented by

9   myself and Marta Manus of GrahamHollis APC. Although the parties were unable to reach a settlement

10  agreement on the day of the mediation, the parties continued their settlement negotiations through

11  mediator Jeffrey Ross and ultimately, on May 15, 2013, accepted the mediator's proposal, reaching the

12  settlement on the terms for which they now seek preliminary approval.  The parties devoted substantial

13  time and effort to reaching a proposed settlement. At all times, the negotiations were conducted at arms'

14  length and through the mediator.  Since accepting the mediator's proposal in May 2013, the parties have

15  engaged in extensive meet and confer discussions to finalize the Settlement.

16      24.    The Plaintiffs now seek, and Defendant will not oppose, preliminary approval of the

17  Settlement reached through the mediator.

18  **The Settlement Agreement**

19      25.    The proposed Settlement resolves all class and representative action claims of the

20  Plaintiffs and the Settlement Class Members against PetSmart.  The detailed Settlement Agreement is

21  attached hereto as Exhibit 1.  The settlement terms may be summarized as follows:

22  **A.     Settlement Amount**

23      26.    The Settlement provides that PetSmart will pay the sum of $10,000,000.00 ("Total

24  Settlement Amount".)  (Settlement Agreement, ¶ 1.20.)  Subject to Court Approval, the Total Settlement

25  Amount will be used to make all payments to the Settlement Class Members, Settlement Class Counsel

26  for attorneys' fees and costs, California Labor and Workforce Development Agency ("LWDA"), all tax

27  obligations of Plaintiffs, Settlement Class Members, and PetSmart arising out of the settlement and the

28  costs of settlement administration.  Once these deductions are made, the balance of the Total Settlement

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  Amount will be available for distribution to Settlement Class Members ("Net Distribution Amount".)

2  (Settlement Agreement, ¶ 1.11.)

3  **B.    Settlement Class**

4        27.    The Net Distribution Amount will be distributed to Settlement Class Members who

5  submit a valid and timely Claim Form/FLSA Consent Form ("Claim Form".)  The proposed Claim Form

6  is attached hereto as Exhibit 2.

7        28.    The Settlement Class is defined as follows:

8        All individuals who are or were employed by PetSmart as a Pet Stylist, Groomer, Grooming
   Trainee, and/or Salon Manager in California at any time during the period from May 23, 2008 to the

9  present ("Pet Stylist Settlement Class");

10        All individuals who are or were employed by PetSmart as an hourly paid, non-exempt employee

11  in California at any time during the period May 23, 2008 to the present  in a position other than Pet
   Stylist, Groomer, Grooming Trainee, or Salon Manager ("Non-Exempt Employee Settlement Class")

12
   The Settlement Class includes a Waiting Time Penalties Settlement Sub-Class defined as follows:

13

14        All individuals who are members of the Non-Exempt Employee Settlement Class or the Pet
   Stylist Settlement Class who separated from their employment with PetSmart at any time between May

15  23, 2009 and the date of preliminary approval of the settlement ("Waiting Time Penalties Settlement
   Sub-Class").

16

17        (Settlement Agreement, ¶ 1.16.)

18  **C.    Calculation of Class Members' Individual Settlement Amounts**

19        29.    Under the Settlement Agreement, "Claimants" are those Settlement Class Members who

20  submit a valid and timely Claim Form. (Settlement Agreement, ¶ 1.3.)  The "Individual Settlement

21  Amount" is the amount of money that shall be paid to each Claimant and includes any taxes withheld

22  from the Settlement paid to such Claimants. (Settlement Agreement, ¶ 1.9.)

23        30.    Assuming the Court approves Plaintiffs' request for service awards and Class Counsel's

24  attorneys' fees and costs, as well as the costs of settlement administration, a Net Distribution Amount,

25  the amount left after the payment of the above will be available for distribution to Claimants.

26  (Settlement Agreement, ¶ 1.9, § IV, ¶¶ 4.2 – 4.5.)  If the Court does not award 33.33% of the Total

27  Settlement Amount as attorneys' fees and costs, the unawarded amount shall be returned to PetSmart

28  and shall not be available for distribution to the Settlement Class.  (Settlement Agreement § IV, ¶ 4.10.)

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

31.   A portion of the Net Distribution Amount will first be allocated to the Waiting Time Penalties Settlement Sub-Class for penalties pursuant to Labor Code section 203. The amount allocated to the Waiting Time Penalties Settlement Sub-Class will be deducted from the Net Distribution Amount prior to the calculation of the Individual Settlement Amounts of Claimants. Each member of the Waiting Time Penalties Settlement Sub-Class who was employed by PetSmart in California as a Pet Stylist, Groomer, Grooming Trainee or Salon Manager at the time of separation from employment will be entitled to receive $400 as a waiting time penalty in addition to their Individual Settlement Amount. Each member of the Waiting Time Penalties Settlement Sub-Class who was employed by PetSmart in a position other than Pet Stylist, Groomer, Grooming Trainee or Salon manager at the time of separation from employment will be entitled to receive $200 as a waiting time penalty in addition to their Individual Settlement Amount. (Settlement Agreement § IV ¶ 4.4.)

32.   After deducting from the Net Distribution Amount the payments claimed by the Waiting Time Penalties Settlement Sub-Class, two-thirds (2/3) of the remaining Net Distribution Amount will be allocated to payment of the Individual Settlement Amounts of the Pet Stylist Settlement Class Members and one-third (1/3) of the remaining Net Distribution Amount will be allocated to those Settlement Class Members who are members of the Non-Exempt Employee Settlement Class. (Settlement Agreement § IV ¶ 4.5.) The allocation of the Net Distribution Amount between the Pet Stylist Settlement Class and the Non-Exempt Employee Settlement Class is based on the proportional value of the claims of the classes. The claims alleged on behalf of the Pet Stylists Settlement Class account for 2/3 of the total amount of damages estimated and the claims alleged on behalf of the Non-Exempt Employee Settlement Class account for 1/3 of the total amount of damages which Plaintiffs' damages analysis yielded.

33.   The Individual Settlement Amount for each Claimant who is a member of the Pet Stylist Settlement Class will be determined as follows: After the deductions from the Net Distribution Amount for the payments to the Waiting Time Penalties Settlement Sub-Class, the Settlement Administrator will divide two-thirds (2/3) of the remaining Net Distribution Amount by the total gross (pre-tax) compensation paid to Pet Stylist Settlement Class Members for the time period when such Pet Stylist Settlement Class Members were employed as Pet Stylists, Groomers, Grooming Trainees and/or Salon Mangers during the Covered Timeframe to determine a multiplier ("Pet Stylist Multiplier"). The

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1   Individual Settlement Amount payable to each Pet Stylist Settlement Class Member will equal that

2   Claimant's gross (pre-tax) compensation earing during the Covered Timeframe times the Pet Stylist

3   Multiplier. (Settlement Agreement § IV ¶ 4.5(a).)

4         34.    The Individual Settlement Amount for each Claimant who is a member of the Non-

5   Exempt Employee Class will be determined as follows: After the deductions from the Net Distribution

6   Amount for the payments to the Waiting Time Penalties Settlement Sub-Class, the Settlement

7   Administrator will divide one-third (1/3) of the remaining Net Distribution Amount by the total gross

8   (pre-tax) compensation paid to Non-Exempt Employee Settlement Class Members for the time period

9   when such Non-Exempt Employee Class Members were employed in positions other than Pet Stylists,

10  Groomers, Grooming Trainees and/or Salon Mangers during the Covered Timeframe to determine a

11  multiplier ("Non-Exempt Employee Multiplier").  The Individual Settlement Amount payable to each

12  Non-Exempt Employee Settlement Class Member will equal that Claimant's gross (pre-tax)

13  compensation earned during the Covered Timeframe times the Non-Exempt Employee Multiplier.

14  (Settlement Agreement § IV, ¶ 4.5(b).)

15        35.    The parties agree that it is more equitable to use Claimants' gross compensation earned

16  during the Covered Timeframe instead of the number of work weeks worked to calculate their

17  Individual Settlement Amount. A detailed analysis of PetSmart's payroll records revealed that there was

18  a wide range of hourly rates earned by the Petsmart employees, particularly among groomers.

19  Additionally, many employees worked part-time. Based on our investigation we determined that those

20  employees who worked more hours were more likely to suffer more unpaid time. Also the higher the

21  hourly rate for an employee that suffers unpaid time, the greater will be the amount of money owed to

22  the particular employee.  If the class members were paid from the settlement based on work weeks this

23  might result in an inequitable distribution of the settlement. Employees who worked fewer hours per

24  week or were paid less might be paid the same amount per work weeks there coworkers who had more

25  unpaid time or lost more because their hourly rate was higher.  By paying the class members according

26  to their relative W-2 income during the class period the allocation is much more likely to be fair.

27        36.    The Individual Settlement Amounts will be allocated among wages, interest, and civil

28  (PAGA) penalties. Fifty percent (50%) of each Claimant's Individual Settlement Amount shall

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1   represent wages. Fifty percent (50%) of each Claimant's Individual Settlement Amount shall represent

2   interest and penalties. The portion of each Claimant's Individual Settlement Amount representing

3   wages will be subject to standard employment tax withholdings (e.g., withholdings for state and federal

4   income tax, employee FICA tax, California SDI, etc.) with the Settlement Administrator remitting all

5   such employment tax withholdings directly to the pertinent state and federal taxing authorities. The

6   portion of each Claimant's Individual Settlement Amount representing interest or penalties will be

7   reported on a Form 1099 provided to each Claimant, with the required copies of the Form 1099's

8   provided to the pertinent taxing authorities. Employer tax obligations on any amounts paid to Plaintiffs

9   and Claimants will be paid from the Total Settlement Amount. (Settlement Agreement § IV, ¶ 4.6.)

10       37.     Plaintiffs cannot calculate the exact Individual Settlement Amount per Claimant for a

11   number of reasons, including because, among other things, they do not presently know the exact amount

12   of (1) fees and costs that will be awarded to Class Counsel by the Court; (2) the total amount of the

13   employer's share of the payroll taxes on the Individual Settlement Amounts that will be deducted from

14   the Total Settlement Amount; (3) the total number of Claimants; and (5) the total amount of gross

15   compensation paid by PetSmart to Claimants. Assuming the Court awards the full amount of fees and

16   costs requested by Class Counsel, approves $105,000 in settlement administration costs to Simpluris,

17   $30,000 in class representative service awards, and the payment of $37,500 (75% of $50,000) to the

18   LWDA for PAGA penalties, the Net Distribution Amount, excluding payroll taxes, available for

19   distribution to Claimants will be approximately $6,494,000.00.

20       38.     From the estimated Net Distribution Amount of $6,494,000.00, the amount that the

21   parties agreed allocated to the Waiting Time Penalties Settlement Sub-Class will be deducted prior to

22   dividing the balance of the Net Distribution Amount between the Pet Stylist Settlement Class and the

23   Non-Exempt Employee Settlement Class. Based on the data provided to Class Counsel by PetSmart,

24   there are approximately 908 former Pet Stylists Settlement Class Members who are also members of the

25   Waiting Time Penalties Settlement Sub-Class, and who, according to the terms of the Settlement, will

26   receive a payment of $400 as a waiting time penalty and there are approximately 10,041 former Non-

27   Exempt Employee Settlement Class Members who are also members of the Waiting Time Penalties

28   Settlement Sub-Class, and who, according to the terms of the Settlement, will receive a payment of $200

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  as a waiting time penalty.  Therefore, approximately $363,200 of the Net Distribution Amount of

2  $6,4949,000 will be allocated to the Pet Stylists Settlement Class Members who are also members of the

3  Waiting Time Penalties Settlement Sub-Class as a waiting time penalty and approximately $2,008,200

4  of the Net Distribution Amount will be allocated to the members of the Non-Exempt Employee

5  Settlement Class Members who are also members of the Waiting Time Penalties Settlement Sub-Class

6  as a waiting time penalty. On an individual basis, members of the Pet Stylist Settlement Class who are

7  also members of the Waiting Time Penalties Settlement Sub-Class will receive a greater amount ($400

8  per individual) as a waiting time penalty because, according the PetSmart's employment records,

9  individuals in the Pet Stylists Settlement Class earned significantly more on average in gross

10  compensation than members of the Non-Exempt Employee Settlement Class.

11  39.  After the deduction of the amount allocated to the Waiting Time Penalties Settlement

12  Sub-Class, the balance of the Net Distribution Amount, estimated to be approximately $4,122,600.00

13  will be divided between the Pet Stylist Settlement Class and the Non-Exempt Employee Settlement

14  Class with 2/3, or $2,748,400, available for distribution to the Pet Stylist Settlement Class and 1/3, or

15  $1,374,200, available for distribution to the Non-Exempt Employee Settlement Class. Based on the data

16  provided by PetSmart to Class Counsel in June 2013, the total number of individuals (current and

17  former) in the Pet Stylist Settlement Class is approximately 2,068.  Assuming 100% participation rate,

18  the average Individual Settlement Amount for the Pet Stylist Settlement Class members would be

19  approximately $1,300.00.  Additionally, based on the data provided by PetSmart to Class Counsel, the

20  total number of individuals (current and former) in the Non-Exempt Employee Settlement Class is

21  approximately 14,345. Again, assuming 100% claims participation rate, the average Individual

22  Settlement Amount for the Non-Exempt Employee Settlement Class members would be approximately

23  $100.00.  These averages will likely be higher because the participation rate will be lower and the

24  redistributions will increase the average Individual Settlement Amounts. Realistically, however, there

25  will be less than 100% participation rate, increasing the average amount, and the actual amount of

26  Individual Settlement Amounts paid to Claimants will also be higher due to redistribution of the

27  unclaimed funds.

28  40.  Settlement Class Members who submit a timely and valid Claim Form will receive their

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  Individual Settlement Amount  To the extent that any member of the Non-Exempt Employee Settlement

2  Class does not, for any reason, become a Claimant and there are unclaimed funds remaining of the one-

3  third (1/3) portion of the Net Distribution Amount allocated to the Non-Exempt Employee Settlement

4  Class, the Settlement Administrator shall first redistribute the unclaimed funds to the Claimants in the

5  Non-Exempt Employee Settlement Class in proportion to each Claimant's Individual Settlement

6  Amount.  Notwithstanding the pro-rata increase, no Claimant shall be entitled to recover more than three

7  times (3x) his or her original Individual Settlement Amount.  In the event that the redistribution causes

8  Claimants' Individual Settlement Amounts to be increased by more than three times (3x) his or her

9  original Individual Settlement Amount, the Settlement Administrator shall then redistribute the

10  remaining unclaimed funds to the Claimants in the Pet Stylist Settlement Class in proportion to each

11  Claimant's Individual Settlement Amount.  Notwithstanding the pro-rata increase, no Claimant shall be

12  entitled to recover more than three times (3x) his or her original Individual Settlement Amount.  In the

13  event that the redistribution causes Claimants' Individual Settlement Amounts to be increased by more

14  than three times (3x) his or her original Individual Settlement Amount, the remaining unclaimed funds

15  shall first be used to pay PetSmart's share of any taxes owed pursuant to the Settlement. Any Net

16  Distribution Amount remaining after the payment of employer taxes shall be paid to the Legal Aid

17  Society – Employment Law Center ("ECL"), 180 Montgomery Street, Suite 600, San Francisco, CA

18  94104, the *cy pres* beneficiary jointly designated by the parties.  (Settlement Agreement § IV, ¶ 4.5(c).)

19      41.      The Legal Aid Society – Employment Law Center is an appropriate *cy pres* beneficiary

20  under Code of Civil Procedure section 384(b) because it is a nonprofit organization that supports

21  projects that will benefit employees similarly situated to Settlement Class Members consistent with the

22  objectives and purposes of the underlying wage and hour causes of action in this case, and because it

23  provides civil legal services to the indigent.  ECL has several programs designed to protect the rights of

24  low-income workers to work in a safe, respectful environment that is free from discrimination, and in

25  compliance with the law. In particular, ECL runs a Wage and Hour Program that works to ensure that all

26  workers benefit from laws that regulate pay and work hours through a number of methods, including

27  representing individuals through litigation and administrative advocacy to enforce their wage and hour

28  rights, running a Workers' Rights Clinic to provide assistance to low wage and indigent workers on their

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  legal claims, and conducting public education and outreach for workers, community advocates, and legal

2  aid and pro bono attorneys.

