1   GRAHAM**HOLLIS** APC
    GRAHAM S.P. HOLLIS (SBN 120577)
2   ghollis@grahamhollis.com
    MARTA MANUS (SBN 260132)
3   mmanus@grahamhollis.com
    3555 Fifth Avenue
4   San Diego, California 92103
    Telephone: 619.692.0800
5   Facsimile: 619.692.0822

6   Attorneys for Plaintiffs

7

8                       UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

10  DANETTE M. MOORE, LATRESA MYERS,        Case No.:   12-CV-03577 EJD
    ALANNA HARRISON and ALISA VALDEZ
11  individually and on behalf of others similarly   **MEMORANDUM OF POINTS AND**
    situated,                                **AUTHORITIES IN SUPPORT OF**
12                                           **PLAINTIFFS' UNOPPOSED MOTION FOR**
                   Plaintiffs,               **FINAL APPROVAL OF CLASS ACTION**
13                                           **SETTLEMENT**
              v.
14
    PETSMART, INC, and Does 1 through 100,
15  inclusive,

16                 Defendants.
                                             Date:       March 12, 2015
17                                           Time:       9:00 a.m.
                                             Courtroom:  4 –5th Floor
18                                           Judge:      Hon. Edward J. Davila

19

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                                                                12-CV-03577 EJD
    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
    UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   PROCEDURAL AND FACTUAL BACKGROUND.......................................................3

      A.    The Litigation.................................................................................3

      B.    Discovery and Investigation. ........................................................4

      C.    Negotiation and Preliminary Approval of the Settlement.....................................5

III.  SUMMARY OF THE SETTLEMENT TERMS.........................................................7

IV.   FINAL SETTLEMENT APPROVAL SHOULD BE GRANTED ...............................9

      A.    Legal Standards for Settlement Approval........................................9

      B.    The Relevant Factors Weigh in Favor of Granting Final Approval. .................10

            1.    The Strength of Plaintiffs' Case, the Risk, Expense, Complexity, and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Throughout the Trial. .................................10

            2.    The Amount Offered in Settlement.........................................13

            3.    The Extent of Discovery Completed and the State of the Proceedings. .15

            4.    The Experience and Views of Lead Class Counsel. ...............15

            5.    The Reaction of the Class Members to the Proposed Settlement. ..........15

            6.    Collusion Between the Parties. ...............................................16

      C.    The Proposed *Cy Pres* Beneficiary is Reasonable.............................18

      D.    The Court Should Approve the Payment of PAGA Penalties to the LWDA. ....18

      E.    The Court Should Approve the Settlement Administrator's Fees and Costs......19

V.    THE NOTICE PROCEDURE WAS PROPERLY CARRIED OUT AND ITS RESULTS INDICATE STRONG SUPPORT FOR, AND NO OPPOSITION TO THE SETTLEMENT BY CLASS MEMBERS ...................................................19

      A.    The Settlement Class Members Received Adequate Notice of the Settlement. .19

      B.    The Settlement Class Members Responded Extremely Favorably to the Settlement. ...................................................................................21

      C.    The Results of the Notice Procedure Strongly Favor Final Approval of the Settlement. ...................................................................................21

VI.   CONCLUSION.........................................................................................22

i                                          12-cv-03577-EJD

TABLE OF AUTHORITIES

Page

**United Sates Supreme Court Cases**

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306, 314 (1950)..........................................................................20

**States Cases**

*Bluford v. Safeway Stores, Inc.*,
216 Cal. App. 4th 864 (May 8, 2013) ..............................................11, 12

*Gonzalez v. Downtown LA Motors, LP*,
215 Cal. App. 4th 36 (2013) ..............................................................11

**Federal Cases**

*Boyd v. Bechtel Corp.*,
485 F.Supp. 610 (N.D. Cal.1979) .......................................................15

*Churchill Village, LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 204) ................................................................9

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012) ..............................................................18

*Enabnit, et al. v. PetSmart, Inc.*,
Case No.: 2:07-cv-00165-JAM-DAD  (E.D. Cal. April 22, 2009)..............14

*Garner v. State Farm Auto Ins. Co.*,
Case No. CV 08 1365 CW (EMC)
2010 WL 1687832 (N.D. Cal. April 22, 2010)..........................................10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .........................................................9, 10

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (Ill. 2010)....................................................................9

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57, 60 (S.D.N.Y. 1993) ......................................................20

*In re Walgreen Co. Wage and Hour Litig.*,
Case No. 11-cv-07664-PSG (FFMx), (S.D. Cal. Sept. 2, 2014)....................13

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .............................................................15

*Maraventano, et al. v. Nordstrom, Inc., et al.*,
Case No. 10-cv-2671 JM (JLB) (S.D. Cal. Dec. 5, 2014) ...........................13

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) .........................................................10, 21

Graham**Hollis** APC
3555 Fifth Avenue
San Diego, California 92103

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Prizler v. AT&T Mobility Services, Inc.*,
    Case No 12-cv-06016 SVW (RZ) (C.D. Cal. Aug. 21, 2014) ........................................14

*Shlenksy v. Dorsey*,
    574 F.2d 131 (3d Cir. 1978)..................................................................................21

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ...............................................................................20

*Sorenson, et al v. PetSmart, Inc.*,
    Case No.: 2:06-cv-02674-JAM-DAD (E.D. Cal. Dec. 17, 2008)..............................14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..........................................................................9, 16

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990)..................................................................................21

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .....................................................................................9

*Williams v. Costco Wholesale Corp.*,
    2010 WL 2721452 (S.D. Cal. July 7, 2010) ....................................................15, 16

**Federal Statutes**

Rule 23(e)..................................................................................................3, 9, 19

**United States Supreme Court Cases**

California Bus. & Prof. Code § 17200, *et seq* ...............................................................3

**Other Authorities**

Conte Newberg,
    4 *Newberg on Class Action* §11:41 (4th Ed. 2002) ......................................................16

*Manual for Complex Litigation*
    § 21.61 (4th ed. 2010) ........................................................................................10

Graham**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Final approval of the settlement reached between Plaintiffs Danette Moore, Latresa Myers, Alanna Harrison, and Alisa Valdez, the representatives for the Pet Stylist Settlement Class, the Non-Exempt Employee Settlement Class, and the Waiting Time Penalties Settlement Sub-Class and Defendant PetSmart, Inc. (collectively "the parties") and settling party Plaintiff Jeanette Negrete (a Plaintiff in a related action venued in U.S.D.C., Northern District, *Negrete v. PetSmart, Inc*. Case No. 5:13-cv-043300-EJD)[1], a representative for the Pet Stylist Settlement Class. The notice procedure in this case has been extremely well-received with a 69% participation rate,[2] very high for a wage and hour class action settlement involving retail employees. (Declaration of Mary Butler Regarding Notice and Administration of Settlement ("Butler Decl.") at ¶ 18, filed herewith.) Furthermore, there have been no objections filed since dissemination of the notice and only 6 individuals out of over 19,701 class members have submitted a request for exclusion. (Declaration of Graham S.P. Hollis in support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Hollis Decl.") at ¶ 34; Butler Decl. ¶ 19.)  The notice and other procedures ordered by the Court at the preliminary approval stage have been properly carried out, and the results of those procedures indicate that there is no opposition to the settlement from within or outside the Settlement Class, and that the class members overwhelmingly wish to participate in the settlement. The Butler Decl. summarizes the Settlement Administrator's administration of the notice process and the overwhelmingly positive response of the Settlement Class to that process and provide compelling evidence in support of the settlement's reasonableness. (Hollis Decl. at ¶ 36.)