3  **D.     Content of Class Notice and Claim Form/FLSA Consent Form**

4         42.    A copy of the proposed Notice of Class Action Settlement ("Class Notice") is attached

5  hereto as Exhibit 2.  The Class Notice in this case is accurate and informative. The Class Notice informs

6  Settlement Class Members, in plain language, about the terms of the Settlement and explains the

7  payments to which they are entitled under the Settlement.  It provides information on the meaning and

8  nature of the proposed Settlement, the terms and provisions of the Settlement, the relief the Settlement

9  will provide Settlement Class members, the amount of proposed service awards to the Class

10  Representatives, the amount of Class Counsel's request for reimbursement of costs and attorneys' fees

11  from the Settlement, the proposed cost of administration, the payment to the LWDA, the date, time and

12  place of the final approval hearing, and the procedure and deadlines for participating in and opting out of

13  the settlement, submitting Claim Forms, comments and objections to the Settlement, and how class

14  members can obtain additional information. The Class Notice clearly states that the Settlement does not

15  constitute an admission of liability by PetSmart, and recognizes that the Court has not ruled on the

16  merits of the action.  It also states that the final settlement approval decision as yet to be made.

17         43.    The Class Notice and the Claim Form are attached as Exhibits 2 and 3 to this Declaration.

18  The Claim Form informs, in plain language, Settlement Class Members and of the deadline to submit the

19  Claim Form.  The Claim Form informs the Settlement Class members of the estimate amount of their

20  Individual Settlement Amount, the total amount of gross compensation they earned from PetSmart

21  during their employment and as a member of one of more of the Settlement Classes, and their dates of

22  employment in one or more of the Settlement Classes during the Covered Timeframe.  It also informs

23  Settlement Class Members who wish to challenge the information provided on the Claim Form, the

24  procedure for submitting filing a dispute with the Settlement Administrator. The Claim Form also serves

25  as the FLSA Consent Form to opt into the Settlement for those Settlement Class Members who were

26  employed by PetSmart within the three year period prior to preliminary approval of the Settlement.

27  (Settlement Agreement § IV, ¶ 5.4.)

28  / / /

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

**E.      Administration of Notice, Objections, and Claims**

44.      The reasonable costs of settlement administration will be deducted from the Total Settlement Amount. The parties have selected Simpluris, to serve as the Settlement Administrator. Simpluris has provided the parties with a detailed estimate of the claims administration process, as described below, not to exceed $105,000.  Within fifteen business days of preliminary approval, PetSmart will provide Simpluris, the Settlement Administrator and Class Counsel with the names, addresses, social security numbers, phone numbers, and relevant employment dates for each Settlement Class Member. (Settlement Agreement § IV, ¶ 6.2.)  PetSmart will indicate which Settlement Class Members worked as Pet Stylists and/or Salon Managers during the Covered Timeframe. As to those Class Members who received pay as Pet Stylists or Salon Managers as well as in a position(s) other than Pet Stylist or Salon Manager during the Covered Timeframe, PetSmart will provide the amount of gross (W-2) compensation paid to each such Settlement Class Member who worked: (1) as a Pet Stylist and/or Salon Manager, and (2) in a position(s) other than Pet Stylist or Salon Manager.  The address, telephone number, wage and Social Security information will be kept completely confidential and will not be released or used for any purpose other than identifying Settlement Class Members and researching current contact information. (Settlement Agreement § IV, ¶ 6.2.)

45.      Simpluris shall mail the Class Notice in the form approved by the Court, no later than twenty-five (25) days after the Court grants Preliminary Approval. (Settlement Agreement § IV, ¶ 6.3.) The Class Notice will include an explanation of the Settlement Class Member's right to be excluded from the Settlement Class by submitting a written request for exclusion.  Attached to the Class Notice will be the Claim Form/FLSA Consent Form, in the form approved by the Court. Included with the Class Notice shall be a pre-paid, pre-addressed envelope for the Class Member to respond to the Claim Notice. For Settlement Class Members who according to the records provided by PetSmart are listed as former employees, Simpluris will undertake a reasonable address verification using Accurint to skip trace to ascertain the accuracy of the last known address. To the extent this process yields an updated address, that updated address shall replace the last known address and be treated as the last known address for purposes of Class Notice mailing. If a Settlement Class Member is known to be deceased, the Class Notice for that Settlement Class Member shall be mailed to the last known address (or updated

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**H**OLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1   address, if applicable) of the legal representative of the deceased Settlement Class Member's estate, to

2   the extent known.  (Settlement Agreement § IV, ¶ 6.4.)

3        46.    With respect to those Settlement Class Members whose Notice is returned as

4   undeliverable, Simpluris will use Experian (or similar service) to obtain a current address and re-mail

5   the Notice within three business days of receipt of the returned Notice. (Settlement Agreement § VI, ¶

6   6.4.)  Simpluris shall maintain a toll-free telephone line that shall be staffed and/or provide automated

7   Interactive Voice Response with the ability for Settlement Class Members to leave messages during

8   non-business hours. Simpluris shall also maintain an interactive website with the URL

9   www.petsmartsettlement.com that Settlement Class Members can use to file a Claim Form, track the

10  processing of a Claim Form, and contact the Settlement Administrator if they have questions.

11  (Settlement Agreement § VI, ¶ 6.5 – 6.6.)

12       47.    Settlement checks that are returned a second time and settlement checks not cashed

13  within 180 days of issuance will not be re-issued.  If a Claimant does not cash or deposit his or her check

14  within 180 days from the date of issuance, or if a settlement check is returned for a second time, the

15  Settlement Administrator shall cause that Claimant's payment to be sent to the California State

16  Controller's office to be placed in the Unclaimed Property Fund for the benefit of the Claimant.

17  (Settlement Agreement § VI, ¶ 7.5.)

18  **F.**   **Release of Claims**

19       48.    Settlement Class Members who submit a Claim Form/FLSA Consent Form and do not

20  opt out will release wage-and-hour claims against PetSmart, with the exception that Plaintiffs may

21  continue to pursue their individual claims as stated in Plaintiffs' Complaint for wrongful termination in

22  violation of public policy, failure to accommodate and failure to engage in the interactive process under

23  the Fair Employment and Housing Act. Specifically, each member of the Settlement Class (other than

24  opt-outs), regardless of whether he or she has timely submitted a Claim Form, will fully release and

25  discharge PetSmart, including its former and present parent companies, subsidiaries, divisions, concepts,

26  related or affiliated companies, shareholders, officers, directors, employees, partners, agents,

27  representatives, attorneys, insurers, successors and assigns, and any individual or entity that could be

28  jointly liable with any of the foregoing ("Released Parties") from any claims, causes of action, damages,

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  wages, benefits, expenses, penalties, debts, liabilities, demands, obligations, attorneys' fees, costs, and

2  any other form of relief or remedy in law, equity, or whatever kind or nature, whether known or

3  unknown, suspected or unsuspected, arising from: (1) The Action and any claims arising out of, or

4  related to the actual claims asserted or factual allegations in the Action including all claims made under

5  the California Labor Code, Industrial Welfare Commission Wage Orders, and the California Business

6  and Professions Code, claims under PAGA, claims for restitution and other equitable relief, liquidated

7  damages, punitive damages, waiting time penalties, penalties of any nature whatsoever, other

8  compensation or benefits; and (2) any alleged wage and hour violations that were made  or could have

9  been made based on the actual claims asserted or factual allegations in the Action, whether premised on

10 statute, contract, tort or other theory of liability under state or local law, by any Class Member against

11 the Released Parties (collectively, the "Released Claims"), and including, but not limited to, any claims

12 specifically referenced herein.  In addition, any Class Member who timely submits a Claim Form will

13 fully and forever release and discharge the Released Parties from any claims arising out of, or related to

14 the actual claims asserted or factual allegations in the Action including all claims made under the Fair

15 Labor Standards Act ("FLSA") and any alleged federal wage and hour violations/allegations that were

16 made or could have been made based on the actual claims asserted or factual allegations in the Action,

17 whether premised on statute, regulation contract, tort or other theory of liability under federal law or

18 regulation by any Class Member against the Released Parties (collectively, the "FLSA Released

19 Claims").  The release will include any claims arising from or that may have arisen from the Parties'

20 respective prosecution and/or defense of this litigation.  The release will apply to the Covered Time

21 Frame and include any cause of action alleged in or which could have been alleged based on the facts in

22 the Complaint or any Amended Complaint that may be filed prior to the approval of this Settlement.  All

23 Released Claims are released for all Class Members regardless of whether they submit a Claim Form or

24 receive any payment under the Settlement unless they Opt-Out of the Settlement, and all FLSA Released

25 Claims are released for all Class Members who timely submit a Claim Form, regardless of whether they

26 receive any payment under the Settlement.  The Released Claims and FLSA Released Claims do not

27 include claims for workers' compensation benefits or any of the claims that may not be released by law.

28 The four Plaintiffs will execute a general release of all known and unknown claims each may have

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  against PetSmart, with the exception that Plaintiffs may continue to pursue their individual claims as

2  stated in Plaintiffs' Complaint. Settlement Class Members will have the opportunity to object to, and opt

3  out of the Settlement, as well as challenge the total amount of gross compensation paid to them PetSmart

4  during the Covered Timeframe. (Settlement Agreement § VI, ¶ 6.7 – 6.10.)

5  **G.   Other Settlement Considerations**

6      49.    The Settlement falls well within the range of reasonableness, given that it results in a

7  substantial benefit to all Settlement Class Members – up to $10,000,000.  As detailed above, the

8  Settlement provides meaningful relief for the vigorously disputed wage and hour violations and related

9  claims that make it well within the range of reasonableness.

10     50.    In reaching the Settlement, counsel on both sides relied on their respective substantial

11 litigation experience in similar employment class action, and thorough analysis of the legal and factual

12 issues presented in this case.

13     51.    Plaintiffs faced numerous risks in further judicial proceedings.  Plaintiffs' claim on behalf

14 of Pet Stylists for unpaid wages for non-productive time was a relatively novel claim at the time this

15 case was filed. In fact, PetSmart zealously argued that Pet Stylists were paid a commission as opposed to

16 piece rate and that PetSmart's commission pay structure was legal under California law. The largest

17 dispute between the parties was with respect to the duties Plaintiffs claimed were non-productive duties

18 for which they did not receive any compensation. The alleged non-productive duties included duties

19 such as contacting customers, filling out customer paperwork, checking dogs in and out before and after

20 appointments, stocking and facing product on store shelves, assisting in other departments throughout

21 the store, taking inventory, cleaning the grooming salon, and prospecting for new grooming customers.

22 PetSmart maintains that many of these duties are incidental to performing grooming services for which

23 Pet Stylists' compensation plan pays at the rate of 50% of the net sale price the customer pays for each

24 grooming service.

25     52.    In preparation for mediation, Plaintiffs' counsel performed extensive damages analysis

26 on the data obtained from PetSmart to calculate an estimated amount of damages for Plaintiffs' claims.

27 Plaintiffs' damages for the unpaid wages claim was estimated using the anecdotal evidence obtained

28 from class member interviews as well as the Commission Reports produced by PetSmart prior to the

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

GRAHAM HOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1   mediation.  Based on this information, Plaintiffs estimated an average number of non-productive hours

2   per shift that wages were owed. Plaintiffs argued that the non-productive time should be compensated at

3   the average hourly fall back rate paid to Pet Stylists. PetSmart argued that the average number of non-

4   productive time was minimal, and none at all in workweeks in which Pet Stylists do not commission out,

5   and that average rate of pay should be minimum wage as opposed to the average hourly rate. Assuming

6   one hour of non-productive time per shift at minimum wage during the Covered Timeframe, the

7   maximum value of Plaintiffs' claim for unpaid wages would be approximately $9,700,000.  However,

8   this amount assumes that Pet Stylists are owed unpaid wages for non-productive time for 100% of the

9   workweeks, which is not the case because in some workweeks Pet Stylists did not commission out, and

10  were therefore paid for all hours at their fall back rate.

11        53.    Plaintiffs allege that in workweeks in which Pet Stylists commissioned out, they did not

12  get paid rest breaks because PetSmart only paid piece rate compensation during such workweeks and did

13  not pay any wages for time spent taking rest breaks. PetSmart's written rest break policy provides for

14  15-minutes rest breaks. Plaintiffs therefore argued that Pet Stylists were contractually entitled to 15-

15  minute rest breaks. PetSmart argued that if it owed any unpaid wages for unpaid rest breaks, the amount

16  owed should be calculated at minimum wage and for the statutorily required 10-minute rest break.

17  Assuming 30-minutes of unpaid wages for rest break time per shift at minimum wage, the maximum

18  value of this claim is $4,800,000.  This maximum amount assumes that rest break wages are owed for

19  100% of the shifts. However, in workweeks in which Pet Stylists did not commission out and were paid

20  their hourly fall back rate, they would not be owed any additional wages for rest break wages.

21        54.    To calculate vacation wages owed for Pet Stylists, PetSmart uses an average of the total

22  amount piece rate compensation paid for the prior 26 weeks.  Because Pet Stylists are not paid any

23  wages for non-productive time, the average pay for the prior 26 weeks is underpaid.  Plaintiffs'

24  estimated value for the vacation wages for Pet Stylists is between $600,000 - $700,000.

25        55.    Plaintiffs' claim for meal and rest break violations on behalf of both classes was premised

26  on PetSmart's illegal written meal and rest break policy, which was in effect from 2005 through April

27  2011. To calculate the value of these claims, Plaintiffs limited the meal premium claim to shifts between

28  5 – 6 hours and the rest premium claim to shifts between 3.5 – 4 hours for both the Pet Stylist Settlement

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  Class and the Non-Exempt Employee Class. Assuming Plaintiffs prevailed on this claim and PetSmart's

2  policy was found to be illegal, the estimated maximum value of meal premiums owed to Pet Stylists

3  assuming one meal premium for each shift from 2008 – April 2011 at the rate of minimum wage would

4  be approximately $1,178,000.  The maximum amount of meal premiums owed to Non-Exempt

5  Employees other than Pet Stylists is approximately $8,100,000. PetSmart vehemently defended against

6  this claim arguing that the written policy was not enforced and that all non-exempt employees, including

7  Pet Stylists, were all verbally informed that they were entitled to a meal break after the fifth hour of

8  work. An additional defense against the meal break claim was that employees can waive meal periods

9  on shifts less than 6 hours. The maximum value of the claim for rest break premiums for Pet Stylists

10  assuming one rest break premium per shift at minimum wage is $9,700,000.  The claim for rest break

11  premiums on behalf of the Pet Stylists was not limited to the period 2008 – April 2011 because Plaintiffs

12  allege that Pet Stylists were denied compliant rest breaks throughout the entire class period, May 2008 -

13  present. The maximum value of the rest break claim for Non-Exempt Employees other than Pet Stylists

14  is approximately $906,000. This amount was limited to 2008 – April 2011 because it was based on

15  PetSmart's allegedly illegal written rest break policy, which was revised in April 2011.

16      56.    Plaintiffs' off-the-clock claim was premised on the theory that Pet Stylists and other Non-

17  Exempt Employees would clock out at the front of the store and then walk through the store to the break

18  room while clocked out, which would inevitable result in being interrupted by customers at times,

19  although not every shift and not every time they were clocked out. Plaintiffs allege that PetSmart did not

20  have a method for paying these employees for work performed off-the-clock. (PetSmart defended this

21  claim by arguing that it did in fact allow employees who had to assist customers while off-the-clock to

22  inform their store manager and get paid or to extend their break time to ensure they received a full meal

23  or rest break. Plaintiffs estimated the value of the off-the-clock claim for Pet Stylists to be

24  approximately $971,000 and for the Non-Exempt Employee Settlement Class to be approximately

25  $2,795,000.  Lastly, the tool claim on behalf of the Pet Stylist Settlement Class was estimated to be

26  approximately $1,500,000.  Plaintiffs recognized the difficulties and risks moving forward with class

27  certification of the off-the-clock claim. Additionally, the time spent working off-the-clock was minimal

28  and the majority of the value of this claim comes from the wages owed to former employees in the form

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  of a waiting time penalty.