On March 14, 2014, the Court granted preliminary approval of the class action settlement reached by the parties for various wage and hour claims on behalf of current and former non-exempt

---

[1] Pursuant to the terms of the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"), Plaintiff Jeanette Negrete will dismiss her action with prejudice within five days of the order granting final approval to the Settlement. (Settlement Agreement § IV (5.7)).

[2] The 9,799 valid claims received from Settlement Class Members represent 49.74% of the 19,701 Settlement Class Members and these valid claims represent are approximately 68.93% of the Net Settlement Amount claimed to date.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

California employees of PetSmart.[3]   The Court preliminarily approved all of the terms of the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement")[4] between the parties, ordered that notice be given to the class members by mailing them specific forms of the Class Notice, Claim Form/FLSA Consent Form, and appointed Simpluris as the Settlement Administrator to carry out the notice procedures.  (Hollis Decl. ¶ 30.)  The Court further approved, on a preliminary basis and subject to the results of the notice process and responses received from class members, the payment of incentive awards to each of the named Plaintiffs/Class Representatives, an award of attorney's fees of up to $3,333,333 (33.33% of the Total Settlement Amount)[5] and litigation costs incurred by Class Counsel, the payment of administration expenses incurred by the Settlement Administrator, and the payment of PAGA penalties of $50,000, seventy-five (75%) of which, or $37,500 will be paid to the LWDA and twenty-five (25%) of which, or $12,500 will be distributed to the participating Settlement Class. The Court's Preliminary Approval Order and Joint Stipulation Order further set procedures and dates by which class members could opt-out of the settlement, object to the settlement, challenge the amounts calculated for the recoveries under the settlement, submit Claim Forms, and for the submission of additional motions by Plaintiffs in support of final approval of the settlement, and finally, for the Final Approval hearing at which the present Motion will be presented and considered.  (Hollis Decl. at ¶¶ 5 - 7.)

///

---

[3] *See* the Court's Order Granting Preliminary Certification of Settlement Class; Preliminary Approval of Class Settlement; Approval of Notice and Plan; Appointment of Class Counsel and Class Representatives; and Setting a Final Approval Hearing, dated 5/14/15 ("Preliminary Approval Order") (Doc. 74). The Court's 5/14/14 Order granting preliminary approval was modified by the Court's 11/14/14 Order granting the parties' Joint Stipulation Regarding Modification of Settlement Stipulation
[4] On 11/07/14, the parties filed a Joint Stipulation Regarding Modification of Settlement Stipulation (Doc. 83) modifying specific sections of the Settlement Agreement, approved by the Court on 11/14/14 (Doc. 86).
[5] *See* Court's Preliminary Approval Order of 5/14/14 (Doc. 74). The Court's 11/14/14 Order approved modification to specific sections of the Settlement Agreement, including the designation of Graham Hollis APC as Lead Class Counsel and Capstone Law APC as Pet Stylist Settlement Class Counsel. Pursuant to Section IV (4.9) of the Settlement Agreement, Lead Class Counsel shall apply for an award of fees up to 28.83% of the Total Settlement Amount (or $2,883,000), and costs incurred by Lead Class Counsel. Pet Stylist Settlement Class Counsel Capstone Law APC shall apply for an award of fees of up to 4.5% of the Total Settlement Amount (or $450,000), and costs incurred by Pet Stylist Settlement Class Counsel.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

Rule 23(e) of the Federal Rules of Civil Procedure requires that preliminary approval of a class action settlement only be given upon a preliminary finding that the settlement terms are fair, adequate, and reasonable, and the Court's Order Granting Preliminary Approval, implies its finding that the settlement terms meet that test. The basis for Plaintiffs' requests for Lead Counsel's costs and attorney's fees is fully set forth in Class Counsel's Motions for Final Approval of Attorney's Fees and Costs and Class Representative Service Awards and supporting memoranda, filed concurrently herewith. There is no need to repeat the showings and arguments made in those papers; rather, Plaintiffs incorporate them by reference here.

Instead of separating those showings, and as additional support for their Motion for Final Approval, in this Memorandum, Plaintiffs demonstrate that everything necessary and proper for consideration of final approval of the settlement has been accomplished, that the class overwhelmingly consents and wishes to participate in the settlement on the terms preliminarily approved by the Court and fully described to the Class Members in the Notice, that both updated calculations of amounts due to Class Members and updated authorities support approval of the settlement, and that final approval and orders directing the payments specified in the Settlement Agreement should now be given.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

For purposes of brevity, Plaintiffs hereby incorporate by reference Section II, the Relevant and Procedural Background, in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.[6]

### A.    The Litigation.

On May 23, 2012, Plaintiffs brought this action in the Superior Court, County of Alameda on behalf of themselves and certain non-exempt California employees of PetSmart. The case was timely removed to this Court by Defendant on July 9, 2012. (Hollis Decl. ¶ 10.)  Plaintiffs' allege that PetSmart violated the California Labor Code, the relevant Wage Order of the California Industrial Welfare Commission, and the California Unfair Competition Law (*California Bus. & Prof. Code* § 17200, *et seq.*) with PetSmart's alleged policy of: (1) failing to pay minimum and overtime wages for all hours worked including time spent performing non-productive duties and working off-the-clock; (2) failing to

---

[6] Memorandum of Points and Authorities in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Doc. 40-1), filed on January 31, 2014.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  reimburse for reasonably incurred work-related expenses (including grooming tools and equipment); (3)

2  failing to compensate for meal and rest period violations; (4) failing to properly calculate vacation pay;

3  (5) failing to timely and properly pay wages due upon termination of employment; (6) failing to provide

4  suitable seats; and (7) engaging in unlawful/unfair business practices.  (*Id.*)

5        On September 20, 2012, Jeannette Negrete filed a wage and hour class action lawsuit against

6  PetSmart in the Superior Court of California, County of Shasta on behalf of a class of all persons

7  employed by PetSmart as "groomers" or "pet groomers" in California at any time from September 20,

8  2008 to the present.  Negrete's lawsuit was ultimately transferred to this Court on July 8, 2013 and

9  deemed related to the *Moore* action.  Negrete alleges similar claims as the Moore Plaintiffs but also

10  alleged claims for unpaid vested accrued vacation and unpaid reporting time.  (Declaration of Raul Perez

11  Decl. ¶ 2.)

12        **B.**    **Discovery and Investigation.**

13        The putative class members worked at 132 PetSmart locations throughout California. The parties

14  engaged in extensive negotiations to arrive at a method to examine the wage and hour policies and

15  practices at a representative sample of the Petsmart locations. The parties agreed that 10% of the

16  locations (selected randomly by Lead Counsel utilizing an Excel Randomizer program) would provide

17  an adequate sample. PetSmart produced employment data and documents for non-exempt employees

18  from 14 stores of its 132 California stores (Hollis Decl. ¶ 16.) PetSmart produced in excess of 33,000

19  pages of documents as well as electronic personnel and payroll data regarding PetSmart's employees.