2      57.    PetSmart denies that it failed to pay all wages due for all hours worked under California

3  law. Moreover, PetSmart hotly contested the average number of unpaid non-productive hours that

4  Plaintiffs estimated were worked by Pet Stylists per shift. Plaintiffs faced additional difficulties in

5  continued litigation because the number of non-productive time was not recorded. In fact, Pet Stylists

6  often groom multiple dogs simultaneously, making it very difficult to accurately estimate the average

7  non-productive time. Plaintiffs faced additional risk in continued litigation in that the duties Plaintiffs

8  believe are non-productive duties would in fact be found by a Court to be duties which are incidental to

9  grooming and therefore covered by the piece rate compensation paid by PetSmart for performing

10  grooming services. Additionally, PetSmart vehemently denies that non-exempt employees worked off-

11  the-clock because they were interrupted by customers. PetSmart also disputed Plaintiffs' use of the

12  average hourly rate for the alleged violations. PetSmart also raised a number of factual issues it argued

13  would show substantial variation as to how employees spend their time and the duties performed at each

14  store, which could present substantial risks at the class certification stage. Finally, PetSmart claims its

15  compensation scheme is legal because in workweeks in which Pet Stylists are paid their hourly fall back

16  rate because they haven't commissioned out, they are paid for all hours worked. Plaintiffs do not dispute

17  that Pet Stylists are paid for all hours worked during workweeks when they are paid the fall back rate.

18  However, in workweeks in which Pet Stylists commission out and earn only their piece rate

19  compensation, Plaintiffs allege that Pet Stylists are not paid any wages for time spent performing non-

20  productive duties and time spent taking rest breaks.

21      58.    During the course of Plaintiffs' investigation and review of the employment data

22  provided by PetSmart, Plaintiffs learned that the manner in which PetSmart calculates vacation wages

23  for Pet Stylists was inaccurate and vacation wages were underpaid. PetSmart uses an average of the total

24  amount piece rate compensation paid to each Pet Stylist for the past 26 weeks of their employment to

25  calculate an average rate per hour for each vacation hour owed. Because Pet Stylists are not paid any

26  wages for non-productive time, Plaintiffs allege that the average pay for the 26 week period used to

27  calculate vacation wages is underpaid. The parties agreed to mediate the vacation claim and this claim

28  was included in this Settlement. Class Counsel estimated the total amount of unpaid vacation wages

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  owed to the Pet Stylist Settlement Class during the Covered Timeframe to between $600,000 -

2  $700,000.

3      59.    Given all of these contested issues, Class Counsel's assessment of the litigation risks

4  Plaintiffs faced, and the time value of money (due to the time required to take this case to trial and

5  through appeal), Plaintiffs agreed to compromise and settle the claims of the Settlement Classes as

6  described in the Settlement Agreement. Additionally, given the novel nature of Plaintiffs' primary claim

7  for unpaid wages and the uncertainty regarding the state of the law concerning piece rate and

8  commission pay structures, Plaintiffs' claim for unpaid wages could have been significantly discounted

9  by a jury. All of these issues required Plaintiffs to compromise their original demands, where were

10  calculated based on the maximum exposure PetSmart faced if Plaintiffs prevailed on everything.

11      60.    While the parties have disagreed over the scope of PetSmart's exposure to the alleged

12  claims as well as the merits of the claims themselves, counsel for both parties agree that the settlement

13  reach is fair, reasonable, and adequate and is in the best interest of the Settlement Class Members in

14  light of all known facts and circumstances, including the risk of significant delay and defenses asserted

15  by PetSmart.

16      61.    The Settlement commits PetSmart to a Total Settlement Amount of $10,000,000.00 to

17  compensate Settlement Class Members for their alleged damages, which is expected to result in a

18  significant recovery for each Claimant. Based on the information available to Class Counsel presently, it

19  is estimated that the average Individual Settlement Amount to be approximately $1,300.00 for members

20  of the Pet Stylist Settlement Class and approximately $100.00.00 for members of the Non-Exempt

21  Employee Settlement Class. These estimates of the average amounts are based on a 100% claims rate,

22  which is highly unlikely in this type of case. Also, these estimates do not account for variations in

23  compensation paid by PetSmart to the Claimants or for any amounts that may be redistributed to

24  Claimants. In addition, any member of the Pet Stylist Settlement Class who is also a member of the

25  Waiting Time Penalties Settlement Sub-Class will receive an additional $400 and any member of the

26  Non-Exempt Employee Settlement Class who is also a member of the Waiting Time Penalties

27  Settlement Sub-Class will receive an additional $200.  In contrast, continued litigation would be costly

28  and time consuming, and appeal from any judgment would be likely. Such efforts would likely result in

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1   a delay of years before this case would finally be resolved.  This Settlement provides a significant and

2   timely recovery to the Settlement Class and easily falls within the range of reasonableness. The

3   estimated average Individual Settlement Amounts to be recovered by Claimants in this case are, in my

4   experience, very favorable for a case of this type.

5        62.     In addition to the monetary results achieved by Plaintiffs by this Settlement, PetSmart has

6   agreed to provide grooming tools for its in-store salons to be used by Pet Stylists.  As part of this

7   Settlement, PetSmart retained a safety and ergonomic consultant to conduct an ergonomic evaluation of

8   PetSmart's practices and to review PetSmart's policies and procedures with regard to whether Pet

9   Stylists are allowed to sit while performing grooming tasks.

10        63.     The settlement of the claim for penalties under the Private Attorneys General Act

11   ("PAGA") for $50,000.00, or 0.50% of the Total Settlement Amount, is reasonable under the

12   circumstances. The parties negotiated a good faith amount for PAGA penalties, and this amount was not

13   the result of self-interest at the expense of the Settlement Class Members. Of this amount, 75%

14   ($37,500) will be paid to the LWDA, and 25% ($12,500) will be distributed to Claimants in addition to

15   their pro rate settlement shares.

16        64.     The Plaintiffs, in the settlement of this wage and hour class action, are entitled to

17   payment of attorney's fees and costs. An attorney's fee award is justified where the legal action has

18   produced its benefits by way of a voluntary settlement.  Normally, courts make the determination as to

19   the fee and costs award contemporaneously with the motion for final settlement approval. Plaintiffs will

20   fully brief the fee application at that time and support their application with appropriate factual showing

21   by declaration.

22        65.     Here, upon final approval of the Settlement, Plaintiffs will seek an award of Class

23   Counsel's attorney's fees under the common fund doctrine, which is customarily used in awarding fees

24   and costs in settlements of wage and hour class actions and, as indicated in the Memorandum filed

25   herewith, is an approved method under California case law.

26        66.     Under the Settlement, Class Counsel may seek a total award of attorneys' fees and costs

27   of up to 33-1/3% of the Total Settlement Amount of $10,000,000.  Based on my experience and

28   knowledge of the relevant legal market for wage and hour class actions, this amount accurately reflects

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1   the marketplace for representation of plaintiffs in wage and hour cases of this type on a contingency

2   basis.

3       67.    Class Counsel has incurred expenses for items such as filing fees, mediation fees, travel,

4   postage, delivery, online research, telephone, and copying, in excess of $40,000.00. These are

5   categories of expenses for which Class Counsel and other law firms customarily charges its fee-paying

6   clients. A detailed summary of the costs incurred will be supplied at the time of the final approval

7   hearing.

8       68.    I believe that, under the circumstances, the fee and cost award requested by Plaintiffs is

9   appropriate and should be preliminarily approved as fair and reasonable, subject to the Court's final

10  determination at the time of final approval.

11      69.    Plaintiffs have proposed that the Class Representatives receive service awards in the

12  amount of $10,000 each to Plaintiff Alanna Harrison and Plaintiff Alisa Valdez and $5,000 each to

13  Plaintiff Danette Moore and Plaintiff Latresa Myers. The service awards shall be in addition to the

14  payment they may otherwise receive as a Settlement Class Member. Such service awards are routinely

15  made in wage and hour class actions like this case. Plaintiffs provided significant assistance to counsel

16  to investigate and litigate this case. They initiated this action by seeking legal assistance from Class

17  Counsel, assisted with the preparation of the complaint, provided documents, identified potential

18  witnesses, and worked closely with Class Counsel throughout the case. Plaintiffs each attended their

19  deposition in San Francisco as well as the mediation, in some cases having to take time off from work

20  and drive several hours to do so. Each Plaintiff reviewed and executed the Settlement Agreement and

21  provided a declaration in support of preliminary approval of the Settlement. It is my belief that no action

22  would have been taken by class members individually, and no compensation would have been recovered

23  for them at all, but for the representative Plaintiffs' actions on their behalf. Class Representatives, in

24  agreeing to bring this action, formally agreed to accept the responsibilities of representing the interests

25  of all class members, and to assume risks and potential costs that other class members were not subject

26  to in this case. In addition, by actively pursuing this action, Class Representatives also furthered the twin

27  California public policy goals of enforcing the overtime laws and making appropriate use of the class

28  action device. Additionally, the Plaintiffs agreed to postpone settlement negotiations related to their

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1   individual FEHA claims until the resolution of the class and representative action claims.

2        70.     Moreover, PetSmart does not oppose payment of a total of $30,000 for the service awards

3   to the Class Representatives.  Accordingly, the payments to the Class Representatives are appropriate

4   and justified as part of the overall Settlement.

5        71.     In conclusion, it is my opinion, that this Settlement Agreement is fair, reasonable and

6   adequate, and in the best interest of the class. The settlement amount of $10,000,000 is an excellent

7   result, considering the formidable arguments PetSmart advanced against class certification, liability, and

8   damages.  Difficult issues remained as to class-wide proof of the number of unpaid non-productive

9   hours, meal and rest period violations, miscalculated vacation pay, unreimbursed tool expenses , and the

10   willfulness and intent elements of the waiting time penalties and inaccurate wage statement claims. In

11   light of these issues, and the fact that the settlement was the product of protracted, contentious, and

12   arm's length negotiation before an experienced mediator, Class Counsel believes that the settlement

13   should be preliminarily approved, notice be disseminated to the Settlement Class Members, and a final

14   approval hearing be scheduled.

15        I declare under penalty of perjury under the laws of the State of California and the United States

16   that the foregoing is true and correct.

17        Executed this 31st day of January, 2014, in San Diego, California.

18   Respectfully submitted,

20   Dated: January 31, 2014             **GRAHAMHOLLIS** APC

22               By:  /s/ *Graham S.P. Hollis*
                     Graham S.P. Hollis, Esq.
                     Email: ghollis@grahamhollis.com
                     Marta Manus, Esq.
                     Email: mmanus@grahamhollis.com
                     Attorneys for Plaintiffs

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

# EXHIBIT 1

1    MICHELLE B. HEVERLY, Bar No. 178660
     mheverly@littler.com
2    KARIN M. COGBILL, Bar No. 244606
     kcogbill@littler.com
3    SOPHIA BEHNIA, Bar No. 289318
     sbehnia@littler.com
4    LITTLER MENDELSON, P.C.
     50 W. San Fernando, 15th Floor
5    San Jose, California  95113.2303
     Telephone:    408.998.4150
6    Facsimile:    408.288.5686

7    Attorneys for Defendant
     PETSMART, INC.
8

9    GRAHAM HOLLIS, Bar No. 120577
     ghollis@grahamhollis.com
     MARTA MANUS, Bar No. 260132
10   mmanus@grahamhollis.com
     GRAHAMHOLLIS APC
11   3555 Fifth Avenue
     San Diego, CA 92103
12   Telephone:  619.692-0800
     Facsimile:   619.692.0822
13

14   Attorneys for Plaintiffs
     DANETTE M. MOORE, LATRESA MYERS,
15   ALANNA HARRISON and ALISA VALDEZ

16                 UNITED STATES DISTRICT COURT

17                NORTHERN DISTRICT OF CALIFORNIA

18

19   DANETTE M. MOORE, LATRESA        Case No.:    5:12-cv-03577-EJD
     MYERS, ALANNA HARRISON and
20   ALISA VALDEZ, individually and on   **JOINT STIPULATION OF CLASS ACTION**
     behalf of others similarly situated,     **SETTLEMENT AND RELEASE**
21
                 Plaintiffs,
22
         v.
23
     PETSMART, INC., and Does 1 through
24   100, inclusive,

25                 Defendant.

26

27

28

     CASE NO. 5:12-CV-03577-EJD

This stipulation of Class Action Settlement and Release ("Agreement" or "Settlement" is entered into by Plaintiffs Danette M. Moore, Latresa Myers, Alanna Harrison and Alisa Valdez ("Plaintiffs") and PetSmart, Inc. ("Defendant" or "PetSmart").

IT IS HEREBY STIPULATED AND AGREED by the undersigned Parties subject to approval of the Court, that the settlement of this Action shall be effectuated upon and subject to the following terms and conditions.

## I.   DEFINITIONS

The following capitalized, defined terms used in this Agreement shall have the meanings ascribed to them below.

**1.1   Action, Lawsuit or Complaint:**  Shall mean the operative Complaint in the case entitled "*Danette M. Moore, et al. v. PetSmart, Inc.*" venued in the United States District Court, Northern District of California, designated as Case No. 5:12-cv-03577, and any subsequent pleadings and amendments thereto.

**1.2   Agreement:** "Agreement" or "Settlement" means this Joint Stipulation of Class Action Settlement and Release.

**1.3   Claimant:**  Shall mean every Settlement Class Member who submits a valid and timely Claim Form.

**1.4   Class Counsel:**   Shall mean Graham S.P. Hollis and Marta Manus of GrahamHollis APC, 3555 Fifth Avenue, Suite 200, San Diego, CA 92103.

**1.5   Covered Timeframe:** Shall mean the period of time beginning May 23, 2008 through the Date of Preliminary Approval of the Settlement Agreement.

**1.6   Covered Positions**: Shall mean all non-exempt employees employed by PetSmart in any of its retail stores located in California.

**1.7   Defendant's Counsel, Defense Counsel or Counsel for Defendant:**  Shall mean Michelle B. Heverly, Karin M. Cogbill and Sophia Behnia, LITTLER MENDELSON, APC, 50 W. San Fernando Street, 15th Floor, San Jose, CA 95113-2431.

**1.8   Effective Date:**  Shall mean the date on which the Court grants final approval of the Settlement.

**1.9**   **Individual Settlement Amount:** Shall mean the portion of the Net Distribution Amount distributable to each Claimant, which will be distributed on a claims-made basis, calculated pursuant to Paragraph 4.5 below.

**1.10**   **Named Plaintiffs or Class Representatives:** Shall mean Plaintiff Danette M. Moore, Plaintiff Latresa Myers, Plaintiff Alanna Harrison, and Plaintiff Alisa Valdez.

**1.11**   **Net Distribution Amount:** Shall mean the Total Settlement Amount of Ten Million Dollars ($10,000,000.00) less the payment to the Labor and Workforce Development Agency (LWDA), attorney's fees and reasonable litigation costs awarded by the Court, the service payments to the Class Representatives awarded by the Court, and the costs of administering the Settlement.

**1.12**   **Non-Exempt Employee Settlement Class:** Shall mean all individuals who were employed by PetSmart as an hourly paid, non-exempt employee in California at any period of time during the Covered Timeframe in a position other than Pet Stylist, Groomer, Grooming Trainee, or Salon Manager.