20  Lead Counsel spent numerous hours analyzing this information and data. Additionally, PetSmart

21  provided Lead Counsel with the names and contact information of all current and former non-exempt

22  employees employed at the 14 sample stores. Lead Counsel interviewed current and former employees

23  from the following California PetSmart locations: Freemont, Irvine, Merced, Milpitas, Santa Maria,

24  Sacramento, Mountain View, Lancaster, La Jolla, Palmdale, Pelandale, Rohnert Park, Santa Cruz, San

25  Jose, San Leandro, Santa Maria, Shingle Springs, Tustin, and Oceanside. Some of the class members

26  interviewed by Plaintiffs' counsel worked at multiple PetSmart locations throughout California. *Id.*

27        In preparation for mediation, Lead Counsel prepared a comprehensive damage analysis based on

28  information gathered from class member interviews and employment data provided by PetSmart.  *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Graham**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  Plaintiffs' counsel also prepared a mediation brief containing a detailed review of the evidence and

2  outlining the complex legal issues in this case. In February 2013, Plaintiffs took the depositions of

3  PetSmart's corporate designee regarding PetSmart's compensation policies and practices for California

4  employees as well as the corporate designee regarding PetSmart's compliance with the IWC Wage

5  Order 7-2001.  In March 2013, Defendant took the deposition of each of the four named Plaintiffs.

6  (Hollis Dec. ¶ 17.) The parties each propounded one set of special interrogatories and requests for

7  production of documents but agreed to hold off on serving their responses until after the completion of

8  mediation in order to preserve the parties' resources and time and focus their efforts on resolving the

9  case at mediation. The information exchanged and investigation undertaken by Plaintiffs is sufficient for

10 the parties to make an informed decision about the resolution of this case at this time.[7] *Id.*

11      **C.      Negotiation and Preliminary Approval of the Settlement.**

12          On April 9, 2013, the parties engaged in mediation with mediator Jeffrey Ross. Although the

13 parties were unable to reach a settlement agreement on the day of the mediation, the parties continued

14 their settlement negotiations through mediator Jeffrey Ross and ultimately, on in June 2013, accepted

15 the mediator's proposal, reaching the settlement on the terms for which they now seek final approval.

16 The parties have devoted substantial time and effort to negotiate all of the details of the settlement. At

17 all times, the negotiations were conducted at arms' length and through the mediator.  (Hollis Dec. ¶ 11.)

18          On March 7, 2014, the parties attended the hearing on Plaintiffs' Motion for Preliminary

19 Approval, at which time this Court requested that the parties submit supplemental briefing clarifying

20 specific provisions of Settlement. Specifically, the Court asked the parties to provide supplemental

21 briefing addressing the following: (1) the provision in the Settlement Agreement that any amount not

22 awarded by the Court to class counsel for attorney's fees will be retained by Defendant and will not

23 increase the amount available for distribution to the settlement class members; (2) a lodestar cross-check

24

---

25 [7] Negrete also exchanged initial disclosures of witnesses and documents with PetSmart and propounded
formal written discovery, including interrogatories and requests for production of documents (about
26 which the parties met and conferred extensively resulting in production of payroll data, contact
information for putative class members, and relevant policies).  Post-remand, Negrete was deposed, and
27 Negrete also took the deposition of PetSmart's corporate designee and person most qualified in Arizona.
Negrete also prepared and filed a motion for class certification, seeking to certify four subclasses.
28 (Perez Decl. ¶¶ 3-4.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1   of class counsel's requested attorney's fees; (3) the sampling methodology utilized for the valuation of

2   the Plaintiffs' claims and allocation of settlement funds among the settlement classes; and (4) the

3   reasonableness of the amount of the incentive awards requested by each of the four Plaintiffs. On March

4   28, 2014, the parties filed their supplemental briefs in support of Plaintiffs' Motion for Preliminary

5   Approval. (Hollis Dec. ¶ 12.)

6        Since the Court granted preliminary approval of the settlement on May 14, 2014, the parties have

7   been working cooperatively and diligently to ensure that the settlement claims procedures were

8   accurately implemented by Simpluris. (Hollis Decl. ¶ 13.) Due to the amount and complexity of the

9   class data as well as the format in which the class data was maintained by Defendant, Simpluris required

10  additional time to complete the mailing of the Class Notice and Claim Forms. On June 20, 2014, the

11  parties filed a Joint Stipulation to Continue Hearing on Plaintiffs' Motion for Final Approval and

12  Related Dates Pursuant to This Court's Order Granting Preliminary Approval of Class Action

13  Settlement[8], which this Court granted on June 24, 2014.[9]   On November 7, 2014, the parties filed a Joint

14  Stipulation Regarding Modification of Settlement Stipulation[10] clarifying specific terms of the

15  Settlement Agreement, which this Court granted on November 14, 2014.[11]   (Hollis Decl. ¶ 7.) On

16  November 21, 2014, Simpluris mailed the Class Notice and Claim Forms to all Settlement Class

17  Members. (Butler Decl. ¶ 10.)

18       On February 13, 2014, Jeanette Negrete (a Plaintiff in the related action pending in the U.S.D.C.

19  Northern District, *Negrete v. PetSmart, Inc*., Case No. 5:13-cv-04300-EJD) filed an *ex parte* motion to

20  intervene (Doc. 42) in this lawsuit, which was denied by Court Order dated February 26, 2014 (Doc.

21  55). Negrete appealed that denial on March 26, 2014 (Doc. 64). The parties worked extensively to

22  address Negrete's concerns raised in the intervention motion and her objection to the originally proposed

---

23  [8] Joint Stipulation to Continue Hearing on Plaintiffs' Motion for Final Approval and Related Dates
24  Pursuant to This Court's Order Granting Preliminary Approval of Class Action Settlement (Doc. 75),
    filed on June 20, 2014.
25  [9] Order re Joint Stipulation to Continue Hearing on Plaintiffs' Motion for Final Approval and Related
    Dates Pursuant to This Court's Order Granting Preliminary Approval of Class Action Settlement (Doc.
26  76), filed on June 24, 2014.
27  [10] Joint Stipulation Regarding Modification of Settlement Stipulation (Doc. 83), filed on November 7,
    2014.
28  [11] Order re Joint Stipulation Regarding Modification of Settlement Stipulation (Doc. 86), filed on
    November 14, 2014; Hollis Decl. ¶ 7.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

settlement. In part, the modified Settlement Agreement added as additional Class Counsel, Capstone Law APC as "Pet Stylists Settlement Class Counsel", and added Jeanette Negrete as an additional class representative.[12] On February 4, 2015, Negrete field a motion to voluntarily dismiss her appeal, which was granted on February 6, 2015. (Hollis Decl. ¶ 14.)