**1.13**   **Parties:** Shall collectively refer to Plaintiffs and PetSmart.

**1.14**   **Pet Stylist:** As used herein, shall mean those employees employed by PetSmart in the position of Pet Stylist, Groomer, Grooming Trainee and/or Salon Manager.

**1.15**   **Pet Stylist Settlement Class:** Shall mean all individuals in the Settlement Class who were employed by PetSmart as a Pet Stylist, Groomer, Grooming Trainee or Salon Manager in California at any period of time during the Covered Timeframe.

**1.16**   **Settlement Class:** Shall mean all individuals who are members of either the Non-Exempt Employee Settlement Class or the Pet Stylist Settlement Class during the Covered Time Frame.

**1.17**   **Settlement Administrator:** Shall mean the third party administrator mutually selected by the Parties which the Parties have agreed will be responsible for administration of all payments to be made by Defendant pursuant to this Agreement. In this case, Simpluris is the agreed upon third party administrator.

**1.18    Settlement Class Member:** The individual members of the Settlement Class are referred to herein individually as a "Settlement Class Member" or collectively as "Settlement Class Members".

**1.19    PetSmart or Defendant:** is defined as, and includes, PetSmart, Inc., and each of its subsidiaries, affiliates, parents and divisions.

**1.20    Total Settlement Amount:** Total Settlement Amount is an amount up to Ten Million Dollars ($10,000,000.00). The Total Settlement Amount is the maximum that Defendant shall be required to pay under this Agreement, and shall be deemed in satisfaction of all claims arising out of, related to or which could have been brought as part of the *Moore* Complaint, including claims for: (1) all wages, penalties, interest, and/or other amounts to be paid to Settlement Class Members; (2) the payment to the Labor and Workforce Development Agency ("LWDA") pursuant to the Private Attorneys' General Act ("PAGA"); (3) attorneys' fees and costs of Class Counsel; (4) the service payments to the Class Representatives, approved by the Court; (5) all costs of administration, including, without limitation, settlement administration fees; and (6) the employee's share of payroll taxes.

**1.21    Waiting Time Penalties Settlement Sub-Class:** Shall mean all individual members of the Non-Exempt Employee Settlement Class and/or the Pet Stylist Settlement Class who separated from their employment with PetSmart at any time between May 23, 2009 and the date of Preliminary Approval of the Settlement Agreement.

## II.    GENERAL BACKGROUND

**2.1**    Plaintiffs initiated the Action in the Superior Court of California, County of Alameda on May 23, 2012. In addition to individual disability-based claims, Plaintiffs alleged in the Complaint and claimed damages and penalties at mediation for: unpaid compensation for all hours worked, payment of minimum wages and overtime, payment for unpaid "unproductive time," reimbursement of reasonably incurred work-related expenses, compensation for meal and rest period violations, miscalculation of vacation pay, failure to timely and properly pay wages due upon termination of employment, failure to provide suitable seats, unfair competition, statutory penalties (including PAGA penalties), interest and attorneys' fees and costs, under California Labor Code §§

201, 202, 203, 223, 226, 226.7, 512, 1194, 1197, 1198, 2698 *et seq.*, 2802, California Code of Civil Procedure §1021.5, and California Industrial Welfare Commission (IWC) Wage Order 7-2001, 8 Cal. Code of Reg. § 11040; and seeks specific enforcement of penalties and restitution of all benefits PetSmart is alleged to have enjoyed from its alleged failure to pay minimum wages; pay for all hours worked; provide meal and rest periods; properly calculate the payment of vacation pay; properly and timely pay all wages due at the time of termination; provide suitable seats; and/or reimburse all reasonably incurred business-related expenses.

2.2     PetSmart denies any liability or wrongdoing of any kind associated with the claims alleged in the Action. PetSmart contends, among other things, that it has complied at all times with the California Labor Code, the Industrial Welfare Commission Wage Orders, and the California Business and Professions Code. Moreover, PetSmart contends, specifically, that it provides its non-exempt employees with all minimum and overtime wages owed, requisite meal and rest periods, complies with all seating requirements, provides reimbursement for incurred work-related expenses as required by law, and timely pays all wages at the time termination as required by the Labor Code, including, but not limited to, regular wages, incentive compensation and accrued vacation. For its part, PetSmart took the depositions of each of the Named Plaintiffs, reviewed its own electronic time records, reviewed various documents related to sample stores and engaged in settlement discussions with Class Counsel.

2.3     Plaintiffs contend that the Action is meritorious and that class certification is appropriate.

2.4     Class Counsel has conducted a thorough investigation into the facts of the Action including extensive formal and informal discovery, and voluntary exchanges of information between the parties. Class Counsel's work has included interviewing Settlement Class Members, reviewing and analyzing computer time records for a sampling of Class Members, reviewing relevant wages statements, and reviewing documents related to PetSmart's practices at its California locations. Class Counsel also took the depositions of the persons most knowledgeable regarding various policies and practices of Defendant PetSmart. Class Counsel is knowledgeable about and has done extensive research with respect to the applicable law and potential defenses to the claims of

CASE NO. 5:12-CV-03577-EJD                           5.

1  the Settlement Class. Class Counsel has diligently pursued an investigation of the Settlement Class

2  Members' claims against PetSmart.

3        2.5    Following thorough investigation by both Parties, a mediation was held on

4  April 9, 2013, before Jeff Ross, in Oakland California. Although the Parties made their best efforts,

5  no settlement was reached on the day of mediation. After the mediation, the Parties continued

6  discussing settlement and exchanged additional information related to the class size and number of

7  shifts worked by the non-exempt employees. Specifically, Class Counsel and counsel for Defendant

8  had multiple lengthy conversations with Mr. Ross and continued to engage in telephonic

9  negotiations. Those negotiations continued for several months and culminated with a Mediator's

10 Proposal from Mr. Ross. The Parties eventually accepted the terms of the Mediator's Proposal, with

11 some modification.

12       2.6    Based on the data exchanged, the information provided by Defendant, and on

13 their own independent investigation and evaluation, Class Counsel is of the opinion that the

14 settlement with PetSmart for the consideration and on the terms set forth in this Agreement is fair,

15 reasonable, and adequate and is in the best interest of the Settlement Class Members in light of all

16 known facts and circumstances, including the risk of significant delay and uncertainty associated

17 with litigation, various defenses asserted by PetSmart, and numerous potential appellate issues.

18 Although Defendant denies any liability, PetSmart has agreed to settle the claims on the terms set

19 forth herein.

20       2.7    For settlement purposes only, PetSmart will stipulate that the Settlement Class

21 described herein should be certified.

22       2.8    This Agreement is contingent upon the approval and certification by the Court

23 of the Class as a non-mandatory (i.e. "opt-out") class for settlement purposes only.

24 **III.    CONDITIONS PRECEDENT TO SETTLEMENT TAKING EFFECT**

25       3.1    The Parties enter into this Agreement on a conditional basis. This Agreement

26 is contingent upon, and will become final and effective only upon the occurrence, of all the

27 following events:

28

(a)    The Court enters an order granting preliminary approval of the Settlement consistent with each and every term described in this Agreement (or as otherwise agreed upon in writing by the Parties);

(b)    Mailing of the Class Notice and Claim Form to Settlement Class Members in accordance with the Court's order of preliminary approval;

(c)    The Court setting and conducting a fairness hearing;

(d)    The Court entering an order granting final approval of the Settlement consistent with each and every term described in this Agreement (or as otherwise agreed upon in writing by the Parties); and

(e)    The Payment of Settlement Funds as described in Paragraph 7 is complete.

(f)    Judgment is entered by the Court dismissing the lawsuit as to all class claims with prejudice; and

(g)    PetSmart has not exercised its right to revoke the Agreement, as described in Section 6.14.

**3.2**    This Agreement is contingent upon each of the conditions precedent in paragraph 3.1 occurring and is entered into voluntarily by the Parties for settlement purposes only. To the extent this Agreement is deemed void or the Effective Date does not occur or for whatever reason does not result in the final resolution of this Action, Defendant does not waive, and instead expressly reserves its right to challenge all claims and allegations in the Action upon all procedural, factual and legal grounds, as well as asserting any and all other potential defenses or privileges, including all defenses to class certification.  If the Settlement is not approved by the Court, nothing in this Agreement or any draft thereof, or any documents submitted to the Court in support of this Agreement or Court approval thereof, shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the Action or in any other proceeding or forum.

## IV.    TERMS OF SETTLEMENT

The terms of the Settlement are as follows:

**4.1**    **Total Settlement Amount:**  The Parties agree to settle the Action for a Total Settlement Amount of up to Ten Million Dollars ($10,000,000.00).  The Total Settlement Amount is

the maximum that Defendant shall be required to pay under this Agreement, and shall be deemed in satisfaction of claims for: (1) all wages, penalties, interest, and/or other amounts to be paid to Settlement Class Members; (2) the payment to the Labor and Workforce Development Agency ("LWDA") pursuant to the Private Attorneys' General Act ("PAGA"); (3) attorneys' fees and costs of Class Counsel; (4) the service payments to the Class Representatives, approved by the Court; (5) all costs of administration, including, without limitation, settlement administration fees; and (6) the employee's share of payroll taxes.  In no event shall Defendant be required to pay anything more than the Total Settlement Amount of $10,000,000 in connection with the settlement of the Class Claims other than Defendant's share of payroll taxes.

     **4.2**   **Net Distribution Amount:**  The "Net Distribution Amount" is defined as the Total Settlement Amount of Ten Million Dollars ($10,000,000.00) less the payment to the Labor and Workforce Development Agency (LWDA), attorney's fees and reasonable litigation costs awarded by the Court, the service payments to the Class Representatives awarded by the Court, and the costs of administering the Settlement.

     **4.3**   **Settlement Classes**: The Settlement Classes shall be as follows:

     a)     Non-Exempt Employee Settlement Class:  All individuals who were employed by PetSmart as an hourly paid, non-exempt employee in California at any period of time during the Covered Timeframe in a position other than a Pet Stylist, Groomer, Grooming Trainee or Salon Manager.

     b)     Pet Stylist Settlement Class:  All individuals in the Settlement Class who were employed by PetSmart as a Pet Stylist, Groomer, Grooming Trainee or Salon Manager in California at any period of time during the Covered Timeframe.

     c)     Waiting Time Penalties Settlement Sub-Class:  Shall mean all individual members of the Non-Exempt Employee Settlement Class and/or the Pet Stylist Settlement Class who separated from their employment with PetSmart at any time between May 23, 2009 and the date of Preliminary Approval of the Settlement Agreement.

**4.4** **Allocation of the Net Distribution Amount:** The Parties agree to allocate a portion of the Net Distribution Amount to the Waiting Time Penalties Settlement Sub-Class for penalties pursuant to Labor Code section 203.  The amount allocated to the Waiting Time Penalties Settlement Sub-Class will be deducted from the Net Distribution Amount prior to the calculation of the Individual Settlement Amounts of Claimants.  Each member of the Waiting Time Penalties Settlement Sub-Class who was employed by PetSmart in California as a Pet Stylist, Groomer, Grooming Trainee or Salon Manager at the time of separation from employment will be entitled to receive $400 as a waiting time penalty in addition to their Individual Settlement Amount.  Each member of the Waiting Time Penalties Settlement Sub-Class who was employed by PetSmart in a position other than Pet Stylist, Groomer, Grooming Trainee or Salon manager at the time of separation from employment will be entitled to receive $200 as a waiting time penalty in addition to their Individual Settlement Amount.

**4.5** **Calculation of the Individual Settlement Amounts:**

After deducting from the Net Distribution Amount the payments claimed by the Waiting Time Penalties Settlement Sub-Class, two-thirds (2/3) of the remaining Net Distribution Amount will be allocated to payment of the Individual Settlement Amounts of the Pet Stylist Settlement Class Members and one-third (1/3) of the remaining Net Distribution Amount will be allocated to those Settlement Class Members who are members of the Non-Exempt Employee Settlement Class.  Each Claimant's Individual Settlement Amount will be based on the total gross (pre-tax) compensation paid to each Claimant who worked in a Covered Position during the Covered Timeframe as follows:

a. The Individual Settlement Amount for each Claimant who is a member of the Pet Stylist Settlement Class will be determined as follows: After the deductions from the Net Distribution Amount for the payments to the Waiting Time Penalties Settlement Sub-Class, the Settlement Administrator will divide two-thirds (2/3) of the remaining Net Distribution Amount by the total gross (pre-tax) compensation paid to Pet Stylist Settlement Class Members for the time period when such Pet Stylist Settlement Class Members were employed as Pet Stylists, Groomers, Grooming Trainees and/or Salon Mangers during the Covered Timeframe to determine a multiplier

1  ("Pet Stylist Multiplier").  The Individual Settlement Amount payable to each Pet Stylist Settlement

2  Class Member will equal that Claimant's gross (pre-tax) compensation earing during the Covered

3  Timeframe times the Pet Stylist Multiplier.

4          b.     The Individual Settlement Amount for each Claimant who is a member of the

5  Non-Exempt Employee Class will be determined as follows: After the deductions from the Net

6  Distribution Amount for the payments to the Waiting Time Penalties Settlement Sub-Class, the

7  Settlement Administrator will divide one-third (1/3) of the remaining Net Distribution Amount by

8  the total gross (pre-tax) compensation paid to Non-Exempt Employee Settlement Class Members for

9  the time period when such Non-Exempt Employee Class Members were employed in positions other

10  than Pet Stylists, Groomers, Grooming Trainees and/or Salon Mangers during the Covered

11  Timeframe to determine a multiplier ("Non-Exempt Employee Multiplier").  The Individual

12  Settlement Amount payable to each Non-Exempt Employee Settlement Class Member will equal

13  that Claimant's gross (pre-tax) compensation earned during the Covered Timeframe times the Non-

14  Exempt Employee Multiplier.

15          c.     To the extent that any member of the Pet Stylist Settlement Class does not

16  become a Claimant and there are unclaimed funds remaining of the two-thirds (2/3) portion of the

17  Net Distribution Amount allocated to the Pet Stylist Settlement Class, the Settlement Administrator

18  shall first redistribute the unclaimed funds to the Claimants in the Pet Stylist Settlement Class in

19  proportion to each Pet Stylist Class Member's Individual Settlement Amount.  Notwithstanding the

20  pro-rata increase, no Claimant shall be entitled to recover more than three times (3x) his or her

21  original Individual Settlement Amount.  In the event that the redistribution causes Claimants'

22  Individual Settlement Amounts to be increased by more than three times (3x) his or her original

23  Individual Settlement Amount, the Settlement Administrator shall then redistribute the remaining

24  unclaimed funds to the Claimants in the Non-Exempt Employee Settlement Class in proportion to

25  each Claimant's Individual Settlement Amount.  Notwithstanding the pro-rata increase, no Claimant

26  shall be entitled to recover more than three times (3x) his or her original Individual Settlement

27  Amount. In the event that the redistribution causes Claimants' Individual Settlement Amounts to be

28  increased by more than three times (3x) his or her original Individual Settlement Amount, the

CASE NO. 5:12-CV-03577-EJD

10.