## III.    SUMMARY OF THE SETTLEMENT TERMS.

The following summarizes the material elements of the Settlement:

(1)    The Parties have settlement the claims against PetSmart on behalf of the Settlement Class defined as follows:

All individuals who are or were employed by PetSmart as a Pet Stylist, Groomer, Grooming Trainee, and/or Salon Manager in California at any time during the period from May 23, 2008 to May 14, 2014 ("Pet Stylist Settlement Class");

All individuals who are or were employed by PetSmart as an hourly paid, non-exempt employee in California at any time during the period May 23, 2008 to May 14, 2014 in a position other than Pet Stylist, Groomer, Grooming Trainee, or Salon Manager ("Non-Exempt Employee Settlement Class");

The Settlement Class includes a Waiting Time Penalties Settlement Sub-Class defined as:
All individuals who are members of the Non-Exempt Employee Settlement Class or the Pet Stylist Settlement Class who separated from their employment with PetSmart at any time between May 23, 2009 and May 14, 2014 ("Waiting Time Penalties Settlement Sub-Class").

(2)    PetSmart is to pay an amount up to $10,000,000.00 (the "Total Settlement Amount"). The Total Settlement Amount is the maximum amount that Defendant shall be required to pay under the terms of the Settlement Agreement, and shall be deemed in satisfaction of all claims arising out of, related to or which could have been brought as part of this action, including claims for: (1) all wages, penalties, interest, and/or other amounts to be paid to Settlement Class Members; (2) the payment to the Labor and Workforce Development Agency ("LDWA"); (3) attorney's fees and costs to Class Counsel; (4) the service payments to the Class representatives, approved by the Court; (5) all costs of administration, including, without limitation, settlement administration fees; and (6) the employee's share of payroll taxes. The Total Settlement Amount also includes the Reserve Fund[13] of $100,000.

---

[12] The Court accepted the modified Settlement Agreement in its Order re Joint Stipulation Regarding Modification of Settlement Stipulation (Doc. 86), dated November 14, 2014.
[13] The Reserve Fund of $100,000 is allotted for use in the event that late claims from Settlement Class

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

GrahamHollis APC
3555 Fifth Avenue
San Diego, California 92103

Once these deductions are made, the balance of the Total Settlement Amount will be available for distribution to Settlement Class Members ("Net Distribution Amount".)

(3)    Settlement Class Members who submit a timely Claim Form ("Claimant")[14] will receive a portion of the Net Distribution Amount in an amount based upon the relative total gross compensation paid to each Settlement Class Member by PetSmart between May 23, 2008 and May 14, 2014 ("Covered Timeframe").

(4)    To the extent any Settlement Class Member, who does not file a request for exclusion, fails to submit a Claim Form, the Individual Settlement Amount attributable to that Settlement Class Member shall be distributed to Claimants within that Settlement Class Member's Settlement Class ("Pet Stylist Settlement Class" or "Non-Exempt Employee Settlement Class") in proportion to their Individual Settlement Amounts.

(5)    "Class Counsel" shall mean Lead Class Counsel, Graham S.P. Hollis and Marta Manus of GrahamHollis APC, and "Pet Stylist Settlement Class Counsel," Capstone Law APC.

(6)    Lead Class Counsel (GrahamHollis APC) shall apply for an award of fees up to 28.83% of the Total Settlement Amount (or $2,883,000), and costs incurred by Lead Class Counsel. Pet Stylists Settlement Class counsel (Capstone Law APC) shall apply for an award of fees of up to 4.5% of the Total Settlement Amount (or $450,000) and costs incurred by Pet Stylist Settlement Class Counsel. Class Counsel agree not to oppose the attorney's fee awards requested by each other.

(7)    The Class Representatives are the named Plaintiffs Danette Moore, Latresa Myers, Alanna Harrison, and Alisa Valdez, and Plaintiff Jeanette Negrete. Jeanette Negrete shall be deemed to represent only the Pet Stylist Settlement Class, as defined above and in Section 1.15 of the Settlement Agreement.

(8)    Plaintiffs will request, and PetSmart will not object to, service awards to each of the

Members are accepted, to compensate other Settlement Class Members who have raised issues such as errors or inadvertent exclusion (i.e. self-identifiers), to correct errors, and/or to resolve other disputes. Any unused portion of the Reserve Fund will revert to the Net Distribution Amount, to be distributed to the Settlement Class Members. (Settlement Agreement § I (1.16), attached as Exhibit C to the Hollis Decl.)

[14] Settlement Class Members who submit a late claim form that is accepted by PetSmart, in its sole discretion will also be deemed to be a "Claimant" as defined in the Settlement Agreement as Section I (1.3).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

named Plaintiffs/Class Representatives.  Plaintiffs will request a service award payment of $10,000 each to Plaintiff Harrison and Plaintiff Valdez and a service award payment of $5,000 each to Plaintiff Moore, Plaintiff Myers and Plaintiff Negrete. This Amount will come from the Total Settlement Amount and will be in addition to the Individual Settlement Amount for each Class Representative.

The proposed Settlement satisfies all criteria for final approval under federal law because it is fair, reasonable, adequate, and free from collusion.

## IV.     FINAL SETTLEMENT APPROVAL SHOULD BE GRANTED

### A.     <u>Legal Standards for Settlement Approval.</u>

A district court determines whether to approve a class action settlement through a two-step process.  First, a court will conduct a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval."  *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (Ill. 2010). On May 14, 2014, this Court granted preliminary approval.

Second, this Court may approve the class action settlement after hearing and upon a finding that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. Proc. 23(e)(1)(C); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Therefore, the question is "not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion."  *Hanlon* at 1027.  Further, it is "the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Id*. at 1026. To make this determination, the court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining a class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 204).  This list is not exhaustive, and the importance of its factors will vary depending on the circumstances of each case.  *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1376 (9th Cir. 1993).  A settlement merits final approval, when "the interests of the class as a whole are better served by the

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at

2   480 (4th ed. 2010).

3   Although district courts possess "broad discretion" in issuing a final determination that a

4   proposed class action settlement is fair, "the court's intrusion upon what is otherwise a private

5   consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary

6   to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

7   collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable

8   and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.

9   1982). A district court should limit its evaluation "to the extent necessary to reach a reasoned judgment

10  that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

11  parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.*

12  at 625; *Hanlon*, 150 F.3d at 1026. "[I]n evaluating whether the settlement is fair and adequate, the

13  Court's function is not to second guess the settlement's terms." *Garner v. State Farm Auto Ins. Co.*, No.

14  CV 08 1365 CW (EMC), 2010 WL 1687832, at *8 (N.D. Cal. April 22, 2010).

15  As detailed below, all of the above factors support final approval of the class action settlement in

16  this case.