1  remaining unclaimed funds shall first be used to pay PetSmart's share of any employer side payroll

2  taxes owed pursuant to Section 4.1. Any Net Distribution Amount remaining after the payment of

3  employer taxes shall be paid to a *cy pres* recipient designated jointly by the parties as Legal Aid

4  Society – Employment Law Center, 180 Montgomery Street, Suite 600, San Francisco, CA 94104.

5  To the extent that any member of the Non-Exempt Employee Settlement Class does

6  not, for any reason, become a Claimant and there are, for this or any reason, unclaimed funds

7  remaining of the one-third (1/3) portion of the Net Distribution Amount allocated to the Non-Exempt

8  Employee Settlement Class, the Settlement Administrator shall first redistribute the unclaimed funds

9  to the Claimants in the Non-Exempt Employee Settlement Class in proportion to each Claimant's

10  Individual Settlement Amount. Notwithstanding the pro-rata increase, no Claimant shall be entitled

11  to recover more than three times (3x) his or her original Individual Settlement Amount. In the event

12  that the redistribution causes Claimants' Individual Settlement Amounts to be increased by more

13  than three times (3x) his or her original Individual Settlement Amount, the Settlement Administrator

14  shall then redistribute the remaining unclaimed funds to the Claimants in the Pet Stylist Settlement

15  Class in proportion to each Claimant's Individual Settlement Amount. Notwithstanding the pro-rata

16  increase, no Claimant shall be entitled to recover more than three times (3x) his or her original

17  Individual Settlement Amount. In the event that the redistribution causes Claimants' Individual

18  Settlement Amounts to be increased by more than three times (3x) his or her original Individual

19  Settlement Amount, the remaining unclaimed funds shall first be used to pay PetSmart's share of any

20  taxes owed pursuant to Section 4.1. Any Net Distribution Amount remaining after the payment of

21  employer taxes shall be paid to a *cy pres* recipient designated jointly by the parties as Legal Aid

22  Society – Employment Law Center, 180 Montgomery Street, Suite 600, San Francisco, CA 94104.

23  **4.6** **Allocation of Individual Settlement Amounts:** Fifty percent (50%) of each

24  Claimant's Individual Settlement Amount will be treated as back wages and subject to normal tax

25  withholding and shall be reported to the taxing authorities on an IRS Form W-2. Fifty percent (50%)

26  of each Claimant's Individual Settlement Amount will be treated as prejudgment interest and

27  statutory penalties on which there will be no tax withholding and for which an IRS Form 1099

28  (marked "Other Income") shall be issued if the payment is above the minimum threshold required

CASE NO. 5:12-CV-03577-EJD                                11.

1  for the issuance of a Form 1099. The Individual Settlement Amounts and/or the Class

2  Representatives' service payment, will not count or be counted for determination of eligibility for, or

3  calculation of, any employee benefits (e.g., vacations, holiday pay, retirement plans, non-qualified

4  deferred compensation plans, pension plans, matching contributions, etc.), or otherwise modify any

5  eligibility criteria under any employee pension benefit plan or employee welfare plan sponsored by

6  PetSmart, unless otherwise required by law. Defendant and Class Counsel make no warranty and

7  has provided no advice regarding the tax treatment of payments. All taxes, other than the

8  employer's share of payroll taxes, are the sole responsibility of the Claimant receiving the payment.

9  **4.7   LWDA Private Attorney General Act ("PAGA") Payment:** The Parties

10  agree that $50,000 of the Total Settlement Amount shall be allocated as settlement of claims under

11  the California Private Attorney General Act ("PAGA"). Seventy-five percent (75%) of that total or,

12  $37,500 shall be paid to the LWDA pursuant to the provisions of PAGA. The remaining twenty-five

13  percent (25%), or $12,500, shall be distributed to the Claimants as part of the Net Distribution

14  Amount.

15  **4.8   Service Payment to Class Representatives:** The amount, if any, awarded to

16  the Class Representative as a service payment will be set by the Court. PetSmart does not endorse

17  the following amounts, but agrees not to file any pleading in opposition to Plaintiffs' request for a

18  service payment up to $10,000 for Plaintiff Harrison and Plaintiff Valdez and up to $5000 for

19  Plaintiff Moore and Plaintiff Myers. This amount will come from the Total Settlement Amount.

20  The service payment will be in addition to the Individual Settlement Amount awarded to the Class

21  Representatives. The Settlement Administrator will issue an IRS Form 1099 with regard to the

22  service payment and all taxes on this payment shall be the sole responsibility of each respective

23  Class Representative. In the event the Court reduces the service payment and awards less than

24  $10,000 for Plaintiff Harrison and Plaintiff Valdez and $5,000 for Plaintiff Moore and Plaintiff

25  Myers, the unawarded amount shall be returned to PetSmart and shall not be available for class

26  distribution. If the Court does not specifically approve the release provided by the Plaintiffs as

27  specified in Sections 5.5, Plaintiffs shall not be entitled to any service payment award, and the

28  unawarded amount shall be returned to PetSmart and shall not be available for class distribution.

**4.9**    **Attorneys' Fees and Costs to Class Counsel:**  PetSmart agrees not to oppose an award of fees to Class Counsel of up to 33.33% of the Total Settlement Amount.  Said fees shall be in addition to payment of all costs actually incurred by Class Counsel in connection with this matter.  Failure of the court to award the requested attorney's fees and costs is not a ground to void the Agreement.

**4.10**    If the Court does not award 33.33% of the Total Settlement Amount as attorneys' fees, the unawarded amount shall be returned to PetSmart and shall not be available for class distribution.

**4.11**    **Non-Monetary Terms of the Settlement:**  In addition to the monetary Settlement identified in Section 4.1, as part of the resolution of this matter, PetSmart also agrees to the following:

a.    PetSmart has agreed to provide additional grooming tools for its in-store salons to be used by its Pet Stylists.  Moreover, PetSmart is providing specific communication to Pet Stylists on the use of store tools by Pet Stylists.  The Parties agree that provision of these additional in-store grooming tools for use by Pet Stylists to perform their grooming duties satisfies PetSmart's obligations under Labor Code section 2802 and/or any other state or federal law requiring the reimbursement of business expenses.

b.    PetSmart has agreed to revise its Pet Stylist pay plans to specifically confirm that grooming employees are being paid for all hours worked at their regular rate, and that any other amounts paid are in addition to the hourly rate.  The Parties agree that the revised pay plan complies with the requirements of state and federal law.

c.    As part of the agreement between the Parties, Defendant retained a consultant specializing in safety and ergonomic issues to conduct an ergonomic and safety evaluation of its current practices and to review its policies and procedures with regard to addressing whether to allow Pet Stylists to sit while performing grooming tasks.  PetSmart's retention of the consultant, and the results of the review, is subject to attorney-client privilege and/or attorney work product doctrine.  PetSmart is not obligated, through this Agreement, or otherwise, to disclose the results and findings of the consultant or to make any changes to its current practices.

d.     PetSmart has revised its policies to emphasize that all hours worked will be paid, to expressly prohibit off-the clock work, to require that any employee who performs work off-the-clock must inform his or her manager of such incident, and to allow employees who are interrupted during meal or rest breaks additional time to take a full, uninterrupted meal or rest break.

**4.12**   Plaintiffs believe that the settlement is fair and reasonable and will so represent to the Court.  Although it denies any liability, PetSmart has agreed to settle the claims on the terms set forth herein.

## V.   RELEASE OF CLAIMS BY SETTLEMENT CLASS MEMBERS WHO DO NOT OPT-OUT

**5.1**   Upon the final approval of the Settlement by the Court, and except as to such rights or claims as may be created by this Agreement, each member of the Settlement Class (other than opt-outs), regardless of whether he or she has timely submitted a Claim Form, will fully release and discharge PetSmart, including its former and present parent companies, subsidiaries, divisions, concepts, related or affiliated companies, shareholders, officers, directors, employees, partners, agents, representatives, attorneys, insurers, successors and assigns, and any individual or entity that could be jointly liable with any of the foregoing ("Released Parties") from any claims, causes of action, damages, wages, benefits, expenses, penalties, debts, liabilities, demands, obligations, attorneys' fees, costs, and any other form of relief or remedy in law, equity, or whatever kind or nature, whether known or unknown, suspected or unsuspected, arising from: (1) the Action and any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the California Labor Code, Industrial Welfare Commission Wage Orders, and the California Business and Professions Code, claims under PAGA, claims for restitution and other equitable relief, liquidated damages, punitive damages, waiting time penalties, penalties of any nature whatsoever, other compensation or benefits; and (2) any alleged wage and hour violations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, contract, tort or other theory of liability under state or local law, by any Class Member against the Released Parties (collectively, the "Released Claims"), and including, but not limited to, any claims specifically referenced herein.  In

addition, any Class Member who timely submits a Claim Form will fully and forever release and discharge the Released Parties from any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the Fair Labor Standards Act ("FLSA") and any alleged federal wage and hour violations/allegations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, regulation contract, tort or other theory of liability under federal law or regulation by any Class Member against the Released Parties (collectively, the "FLSA Released Claims"). The release will include any claims arising from or that may have arisen from the Parties' respective prosecution and/or defense of this litigation. The release will apply to the Covered Time Frame and include any cause of action alleged in or which could have been alleged based on the facts in the Complaint or any Amended Complaint that may be filed prior to the approval of this Settlement. All Released Claims are released for all Class Members regardless of whether they submit a Claim Form or receive any payment under the Settlement unless they Opt-Out of the Settlement, and all FLSA Released Claims are released for all Class Members who timely submit a Claim Form, regardless of whether they receive any payment under the Settlement. The Released Claims and FLSA Released Claims do not include claims for workers' compensation benefits or any of the claims that may not be released by law.

**5.2** The release will cover all remedies that could be claimed based on the actual claims in the causes of action described in the Action including but not limited to, statutory, constitutional, contractual and common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief. The release will cover all statutory violations that could be claimed for the causes of action described in the Action including but not limited to, the federal Fair Labor Standards Act, the California Labor Code Sections 96 through 98.2 *et seq.*, the California Payment of Wages Law, and in particular, California Labor Code §§200 *et seq.*, including California Labor Code §§200 through 243, and §§203 and 218 and 218.5 in particular, California Labor Code §§300 *et seq.*; California Labor Code §§400 *et seq.*; California Working Hours Law, California Labor Code §§500 *et seq.*, California Labor Code §1194; the California Unfair Competition Act, and in particular, California

1  Business & Professions Code §§17200 *et seq.*; the PAG Act, codified at California Labor Code

2  §§2698 through 2699; California Code of Civil Procedure §1021.5; and any other provision of the

3  California Labor Code or any applicable California Industrial Welfare Commission Wage Orders, in

4  all of their iterations.  Nothing in this paragraph is intended to extend the scope of the release

5  applicable to the Settlement Class Members as described in Paragraph 5.1.

6          **5.3**   The release of claims provided by this Agreement includes claims that are

7  described in the Action and as to those claims each Settlement Class Member, including the Class

8  Representatives, waives all rights and benefits afforded by Section 1542 of the California Civil Code

9  as to unknown claims and does so understanding the significance of that waiver.  Section 1542

10  provides:

11          **A general release does not extend to claims which the creditor does
    not know or suspect to exist in his or her favor at the time of**

12          **executing the release, which if known by him or her must have
    materially affected his or her settlement with the debtor.**

13

14  Nothing in this paragraph is intended to extend the scope of the release applicable to the Class

15  Members as described in Paragraph 5.1.

16          **5.4**   All Class Members shall be enjoined from filing any DLSE claims or from

17  initiating or pursuing any proceedings regarding claims released by the Agreement before opting out

18  of the Settlement.  In addition, Class Members who file a claim and who thereby opt into the

19  settlement of all FLSA claims shall be enjoined from initiating or pursuing any proceedings

20  regarding any California state law claims or any federal FLSA claims released by this Agreement.

21          **5.5**   Upon final approval of the settlement and payment of all sums required under

22  this Agreement, Named Plaintiffs will execute a general release of all known and unknown claims

23  each may have against PetSmart as of that date, with the sole exception that Plaintiffs may continue

24  to pursue their individual claims as stated in the Complaint for wrongful termination in violation of

25  public policy, failure to accommodate and failure to engage in the interactive process under the Fair

26  Employment and Housing Act.  The unreleased claims are specifically limited to the following: the

27  First, Third and Fourth cause of action as to Plaintiff Moore; the First and Third causes of action as

28

1   to Plaintiff Myers as well as Plaintiff Myers' potential wrongful termination in violation of public

2   policy claim; the First and Third causes of action as to Plaintiff Valdez and any claim related to

3   Plaintiff Valdez's current employment with PetSmart; and the Second and Third causes of action as

4   to Plaintiff Harrison and any claim related to Plaintiff Harrison's current employment with Petsmart

5   . (hereinafter "Unreleased Claims"). To ensure that the releases provided for in this Agreement are

6   fully enforceable in accordance with their terms, with the exception of the Unreleased Claims,

7   Plaintiffs knowingly and voluntarily waive any protection that they might have by virtue of Section

8   1542 of the California Civil Code, which provides:

9   **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS**
**WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT**
10  **TO EXIST IN HIS OR HER FAVOR AT THE TIME OF**
**EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM**
11  **OR HER MUST HAVE MATERIALLY AFFECTED HIS OR**
**HER SETTLEMENT WITH THE DEBTOR.**
12

13  In addition, Plaintiffs hereby knowingly and voluntarily waive any protection that may exist under

14  any comparable or similar statutes under the laws of any state and/or principles of common law, as it

15  pertains to the enforcement of the release provided for in this paragraph.  The releases by the

16  Plaintiffs are intended to be broad and the Plaintiffs agree to release any and all claims, whether

17  known or unknown, they may have against PetSmart as of the date of Preliminary Approval of the

18  Settlement, with the exception of the specific Unreleased Claims.

19          **5.6**    Other than the need to file a Claim Form and the requirement that objectors

20  make themselves available, the release of claims described in sections 5.1-5.4 shall be the sole

21  requirement that the Settlement places on Settlement Class Members other than the Class

22  Representatives.  Excepting the foregoing, the Settlement shall not impose any affirmative duties or

23  obligations on the Settlement Class Members.

24  **VI.    NOTICE AND CLAIM PROCESS**

25          **6.1**    The Parties have received bids for four settlement administrators from the list

26  approved by defense counsel, and have mutually selected Simpluris to act as the Settlement

27  Administrator for this matter.  The duties of the Settlement Administrator will include compiling the

28  class list from information provided by the Parties, handling all mailings to the Settlement Class,

CASE NO. 5:12-CV-03577-EJD                    17.

1   tracing undeliverable mailings, recording and tracking responses to the mailing to the Settlement

2   Class (including recording the identity of any Settlement Class Members who submit Claim Forms

3   or request exclusion), responding to inquiries made by the Settlement Class, calculating Individual

4   Settlement Amounts, issuance of and mailing out of Individual Settlement Amounts, reporting

5   payment of the Individual Settlement Amounts to all required taxing and other authorities, taking

6   appropriate withholding from the Individual Settlement Amounts, and paying all employer payroll

7   taxes and other required payments withheld, and other related tasks as mutually agreed to by the

8   Parties.  It is also understood that the Settlement Administrator will establish a Qualified Settlement

9   Fund ("QSF") pursuant to Section 468B(g) of the Internal Revenue Code, and regulations

10  promulgated thereunder for the purpose of administering this Settlement. All of the costs, fees,

11  expenses, and liabilities incurred by the Settlement Administrator in performing these functions shall

12  be paid out of the Total Settlement Amount.

13      **6.2**    No later than fifteen (15) business days after Preliminary Approval, PetSmart

14  shall provide the Settlement Administrator and Class Counsel with a list in electronically usable

15  format regarding all Settlement Class Members, including their last known address, telephone

16  number (if available), Social Security Number, dates of employment, dates worked in a Covered

17  Position(s) and total gross (W-2) compensation paid to Settlement Class Members during the

18  Covered Timeframe.  Petsmart will indicate which Settlement Class Members worked as Pet Stylists

19  and/or Salon Managers during the Covered Timeframe. As to those Class Members who received

20  pay as Pet Stylists or Salon Managers as well as in a position(s) other than Pet Stylist or Salon

21  Manager during the Covered Timeframe, Petsmart will provide the amount of gross (W-2)

22  compensation paid to each such Settlement Class Member who worked: (1) as a Pet Stylist and/or

23  Salon Manager, and (2) in a position(s) other than Pet Stylist or Salon Manager.  Class Counsel may

24  provide the Settlement Administrator with any information that may assist the Settlement

25  Administrator in obtaining current contact information for any Settlement Class Member.   The

26  Parties agree that address, telephone number, wage and Social Security information will be kept

27  completely confidential and will not be released or used for any purpose other than identifying

28  Settlement Class Members and researching current contact information.

CASE NO. 5:12-CV-03577-EJD                    18.