**B.      The Relevant Factors Weigh in Favor of Granting Final Approval.**

**1.      The Strength of Plaintiffs' Case, the Risk, Expense, Complexity, and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Throughout the Trial.**

20  The proposed Settlement is both fair and reasonable in light of Defendant's available legal and

21  factual defenses to Plaintiffs' claims. As set forth in Class Counsel's Declaration filed herewith, Class

22  Counsel has substantial and successful experience litigating wage and hour class actions. (Hollis Decl. at

23  ¶ 4; Ex. A and Ex. B to Hollis Decl.; Perez Decl. at ¶¶ 7-10.) This case presented novel and complex

24  issues as well as numerous risks in further litigation. The Pet Stylist class members were paid solely on a

25  commission basis based on a percentage of the costs of pet grooming services paid by Petsmart

26  customers. The thrust of their claims is that much of the Pet Stylist's work time is uncompensated as

27  they were not earning commissions while performing non-grooming work and were therefore not

28  provided with paid rest breaks. Plaintiffs' theory of recovery for unpaid wages for non-commission

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

10                                                    12-cv-03577-EJD

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

producing duties and for rest break time was novel and highly risky when the case was filed and was still unsettled even at the time of settlement.  (Jan. 31 Hollis Decl. at ¶¶ 51, 59; Hollis Decl. ¶ 26.) Plaintiffs' allege that PetSmart's compensation scheme pays members of the Pet Stylists Settlement Class ("Pet Stylists") on a piece-rate basis because Pet Stylists are compensated for grooming services rendered at the rate of 50% of the net sale price for the groom. PetSmart's compensation scheme pays Pet Stylists for time spent performing grooming services. If the Pet Stylist earns more in piece-rate in a given workweek than they would have earned at their hourly fall back rate, they are paid only the piece-rate and are said to have "commissioned out."  Plaintiffs' allege that in workweeks in which Pet Stylists commission out, PetSmart fails to pay at least minimum wages for all hours worked because in addition to performing grooming services, Pet Stylists are required to perform "non-productive" duties, work for which they do not receive any additional compensation separate and apart from the piece-rate pay.  At the time of mediation, this theory for unpaid wages had not yet been tested and had little supporting case law. In fact, the *Gonzalez v. Downtown LA Motors, LP* decision, a decision which strongly supports Plaintiffs' theory, was published just the day before the mediation.[15]  The claim is also very difficult to certify due to manageability issues because Defendant does not require Pet Stylists to record the start and end time of grooming jobs, making it difficult to determine the amount of time spent on non-productive duties for which Plaintiffs alleged they were not paid. (*Id*.)

Plaintiffs' claim for unpaid wages for rest break time on behalf of the Pet Stylists was premised on their unpaid non-productive time claim. Plaintiffs allege that Pet Stylists were not provided with paid rest breaks, as required by California law, because PetSmart's piece rate compensation plan only pays Pet Stylists piece-rate compensation for time spent performing grooming services.  Therefore, because Pet Stylists do not earn piece rate while taking a rest break, any rest breaks taken by Pet Stylists were unpaid.  *See Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864 (May 8, 2013).  Furthermore, Plaintiffs allege claims for failing to provide grooming tools and reimbursement of grooming supplies and failure to pay accurate vacation wages.  (*Id*. at ¶ 26.)

On behalf of the Non-Exempt Employee Settlement Class, Plaintiffs allege that PetSmart failed to provide employees with legally compliant meal and rest periods and failed to pay wages for work

---

[15] 215 Cal. App. 4th 36 (2013).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

performed off-the-clock because these employees were frequently interrupted by PetSmart's customers during meal and rest breaks.  Additionally, Plaintiffs allege that from 2005 through April 2011, PetSmart maintained an illegal written meal and rest break policy, providing that employees receive one 30 minute unpaid meal break if employees worked more than six hours but less than eight and one 15 minute rest break if employees work more than four hours but less than six.  *Id.*

PetSmart vigorously defended against these claims and argued that all wages had been paid in accordance with California law and that even if any additional wages were owed, they should be paid calculated at minimum wage as opposed to the effective hourly rate earned by the Pet Stylists during the time spent performing commission-earning activities.  Further, PetSmart raised a number of factual issues it argued would show substantial variation as to the number of dogs groomed per shift and whether Pet Stylists "commissioned-out" in a given workweek, which could present substantial risks at the class certification stage.  Thus Plaintiffs faced numerous risks in continued litigation including: (1) the risk that the proposed class would not be certified; (2) the risk that class members would be found to have been paid all wages due; (3) the risk that PetSmart would be found not to have willfully failed to pay all wages due upon termination of employment; (4) the risk that PetSmart would be found not to have intentionally failed to furnish accurate itemized wage statements; (5) the risk that Plaintiffs' damages calculations would be substantially undercut at trial; and (6) numerous potential appellate issues. (Hollis Decl. ¶ 26.)  At the time the settlement was reached, the law in this area was sparse and the outcome of any litigation was far from clear.  The legal uncertainty as to whether commissioned employees are entitled to be paid wages for non-productive time favors settlement of the action.  Given these risks, and the complexity of proving these claims, the actual recovery through settlement confers substantial benefits on the settlement class that outweigh the potential recovery through full adjudication. *Id.*

Furthermore, the risk of maintaining class certification throughout trial also weighs in favor of granting final approval.  These risks, in turn, enhance Plaintiffs' showing that the settlement terms are fair, reasonable and adequate in light of the potential outcome of continued litigation.

/ / /

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Graham**Hollis** APC
3555 Fifth Avenue
San Diego, California 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

2.      **The Amount Offered in Settlement.**

The proposed settlement yielded a Total Settlement Amount of up to $10,000,000.00 The Total Settlement Amount includes all payments to settlement class members, service awards to the Class Representatives, Lead Class Counsel's attorney's fees and costs, Pet Stylists Settlement Class Counsel's attorney's fees and costs, settlement administration costs, payment to the LWDA, and the employee's share of payroll taxes. (Hollis Decl. ¶ 8(a); Settlement Agreement § I (1.20)).  The Total Settlement Amount includes a Reserve Fund of $100,000.  After these payments from the Total Settlement Amount, the Net Distribution Amount available for distribution to Settlement Class Members is approximately $6,322,500.00. The $10,000,000.00 gross settlement amount is a significant amount when taking into account the uncertainties involved with continued litigation. (Hollis Decl. ¶ 18; Settlement Agreement § I (1.11).)

The Individual Settlement Amounts to participating Settlement Class Members will vary based on their total gross ("pre-tax") compensation[16] paid to each class member during the Covered Timeframe (May 23, 2008 – May 14, 2014).  The Settlement Administrator now confirms that the amount of the settlement awards claimed to date is approximately $4,351,160.44, equal to 68.82% of the total Net Distribution Amount claimed and a claims rate of 49.68%. After the unclaimed funds are redistributed the Settlement Administrator calculates that each participating class member will be entitled to recover an average Individual Settlement Amount of approximately $645.02.  The largest Individual Settlement Amount is estimated to be $15,705.64. (Butler Decl. ¶ 18; Hollis Decl. ¶¶ 34 - 35.) These figures confirm that the Individual Settlement Amounts are fair, reasonable, and adequate to resolve the class members' claims.