1   **6.3**   The Settlement Administrator shall mail a Notice of Pendency of Class

2   Action, Proposed Settlement and Hearing Date for Court Approval ("Notice") in the form approved

3   by the Court, no later than twenty-five (25) days after the Court grants Preliminary Approval.  The

4   Notice will include an explanation of the Settlement Class Member's right to be excluded from the

5   Settlement Class by submitting a written request for exclusion.  Attached to the Notice will be a

6   Claim Form and Release ("Claim Form"), in the form approved by the Court. The envelope

7   containing the Class Notice shall bear the following phrase in bold type, "RETURN SERVICE

8   REQUESTED." The envelope shall also bear the following phrase in the bottom left hand corner:

9   IMPORTANT—PETSMART CLASS ACTION SETTLEMENT INFORMATION. PLEASE OPEN

10  IMMEDIATELY.  Included with the Class Notice shall be a pre-paid, pre-addressed envelope for

11  the Class Member to respond to the Claim Notice.

12  **6.4**   The Settlement Administrator will take reasonable steps to ensure that the

13  Notice and Claim Form are sent to all Settlement Class Members.  For each Class Member who

14  according to the records provided by PetSmart is a current active employee, the Settlement

15  Administrator shall mail the Class Notice to the last known address provided by PetSmart. No

16  reasonable verification or Accurint skip tracing will be conducted on Class Members designated in

17  PetSmart's records as active, as the settling Parties agree that PetSmart should have the most up to

18  date address information for these Class Members.  For Class Members who according to the records

19  provided by PetSmart are former employees, and who are not Class Representatives, prior to mailing

20  the Class Notice, the Settlement Administrator shall undertake a reasonable address verification and

21  Accurint skip tracing to ascertain the accuracy of the last known address of the Class Member. To

22  the extent this process yields an updated address, that updated address shall replace the last known

23  address and be treated as the last known address for purposes of this Stipulation and for Class Notice

24  mailing. If a Class Member is known to be deceased, the Class Notice for that Class Member shall

25  be mailed to the last known address (or updated address, if applicable) of the legal representative of

26  the deceased Class Member's estate, to the extent known. Unless the Settlement Administrator

27  receives a Class Notice returned from the United States Postal Service for reasons stated below, that

28  Class Notice shall be deemed mailed and received by the Class Member to whom it was sent five (5)

1   days after mailing.  In the event that subsequent to the first mailing of a Class Notice and prior to the

2   Claim Deadline, that Class Notice is returned to the Settlement Administrator by the United States

3   Postal Service because the address is no longer valid i.e. the envelope is marked "Return to sender"

4   the Settlement Administrator shall undertake Experian (or similar service) skip tracing on the Class

5   Member to attempt to ascertain the current address of the particular Class Member and, if such an

6   address is ascertained, the Settlement Administrator will resend the Class Notice within three (3)

7   business days of receipt of the returned Class Notice.  In either event the class Notice will be deemed

8   received once it is mailed for the second time.  In the event that the Settlement Administrator must

9   re-mail any class Notice pursuant to the provisions of this paragraph the Claim, the Opt-Out and

10  Objection Deadlines shall be extended for those re-mailings to no later than ten (10) calendar days

11  from the date of re-mailing of the Class Notice. The Settlement Administrator shall include a cover

12  letter with any re-mailing informing the Class Member of the re-mailing of the Class Notice and that

13  he or she has ten (10) calendar days from the date of the re-mailing (which shall be the date the re-

14  mailing of the Class Notice is postmarked) to postmark (or submit via the Settlement Claim website

15  for a claim only) any response allowed by the Stipulation and Class Notice, even if postmarked after

16  the original Claim, Objection and Opt-Out Deadlines. Compliance with the procedures outlined in

17  this paragraph shall constitute sufficient notice to Class Members of this proposed settlement and of

18  the Settlement Hearing, and shall satisfy the requirements of due process. Nothing else shall be

19  required to be done by the Settling Parties, Class Counsel, Counsel for PetSmart, or the Settlement

20  Administrator to provide notice of the proposed settlement and Settlement Hearing. For the four

21  Class Representatives the Settlement Administrator shall mail the Class Notice to the Class

22  Representatives in care of Class Counsel at Class Counsel's address.

23      **6.5**      The Settlement Administrator shall maintain a toll-free telephone line that

24  shall be staffed and/or provide automated Interactive Voice Response with the ability for Settlement

25  Class Members to leave messages during non-business hours.

26      **6.6**      The Settlement Administrator shall maintain a website with the URL

27  www.petsmartsettlement.com that Settlement Class Members can use to file a Claim Form, track the

28

1   processing of a Claim Form, and contact the Settlement Administrator if they have questions.  The

2   form of the website shall be subject to the approval of Class Counsel and Defendant's Counsel.

3         **6.7**    Each Claim Form will show the minimum estimated payment amount for that

4   Settlement Class Member, the dates the Settlement Class Member worked as either a Pet Stylist,

5   Groomer, Grooming Trainee and/or Salon Manager, or, in a position other than a Pet Stylist,

6   Groomer, Grooming Trainee and/or Salon Manager, during the Covered Timeframe, and the total

7   gross (W-2) compensation paid by PetSmart to the Settlement Class Member during the Covered

8   Timeframe for work performed as either a Pet Stylist, Groomer, Grooming Trainee and/or Salon

9   Manager, or, in a position other than a Pet Stylist and/or Salon Manager.  If a Settlement Class

10  Member disputes the total gross compensation paid during the Covered Timeframe listed on his or

11  her Claim Form, the Settlement Class Member may provide written documentation to the Settlement

12  Administrator establishing the total gross compensation earned that the Settlement Class Member

13  contends that he or she earned as either a Pet Stylist, Groomer, Grooming Trainee and/or Salon

14  Manager, or, in a position other than a Pet Stylist, Groomer, Grooming Trainee and/or Salon

15  Manager during the Covered Timeframe.  When a Settlement Class Member disputes the total gross

16  compensation listed on his or her Claim Form, PetSmart's records will control.

17        **6.8**    Each Settlement Class Member will have sixty (60) calendar days from the

18  date the Claim Forms were mailed to submit the completed Claim Form or request exclusion by U.S.

19  first class mail to the Settlement Administrator.   For a Class Member to validly exclude himself or

20  herself from the Class and this Settlement (*i.e.*, to validly opt-out), a written request for exclusion

21  must be signed by the Class Member, and must be sent to the Settlement Administrator, the Class

22  Notice shall contain instructions on how to opt-out, including the language to be used in a request for

23  exclusion.  By submitting such a request for exclusion, a Class Member shall be deemed to have

24  exercised his or her option to opt out of the class action lawsuit, except that exercising the option to

25  opt out does not alter the binding nature of the release of PAGA claims or remedies pursuant to the

26  final Judgment pursuant to *Arias v. Superior Court*, 46 Cal. 4th 969 (2009).  Accordingly, a Class

27  Member who timely submits a valid request for exclusion will not be entitled to any money under

28  this Settlement.

CASE NO. 5:12-CV-03577-EJD

21.

**6.9**     Thirty (30) days after the initial mailing of the Notice and Claim Form, the Settlement Administrator will mail to each Settlement Class Member who has not responded with the return of a Claim Form or a request for exclusion, a postcard to remind each such Settlement Class Member to submit a Claim Form before the deadline in the form approved by the Court.

**6.10**    Any Settlement Class Member who objects to this Settlement shall file his or her objection with the Court and serve the objection on Class Counsel and Counsel for Defendant within thirty (30) calendar days from the date the Claims Forms were mailed.

**6.11**    A Claim Form or request for exclusion must be signed and dated to be valid. In the case of Claim Forms submitted via the website, an electronic signature shall be sufficient for all purposes.  If a Settlement Class Member submits both a Claim Form and a request for exclusion, the Claim Form shall control and the request for exclusion shall have no effect.

**6.12**    If a Claim Form or request for exclusion is returned by a Settlement Class Member but has not been signed or is otherwise materially deficient, the Settlement Administrator will send a deficiency notice to the Settlement Class Member within three (3) business days of the date the Settlement Administrator becomes aware of such deficiency.  Any deficient Claim Form that was originally submitted on or before the deadline to submit a claim shall be accepted and paid if the deficiency is cured within seven (7) calendar days prior to the date of the Final Approval Hearing. Any request for exclusion that was originally submitted on or before the deadline to submit a request for exclusion shall be effective if the deficiency is cured within seven (7) calendar days prior to the date of the Final Approval Hearing.

**6.13**    At least ten (10) court days prior to the deadline for filing the Motion for Final Approval the Settlement Administrator shall provide counsel for the Parties a declaration of due diligence and proof of mailing with regard to the mailing of the Notice and Claim Form.

**6.14**    If more than 10% of the Settlement Class Members submit a request for exclusion of the settlement, PetSmart may at its own election void this Agreement.

**6.15**    If there is an objection and/or an appeal as a result of said objection, all sides will bear their own costs of appeal, including legal fees.

## VII.   PAYMENT OF SETTLEMENT FUNDS

**7.1**     Within fifteen (15) business days after the Court grants Final Approval, PetSmart will deliver to the Settlement Administrator the Total Settlement Amount, provided that the Settlement Administrator has provided PetSmart with the appropriate wire transfer information and an executed IRS Form W9.

**7.2**     If no objection to the Settlement is pending at the time of the Final Approval Hearing, the Settlement Administrator shall disburse payments according to the following schedule: No later than five (5) calendar days after receiving payment, the Settlement Administrator shall transfer to Class Counsel by wire transfer the attorney's fees and costs awarded by the Court.  No later than ten (10) calendar days after receiving payment, the Settlement Administrator shall send to Class Counsel via overnight mail a check to the Class Representatives in the amount of the Service Payment ordered by the Court.  No later than thirty-five (35) calendar days after receipt of the funds from PetSmart, the Settlement Administrator will mail the payments to the Claimants and the LWDA, and will pay the settlement administration fees and costs.

**7.3**     If an objection is pending at the time of the Final Approval Hearing, the Settlement Administrator shall hold the Net Settlement Amount in escrow until the deadline for appeal from the judgment granting Final Approval to the Settlement has passed.  If there is an appeal of the order granting final approval, the Settlement Administrator shall hold the Net Settlement Amount in escrow until the appeal has been resolved.  The Settlement Administrator shall disburse all undistributed funds within fifteen (15) days after the escrow period ends.

**7.4**     If a settlement check is returned by the postal service, the Settlement Administrator may use appropriate methods including but not limited to skip-trace and telephone follow-up to obtain the current address of the Claimant.  The Settlement Administrator will re-mail all checks that were returned by the postal service within five (5) days.

**7.5**     Settlement checks that are returned a second time and settlement checks not cashed within 180 days of issuance will not be re-issued.  If a Claimant does not cash or deposit his or her check within 180 days from the date of issuance, or if a settlement check is returned for a second time, the Settlement Administrator shall cause that Claimant's payment to be sent to the

California State Controller's office to be placed in the Unclaimed Property Fund for the benefit of the Claimant. In such event, this Agreement will be binding upon the Claimant to the same extent as if he or she had received and timely cashed the settlement check.

## VIII.  DUTIES OF THE PARTIES PRIOR TO PRELIMINARY APPROVAL

**8.1**    Promptly after execution of this Agreement, Plaintiffs shall move the Court for Preliminary Approval of this Settlement and entry of an order accomplishing the following:

(a)    scheduling a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the Settlement Class Members;

(b)    approving as to form and content the proposed Notice;

(c)    approving as to form and content the proposed Claim Form;

(d)    directing the mailing of the Notice and Claim Form by first class mail to the Settlement Class Members;

(e)    preliminarily approving this Settlement;

(f)    preliminarily certifying the Settlement Class for purposes of settlement; and

(g)    preliminarily approving the PAG Act payment to the LWDA.

**8.2**    Class Counsel shall be responsible for drafting and filing the Motion for Preliminary Approval, but shall provide Defendant with the opportunity to review and comment prior to filing.  The Parties shall submit this Agreement in support of the Motion for Preliminary Approval of the Settlement.

**8.3**    Prior to the filing of the Motion for Preliminary Approval, Class Counsel shall treat the terms of this settlement, both the fact of and the amount, as strictly confidential.  Neither the fact of nor the amount of this settlement shall be disclosed to any person prior to the filing.  As the sole exception, the settlement and its terms may be discussed among those who have signed a mediation confidentiality agreement and who agree to keep the terms of this agreement strictly confidential.

## IX.   DUTIES OF THE PARTIES PRIOR TO FINAL APPROVAL

**9.1**   In connection with the hearing on final approval of the Settlement, Plaintiffs will submit a proposed final order approving the Settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions.  Class Counsel shall be responsible for drafting and filing the Motion for Final Approval, but shall allow opportunity for Defendant's counsel to review and comment prior to filing.

**9.2**   The Parties each expressly waives any right to appeal they may have in connection with any ruling of the Court in connection with the Action and this Settlement.

**9.3**   Upon a showing that PetSmart has made all payments required by this Agreement, the Parties will jointly move for an order dismissing the Action on the merits and with prejudice, and permanently barring all Settlement Class Members who did not otherwise opt-out of the Settlement from prosecuting any Released Claims against any of the Released Parties.

## X.   SIGNATORIES AUTHORITY

**10.1**   The signatories hereto represent that they are fully authorized to enter into this Agreement and bind the Parties hereto.

## XI.   MUTUAL FULL COOPERATION

**11.1**   The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their best efforts, including all reasonable efforts contemplated by this Agreement and any other reasonable efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Class Counsel shall, with the assistance and cooperation of PetSmart and their counsel, take all reasonably necessary steps to secure the Court's preliminary and final approval of the settlement.

## XII.   NO PRIOR ASSIGNMENTS

**12.1**   The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any

CASE NO. 5:12-CV-03577-EJD                                25.

person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged by this Agreement.

## XIII.   ENFORCEMENT ACTION

**13.1**   Except as otherwise provided in this Agreement, in the event that one or more of the Parties to this Agreement institutes any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including expert witness fees, incurred in connection with any enforcement action.

## XIV.   NOTICES

**14.1**   Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed:

> To the Settlement Class:
> Graham S.P. Hollis
> GRAHAM**HOLLIS** APC
> 3555 Fifth Avenue
> San Diego, CA 92103

> To PetSmart, Inc.:
> Michelle Heverly
> Littler Mendelson
> 50 W. San Fernando St., 15th Floor
> San Jose, CA 95113

## XV.   OTHER MATTERS

**15.1   Construction.** The Parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arms' length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his or its counsel participated in the drafting of this Agreement.

**15.2   Captions and Interpretations.** Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or

1  describe the scope of this Agreement or any provision hereof.  Each term of this Agreement is

2  contractual and not merely a recital.

3      **15.3  Modification.**  This Agreement may not be changed, altered, or modified,

4  except in writing and signed by the Parties hereto, and approved by the Court.  This Agreement may

5  not be discharged except by performance in accordance with its terms or by a writing signed by all

6  of the Parties hereto.

7      **15.4  Integration Clause.**  This Agreement contains the entire agreement between

8  the Parties relating to the Settlement and transaction contemplated hereby, and all prior or

9  contemporaneous agreements, understandings, representations, and statements, whether oral or

10  written and whether by a Party or such Party's legal counsel, are merged herein, including but not

11  limited to the Memorandum of Understanding.  No rights hereunder may be waived except in

12  writing.

13      **15.5  Signatures of All Settlement Class Members Unnecessary to be Binding.**

14  It is agreed that, because the members of the Settlement Class are numerous, it is impossible or

15  impractical to have each Settlement Class Member execute this Agreement.  The Notice will advise

16  all Settlement Class Members of the binding nature of the release provided herein and such shall

17  have the same force and effect as if this Agreement were executed by each Settlement Class

18  Member.

19      **15.6  Confidentiality Prior to Preliminary Approval.**  With the exception of

20  communications among those who executed the Mediation Confidentiality Agreement on April 9,

21  2013, the Plaintiffs and Class Counsel agree not to discuss the Settlement amounts, the terms of the

22  Agreement, or any of the issues discussed during mediation or surrounding terms of the Settlement

23  Agreement or the amounts provided therein until the date of the filing of the Motion for Preliminary

24  Approval.  Following the filing of the Motion for Preliminary Approval, Class Counsel will limit

25  publicity regarding this Settlement to a posting on its website of the Notice.