The high claims rate of 68.93% of funds claimed as compared to other recent retail class action settlements which received final approval confirms just how well this settlement was received by the class members.  *See Maraventano, et al. v. Nordstrom, Inc., et al.*, Case No. 10-cv-2671 JM (JLB) (S.D. Cal. Dec. 5, 2014) (a class of over 40,000 class members with a claims rate of 27%; *In re Walgreen Co. Wage and Hour Litig.*, Case No. 11-cv-07664-PSG (FFMx), (S.D. Cal. Sept. 2, 2014) (a class of

---

[16] "Total gross compensation" includes hourly and overtime compensation (or non-exempt salary and overtime pay, if the position was salaried) plus commissions, based on PetSmart's compensation data. See Joint Stipulation Order (Doc. 86) ¶ 1; Settlement Agreement § VI, ¶ 6.2 (Ex. C to Hollis Decl.).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Graham**Hollis** APC
3555 Fifth Avenue
San Diego, California 92103

1   approximately 40,000 class members with 59.23% of the settlement funds claimed); *Prizler v. AT&T*

2   *Mobility Services, Inc*., Case No 12-cv-06016 SVW (RZ) (C.D. Cal. Aug. 21, 2014) (a class of over

3   4,675 class members with a claims rate of 55.91%).[17]

4       Furthermore, the amount offered in settlement here is exceptional in light of other class action

5   settlements with PetSmart, Inc., which were settled on behalf of groomers and other non-exempt

6   employees. In December 2008, the United States District Court for the Eastern District granted final

7   approval in *Sorenson, et al v. PetSmart, Inc*., Case No.: 2:06-cv-02674-JAM-DAD (E.D. Cal. Dec. 17,

8   2008) ("Sorenson Lawsuit"). (Hollis Decl. ¶¶ 21 - 22.) The Sorenson Lawsuit settled for a reversionary

9   (i.e. all unclaimed funds above a certain floor would revert to PetSmart) maximum settlement amount of

10  $1,950,000 on behalf of two sub-classes, Groomers and Non-Groomers, with a total of 21,813 class

11  members. The Court approved the settlement, awarding class counsel $585,000 (30% of maximum

12  settlement amount), and an incentive award to the named Plaintiff of $15,000.  *Id*. Because the amount

13  of any unclaimed funds reverted to PetSmart and the settlement had a minimum distribution of 60% of

14  the net settlement fund, the total payout to the two sub-classes was just $750,831, with a total of just

15  4,570 claims paid. (*Id*.)

16      In April 2009, the same court granted final approval of another settlement reached by PetSmart

17  in *Enabnit, et al. v. PetSmart, Inc.*, Case No.: 2:07-cv-00165-JAM-DAD  (E.D. Cal. April 22, 2009)

18  ("Enabnit Lawsuit"). (Hollis Decl. at ¶ 23.) The Enabnit Lawsuit alleged various wage and hour

19  violations on behalf of three sub-classes including "commissioned salon employees" (i.e. groomers) for

20  various Labor Code violations including a claim for failure to pay minimum wages and failure to

21  provide reimbursement for grooming tools to commissioned salon employees.  The Enabnit Lawsuit also

22  settled for a reversionary maximum settlement amount of $1,950,000 on behalf of three sub-classes,

23  "employees without direct deposit" (sub-class A), "commissioned salon employees" (sub-class B), and

24  "salon employees" (sub-class C), with total of 20,455 class members. (*Id*.) Because the amount of any

25  unclaimed funds reverted to PetSmart, the total payout to the three-classes was an even lower

26  amount of just $337,927, with a total of just 1,790 claims paid. The Court approved the settlement,

27  awarding class counsel $570,000 (29.23% of the max settlement amount), and an incentive award to the

28

---

[17] *See* Exhibits G – I to Plaintiffs' Request for Judicial Notice, filed concurrently herewith.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

named Plaintiff of $30,000. (*Id.*)

As such, the amount offered in settlement in this case is exceptional and weighs in favor of final approval.

### 3.    The Extent of Discovery Completed and the State of the Proceedings.

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Williams v. Costco Wholesale Corp.*, 2010 WL 2721452, at *4 (S.D. Cal. July 7, 2010) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). As discussed above as well as in detail in Section II(B) of Plaintiffs' MPA, the parties engaged in substantial and exhaustive discovery in the present matter. The information exchanged and investigation undertaken allowed Class Counsel to assess the strengths and weaknesses of the claims and the benefits of the settlement under the circumstances of this case. (Hollis Decl. ¶ 16.)

### 4.    The Experience and Views of Class Counsel.

Lead Class Counsel has significant experience in employment litigation, having litigated similar class actions against other employers, including numerous wage and hour cases. (Hollis Decl. ¶ 4; Jan. 31 Hollis Decl. ¶ 3 – 8.) The recommendations of plaintiffs' counsel should be given a presumption of reasonableness. *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal.1979). Lead Class Counsel considers the settlement to be fair, reasonable, and adequate in light of their experience, the information obtained through discovery, and the risks and costs of further litigation. Accordingly, Lead Class Counsel's belief that the present settlement is both fair and adequate weighs in favor of granting final approval.

Pet Stylists Settlement Class Counsel, Capstone Law APC, employs seasoned class action attorneys who regularly litigate wage and hour claims through certification and the merits, and have considerable experience settling class actions. (Declaration of Perez ¶¶ 7-10.)

### 5.    The Reaction of the Class Members to the Proposed Settlement.

The Court may look to the reaction of the class members to help it determine if the settlement is fair, adequate, and reasonable. In this case, the response has been very positive. After dissemination of the Class Notice to the 19,701 class members, which provided the terms of the settlement with an option

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1   to opt-out or file an objection, not one class member has filed an objection and only six (6) have filed a

2   request for exclusion. (Hollis Decl. ¶ 34; Butler Decl. ¶ 19). The absence of any objector strongly

3   supports the fairness, reasonableness, and adequacy of the settlement. *Williams*, 2010 WL 2721452, at

4   *3 (S.D. Cal. July 7, 2010).  As of the date of the filing of this Motion, 9,799 valid and timely claim

5   forms were received by the Settlement Administrator, representing a 49.74% claims filing rate with

6   68.93% of the Net Distribution Amount being claimed. (Hollis Decl. ¶ 34; Butler Decl. ¶ 18).  Given the

7   size of the settlement class, this response rate indicates acceptance of the Settlement's terms by class

8   members, and strongly supports a finding that the Settlement should be approved.

9         **6.**    <u>**Collusion Between the Parties**</u>.