26      **15.7  Counterparts.**  This Agreement may be executed in counterparts, and when

27  each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed

28

CASE NO. 5:12-CV-03577-EJD                                   27.

an original, and, when taken together with other signed counterparts, shall constitute one fully-signed Agreement, which shall be binding upon and effective as to all Parties.

**15.8    No Retaliation.**    PetSmart agrees not to retaliate against any employee making a claim for proceeds under this Agreement, nor to take any action to encourage or discourage employees from participating in the Settlement Process.

IT IS SO STIPULATED

Dated: Jan. 27, 2014

_Danette M. Moore_
Danette Moore, Plaintiff

Dated: _____

_____
Latresa Myers, Plaintiff

Dated: _____

_____
Alanna Harrison, Plaintiff

Dated: _____

_____
Alisa Valdez, Plaintiff

Dated: _____

PetSmart, Inc.

_____
David Lenhardt
CEO PetSmart, Inc.

Dated: _____

**GRAHAMHOLLIS** APC

_____
Attorneys for Plaintiffs

Dated: _____

Littler Mendelson, P.C.

_____
Attorneys for PetSmart, Inc.

CASE NO. 5:12-CV-03577-EJD                          28.

an original, and, when taken together with other signed counterparts, shall constitute one fully-signed Agreement, which shall be binding upon and effective as to all Parties.

      **15.8   No Retaliation.**   PetSmart agrees not to retaliate against any employee making a claim for proceeds under this Agreement, nor to take any action to encourage or discourage employees from participating in the Settlement Process.

IT IS SO STIPULATED

Dated:

_____
Danette Moore, Plaintiff

Dated: 1/27/14

*Latresa Myers*
_____
Latresa Myers, Plaintiff

Dated:

_____
Alanna Harrison, Plaintiff

Dated:

_____
Alisa Valdez, Plaintiff

Dated:

PetSmart, Inc.

_____
David Lenhardt
CEO PetSmart, Inc.

Dated:

**GRAHAMHOLLIS** APC

_____
Attorneys for Plaintiffs

Dated:

Littler Mendelson, P.C.

_____
Attorneys for PetSmart, Inc.

CASE NO. 5:12-CV-03577-EJD

28.

1  an original, and, when taken together with other signed counterparts, shall constitute one fully-

2  signed Agreement, which shall be binding upon and effective as to all Parties.

3      **15.8   No Retaliation.**   PetSmart agrees not to retaliate against any employee

4  making a claim for proceeds under this Agreement, nor to take any action to encourage or

5  discourage employees from participating in the Settlement Process.

6  IT IS SO STIPULATED

7  Dated:

8                                                              _____
                                                               Danette Moore, Plaintiff
9

10 Dated:

11                                                             _____
                                                               Latresa Myers, Plaintiff
12 Dated: 1/30/14

13                                                             _____
                                                               Alanna Harrison, Plaintiff
14

15 Dated:

16                                                             _____
                                                               Alisa Valdez, Plaintiff
17

18 Dated:                                                      PetSmart, Inc.

19

20                                                             _____
                                                               David Lenhardt
21                                                             CEO PetSmart, Inc.

22 Dated:                                                      **GRAHAMHOLLIS** APC

23

24                                                             _____
                                                               Attorneys for Plaintiffs
25

26 Dated:                                                      Littler Mendelson, P.C.

27

28                                                             _____
                                                               Attorneys for PetSmart, Inc.

an original, and, when taken together with other signed counterparts, shall constitute one fully-signed Agreement, which shall be binding upon and effective as to all Parties.

       **15.8   No Retaliation.**   PetSmart agrees not to retaliate against any employee making a claim for proceeds under this Agreement, nor to take any action to encourage or discourage employees from participating in the Settlement Process.

IT IS SO STIPULATED

Dated: _____

                                        _____
                                        Danette Moore, Plaintiff

Dated: _____

                                        _____
                                        Latresa Myers, Plaintiff

Dated: _____

                                        _____
                                        Alanna Harrison, Plaintiff

Dated: 1/27/14

                                        */s/ Alisa Valdez*_____
                                        Alisa Valdez, Plaintiff

Dated: _____

                                        PetSmart, Inc.

                                        _____
                                        David Lenhardt
                                        CEO PetSmart, Inc.

Dated: _____

                                        GRAHAM**HOLLIS** APC

                                        _____
                                        Attorneys for Plaintiffs

Dated: _____         Littler Mendelson, P.C.

                                        _____
                                        Attorneys for PetSmart, Inc.

an original, and, when taken together with other signed counterparts, shall constitute one fully-signed Agreement, which shall be binding upon and effective as to all Parties.

      **15.8   No Retaliation.**   PetSmart agrees not to retaliate against any employee making a claim for proceeds under this Agreement, nor to take any action to encourage or discourage employees from participating in the Settlement Process.

IT IS SO STIPULATED

Dated: _____

                                  _____
                                    Danette Moore, Plaintiff

Dated: _____

                                  _____
                                    Latresa Myers, Plaintiff

Dated: _____

                                    _____
                                    Alanna Harrison, Plaintiff

Dated: _____

                                    _____
                                    Alisa Valdez, Plaintiff

Dated: _____

                                    PetSmart, Inc.

                                    _____
                                    David Lenhardt
                                    CEO PetSmart, Inc.

Dated: _____

                                    GRAHAM**HOLLIS** APC

                                    _____
                                    Attorneys for Plaintiffs

Dated: _____

                                    Littler Mendelson, P.C.

                                    _____
                                    Attorneys for PetSmart, Inc.

ITLER MENDELSON, P.C.
N, San Fernando, 15th Floor
an Jose, CA 95113.2303
408.998.4150

CASE NO. 5:12-CV-03577-EJD                28.

Joint Stipulation of Class Action Settlement and Release

1  an original, and, when taken together with other signed counterparts, shall constitute one fully-

2  signed Agreement, which shall be binding upon and effective as to all Parties.

3        **15.8   No Retaliation.**   PetSmart agrees not to retaliate against any employee

4  making a claim for proceeds under this Agreement, nor to take any action to encourage or

5  discourage employees from participating in the Settlement Process.

6  IT IS SO STIPULATED

7  Dated:                                           _____

8                                        Danette Moore, Plaintiff

9

10  Dated:                                          _____

11                                        Latresa Myers, Plaintiff

12  Dated:                                          _____

13                                        Alanna Harrison, Plaintiff

14

15  Dated:                                          _____

16                                        Alisa Valdez, Plaintiff

17

18  Dated:                                          PetSmart, Inc.

19

20                                      _____
David Lenhardt
CEO PetSmart, Inc.

21

22  Dated:   1-27-14                        GRAHAM**HOLLIS** APC

23

24                                      Attorneys for Plaintiffs

25

26  Dated:                                          Littler Mendelson, P.C.

27

28                                      Attorneys for PetSmart, Inc.

1   an original, and, when taken together with other signed counterparts, shall constitute one fully-

2   signed Agreement, which shall be binding upon and effective as to all Parties.

3         **15.8    No Retaliation.**    PetSmart agrees not to retaliate against any employee

4   making a claim for proceeds under this Agreement, nor to take any action to encourage or

5   discourage employees from participating in the Settlement Process.

6   IT IS SO STIPULATED

7   Dated:                                          _____

8                                                   Danette Moore, Plaintiff

9

10  Dated:                                          _____

11                                                  Latresa Myers, Plaintiff

12  Dated:                                          _____

13                                                  Alanna Harrison, Plaintiff

14

15  Dated:                                          _____

16                                                  Alisa Valdez, Plaintiff

17

18  Dated:                                          PetSmart, Inc.

19

20                                                  _____
                                                    David Lenhardt
21                                                  CEO PetSmart, Inc.

22  Dated:                                          **GRAHAMHOLLIS** APC

23

24                                                  _____

25                                                  Attorneys for Plaintiffs

26  Dated: 1/31/14                                  Littler Mendelson, P.C.

27                                                  _~michele Hever~_

28                                                  Attorneys for PetSmart, Inc.

CASE NO. 5:12-CV-03577-EJD                    28.

EXHIBIT 2

# Moore, et al. v. PetSmart, Inc.

United States District Court, Northern District of California, Case 5:12-CV-03577-EJD
www.petsmartsettlement.com

**PLEASE READ THIS NOTICE CAREFULLY. YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR NOT.**

*The Court authorized this notice. This is not a solicitation from a lawyer.*

A proposed class settlement has been reached between the Parties in the above-entitled action and preliminarily approved by the Court as described below. You have received this notice because PetSmart's records indicate that you are one of the individuals who fall within one or more of the Settlement Classes and are entitled to participate in the Settlement.

Dear [CLASS MEMBER NAME]:

> **You are eligible to receive an Individual Settlement Amount, estimated to be approximately $ [_____].**
>
> **PetSmart's records indicate that:**
> - [You are a member of the Non-Exempt Employee Settlement Class listed on page 2 because you worked as a [job title] from [start date of employment as "job title"] – [end date of employment as "job title"];
> - [You are a member of the Pet Stylist Settlement Class listed on page 2, Section I because you worked as a [job title] from [start date of employment as "job title"] – [end date of employment as "job title"];
> - [You are also a member of the Waiting Time Penalties Settlement Sub-Class and are receiving $[[200] [400]], which is included in your Individual Settlement Amount above, because your employment with PetSmart ended on [end of employment date].]

This settlement relates only to the time period May 23, 2008 – [date of preliminary approval], the qualifying time period for this Settlement, and may not reflect all of your employment dates with PetSmart.


## 1.   WHY SHOULD I READ THIS NOTICE?

You should read this notice because you are entitled to claim money from the Settlement and because your legal rights may be affected even if you do nothing.

## 2.   WHAT IS THIS CASE ABOUT?

This Settlement resolves a lawsuit filed on May 23, 2012 by employees of PetSmart, Inc., Danette Moore, Latresa Myers, Alanna Harrison and Alisa Valdez ("Class Representatives" or "Plaintiffs"). Plaintiffs were employed as Pet Stylists at PetSmart's San Leandro store location. On behalf of themselves and the other Settlement Class Members, Plaintiffs sought payment for alleged wage and hour violations under state law and the Fair Labor Standards Act ("FLSA"), including: unpaid compensation for all hours worked, payment of minimum wages and overtime, payment for unpaid "unproductive time," reimbursement of reasonably incurred work-related expenses (including grooming tools and equipment), compensation for meal and rest period violations, miscalculation of vacation pay, failure to timely and properly pay wages due upon termination of employment, failure to provide suitable seats, unfair competition, statutory penalties, interest and attorneys' fees and costs.

PetSmart denies the claims of the Plaintiffs and contends that it provides all of its non-exempt employees with all minimum and overtime wages owed, provides all requisite meal and rest periods, complies with all seating requirements, provides reimbursement for incurred work-related expenses as required by law, and timely pays all wages at the time termination as required by the Labor Code, including, but not limited to, regular wages, incentive compensation and accrued.

After the filing of the lawsuit, there was ongoing investigation and information exchanged by the parties. The parties participated in extensive settlement discussions, including a mediation conference before a neutral and widely respected mediator. As a result of the mediation, the parties reached a settlement.

The parties have entered into a Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"), which has now been preliminarily approved by the Court. The Class Representatives and Settlement Class Counsel support this Settlement. Among the reasons for their support are the defenses to liability available to PetSmart, the risk of trial, and the delays of ongoing litigation.

If you are a member of one or more of the Classes listed in Number 3 below, you may participate in the Settlement. This Settlement includes (a) payment of Individual Settlement Amounts to Class Members who complete and timely return the Claim Form/FLSA Consent Form, which is included with this notice; (b) entry by the Court of a Judgment and Final Order approving the Settlement; and (c) a Release of PetSmart from liability for all of the claims that were made or could have been made based on the actual claims asserted or factual allegations in the lawsuit. The Judgment and Final Order shall prevent the Plaintiffs and each Class Member who has not requested exclusion from the Settlement Class from bringing any lawsuit alleging any of the "Released Claims" as that term is defined in this Notice in Number 9 below.

## 3.   WHO IS INCLUDED IN THE SETTLEMENT CLASS?

**Pet Stylist Settlement Class**: All individuals who were employed by PetSmart, Inc. as a Pet Stylist, Groomer, Grooming Trainee and/or Salon Manager in California at any period of time during May 23, 2008 through [date of preliminary approval].

**Non-Exempt Employee Settlement Class:** All individuals who were employed by PetSmart, Inc. as an hourly paid, non-exempt employee other than as a Pet Stylist, Groomer, Grooming Trainee and/or Salon Manager in California at any time during May 23, 2008 through [date of preliminary approval].

**Waiting Time Penalties Settlement Sub-Class:** All individual members of the Non-Exempt Employee Settlement Class or the Pet Stylist Settlement Class who separated from their employment with PetSmart at any between May 23, 2009 and [date of preliminary approval].

## 4.    WHAT ARE THE TERMS OF THE SETTLEMENT?

The Settlement provides for the terms summarized below. A complete copy of the Settlement Agreement may be examined at www.petsmartsettlement.com or between 9:00 a.m. and 4:00 p.m.in the office of the Clerk of the Court of the United States District Court, Northern District of California – San Jose Division, located at 280 South 1st Street, San Jose, CA 95113.

### A.    TOTAL SETTLEMENT AMOUNT

The Total Settlement Amount PetSmart will pay is $10,000,000.00.  All Settlement Amounts to be paid as a result of this Settlement will be paid out of this Total Settlement Amount. The Settlement Amounts include all amounts to be paid to Plaintiffs and Settlement Class Members who submit a Claim Form/FLSA Consent Form (enclosed); all amounts to be paid to Settlement Class Counsel as the Attorneys' Fees and Costs; all amounts to be paid as a Service Award to Plaintiffs; all amounts to be paid as Settlement Administration Costs; all amounts required to be paid as federal, state, and local payroll taxes (including both employer taxes and any employee withholdings) with respect to Individual Settlement Amounts paid to Settlement Class Members or any other Settlement Amounts paid to Settlement Class Counsel, the Settlement Administrator, the payment to the California Labor and Workforce Development Agency for its portion of the amount paid to settle alleged claims for Private Attorneys General Act penalties, and any other Settlement Amounts to be paid according to the Settlement Agreement. All of these payments are subject to the final approval of the Court.

### B.    INDIVIDUAL SETTLEMENT AMOUNTS PAYABLE TO THE SETTLEMENT CLASS

Settlement Class Members who submit a valid and timely Claim Form/FLSA Consent Form (enclosed) and who do not request exclusion shall be paid their Individual Settlement Amount from the Total Settlement Amount after deduction of (1) Settlement Administration Costs; (2) Attorneys' Fees and Costs; (3) Service Awards to the Class Representatives; and (4) amounts paid to the Labor and Workforce Development Agency. The amount left after these deductions from which to pay Settlement Class Members is estimated to be approximately $ 6,494,000.00 ("Net Distribution Amount.")

A portion of the Net Distribution Amount will be allocated to the Waiting Time Penalties Settlement Sub-Class for penalties pursuant to Labor Code section 203.  The amount allocated to the Waiting Time Penalties Settlement Sub-Class will be deducted from the Net Distribution Amount prior to the calculation of the Individual Settlement Amounts. Each individual who is a member of the Pet Stylist Settlement Class and is also a member of Waiting Time Penalties Settlement Sub-Class will receive $400.00 as a waiting time penalty in addition to their

3

Individual Settlement Amount. Each individual who is a member of the Non-Exempt Employee Settlement Class and is also a member of the Waiting Time Penalties Settlement Sub-Class will receive $200.00 as a waiting time penalty in addition to their Individual Settlement Amount.