10        The collusion inquiry examines the possibility the agreement is the result of either overt

11  misconduct by the negotiators or improper incentives of certain class members at the expense of other

12  members of the class. *Staton*, 327 F.3d at 952. When examining settlements, a presumption of fairness

13  exists where: (1) settlement is reached through arm's-length bargaining; (2) investigation and discovery

14  are sufficient to allow counsel and court to act intelligently and (3) counsel is experienced in similar

15  litigation. Conte Newberg, 4 *Newberg on Class Action* §11:41 (4th Ed. 2002) "*Newberg*") .

16        At the preliminary approval stage, this Court requested supplemental briefing by the parties

17  clarifying specific terms of the settlement, including, among other things, the negotiations that led to the

18  settlement. As thoroughly detailed in Plaintiffs' MPA (Doc. 40-1), the Supplemental MPA (Doc. 66),

19  the Jan. 31 Hollis Decl. (Doc. 40-2), the Declaration of Graham S.P. Hollis in support of Plaintiffs'

20  Supplemental MPA (Doc. 66-1) ("Mar. 28 Hollis Decl."), as well as Defendant's Supplemental Brief

21  (Doc. 68), and the Declaration of Michelle B. Heverly in support of Defendant's Supplemental Brief

22  (Doc. 68-1) at ¶¶ 10 - 13, the parties engaged in substantial arm's length, informed negotiations to reach

23  the Settlement. The Settlement was reached after a full-day mediation with well-respected mediator

24  Jeffrey Ross. (Hollis Decl. at ¶ 11; Jan. 31 Hollis Decl. ¶ 23; Mar. 28 Hollis Decl. ¶ 6.)  Lead Class

25  Counsel has substantial experience in similar litigation. Prior to mediation, the parties conducted

26  significant investigation and exchanged thousands of pages of documents and sampling records. (Hollis

27  Decl. at ¶ 16; Jan. 31 Hollis Decl. ¶¶ 16-17.)

28        The Settlement Agreement provides that Lead Class Counsel would recover an award of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

litigation costs actually incurred and attorney's fees up to $2,883,000 (28.83% of the total settlement amount). The Settlement Agreement also provides that Pet Stylists Settlement Class Counsel may apply for an award of fees of up to 4.5% of the Total Settlement Amount (or $450,000) and costs incurred by Pet Stylist Settlement Class Counsel. As discussed in Plaintiffs' Motion for Final Approval of Lead Class Counsel's Attorney's Fees and Costs, as well as Plaintiffs' Supplemental MPA at pages 7 – 14, and Plaintiff Negrete's Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payment, the attorney's fees are not the result of collusion. In this case, the separately negotiated fees award request is not disproportionate in comparison to the non-reversionary total Net Distribution Amount of $6,322,500.00 available for distribution to the settlement class. The Net Distribution Amount is not merely an illusory amount that is unlikely to be paid out by PetSmart. Importantly, no amount of the Net Distribution Amount will ever revert to PetSmart. (Hollis Decl. at ¶ 28; Mar. 28 Hollis Decl. at ¶ 7.) Any unclaimed funds will be redistributed to the participating settlement class members, not to exceed three times their original claim amount, with the remaining unclaimed funds, if any, distributed to the qualified *cy pres* beneficiary. (*Id.*)

A thorough assessment of the circumstances of the case and the terms of the settlement, as well as the negotiation process utilized by the parties, indisputably demonstrates that there is no evidence of collusion. Plaintiffs made an ample showing of the reasonableness of their requested attorney's fees and costs. Plaintiffs incorporate by reference those points supporting the overall reasonableness and adequacy of the settlement, as well as the reasonableness of the fees requested detailed in the memoranda in support of Plaintiffs' Motions for Attorneys' Fees, filed concurrently herewith.

Plaintiffs expended significant amount of time pursuing the litigation and reasonable fears of workplace retaliation. Plaintiffs have at all times, protected the interests of the class members and exerted considerable time and effort in litigating this action, providing important information and documents, participating in depositions and mediation and settlement negotiations. *See* Declaration of Danette Moore in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Moore Decl.") ¶¶ 3 – 7 (Doc. 40-3); Declaration of Latresa Myers in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Myers Decl.") ¶¶ 3 -7 (Doc. 40-4); Declaration of Alanna Harrison in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

("Harrison Decl.") ¶¶ 3 – 7 (Doc. 40-5); Declaration of Alisa Valdez in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Valdez Decl.") ¶¶ 3 – 7 (Doc. 40-6); Declaration of Alanna Harrison in Support of Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Approval ¶¶ 2 – 9 (Doc. 66-3); Declaration of Alisa Valdez in Support of Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ¶¶ 2 – 9 (Doc.66-2); Declaration of Jeanette Negrete in Support of Motion for Final Approval of Class Action Settlement ¶¶ 1 – 10.[18]  The class members have significantly benefitted from these actions.  The $5,000 service awards each to Class Representatives Moore and Myers and $10,000 each to Harrison and Valdez, are not the result of collusion or self-interested action.  (Hollis Decl. ¶ ¶ 51 - 52.)

### C. The Proposed *Cy Pres* Beneficiary is Reasonable.

In *Dennis v. Kellogg Co.*, the Ninth Circuit reiterated the principles governing selection and review of cy pres beneficiaries in class action settlements, and provided extensive guidance concerning the application of those principles.[19]  The parties jointly designated the Legal Aid Society – Employment Law Center ("ECL") as the cy pres beneficiary. (Settlement Agreement Section IV, ¶ 4.5(c); Hollis Decl. ¶¶ 8(i), 27.).  The ECL is a well-respected non-profit organization that provides civil legal services to the indigent and pro bono employment law advice to low-income communities and easily satisfies that requirement that there be a "driving nexus between the plaintiff class and the cy pres beneficiaries." as required by *Dennis*. *See Dennis*, 697 F.3d at 865.  (Hollis Decl. ¶¶ 8(i), 27.) The Court should therefore approve the parties' *cy pres* designation.

### D. The Court Should Approve the Payment of PAGA Penalties to the LWDA.

The Court also should award the requested payment to the LWDA as its share of the PAGA penalties.  The parties request a payment of $50,000 of the Total Settlement Amount to the LWDA.  Seventy-five (75%) of that total, or $37,500 will be paid to the LWDA and the remaining twenty-five percent (25%), or $12,500 shall be distributed to the Claimants as part of the Net Distribution Amount.  (Settlement Agreement, § III, 4.7; Hollis Decl. ¶ 5.)  Federal courts repeatedly have approved similar

---

[18] See Exhibits D – I to the Hollis Decl., filed herewith.
[19] 697 F.3d 858 (9th Circ. 2012).

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  LWDA payments, and this Court should follow suit. *Garcia v. Gordon Trucking, Inc*., No. 1:10-CV-

2  0324 AWI, SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving $10,000 payment to the

3  OWDA from $3.9 million settlement); *Chu v. Wells Fargo Invs. LLC*, Nos. C 05-4526 MHP, C 06-7924

4  MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving $7,500 payment to LWDA from

5  $6.9 million common fund settlement); *see also Nordstrom Comm'n Cases*, 186 Cal.App.4th 576, 589

6  (2010) (holding trial court properly approved settlement that allocated nothing to PAGA claims).