After deducting from the Net Distribution Amount the payments made to the Waiting Time Penalties Settlement Sub-Class, the Net Distribution Amount shall be distributed between the Pet Stylist Class and the Non-Exempt Employee Class based on the proportional value of the claims of the Pet Stylist Class and the Non-Exempt Employee Class. Two-thirds (2/3) of the Net Distribution Amount shall be distributed to the Pet Stylist Class and one-third (1/3) shall be distributed to the Non-Exempt Employee Class. Individual Settlement Amounts paid from each classes share of the Net Distribution Amount will be in proportion to each Class Member's gross compensation paid by PetSmart in proportion to the total amount of gross compensation paid by PetSmart to all participating members of the class between May 23, 2008 - [date of preliminary approval]. The Individual Settlement Amount payable to each Settlement Class Member may vary from the estimated amount listed on page 1 depending on the number of people who participate in the Settlement. Individual Settlement Amounts allocated to Settlement Class Members who fail to submit a valid and timely claim form will be redistributed to those Settlement Class Members who submit a valid and timely claim form proportionately within each the Settlement Class to which such Settlement Class Member belongs.

According to PetSmart's records, you were paid a total of $ [gross wages] during the covered period, May 23, 2008 – [date of preliminary approval.]

If you believe PetSmart's records are incorrect as to the total gross wages earned by you between May 23, 2008 – [date of preliminary approval] and want to correct this information, you must inform the Settlement Administrator of the correct gross wages you believe you earned and send the Settlement Administrator supporting documentation as to the amount of gross wages you were paid by PetSmart between May 23, 2008 – [date of preliminary approval]. The instructions to do so are detailed on the enclosed Claim Form/FLSA Consent Form.

**CLASS MEMBERS MUST SUBMIT THE CLAIM FORM/FLSA CONSENT FORM TO RECEIVE THEIR INDIVIDUAL SETTLEMENT AMOUNT.**

### C.     SETTLEMENT ADMINISTRATION COSTS

All costs of administering the Settlement ("Settlement Administration Costs") shall also be paid from the Total Settlement Amount. These costs are anticipated not to exceed $105,000.

### D.     ATTORNEYS' FEES AND COSTS

Settlement Class Counsel will be paid up to 33-1/3% of the Total Settlement Amount which equals approximately $3,333,333 for attorneys' fees and reasonable and costs in prosecuting this lawsuit ("Attorneys' Fees and Costs").

### E.     SERVICE AWARDS PAYABLE TO PLAINTIFFS

The Class Representatives Danette Moore and Latresa Myers shall each receive a service award of up to $5,000, and Class Representatives Alanna Harrison and Alisa Valdez shall each receive

a service award of up to $10,000, in recognition for their services in obtaining the Settlement for the benefit of the Settlement Class, and the financial risks undertaken by the Plaintiffs in pursuing this matter on behalf of the Settlement Class.

### F.   PAYMENT TO THE LABOR AND WORKFORCE DEVELOPMENT AGENCY

$50,000.00 of the Total Settlement Amount will be allocated as penalties authorized by the Private Attorneys General Act, of which $37,500 will be paid to the Labor Workforce Development Agency.

### G.   TAX TREATMENT OF INDIVIDUAL SETTLEMENT AMOUNTS

The Individual Settlement Amount paid to each Settlement Class Member will be allocated 50% for wages and 50% for payment for interest, liquidated damages, and penalties. That portion of each Class Member's Individual Settlement Amount representing wages will be subject to normal employment tax withholdings and an IRS Form W-2 will be provided to each Settlement Class Member. That portion of each Class Member's Individual Settlement Amount constituting interest, liquidated damages, and penalties will be reported on an IRS Form 1099 provided to each Settlement Class Member, with required copies of the IRS Form 1099s provided to the Internal Revenue Service.

## 5.   WHAT DO I NEED TO DO TO COLLECT MONEY?

You must complete and sign the enclosed Claim Form/FLSA Consent Form and mail it back to the Settlement Administrator in the enclosed pre-paid envelope no later than [date of deadline to submit claim forms].

You may also submit your Claim Form/FLSA Consent Form or request another Claim Form/FLSA Consent Form online at www.petsmartsettlement.com.  You must submit your Claim Form/FLSA Consent Form either by first class mail or only no later than [deadline date].

## 6.   WHAT IF I DO NOTHING?

You may decide to do nothing. However, you will be bound by the terms of the Settlement Agreement and/or by any other final outcome of this lawsuit. Specifically, unless you affirmatively exclude yourself from the Settlement, you will be bound by the terms of the release as described in # 9 below and therefore be barred from pursuing any state wage law claims against PetSmart that were or might have been alleged in this lawsuit.

## 7.   HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?

If you do not wish to participate in the Settlement, you may exclude yourself ("opt out") by sending a Request for Exclusion to the Settlement Administrator listing your name, address, and phone number, along with the following statement:

> "I do not wish to participate in or be bound by the Moore, et al. v. PetSmart class action settlement."

The Request for Exclusion must be completed, signed, dated, and returned to the Settlement Administrator as follows:

**Moore, et al. v. PetSmart, Inc. Class Action Settlement**
c/o Simpluris
[ADDRESS]
[ADDRESS]

Any person who submits a timely Request for Exclusion shall, upon receipt, no longer be a member of the Settlement Class, shall be barred from participating in any portion of the Settlement, and shall receive no money from the Settlement. Any such person, at his/her own expense, may pursue any claims he/she may have against PetSmart. However, there are deadlines to pursuing such claims, known as statutes of limitation. Please consult an attorney of your choice to ensure you are not forever barred from pursuing a claim if you decide to opt out of this Settlement.

**THE REQUEST FOR EXCLUSION MUST BE MAILED VIA FIRST-CLASS MAIL AND POSTMARKED NO LATER THAN [DATE].**

## 8.     HOW DO I OBJECT TO THE SETTLEMENT?

You may object to the terms of the Settlement before final approval. If you choose to object to the Settlement, you may represent yourself or hire your own attorney. You must file a written objection and notice of intention to appear at the Final Fairness and Approval Hearing described below in Section VIII. You must file these documents, along with any briefs, exhibits, and/or other material that you wish the Court to consider, with the United States District Court Clerk, Northern District at 280 South 1st Street, San Jose, CA 95113. In addition, you must send copies to Settlement Class Counsel and Defense Counsel identified in Number 10 below.

Any written objections should state each specific reason for your objection and any legal support for each objection. Your objection must also state your full name, address, and the dates of your employment by PetSmart in California in a position listed in Number 3 above. To be valid and effective, any objections to the proposed Settlement must be filed with the Clerk of the Court and served upon each of the above-listed attorneys no later than [DATE].

**IF THE COURT REJECTS YOUR OBJECTION AND APPROVES THE SETTLEMENT, YOU WILL BE BOUND BY THE TERMS OF THE SETTLEMENT UNLESS YOU SUBMIT A REQUEST FOR EXCLUSION.**

## 9.     WHAT CLAIMS DO I RELEASE IF I PARTICIPATE IN THE SETTLEMENT?

Upon the final approval of the Settlement by the Court, each member of the Settlement Class (other than opt-outs), regardless of whether he or she has timely submitted a Claim Form, will fully release and discharge PetSmart, including its former and present parent companies, subsidiaries, divisions, concepts, related or affiliated companies, shareholders, officers, directors, employees, partners, agents, representatives, attorneys, insurers, successors and assigns, and any individual or entity that could be jointly liable with any of the foregoing ("Released Parties") from any claims, causes of action, damages, wages, benefits, expenses, penalties, debts, liabilities, demands, obligations, attorneys' fees, costs, and any other form of relief or remedy in law, equity, or whatever kind or nature, whether known or unknown, suspected or unsuspected,

arising from: (1) the lawsuit and any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the California Labor Code, Industrial Welfare Commission Wage Orders, and the California Business and Professions Code, claims under PAGA, claims for restitution and other equitable relief, liquidated damages, punitive damages, waiting time penalties, penalties of any nature whatsoever, other compensation or benefits; and (2) any alleged wage and hour violations that were made or could have been made based on the actual claims asserted or factual allegations in the lawsuit, whether premised on statute, contract, tort or other theory of liability under state or local law, by any Class Member against the Released Parties (collectively, the "Released Claims"), and including, but not limited to, any claims specifically referenced herein.  In addition, any Class Member who timely submits a Claim Form will fully and forever release and discharge the Released Parties from any claims arising out of, or related to the actual claims asserted or factual allegations in the lawsuit including all claims made under the Fair Labor Standards Act ("FLSA") and any alleged federal wage and hour violations/allegations that were made or could have been made based on the actual claims asserted or factual allegations in the lawsuit, whether premised on statute, regulation contract, tort or other theory of liability under federal law or regulation by any Class Member against the Released Parties (collectively, the "FLSA Released Claims").  The release will include any claims arising from or that may have arisen from the Parties' respective prosecution and/or defense of this litigation.  The release will apply to the time period May 23, 2008 – [date of prelim approval] and include any cause of action alleged in or which could have been alleged based on the facts in the Complaint or any Amended Complaint that may be filed prior to the approval of this Settlement.  All Released Claims are released for all Class Members regardless of whether they submit a Claim Form or receive any payment under the Settlement unless they Opt-Out of the Settlement, and all FLSA Released Claims are released for all Class Members who timely submit a Claim Form, regardless of whether they receive any payment under the Settlement.  The Released Claims and FLSA Released Claims do not include claims for workers' compensation benefits or any of the claims that may not be released by law.

The release of claims includes claims that are described in the lawsuit and as to those claims each Settlement Class Member, including the Class Representatives, waives all rights and benefits afforded by Section 1542 of the California Civil Code as to unknown claims and does so understanding the significance of that waiver.  Section 1542 provides:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

## 10.    WHO ARE THE LAWYERS REPRESENTING THE PARTIES?

| Attorneys for Plaintiffs & the Classes are: | Attorneys for PetSmart, Inc. are: |
|---|---|
| GRAHAM**HOLLIS** APC | LITTLER MENDELSON, P.C. |
| Graham S. P. Hollis | Michelle B. Heverly |
| ghollis@grahamhollis.com | mheverly@littler.com |
| Marta Manus | Karin M. Cogbill |
| mmanus@grahamhollis.com | kcogbill@littler.com |
| 3555 Fifth Avenue | Sophia Behnia |
| San Diego, CA 92103 | sbehnia@littler.com |
| Telephone: (619) 546-4373 | 50 W. San Fernando, 15th Floor |

7

San Jose, CA 95112
Telephone: (408) 998-4150

Copies of any documents filed with the Court in this Litigation should be sent to the above-listed counsel.

## 11.    WHO IS THE SETTLEMENT ADMINISTRATOR?

Simpluris
[ADDRESS]
[PHONE #]

If you move after receiving this notice, or if it was incorrectly addressed, please provide your correct address to the Settlement Administrator.

## 12.    FINAL SETTLEMENT APPROVAL HEARING.

The United States District Court, Northern District will hold a hearing in Courtroom 4, Fifth Floor, located at 280 South 1st Street, San Jose, CA 95113 on [DATE] at [TIME] to determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court also will be asked to approve Settlement Class Counsel's request for attorneys' fees and reimbursement of costs and expenses and the service awards to be paid to Plaintiffs. The hearing may be continued without further notice to the Settlement Class.  It is not necessary for you to appear at this hearing unless you object to the proposed Settlement and you have timely filed an objection with the Court.

## 13.    ADDITIONAL INFORMATION.

The above is a summary of the basic terms of the Settlement.  A complete copy of the Settlement Agreement may be examined at www.petsmartsettlement.com or between 9:00 a.m. and 4:00 p.m.in the office of the Clerk of the Court of the United States District Court, Northern District of California – San Jose Division, located at 280 South 1st Street, San Jose, CA 95113.

PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION REGARDING THIS SETTLEMENT. ALL QUESTIONS REGARDING THE SETTLEMENT SHOULD BE DIRECTED TO THE SETTLEMENT ADMINISTRATOR OR THE LAWYERS FOR THE PARTIES.

# EXHIBIT 3

# Moore, et al. v. PetSmart, Inc.

## CLAIM FORM/FLSA CONSENT FORM

YOU MUST COMPLETE, SIGN, AND MAIL THIS CLAIM FORM BY FIRST CLASS U.S. MAIL, POSTMARKED ON OR BEFORE [DATE]. YOU MAY ALSO SUBMT YOUR CLAIM ONLINE AT www.petsmartsettlement.com.

**IF YOUR CLAIM FORM IS NOT RECEIVED BY [DATE], IT WILL BE REJECTED.**

**CLAIMANT INFORMATION:**

The name and mailing address that we have for you is:

Make any address corrections here:

<Name>

<Address>

<Address>

<City, State, Zip>

_____

_____

_____

State all names by which you have been known:

_____

_____

Social Security Number (last 4 digits):
X X X – X X X - _____

Telephone Number: (\_) _____
*Work*

Telephone number: (\_) _____
*Home*

Assuming every class member participates in the settlement, you can expect to be paid a total settlement amount of approximately $_____ if you mail in this form by [deadline date].

**INSTRUCTIONS:**

1.  You must **legibly** complete, sign and mail this Claim Form/FLSA Consent Form to be eligible to receive a settlement payment.
2.  If you move, please send the Settlement Administrator your new address. It is your responsibility to keep a current address on file with the Settlement Administrator. You may write to the Settlement Administrator at:

    Simpluris
    [ADDRESS]
    [ADDRESS]

3.  If you have questions, you may call the Settlement Administrator at [toll free phone] or visit www.petsmartsettlement.com.

**CLAIM INFORMATION:**

1.  PetSmart's records indicate that:
    *   [You are a member of the Non-Exempt Employee Settlement Class because you

worked as a [job title] from [start date or employment as "job title"] – [end date of employment as a "job title"] and you earned $_____ in gross (pre-tax) compensation in this position.]

- [You are also a member of the Pet Stylist Settlement Class because you worked as a [job title] from [start date or employment as "job title"] – [end date of employment as a "job title"] and you earned $_____ in gross (pre-tax) compensation in this position.]
- [You are also a member of the Waiting Time Penalties Settlement Sub-Class and are receiving [[$200][$400]], which is included in your total settlement amount, because your employment with PetSmart ended on [end of employment date].]

If you agree with PetSmart's records of your gross compensation shown above, skip to section # 3.  If you disagree with your gross compensation shown above, you can file a dispute by following the instructions below in section # 2.

2.  If you disagree with your gross compensation stated above in section #1, you must notify the Settlement Administrator in writing as to the amount you believe you earned during your employment with PetSmart from May 23, 2008 through [date of prelim approval]. You must provide documentation showing the actual amount of gross compensation paid to you by PetSmart during the period May 23, 2008 through [date of prelim approval] only if you disagree with the amount(s) listed in # 1 above. You must submit this documentation to the Settlement Administrator at [address] no later than [deadline date].

3.  I have reviewed the Class Notice and this Claim Form/FLSA Consent Form, and I consent to join in the Fair Labor Standards Act portion of this action and have the named Plaintiffs and their counsel represent me in this lawsuit.  I hereby release PetSmart and all Released Parties from any and all applicable Fair Labor Standards Act and state wage claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, for economic damages, non-economic damages, restitution, penalties and/or liquidated damages arising any time during statutory period prior to the date of preliminary approval of this Settlement (three years for FLSA claims and four years for state wage claims), based on the claims alleged in Plaintiffs' lawsuit, as described in the enclosed Class Notice and the Joint Stipulation of Class Action Settlement and Release in USDC Case No. 5:12-cv-03577-EJD.  I understand that I am releasing PetSmart and all Released Parties from liability for all of the claims alleged that were made or could have been made based on the actual claims asserted or factual allegations in *Moore v. PetSmart* lawsuit.

I agree that the information as shown in this Claim Form/FLSA Consent Form is true and correct to the best of my knowledge, and I hereby expressly agree to opt-in to the Settlement.


_____          _____
Signature                                                            Print Name


_____
Date

2