7      **E.**    **The Court Should Approve the Settlement Administrator's Fees and Costs.**

8      Pursuant to the Settlement Agreement, the parties hired Simpluris as the Settlement

9  Administrator. (Hollis Decl. ¶ 55.) Simpluris provided the parties with an estimate for the cost of

10 administration of the settlement, with a capped fee not to exceed $105,000. (*Id*.)  Simpluris has now

11 documented fees and costs totaling $119,500. (Butler Decl. ¶ 22).  Simpluris' fees and costs were

12 previously estimated based on a class size of approximately 16,413 with a response rate of 40%.

13 However, the class size increased to 19,701 with a response rate of 50.24%, well above the estimated

14 response rate of 40%. (Butler Decl. ¶ 22).  The parties have agreed that the additional $14,500 fees and

15 costs incurred by Simpluris will be paid from the Reserve Fund. The Reserve Fund of $100,000 is

16 allotted for use to, among other things, resolve any such disputes. *See*, *supra* note 11. Any unused

17 portion of the Reserve Fund will revert to the Net Distribution Amount, to be distributed to the

18 Settlement Class Members. *See* Settlement Agreement § I (1.16); (Hollis Decl. ¶ 55.)

19     All amounts were necessarily incurred in sending the Notice to the Settlement Class Members,

20 preparing materials, answering questions from Settlement Class Members, performing settlement

21 calculations, and executing other settlement administration tasks. The requested fees and costs are

22 reasonable given the complexity of the settlement calculations in this case and the size of the Settlement

23 Class.  (Hollis Decl. ¶ 51.)

24 **V.**    **THE NOTICE PROCEDURE WAS PROPERLY CARRIED OUT AND ITS RESULTS**
   **INDICATE STRONG SUPPORT FOR, AND NO OPPOSITION TO THE SETTLEMENT**
25     **BY CLASS MEMBERS**

26     **A.**    **The Settlement Class Members Received Adequate Notice of the Settlement.**

27     The Class Members received sufficient notice of the settlement.  Rule 23(e)(1) requires class

28 members be provided notice of a settlement in "a reasonable manner."  Fed. R. Civ. P. 23(e)(1).  Class

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

members need not receive "actual notice." *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994). Instead, notice may be provided in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

In this case, the Settlement Administrator approved by the Court has extensive experience in administering class action settlements. (Butler Decl. ¶ 2). The content of the notice, which also was approved by the Court satisfies due process under federal law. *See In re Michael Milken & Assocs. Sec. Litig*., 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement generally"). The notice to Class Member clearly sets forth the estimated settlement shares and the claims to be released. Moreover, the notice materials informed the Class Members of their rights, how to enforce their rights, and clearly stated (1) the deadline to file a Claim Form; (2) the deadline to object to the Settlement and to appear at the Final Approval Hearing; (3) their right to submit a Request for Exclusion and not to participate in Settlement and the deadline to timely request exclusion; (4) the deadline to object to the Settlement; and (5) the location, date and time of the Final Approval Hearing. The Notice of Class Action Settlement, Claim Form/FLSA Opt-in Form ("Notice Packet") further discussed the method of calculating payment and provided the estimated settlement payment to each Class Member and how they could dispute the employment information contained on the Claim Form. These methods satisfy due process and Class Members were therefore provided with all of the information they needed to make an informed choice regarding whether to be part of the Settlement.

Simpluris fully and faithfully carried out the Court's directions by mailing the Notice Packet to the 19,701 class members. Prior to mailing the Notice and Claim Forms, Simpluris performed an in-depth Accurint skip trace on all class members, who according to the records of PetSmart are former employees, which included approximately 11,119 former employees. Simpluris was able to locate 6,517 new addresses which were updated prior to the mailing of the Notice Packets. The 6,517 new addresses generated by the Accurint skip trace were obtained subsequent to fist utilizing the Nation Change of Address Database maintained by the U.S. Postal Service. (Butler Decl. ¶ 8 – 9; Hollis Decl. ¶ 31.) Simpluris established and maintained a website with the URL www.petsmartsettlement.com that class members could use to file a Claim Form, track the processing of the Claim Form, and contact the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Settlement Administrator if they had questions.  (Butler Decl. ¶ 7).  A significant number, approximately 16.26% of Settlement Class Members, utilized the website to submit a Claim Form. (See Ex. D to Butler Decl.; Hollis Decl. ¶ 31.).

**B.    The Settlement Class Members Responded Extremely Favorably to the Settlement.**

The overwhelmingly positive response of class members to the Settlement strongly supports final approval.  Courts should consider "the reaction of the class members to the proposed settlement." *Officers for Justice*, 668 F.2d at 625. The response of class members "strongly favors" settlement even when 10 percent of such members object.  *Stoetzner v. U.S. Steel Corp*., 897 F.2d 115, 118 (3d Cir. 1990); *see also Shlenksy v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978) (upholding settlement because vast majority of class members did not object to it.) Here, only 6 class members elected not to participate in the Settlement, and no class member has objected to the Settlement since the mailing of the Notice Packets.  (Hollis Decl. ¶ 34; Butler Decl. ¶¶ 19 – 20).  Given the class size of close to 20,000 individuals, such an overwhelmingly positive response merits final approval of the Settlement.

**C.    The Results of the Notice Procedure Strongly Favor Final Approval of the Settlement.**

The results of the notice procedures are sufficient to support final approval. Of the 19,701 Notices mailed, 941 were returned undeliverable as of the date of the filing of this Motion. As of the postmark deadline to file a Claim Form, January 20, 2015, 9,799 valid and timely Claim Forms were received by Simpluris, which amounts to 49.74% of the settlement class, with $4,358,026.83 (68.93%) of the Net Distribution Amount being claimed.  Given the size of the class, this is a significant return rate that strongly supports the fairness, reasonableness, and adequacy of the settlement. Notably, only 6 individuals filed a request for exclusion and no objections to the Settlement have been filed since the mailing of the Notice.  (Hollis Decl. ¶ 34; Butler Decl. ¶ 18).

As such, the results of the notice procedures strongly favor final approval of the Settlement.

///

///

///

///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**VI.**     <u>**CONCLUSION**</u>

The Court should grant final approval of the Settlement Agreement and order the parties and the Settlement Administrator carry out its provisions for payments and related documentation, further reporting, and additional actions, as specified in the Settlement Agreement. A proposed Judgment and Final Order incorporating those provisions is submitted with this Motion.

Respectfully submitted,

Dated: February 10, 2015                          GRAHAM**HOLLIS** APC

By:  /s/ Graham S.P. Hollis
                                                     Graham S.P. Hollis, Esq.
                                                     Email: ghollis@grahamhollis.com
                                                     Marta Manus, Esq.
                                                     Email: mmanus@grahamhollis.com
                                                     Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103