GRAHAM**HOLLIS** APC
GRAHAM S.P. HOLLIS (SBN 120577)
ghollis@grahamhollis.com
MARTA MANUS (SBN 260132)
mmanus@grahamhollis.com
3555 Fifth Avenue
San Diego, California  92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| DANETTE M. MOORE, LATRESA MYERS, ALANNA HARRISON and ALISA VALDEZ individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PETSMART, INC, and Does 1 through 100, inclusive,<br><br>Defendants. | Case No.:   12-CV-03577 EJD<br><br>**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF; 1) PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;AND IN SUPPORT OF 2) PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS**<br><br>Date:        March 12, 2015<br>Time:        9:00 a.m.<br>Courtroom:  4 –5th Floor<br>Judge:       Hon. Edward J. Davila |

I, Graham S.P. Hollis, state and declare:

1.      I am an attorney at law licensed to practice before all courts of the State of California.  I am a shareholder with the law firm of GrahamHollis, A.P.C. ("GrahamHollis") in San Diego, California. My associate Marta Manus and I are the attorneys handling this case and supervising the proceedings.  I am thoroughly familiar with and have personal knowledge of all of the facts set forth herein.  If called as a witness, I could and would competently testify thereto.

2.      I submit this declaration in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and in support of Plaintiffs' Motion for an Award of Attorney's Fees and

Graham**Hollis** APC
3555 Fifth Avenue
San Diego, California 92103

Costs and Class Representative Service Awards.  This declaration supplements my previous declarations filed in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Jan. 31 Hollis Decl.") and declaration in support of Plaintiffs' Supplemental Brief in support of Plaintiffs' Motion for Preliminary Approval which are attached hereto as Exhibit A and Exhibit B for ease of reference.

3.     A true and correct copy of the fully executed Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement") is attached herein as Exhibit C.

## CLASS COUNSEL IS QUALIFIED TO REPRESENT THE CLASS

4.     As outlined in my Declaration in Support of Preliminary Approval and my Declaration in support of Fees, I along with Marta Manus of my firm are experienced not only in class actions and employment litigation, but specifically in prosecuting wage and hour class actions such as this case.  See Exhibit A ¶¶ 3 - 8. Since filing my Declaration in Support of Preliminary Approval, GrahamHollis, APC has been appointed as Class Counsel in the following cases: Solaberrieta v. Baker Hughes Oilfield Operations, Inc., et al., Superior Court for the County of Los Angeles; Delatorre v. Johnson Controls, Inc., United States District Court for the Northern District of California; Ledbetter v. Entrepreneurial Ventures, Inc., Superior Court for the County of Santa Clara; Rodriguez v. Old Dominion Freight Line, Inc., United States District Court for the Central District of California; Madera v. Universal Alloy Corporation, United States District for the Central District of California; Frayre v. United Parcel Services Supply Chain Services, Inc., Superior Court for the County of San Diego; De La Rosa v. Quten Research Institute, LLC, Superior Court for the County of San Diego; and Loveless v. ASM Affiliates, Superior Court for the County of San Diego.

## THE COURT GRANTED PRELIMINARY APPROVAL OF THE SETTLEMENT

5.     On May 14, 2014, this Court granted preliminary approval of the class action settlement ("Court's Preliminary Approval Order") (Doc.74). The Court preliminarily certified the settlement class for settlement purposes pursuant to subsections (a) and (b)(3) of Federal Rule of Civil Procedure 23, approved all of the terms of the Settlement Agreement, approved the form and manner of the notice to the Settlement Class, ordered that notice be given to the class members by mailing them specific forms of the Class Notice, Claim Form/FLSA Consent Form ("Notice Packet"), and appointed Simpluris as the

DECLARATION OF GRAHAM S.P. HOLLIS

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

Settlement Administrator. Further, the Court appointed myself and Marta Manus of my firm GrahamHollis, APC as Class Counsel and approved, on a preliminary basis, the payment of incentive awards to each of the named Plaintiffs, an award of attorney's fees of $3,333,333 (33.33% of the Total Settlement Amount of $10,000,000), the payment of administration expenses incurred by the Settlement Administrator, and the payment of PAGA penalties of $50,000, seventy-five (75%) of which, or $37,500 will be paid to the LWDA and twenty-five (25%) of which, or $12,500 will be distributed to the participating Settlement Class.

6.      On June 6, 2014, the parties filed a Joint Stipulation to Continue Hearing on Plaintiffs' Motion for Final Approval and Related Dates (Doc. 75), which this Court granted on June 24, 2014 (Doc. 76).

7.      On November 14, 2014, the Court granted the parties' Joint Stipulation Regarding Modification of Settlement Stipulation ("Court's Joint Stipulation 11/14/14 Order") (Doc. 86), which modified certain terms set forth in the Settlement Agreement. Pursuant to the Court's Joint Stipulation 11/14/14 Order and the Court's Preliminary Approval Order, myself and Marta Manus of GrahamHollis APC are appointed as Lead Class Counsel and Capstone Law APC is appointed as Pet Stylist Settlement Class Counsel. Further, Lead Class Counsel shall apply for an award of fees of up to 28.83% of the Total Settlement Amount (or $2,883,000), and costs incurred by Lead Class Counsel. Pet Stylist Settlement Class Counsel Capstone Law APC shall apply for an award of fees of up to 4.5% of the Total Settlement Amount (or $450,000), and costs incurred by Pet Stylist Settlement Class Counsel. (Settlement Agreement § IV (4.9) (Doc. 83), Ex. B hereto).

## THE SETTLEMENT TERMS

The following summarizes the material elements of the Settlement:

8.      The Parties have settled the claims against PetSmart on behalf of the Settlement Class defined as follows:

All individuals who are or were employed by PetSmart as a Pet Stylist, Groomer, Grooming Trainee, and/or Salon Manager in California at any time during the period from May 23, 2008 to May 14, 2014 ("Pet Stylist Settlement Class");

All individuals who are or were employed by PetSmart as an hourly paid, non-exempt employee in California at any time during the period May 23, 2008 to May 14, 2014 in a position other

DECLARATION OF GRAHAM S.P. HOLLIS

than Pet Stylist, Groomer, Grooming Trainee, or Salon Manager ("Non-Exempt Employee Settlement Class");

The Settlement Class includes a Waiting Time Penalties Settlement Sub-Class defined as: All individuals who are members of the Non-Exempt Employee Settlement Class or the Pet Stylist Settlement Class who separated from their employment with PetSmart at any time between May 23, 2009 and May 14, 2014 ("Waiting Time Penalties Settlement Sub-Class").

a.      PetSmart is to pay $10,000,000.00 (the "Total Settlement Amount"). The Total Settlement Amount is the amount that Defendant shall be required to pay under the terms of the Settlement Agreement, and shall be deemed in satisfaction of all claims arising out of, this action, including claims for: (1) all wages, penalties, interest, and/or other amounts to be paid to Settlement Class Members; (2) the payment to the Labor and Workforce Development Agency ("LDWA"); (3) attorney's fees and costs to Class Counsel; (4) the service payments to the Class Representatives; (5) all costs of administration, including, settlement administration fees; and (6) the employee's share of payroll taxes. The Total Settlement Amount also includes the Reserve Fund of $100,000. Once these deductions are made, the balance of the Total Settlement Amount will be available for distribution to Settlement Class Members ("Net Distribution Amount".)

b.      Settlement Class Members who submit a timely Claim Form ("Claimants") will receive a portion of the Net Distribution Amount in an amount based upon the relative total gross compensation paid to each Settlement Class Member by PetSmart between May 23, 2008 and May 14, 2014 ("Covered Timeframe").

c.      To the extent any Settlement Class Member, who does not file a request for exclusion, fails to submit a Claim Form, the Individual Settlement Amount attributable to that Settlement Class Member shall be distributed to Claimants within that Settlement Class Member's Settlement Class ("Pet Stylist Settlement Class" or "Non-Exempt Employee Settlement Class") in proportion to their Individual Settlement Amounts.

d.      "Class Counsel" shall mean Lead Class Counsel shall mean Graham S.P. Hollis and Marta Manus of GrahamHollis APC and "Pet Stylist Settlement Class Counsel", Capstone Law APC.

e.      Lead Class Counsel (GrahamHollis APC) shall apply for an award of fees up to

DECLARATION OF GRAHAM S.P. HOLLIS

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

28.83% of the Total Settlement Amount (or $2,883,000), and costs incurred by Lead Class Counsel. Pet Stylists Settlement Class counsel (Capstone Law APC) shall apply for an award of fees of up to 4.5% of the Total Settlement Amount (or $450,000) and costs incurred by Pet Stylist Settlement Class Counsel. Class Counsel agrees not to oppose the attorney's fee awards requested by each other. Said fees shall be in addition to the payment of all costs actually incurred by Class Counsel in connection with this matter.

f.      The Class Representatives for the Settlement Classes are the named Plaintiffs Danette Moore, Latresa Myers, Alanna Harrison, and Alisa Valdez, and Plaintiff Jeanette Negrete. Jeanette Negrete shall be deemed to represent only the Pet Stylist Settlement Class, as defined above and in Section 1.15 of the Settlement Agreement.

g.      Plaintiffs will request, and PetSmart will not object to, service awards to each of the named Plaintiffs/Class Representatives.  Plaintiffs will request a service award payment of $10,000 each to Plaintiff Harrison and Plaintiff Valdez and a service award payment of $5,000 each to Plaintiff Moore, Plaintiff Myers and Plaintiff Negrete. This Amount will come from the Total Settlement Amount and will be in addition to the Individual Settlement Amount for each Class Representative.

h.      Pursuant to the terms of the Settlement Agreement, any unclaimed funds will be redistributed to settlement class members who submit a valid and timely claim form ("Claimants") in proportion to each Claimant's Individual Settlement Amount. Notwithstanding the pro-rata increase, no Claimant shall be entitled to recover more than three times his or her original Individual Settlement Amount.

i.      Any unclaimed funds shall be first used to pay PetSmart's share of any employer side payroll taxes owed.  Any Net Distribution Amount remaining after the payment of employer taxes shall be paid to a *cy pres* beneficiary designated jointly by the parties as the Legal Aid Society – Employment Law Center, 180 Montgomery Street, Suite 600, San Francisco, CA 94104. The Legal Aid Society – Employment Law Center provides civil legal services to the indigent and pro bono employment law advice to low-income communities.

9.      The proposed Settlement satisfies all criteria for final approval under federal law because it is fair, reasonable, adequate, and free from collusion.

DECLARATION OF GRAHAM S.P. HOLLIS

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

## BACKGROUND AND PROCEDURAL HISTORY

10.    On May 23, 2012, Plaintiffs brought this action in the Superior Court, County of Alameda on behalf of themselves and certain non-exempt California employees of PetSmart. The case was timely removed to this Court by Defendant on July 9, 2012. Plaintiffs' allege that PetSmart violated the California Labor Code, the relevant Wage Order of the California Industrial Welfare Commission, and the California Unfair Competition Law (*California Bus. & Prof. Code* § 17200, *et seq.* with PetSmart's alleged policy of: (1) failing to pay minimum and overtime wages for all hours worked including time spent performing non-productive duties and working off-the-clock; (2) failing to reimburse for reasonably incurred work-related expenses (including grooming tools and equipment); (3) failing to compensate for meal and rest period violations; (4) failing to properly calculate vacation pay; (5) failing to timely and properly pay wages due upon termination of employment; (6) failing to provide suitable seats; and (7) engaging in unlawful/unfair business practices.

11.    On April 9, 2013, the parties engaged in mediation with mediator Jeffrey Ross. Although the parties were unable to reach a settlement agreement on the day of the mediation, the parties continued their settlement negotiations through mediator Jeffrey Ross and ultimately, on in June 2013, accepted the mediator's proposal, reaching the settlement on the terms for which they now seek final approval. The parties devoted substantial time and effort to reaching a proposed settlement. At all times, the negotiations were conducted at arms' length and through the mediator. The fee discussions were handled separately and after the discussion of substantive relief that PetSmart agreed to pay to the settlement class. The mediator proposed a 33 1/3% amount for attorney's fees after mediating the case extensively. The mediator also made a mediator's proposal that because the fees were negotiated separately that in the event that less than the full amount of fees be awarded that the un-awarded portion revert back to the defendant. At all times, the negotiations were conducted at arms' length and through the mediator.

12.    On March 7, 2014, the parties attended the hearing on Plaintiffs' Motion for Preliminary Approval, at which time this Court requested that the parties submit supplemental briefing clarifying specific provisions of Settlement. Specifically, the Court asked the parties to provide supplemental briefing addressing the following: (1) the provision in the Settlement Agreement that any amount not

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

awarded by the Court to class counsel for attorney's fees will be retained by Defendant and will not increase the amount available for distribution to the settlement class members; (2) a lodestar cross-check of class counsel's requested attorney's fees; (4) the sampling methodology utilized for the valuation of the Plaintiffs' claims and allocation of settlement funds among the settlement classes; and (5) the reasonableness of the amount of the incentive awards requested by each of the four Plaintiffs. On March 28, 2014, the parties filed their supplemental briefs in support of Plaintiffs' Motion for Preliminary Approval. A review of the record regarding negotiations with PetSmart clearly shows that the negotiation process and ultimate settlement are free from collusion as the negotiations were conducted at arms-length through a well-respected neutral mediator, supporting a finding of non-collusion and the fee discussions were handled separately and after the discussion of substantive relief that PetSmart agreed to pay to the settlement class.

13. Since the Court granted preliminary approval of the settlement on May 14, 2014, the parties have been working cooperatively and diligently to ensure that the settlement claims procedures were accurately implemented by Simpluris. Due to the amount and complexity of the class data as well as the format in which the class data was maintained by Defendant, Simpluris required additional time to complete the mailing of the Class Notice and Claim Forms. On June 20, 2014, the parties filed a Joint Stipulation to Continue Hearing on Plaintiffs' Motion for Final Approval and Related Dates Pursuant to This Court's Order Granting Preliminary Approval of Class Action Settlement, which this Court granted on June 24, 2014. (Doc. 74). On November 7, 2014, the parties filed a Joint Stipulation Regarding Modification of Settlement Stipulation clarifying specific terms of the Settlement Agreement, which this Court granted on November 14, 2014. (Doc. 86).

14. On February 13, 2014, Jeanette Negrete (a Plaintiff in the related action pending in the U.S.D.C. Northern District, *Negrete v. PetSmart, Inc.*, Case No. 5:13-cv-04300-EJD) filed an *ex parte* motion to intervene (Doc. 42) in the instant lawsuit, which was denied by Court Order dated February 26, 2014 (Doc. 55). Negrete appealed that denial on March 26, 2014 (Doc. 64). The parties have worked cooperatively and extensively to address Negrete's concerns raised in the intervention motion. In part, the modified Settlement Agreement added Jeanette Negrete's counsel of record, Capstone Law APC as additional Class Counsel, as "Pet Stylists Settlement Class Counsel", and added Jeanette Negrete as an

DECLARATION OF GRAHAM S.P. HOLLIS

additional class representative. On February 4, 2015, Negrete field a motion to voluntarily dismiss her appeal, which was granted on February 6, 2015.

15.    As part of the modified Settlement Agreement, I agreed that my firm, as Lead Class Counsel, would apply for an award of fees of up to 28.83% of the Total Settlement Amount (or $2,883,000), and costs incurred by my firm, and that Pet Stylist Settlement Class Counsel Capstone Law APC would apply for an award of fees of up to 4.5% of the Total Settlement Amount (or $450,000), and costs incurred by Pet Stylist Settlement Class Counsel.  Additionally, as part of the modified Settlement Agreement, Plaintiff Jeanette Negrete shall serve as one of the Class Representatives for the Pet Stylist Settlement Class and shall request a service award payment in the amount of $5,000. The Court approved the modified Settlement Agreement (Ex. B hereto) in its November 14, 2014 Order (Doc. 86).

## DISCOVERY AND INVESTIGATION

16.    In preparation for the mediation, my office prepared a comprehensive damage analysis based on information gathered from class member interviews and employment data provided by PetSmart. The putative class members worked at 132 PetSmart locations throughout California. The parties engaged in extensive negotiations to arrive at a method to examine the wage and hour policies and practices at a representative sample of the Petsmart locations. The parties agreed that 10% of the locations (selected randomly utilizing an Excel Randomizer program) would provide an adequate sample. PetSmart produced employment data and documents for non-exempt employees from 14 stores of its 132 California stores. PetSmart produced in excess of 33,000 pages of documents as well as electronic personnel and payroll data regarding PetSmart's employees. My office spent numerous hours analyzing this information and data. Additionally, PetSmart provided my office with the names and contact information of all current and former non-exempt employees employed at the 14 sample stores. Lead Counsel interviewed current and former employees from the following California PetSmart locations: Freemont, Irvine, Merced, Milpitas, Santa Maria, Sacramento, Mountain View, Lancaster, La Jolla, Palmdale, Pelandale, Rohnert Park, Santa Cruz, San Jose, San Leandro, Santa Maria, Shingle Springs, Tustin, and Oceanside. Some of the class members interviewed by Plaintiffs' counsel worked at multiple PetSmart locations throughout California. The information exchanged and investigation undertaken allowed Class Counsel to assess the strengths and weaknesses of the claims and the benefits

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

of the settlement under the circumstances of this case.

17.     In March 2013, Defendant took the deposition of each of the four named Plaintiffs in this case. The parties each propounded one set of special interrogatories and requests for production of documents but agreed to hold off on serving their responses until after the completion of mediation in order to preserve the parties' resources and time and focus their efforts on resolving the case at mediation.

## THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

18.     Based on my overall experience in this type of litigation, I believe that the settlement achieved is fair, reasonable and adequate and represents a great result for the Settlement Class Members. As detailed in my Declaration in Support of Preliminary Approval, Ex. A hereto.

19.     PetSmart has committed to paying the Net Distribution Amount of $6,322,500, none of which will revert to PetSmart because any unclaimed funds will be redistributed to the participating settlement class members, not to exceed three times their original claim amount, with the remaining unclaimed funds distributed to the cy pres beneficiary mutually designated by the parties.

20.     Plaintiffs' claim for unpaid minimum wages for non-productive time, comprising the majority of the value of the claims in this case, is a very challenging claim to prove given the fact that PetSmart does not require groomers to record the start and end times of each grooming job, making it very difficult to estimate the average amount of time spent on non-grooming tasks (i.e. non-productive time).

21.     The proposed settlement is both fair and reasonable in light of Defendant's available legal and factual grounds for defending against the asserted vacation claims. The significant benefits provided to the Settlement Class through the settlement and the resolution is extremely fair and adequate and well within the range of reasonableness in comparison to similar wage and hour cases against Defendant PetSmart, Inc.

22.     In December 2008, the United States District Court for the Eastern District granted final approval in *Sorenson, et al v. PetSmart, Inc.* (E.D. Cal. Case No.: 2:06-cv-02674-JAM-DAD) ("Sorenson lawsuit"). The Sorenson lawsuit alleged wage and hour violations involving the same Labor Code provisions as in the instant case, including violations of California Labor Code section 226.7 for

DECLARATION OF GRAHAM S.P. HOLLIS

failure to provide meal and rest breaks and derivative claims for Labor Code sections 203, and 226. The Sorenson lawsuit settled for a reversionary maximum settlement amount of $1,950,000 on behalf of two sub-classes, Groomers and Non-Groomers, with a total of 21,813 class members. The settlement was allocated between the two sub-classes, with 62% of the net settlement sum allocated to the Groomer Class and 38% allocated to the Non-Groomer Class based on the respective valuation of the claims of the sub-classes. The Court approved the settlement, awarding class counsel $585,000 (30% of maximum settlement amount), and an incentive award to the named Plaintiff of $15,000.  Because the amount of any unclaimed funds reverted to PetSmart and the settlement had a minimum distribution of 60% of the net settlement fund, the total payout to the two sub-classes was $747,000, with $463,140 distributed to the Groomer sub-class, and $283,860 distributed to the Non-Groomer sub-class, with a total of 4,442 claims paid.

23.    In April 2009, the United States District Court for the Eastern District granted final approval of another settlement reached by *PetSmart in Enabnit, et al. v. PetSmart, Inc*. (E.D. Cal. Case No.: 2:07-cv-00165-JAM-DAD) ("Enabnit lawsuit"). The Enabnit lawsuit alleged various wage and hour violations on behalf of three sub-classes including "commissioned salon employees" (i.e. groomers) for various Labor Code violations including a claim for failure to pay minimum wages and failure to provide reimbursement for grooming tools to commissioned salon employees. The Enabnit lawsuit also settled for a reversionary maximum settlement amount of $1,950,000 on behalf of three sub-classes, "employees without direct deposit" (sub-class A), "commissioned salon employees" (sub-class B), and "salon employees" (sub-class C), with total of 20,455 class members.  Because the amount of any unclaimed funds reverted to PetSmart, the total payout to the three sub-classes was $369,665, with a total of 1,790 claims paid. The Court approved the settlement, awarding class counsel $570,000 (29.23% of the max settlement amount), and an incentive award to the named Plaintiff of $30,000.  The Enabnit lawsuit alleged a minimum wage claim and a tool claim on behalf of sub-class B, the commissioned salon employees, nearly identical to the Moore allegations. The result of the Enabnit lawsuit was that PetSmart's groomer employees released their minimum wage claim through December 1, 2008. Because there were overlapping classes in Sorenson and Enabnit, the Enabnit settlement agreement specifically excluded claims that were being litigated in the first-filed Sorenson action.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS

24.     Although the Sorenson settlement released Labor Code § 203 claims for waiting time penalties, it did not award the former employees, the only employees entitled to a waiting time penalty, any additional monetary recovery.  In contrast, the settlement in this case specifically includes a Waiting Times Penalties Settlement Sub-Class, the members of which will receive an additional monetary recovery of either $200 or $400 depending on whether they are a part of the Pet Stylist Settlement Class or Non-Exempt Employee Settlement Class, in addition to the monetary recovery they receive for their claim. On an individual basis, members of the Pet Stylist Settlement Class who are also members of the Waiting Time Penalties Settlement Sub-Class will receive a greater amount ($400 per individual) as a waiting time penalty because, according the PetSmart's employment records, individuals in the Pet Stylists Settlement Class earned significantly more on average in gross compensation than members of the Non-Exempt Employee Settlement Class.

25.     Both the Sorenson and Enabnit settlements were distributed on a workweek basis, whereas the Moore settlement will be distributed based on class members' W-2 income.  The parties agreed that it is more equitable to use gross compensation earned instead of the number of workweeks worked to calculate Individual Settlement Amounts.  A detailed analysis of PetSmart's payroll records revealed that there was a wide range of hourly rates earned by the Petsmart employees, particularly among groomers. Additionally, many employees worked part-time. Based on our investigation, we determined that those employees who worked more hours were more likely to suffer more unpaid time. Also the higher the hourly rate for an employee that suffers unpaid time, the greater will be the amount of money owed to the particular employee.  If the class members were paid from the settlement based on workweeks this might result in an inequitable distribution of the settlement. Employees who worked fewer hours per week or were paid less might be paid the same amount per work weeks there coworkers who had more unpaid time or lost more because their hourly rate was higher.  By paying the class members according to their relative W-2 income during the class period the allocation is much more likely to be fair.

26.     At the time this case was brought, the result was far from certain.  PetSmart's compensation scheme at issue here had been in place for years.  Plaintiffs' theory for unpaid wages for commissioned Pet Stylist employees for non-productive time and time spent taking rest breaks was a

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

novel and very risky claim at the time of the mediation.  This theory had not yet been tested and there was very little supporting case law.  Plaintiffs' theory was presented long before the holding in *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36 (2013) (holding that failing to pay employees for time spent performing tasks other than tasks paid on a piece-rate basis was unlawful) and before *Bluford v. Safeway Stores, Inc.,* 216 Cal. App. 4th 864 (2013) (holding that employer's liability for failing to provide paid rest periods to drivers paid on mileage basis was a common issue which predominated over individual issues).  Additionally, Plaintiffs' novel claim for unpaid minimum wages for non-productive time, comprising the majority of the value of the claims in this case, is a very challenging claim to prove given the fact that PetSmart does not require groomers to record the start and end times of each grooming job, making it very difficult to calculate the amount of time spent on non-grooming tasks (i.e. non-productive time). Furthermore, there was a serious risk as to whether Plaintiffs would be able to obtain class certification and thereby recover on behalf of all employees in the class.  If the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely.  Even if the Court were to certify the class, there is no guarantee that the certification would survive through trial, as Defendant may seek decertification or modification of the classes. Additionally, the amount Plaintiffs might recover if they prevailed at trial is uncertain.  The Settlement reached here was possible only because we were able to convince Defendant that Plaintiffs could prevail on the difficult and novel legal issues regarding unpaid wages non-productive time, achieve class certification, overcome difficulties in proof as to monetary relief and take the case to trial if need be.

27.    The settlement also provides additional value in the form of forward-looking relief because, as a direct result of this settlement, PetSmart has revised its compensation policy for commissioned Pet Stylist employees and as of January 2014, PetSmart pays these employees a commission and an hourly rate as opposed to a commission or an hourly rate. Additionally, PetSmart has agreed to provide grooming tools for its in-store salons to be used by Pet Stylists.  As part of this Settlement, PetSmart retained a safety and ergonomic consultant to conduct an ergonomic evaluation of PetSmart's practices and to review PetSmart's policies and procedures with regard to whether Pet Stylists are allowed to sit while performing grooming tasks.  (Settlement Agreement § IV (4.11(a) – (d).)

28.    The settlement also provides that any unclaimed funds shall be first used to pay

DECLARATION OF GRAHAM S.P. HOLLIS

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

PetSmart's share of any employer side payroll taxes owed. Any Net Distribution Amount remaining after the payment of employer taxes shall be paid to the Legal Aid Society – Employment Law Center ("ECL") as the cy pres beneficiary. (Settlement Agreement Section IV, ¶ 4.5(c)). The ECL is a well-respected non-profit organization that provides civil legal services to the indigent and pro bono employment law advice to low-income communities.

29.   While the parties have disagreed over the scope of PetSmart's exposure to the alleged claims as well as the merits of the claims themselves, counsel for both parties agree that the settlement reach is fair, reasonable, and adequate and is in the best interest of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay and defenses asserted by PetSmart.

**THE NOTICE PROCEDURE WAS PROPERLY CARRIED OUT AND ITS RESULTS INDICATE STRONG SUPPORT FOR, AND NO OPPOSITION TO THE SETTLEMENT**

30.   Simpluris, the Settlement Administrator approved by the Court, fully and faithfully carried out the Court's Preliminary Approval Order and the Court's 11/14/14 Order granting the parties' Joint Stipulation Regarding Modification of Settlement Stipulation by mailing the Notice Packet to the 19,701 class members. Simpluris has worked diligently with Class Counsel and counsel for Defendant to efficiently administer the settlement process. This process, however, has not been without its challenges due to the size of the class, the format in which the data for each class member was maintained, and the transient nature of employees in this field. In order to ensure that we were able to deliver the class notice to every class member. Simpluris has been sending weekly status reports to my firm, counsel for Jeanette Negrete and counsel for Defendant, so each would be advised of the progress of the settlement administration.

31.   Prior to mailing the Notice and Claim Forms, Simpluris performed an in-depth Accurint skip trace on all class members, who according to the records of PetSmart are former employees, which included approximately 11,119 former employees. Simpluris was able to locate 6,517 new addresses which were updated prior to the mailing of the Notice Packets. The 6,517 new addresses generated by the Accurint skip trace were obtained subsequent to fist utilizing the National Change of Address Database maintained by the U.S. Postal Service. I believe that the significant response rate is due in

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

large part to these extraordinary efforts made to locate the most up to date addresses for the class members, particularly the former employees of Petsmart, many of whom had moved one or more times subsequent to separating from their employment with Petsmart. Pursuant to the settlement stipulation Simpluris also established and maintained a website with the URL www.petsmartsettlement.com that class members could use to file a Claim Form, track the processing of the Claim Form, and contact the Settlement Administrator if they had questions. A significant number, approximately 16.26% of Settlement Class Members, utilized the website to submit a Claim Form.

32.     On December 19, 2014, Simpluris mailed a reminder postcard to 14,858 current and former Settlement Class Members who had not responded to the initial mailing, reminding these Settlement Class Members of their deadline to respond and participate in the Settlement.

33.     On January 9, 2015, Simpluris mailed a reminder postcard to 2,662 current Settlement Class Members who had not responded, reminding them of their deadline to respond and participate in the Settlement and advising current employees that they would not suffer any retaliation for agreeing to participate in the settlement.

34.     The results of the notice procedures are sufficient to support final approval. Of the 19,701 Notices mailed, just 941 were returned as undeliverable as of the date of the filing of this Motion. As of the date of the filing of this Declaration, 9,799 valid and timely Claim Forms were received by Simpluris.  Monetarily, this represents a monetary value to the Claimants of $4,358,026.83 (68.93%) of the Net Distribution Amount.  Given the size of the class, this is a significant return rate that strongly supports the fairness, reasonableness, and adequacy of the settlement. Notably, only 6 individuals filed a request for exclusion and no objections to the Settlement have been filed since the mailing of the Notice. After the redistribution of the unclaimed funds, all of the $6,322,500 of the Net Distribution Amount will be paid to the Claimants.

35.     After the unclaimed funds are redistributed the Settlement Administrator calculates that each participating class member will be entitled to recover an average Individual Settlement Amount of approximately $645.02. The largest Individual Settlement Amount is estimated to be $15,705.64.

36.     It is my opinion that the results of the notice procedures strongly favor final approval of the Settlement.

DECLARATION OF GRAHAM S.P. HOLLIS

Graham**Hollis** APC
3555 Fifth Avenue
San Diego, California 92103

**THE REQUESTED ATTORNEY'S FEES AND COSTS ARE REASONABLE**

37.     My firm's representation of Plaintiff and the Class Members was entirely contingent on winning their wage and hour claims and collecting an award of attorney's fees.  Plaintiffs were not able and were not responsible for paying our fees, and my firm would only collect attorney's fees if we were successful on prosecuting their claims on their behalf.

38.     Although I believe the appropriate method of calculating the fees award is the percentage-of-the-fund method, a lodestar cross-check confirms the reasonableness of my firm's requested fees. My firm's requested fee award of $2,883,000 is equal to 28.83% of the Total Settlement Amount.

39.     I headed a team of lawyers and paralegals at my firm in pursuit of this Settlement. All of the work performed by my office has been under my direct supervision. The primary associate on this case has been Marta Manus who has been a member of the State Bar since 2008 and has extensive wage and hour class action experience.  The primary paralegal on this case has been our senior paralegal Jeremy B. Freedman, who earned his paralegal certificate in 2010 from the University of San Diego and is also Practical Training of Law Student (PTLS) certified by the State of California Bar.

40.     To date, my firm's lodestar is $1,541,353.50 and the lawyers and paralegals in my firm have spent 3,367 hours litigating this case.  All of the time is recorded contemporaneously and billed in increments of tenths of an hour.  I have supervised the work on the case. I have practiced law in California since 1985 and my practice is almost exclusively devoted to handling wage and hour class action litigation.  My hourly rate is $720 which I believe is reasonable given my experience and the nature of the work involved.  The primary handling associate assigned to the file is Marta Manus who has practiced law in California since 2008. Her hourly rate is $480.  Several experienced paralegals have performed the majority of the paralegal work on the case and their hourly rate is $225 - $215.

41.     The billing rates for the lawyers and paralegals who primarily worked on this case are as follows:

| | |
|---|---|
| Graham Hollis/Partner/Admitted 1985 | $720 |
| Marta Manus/Associate/Admitted 2008 | $480 |
| Sabrina Montalvo/Associate/Admitted 1999 | $430 |

DECLARATION OF GRAHAM S.P. HOLLIS

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

| | |
|---|---|
| Senior Paralegal | $225 |
| Paralegal | $215 |

42. These hourly rates are fair and reasonable given the nature and complexity of the class action litigation and experience level of the timekeeper. As a lawyer who practices class action employment law throughout California I regularly attend seminars and have frequent contact with other members of the legal community who work in the employment law class action field. Based on information I receive from these sources, I believe the hourly billing rates charged by my lawyers are well within the customary rates charged by other experienced employment law class action law firms in the community.

43. My firm has incurred expenses for items such as filing fees, mediation fees, travel, postage, online research, telephone, and copying, in the amount of $42,093.90 including costs to be incurred in attending the hearing on The Final Approval Motion. These are categories of expenses for which my firm and other law firms customarily charges its fee-paying clients. In addition to these expenses.

44. The final billable time summary includes 55 hours of attorney time and 20 hours of paralegal time which is anticipated to be incurred in preparation of preparation for oral argument at the Final Approval Hearing, traveling to San Jose to attend the Final Approval Hearing, and carrying out post-settlement tasks such as claims administration and contacts with class members.

45. After exercising partner discretion in reducing some billed hours, the following summarized the hours spent by the respective time keeper:

| Timekeeper | Hours | Billable Rate |
|---|---|---|
| Graham Hollis/Partner | 823.2 | $720 |
| Marta Manus/Associate | 1,345.10 | $480 |
| Sabrina Montalvo/Associate | 181.90 | $430 |
| Kristina De La Rosa/Associate | 38.5 | $375 |
| Jeremy B. Freedman/Sr. Paralegal | 409.10 | $225 |

DECLARATION OF GRAHAM S.P. HOLLIS

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

| Senior Paralegal | 267 | $225 |
|---|---|---|
| Paralegal | 215.80 | $215 |
| Case Manager | 59.20 | $140 |
| Other Associates | 27.20 | various |
| **Total** | 3,367.00 hours | |

46.     I believe the attorney's fees in the amount of $2,883,000 requested in this case are reasonable when cross-checked against the lodestar amount we have already incurred in prosecuting and settling the litigation.  The total lodestar is $1,541,353.50, and thus only necessitates a 1.88 multiplier, an amount which is well within the range which is customarily awarded in complex class action litigation like the present case.

### LEAD CLASS COUNSEL HAS RECEIVED THE 25% BENCHMARK, OR MORE, IN ATTORNEY'S FEES IN SIMILAR WAGE AND HOUR CLASS ACTION LITIGATION

47.     Although case law supports as high as a 50% fee award on common settlement funds of less than $10 million, my firm requests a $2,883,000 fee award which is 28.83% of the $10 million Total Settlement Amount.  As such, the amount requested is just slightly more than, requiring only a modest multiplier, the benchmark in the Ninth Circuit and is both "reasonable and fair" in light of the amount of work performed by my firm, and the amount of resources and labor employed in the representation of the class claims.

48.     The following is a sample of my firm's attorneys' fee awards, as class counsel, that have been approved by federal courts:

a.     I was class counsel with two other firms in Corral v. Lifecare Solution, Inc., United States District Court for the Central District of California, Case Number 12-cv-10074-FMO (PJW).   In 2014, Judge Fernando M. Olguin awarded class counsel a fee representing 30% of the $3,000,000 common fund. The case was settled prior to class certification as is the case here.

///
///

DECLARATION OF GRAHAM S.P. HOLLIS

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

b.    In Lopez v. G.A.T. Airline Ground Support, et al., United States District Court, Case Number 09-cv-2268-AJB (BGS) Judge Anthony Battaglia awarded a 25% fee award on a $600,000 common fund settlement including 1,394 class members.

c.    In Singer v. Becton Dickinson and Co., United States District Court for the Southern District of California, Case No. 08-cv-821-IEG, 2010 WL 2196104 (S.D. Cal. June 2010). Presiding Judge Irma Gonzalez awarded my firm a fee representing 33.33% of the $1,000,000 common fund.

d.    I was class counsel in Birch, et al. v. Office Depot, United States District Court for the Southern District of California, Case Number 06CV 1690 DMS. There, Judge Dana Sabraw awarded a fee representing 40% of the common fund which totaled $16,000,000 on claims made settlement.

e.    In Ingalls v. Hallmark Marketing Corp., United States District Court for the Central District of California, Case Nos. CV08-04342 VBF9 Ex), CV08-05330 VBF (FFMx), and CV08-0748 VBF (Ex), I was class counsel along with two other firms. Judge Fairbanks awarded a fee representing 33.33% of the $5,625,000 common fund.

f.    In Cook v. Tiffany and Co., Case No. 09-cv-2634 JL (JMA) (S.D. Cal. 9/19/2011), Judge James Lorenz awarded Lead Class Counsel attorney's fees totaling $1,029,270 representing approximately 25% of the common fund yielding a 1.8 multiplier in a wage an hour class action lawsuit affecting approximately 1,584 class members.

g.    In Delatorre v. Johnson Controls, Case No. 13-cv-03214 PSG (S.D. Cal. 1/14/2015), Judge Paul S. Grewal granted a 25% fee award resulting in a 2.0 multiplier on a $2 million dollar settlement involving over 920 class members

h.    In Ellis v. Pacific Bell Telephone Co., Case No. SACV11-00627 CJC (FFMx), Judge Cormac Carney awarded Lead Class Counsel a $1,033,333 fee award representing 33.33% of the common fund.

49.    My firm seeks reimbursement for out-of-pocket costs, of $42,093.91. The costs are summarized as follows:

///

DECLARATION OF GRAHAM S.P. HOLLIS

| | |
|---|---|
| Court Filing Fees | $    503.00 |
| Attorney Service/Messenger | $  1,331.50 |
| Online Research | $  3,075.56 |
| Mediator's Fee | $  4,500.00 |
| Photocopies | $ 12,724.78 |
| Document Imaging | $  1,338.80 |
| Faxes | $    259.00 |
| Postage/Overnight mail | $  1,611.02 |
| Telephone | $  1,442.50 |
| Travel Expenses (counsel and client to mediation | $ 11,665.50 |
| And court hearings) | |
| **TOTAL** | **$ 42,093.91** |

50.    These are categories of expenses for which I and other law firms customarily bill their fee-paying clients and are reasonably necessary to the litigation of the claims presented in this case.

51.    I believe that all of these fees and costs are reasonable and was necessarily incurred in pursuit of the Settlement. I request that the court utilize this lodestar in evaluating and determining that $2,833,000 in fees requested to be a reasonable amount to properly represent the interests of the Settlement Classes.

### THE CLASS REPRESENATIVE SERVICE AWARDS ARE WELL JUSTIFIED

52.    Under the terms of the Settlement Agreement, Plaintiffs Danette Moore and Latresa Myers seek a service award payment in the amount of $5,000 each and Plaintiffs Alanna Harrison and Alisa Valdez seek a service award payment in the amount of $10,000 each for their service to the Settlement Class. By stepping forward and attaching their names to a class action lawsuit that in this internet age could be easily be discovered by prospective employers demonstrates that the Plaintiffs placed the interest of the Settlement Class above their own.  Additionally, Plaintiffs made the decision, from the very beginning of the litigation, to protect the interest of the Settlement Class by not wavering from their decision to prosecute and settle the claims on behalf of putative class members for a settlement that was in the best interests of the Settlement Class.

DECLARATION OF GRAHAM S.P. HOLLIS

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

53.     As detailed in their declarations,[1] the Plaintiffs have spent a great deal of time and effort in assisting me and my associate with the litigation of this case.  They maintained regular contact with us and were easily reachable for assistance and information.  All four Plaintiffs were deposed and had to travel to Oakland for the mediation and San Francisco for their depositions.  Plaintiffs Harrison and Valdez were both current employees of PetSmart at the San Leandro store when this lawsuit was filed in May 2012.  They genuinely and realistically feared workplace retaliation because they were filing a lawsuit against their current employer. In July 2012, the online forum Law360 published an article about the lawsuit identifying all four of the class representatives by first and last name.  As a result a Google search will identify several articles which identify them as being the employees who filed the lawsuit against PetSmart and they have legitimate concerns that this information might easily discourage a prospective employer from hiring them in the future. Overall, the four Plaintiffs have done an exceptional job participating and assisting us through the course of this lawsuit.  As attested in their declarations, Plaintiffs: (1) assisted Lead Class Counsel in the pre-litigation investigation, in identifying witnesses and in locating evidence to support Plaintiffs' claims; (2) assisted in the preparation of the complaint and pleadings in this action; (3) had their deposition taken in San Francisco; (4) attended the full-day mediation; (5) made themselves available to answer questions and remain current and informed regarding the progress of the litigation and settlement; and (6) agreed to put the interests of the class members above their own self-interests at all times throughout this litigation. The four Plaintiffs were a crucial participant in the prosecution of this litigation and incurred significant personal risk by suing PetSmart.  Each Plaintiff incurred the risk of losing and being subject to court-ordered defense costs and attorneys' fees. Plaintiffs Harrison and Valdez, who were both current employees at the time of the filing of the lawsuit, faced increased risk of retaliation by suing their current employer.

**THE PAYMENT OF PAGA PENALTIES TO THE LWDA IS REASONABLE**

54.     The settlement of the claim for penalties under the Private Attorneys General Act

---

[1] Declaration of Danette Moore in support of Plaintiffs' Motion for Preliminary Approval, Ex. D hereto; Declaration of Latresa Myers in support of Plaintiffs' Motion for Preliminary Approval, Ex. E hereto; Declaration of Alanna Harrison in support of Plaintiffs' Motion for Preliminary Approval, Ex. F hereto; Declaration of Alisa Valdez in support of Plaintiffs' Motion for Preliminary Approval, Ex. G hereto; Declaration of Alisa Valdez in support of Plaintiffs' Supplemental Brief in support of Plaintiffs' Motion for Preliminary Approval, Ex. H hereto; Declaration of Alanna Harrison in support of Plaintiffs' Supplemental Brief in support of Plaintiffs' Motion for Preliminary Approval, Ex. I hereto.

DECLARATION OF GRAHAM S.P. HOLLIS

("PAGA") for $50,000.00, or 0.50% of the Total Settlement Amount, is reasonable under the circumstances. The parties negotiated a good faith amount for PAGA penalties, and this amount was not the result of self-interest at the expense of the Settlement Class Members. Of this amount, 75% ($37,500) will be paid to the LWDA, and 25% ($12,500) will be distributed to Settlement Class Members who file a valid Claim Form ("Claimants") in addition to their pro rate settlement shares. (Settlement Agreement §IV (4.7).

### THE PAYMENT OF THE SETTLEMENT ADMINISTRATOR'S FEES AND COSTS IS REASONABLE

55.     Simpluris provided the parties with an estimate for the cost of administration of the settlement, with a fee that was estimated not to exceed $105,000. Simpluris has now documented fees and costs totaling $119,500. Simpluris' fees and costs were previously estimated based on a class size of approximately 16,413 and based on the considerable experience of Simpluris in handling these types of class action administrations they an anticipated a response rate of 40%. However, the class size was ultimately 19,701 and the response rate of 50.24%, was well above the estimated response rate and created more work for the administrators. The parties have agreed that the additional $14,500 fees and costs incurred by Simpluris, if approved by the court, will be paid from the Reserve Fund. The Reserve Fund of $100,000 is allotted for use to, among other things, resolve any such disputes. The unused portion of the Reserve Fund will revert to the Net Distribution Amount, to be distributed to the Settlement Class Members. (Settlement Agreement § I (1.16)).

///

///

///

///

///

///

///

///

///

DECLARATION OF GRAHAM S.P. HOLLIS

56.     All amounts were necessarily incurred in sending the Notice to the Settlement Class Members, sending reminder postcards, preparing materials, answering questions from Settlement Class Members, performing settlement calculations, and executing other settlement administration tasks. The requested fees and costs are reasonable given the complexity of the settlement calculations in this case and the size of the Settlement Class.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on February 10, 2015, in San Diego, California.


                              /s/ Graham S.P. Hollis
                              GRAHAM S.P. HOLLIS
                              Email: ghollis@grahamhollis.com

DECLARATION OF GRAHAM S.P. HOLLIS

# EXHIBIT A

GRAHAM**HOLLIS** APC
GRAHAM S.P. HOLLIS (SBN 120577)
ghollis@grahamhollis.com
MARTA MANUS (SBN 260132)
mmanus@grahamhollis.com
3555 Fifth Avenue
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| DANETTE M. MOORE, LATRESA MYERS, ALANNA HARRISON and ALISA VALDEZ individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PETSMART, INC, and Does 1 through 100, inclusive,<br><br>Defendants. | Case No.:   12-CV-03577 EJD<br><br>**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ORDER (1) PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS; (2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (3) APPROVAL OF CLASS NOTICE AND NOTICE PLAN; (4) APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES; AND (5) SETTING A FINAL APPROVAL HEARING**<br><br>Date:       March 7, 2014<br>Time:       9:00 a.m.<br>Courtroom:  4 –5th Floor<br>Judge:      Hon. Edward J. Davila |

///
///
///
///
///
///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1

12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

I, Graham S.P. Hollis, state and declare:

1.      I am an attorney at law licensed to practice before all courts of the State of California.  I am a partner with the law firm of Graham**Hollis,** A.P.C. ("Graham**Hollis**") in San Diego, California.  I am thoroughly familiar with and have personal knowledge of all of the facts set forth herein.  If called as a witness, I could and would competently testify thereto.

2.      My law firm, Graham**Hollis** and my associate Marta Manus are the attorneys of record for Plaintiffs Danette Moore ("Moore"), Latresa Meyers ("Meyers"), Alanna Harrison ("Harrison"), and Alisa Valdez ("Valdez") (collectively "Plaintiffs"). I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement in the above captioned case which seeks an order for: (1) provisional certification of the settlement class; (2) preliminary approval of the class action settlement; (3) approval of notice and notice plan; (4) appointment of Graham**Hollis**, A.P.C. as Class Counsel, and Plaintiffs Danette Moore, Latresa Myers, Alanna Harrison, and Alisa Valdez Class Representatives; and (5) setting a final approval hearing.  The Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement") is attached hereto as Exhibit 1.

### Class Counsel's Class Action Experience

3.      I have been a member of the State Bar of California since 1985.  I am also admitted to practice in various Districts of United States District Court. I have personally tried many bench and jury trials to verdict in various courts in California.  I have represented employees and employers in employment litigation matters since 1995. My involvement in various forms of class action litigation spans more than twenty years.

4.      Over the course of just the past six years, I have been appointed as class counsel in the following employment cases, all of which were successfully resolved: Birch v. Office Depot, Inc., United States District Court for the Southern District of California, No. 06 CV 1690 DMS (WMC) (16,722 class members - 40% fee award on $14 M settlement); Malone, et al. v. Praxair Corporation, Superior Court for the County of San Bernardino (approximately 57 class members, 40% Fee Award); Singer v. Becton Dickinson and Co., No. 08-cv-821-IEG, 2010 WL 2196104, (S.D. Cal. June 1, 2010) (266 class members, 33.33% fee award); Weaver v. Hallmark Marketing Corporation, United States District Court for the Central District of California (3,846 class members, 33.33% fee award); Morales

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  v. Sony Corporation Inc., Superior Court for the County of San Diego (4,742 class members) (injunctive

2  relief settlement—full amount of requested Lodestar fees awarded); Thomson v. LawInfo.com, Superior

3  Court for the County of San Diego (33.33% fee award); Solis v. Check Agencies of California, Superior

4  Court for the County of San Diego (33.33% fee award); Vest v. Scher Tire, Inc., Superior Court for the

5  County of Riverside (approximately 768 class members, 33.33% fee award); Jackson v. Vulcan

6  Materials, Superior Court for the County of Ventura (37.5% fee award); Demers v. IHOP, Superior

7  Court for the County of San Diego (33.33% fee award); Fennessey v. Round Table Pizza, Inc., Superior

8  Court for the County of San Diego, (16,333 class members, 28% fee award requested and granted due to

9  defendant's financial condition); Falcon v. Flight Suits, Inc., Superior Court for the County of San

10  Diego (approximately 550 class members, 33.33% fee award and San Diego Superior Court); Cantu, et

11  al. v. AT&T, Superior Court for the County of Los Angeles (33.33% fee award); Bracy v. Speedy Cash,

12  Superior Court for County of San Bernardino (approximately 222 class members, 22.69% fee request

13  and awarded); Cook v. Tiffany and Company, United States District Court for the Southern District of

14  California (1,584 class members, $4,148,270 settlement); Irmen v. Raphael's Party Rentals, Superior

15  Court for the County of San Diego (845 class members, 40% fee award); Jeffries v. Praxair Services,

16  Inc., Superior Court for the County of San Bernardino (35% fee awarded); Julio v. L&M Tire Co., Inc.,

17  Superior Court for the County of San Diego (1,087 class members, 33% fee award); Calhoun v. General

18  Petroleum, Superior Court for the County of Los Angeles (approximately 300 class members, 40% fee

19  awarded); Scaglione, et al. v. M.O. Dion & Sons, Superior Court for the County of San Bernardino

20  (30% fee awarded); Johnson, et al., v. Anthony Charlton, Inc., d.b.a. Anthony's Auto Center, Superior

21  Court for the County San Diego; Mahoney v. AT&T Corp., Superior Court for the County of Los

22  Angeles, (approximately 719 class members, 33.33% fee awarded); Wright v. AMF Bowling Centers,

23  Inc., Superior Court for the County of Los Angeles (4,914 class members); Duarte v. Rainbow Disposal

24  Co., Inc., Superior Court for the County of Orange (110 class members, 40% fee awarded); Iskandaryan

25  v. Casual Male Retail Group, Inc., Superior Court for the County of Los Angeles (approximately 727

26  class members, 33% fee awarded); Lucarini v. Dresser, Inc., Superior Court for the County of Los

27  Angeles; Stevenson v. Falcon Critical Care Transport, et al., Superior Court for the County of Contra

28  Costa; Lopez v. GAT, United States District Court for the Southern District of California; Payton, et al.,

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

3                                                                    12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  v. Atlantic Aviation Investors, Inc., et al., Superior Court for the County of Orange (162 class members,

2  40% fee awarded); Chavez v. Real Time Staffing Services, Inc., Superior Court for the County of San

3  Diego; Wright v. Menzies Aviation, Superior Court for the County of Los Angeles; Williams v.

4  ABTTC, Superior Court for the County of Los Angeles; Turnage v. Park Management Corporation,

5  Superior Court for the County of Solano; Ellis v. Pacific Bell Telephone Company, et al., United States

6  District Court for the Central District of California (approximately 84 Class members, 33.33% fee

7  awarded); Casas, et al. v. Pacific Bell Company, Superior Court for the County of San Francisco; Laux

8  v. Van Nuys Skyways, Inc., et al., Superior Court for the County of Ventura; Green v. Lawrence Service

9  Company, United States District Court for the Central District of California; Well v. Hooters of

10 America, Superior Court for the County of San Diego; Escoto-Miranda v. Evans Tire Service Centers,

11 Inc., Superior Court for the County of San Diego; and

12         5.      I and my firm are serving as plaintiffs' counsel of record in the following wage/hour and

13 employment class action cases:  Jimenez v. Menzies Aviation, Inc., United States District Court for the

14 Northern District of California; Stoddart v. Express Services , Inc., United States District Court for the

15 Eastern District of California; Baldomero v. Isocare Convalescent Hospital, Superior Court for the

16 County of Los Angeles;; Ramos v. Okorocha, Individually and d.b.a. Isocare Convalescent Hospital of

17 Glendale, Superior Court for the County of Los Angeles; Huerta v. Venture Petroleum Company, Inc.,

18 Superior Court for the County of San Diego; Frugard v. Unified Protective Services, et al., Superior

19 Court for the County of Los Angeles; Clancy, et al. v. Scripps Health, Superior Court for the County of

20 San Diego; Ledbetter v. Entrepreneurial Ventures, Inc., Superior Court for the County of Santa Clara;

21 Lawton-Lewis v. Stronghold, LTD, Superior Court for the County of Contra Costa;  Fong v. Regis

22 Corporation, United States District Court for the Northern District of California; Solaberrieta v. Baker

23 Hughes Oilfield Operations, Inc., et al., Superior Court for the County of Los Angeles; Stafford v.

24 Dollar Tree Stores, Inc., United States District Court for the Eastern District of California; De La Rosa

25 v. Quten Research Institute, LLC, Superior Court for the County of San Diego; Flannery v. AGR Group

26 California, LLC, et al., Superior Court for the County of Orange; Radford v. ACD Direct, Inc., Superior

27 Court for the County of San Diego; Mora v. San Diego Auto Scrubber, Inc., Superior Court for the

28 County of San Diego; Madera v. Universal Alloy Corporation, Superior Court for the County of Orange;

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

4                                    12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

Exhibit A Page 4 of 30

1  Loveless v. ASM Affiliates, Superior Court for the County of San Diego; Jimenez v. Providian Staffing

2  Corporation, Superior Court for the County of Riverside; Letuligasenoa v. International Paper Company,

3  United States District Court for the Northern District of California; and Rodriguez v. Old Dominion

4  Freight Line, Inc., United States District Court for the Central District of California.

5       6.    I have served as defense counsel in the following class action cases: Garza, et al. v. SRH

6  Investments LLC, et al., Superior Court for the County of Los Angeles; Avila, et al. v. Gateway Ivey

7  Ranch Associates, et al., Superior Court for the County of San Diego; Cabrera, et al. v. Fieldstone

8  Communities, Inc., et al., Superior Court for the County of San Diego; Cheatwood, et al. v. Greystone

9  Homes, Inc., et al., Superior Court for the County of San Bernardino; Castro, et al. v. Kaufman & Broad

10 of Southern California, Inc. et al., Superior Court for the County of San Diego; Flores, et al. v. Eastlake

11 Trails Co. LLC et al., Superior Court for the County of San Diego; Pacheco, et al. v. WL Coral Gate

12 Associates, et al., Superior Court for the County of San Diego; Garcia, et al. v. Cambridge Homes, et al.,

13 Superior Court for the County of Riverside; Harris, et al. v. LNC Properties, LTD, et al., Superior Court

14 for the County of San Bernardino; Soriano, et al. v. Kaufman and Broad of Southern California, Inc., et

15 al., Superior Court for the County of Kern; Rodriguez, et al v. Epic Development Corporation, et al.,

16 Superior Court for the County of Kern; Gates, et al. v. Kaufman and Broad Coastal Valleys, Inc., et al.,

17 Superior Court for the County of Los Angeles; Zimmerman, et al. v. West Venture Development, Inc., et

18 al., Superior Court for the County of San Bernardino; Robles, et al. v. Rockfield Development

19 Corporation, et al., Superior Court for the County of San Bernardino; Riley, et al. v. So Cal Housing

20 Partners, LLC, et al., Superior Court for the County of San Bernardino; Castillo, et al. v. LNC Properties

21 LTD, et al., Superior Court for the County of San Bernardino; Reynoso, et al. v. DOES 1-50, inclusive,

22 Superior Court for the County of San Diego; Frais v. Forecast Group, Superior Court for the County of

23 Los Angeles; Haney v. The Presley Group, Superior Court for the County of Riverside; Le Doux v. KB

24 Homes, Superior Court for the County of Los Angeles; Long v. West Venture, Superior Court for the

25 County of Los Angeles; Manning v. Presley Homes, Superior Court for the County of Los Angeles;

26 McLellan v. Stratham Group, Superior Court for the County of Los Angeles; and Winkler v. West

27 Venture, Superior Court for the County of Los Angeles.

28       7.    In just the last 5 years my associate Marta Manus is or has served as plaintiffs' counsel,

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  or class counsel of record in the following wage/hour and employment class action cases: Stoddart v.

2  Express Services , Inc., United States District Court for the Eastern District of California; Fong v. Regis

3  Corporation, United States District Court for the Northern District of California; Jimenez v. Providian

4  Staffing Corporation, Superior Court for the County of Riverside; Letuligasenoa v. International Paper

5  Company, United States District Court for the Northern District of California; Calhoun v. General

6  Petroleum, Superior Court for the County of Los Angeles (approximately 300 class members, 40% fee

7  awarded); Scaglione, et al. v. M.O. Dion & Sons, Superior Court for the County of San Bernardino

8  (30% fee awarded); Mahoney v. AT&T Corp., Superior Court for the County of Los Angeles,

9  (approximately 719 class members, 33.33% fee awarded); and Cantu, et al. v. AT&T, Superior Court for

10  the County of Los Angeles (33.33% fee award); Ellis v. Pacific Bell Telephone Company, et al., United

11  States District Court for the Central District of California (approximately 84 Class members, 33.33% fee

12  awarded); Casas, et al. v. Pacific Bell Company, Superior Court for the County of San Francisco.

13      8.      Ms. Manus and I have extensive experience handling class actions, other complex

14  litigation and wage and hour claims, such as those asserted in this action.  Our knowledge of the

15  applicable wage and hour laws is evidenced by our representation of employees in numerous disputes

16  concerning receipt of pay in connection with their employment in state and federal courts in California.

17                          **The Settlement Terms**

18      9.      The basic terms of the proposed Settlement Agreement are as follows:

19          a.      PetSmart is to pay the total and all inclusive Total Settlement Amount of

20  $10,000,000 (the "Settlement Sum"), which includes all payments to the Settlement Class Members,

21  Settlement Class Counsel, California Labor and Workforce Development Agency, all tax obligations of

22  Plaintiffs, Settlement Class Members and PetSmart arising out of the settlement and the costs of

23  settlement administration.

24          b.      Settlement Class Members who submit a timely Claim Form ("Claimant") will

25  receive a portion of the Settlement Sum in an amount based upon the total gross compensation paid to

26  each Settlement Class Member by PetSmart between May 23, 2008 and the date of preliminary approval

27  of the Settlement ("Covered Timeframe").

28          c.      To the extent any Settlement Class Member, who does not file a request for

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

6                                                    12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  exclusion fails to submit a Claim Form, the Individual Settlement Amount attributable to that Settlement

2  Class Member shall be distributed to Claimants within that Settlement Class Member's Settlement Class

3  ("Pet Stylist Settlement Class" or "Non-Exempt Employee Settlement Class") in proportion to their

4  Individual Settlement Amounts.

5          d.    Plaintiffs will request, and PetSmart will not object to, an award of attorneys' fees

6  and costs of up to $3,333,333 (33-1/3% ) of the Total Settlement Amount to be deducted from the Total

7  Settlement Amount of $10,000,000. Subject to Court approval, Class Counsel will be paid reasonable

8  and actual costs incurred in prosecuting this Litigation from the Total Settlement Sum ("Litigation

9  Costs").

10          e.    Plaintiffs will request, and PetSmart will not object to, service awards to each of

11  the Class Representatives, as an enhancement for their services as Class Representatives (a total of

12  $30,000).

13          f.    The Settlement Administrator, Simpluris, which has been mutually selected by the

14  parties, will administer the Settlement, with the reasonable costs of administration to be paid from the

15  Total Settlement Sum.

16      10.    The proposed Settlement satisfies all of the criteria for preliminary approval under federal

17  law and falls well within the range of possible approval. The proposed Settlement Class is appropriate

18  for provisional certification for settlement purposes. Accordingly, Plaintiffs move the Court to: (1)

19  provisionally certify the settlement class; (2) preliminarily approve the Class Action Settlement; (3)

20  approve the class notice and notice plan; (4) appoint Class Counsel and Class Representatives; and (5)

21  set a final approval hearing.

22          **Case Background and Procedural History**

23      11.    This case involves the wage and hour claims of approximately 16,400 current and former

24  non-exempt employees who are eligible to participate in the settlement and who were employed by

25  PetSmart, Inc. California between May 23, 2008 and the present, the period covered by this Settlement.

26      12.    On July 5, 2011, Class Counsel, on behalf of Plaintiff Danette Moore and Plaintiff

27  Latresa Myers filed a notice with the Labor and Workforce Development Agency ("LWDA") alleged

28  that PetSmart had violation the Private Attorneys General Act of 2004, Labor Code section 2698, *et seq.*

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

Exhibit A Page 7 of 30

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

("PAGA") and various provisions of the California Labor Code.  On August 30, 2011, the LWDA provided notice to Plaintiff Moore and Plaintiff Myers and PetSmart of its intent not to investigate the allegations.   On August 30, 2011, Class Counsel, on behalf of Plaintiff Alanna Harrison and Plaintiff Alisa Valdez filed a notice with the LWDA alleged that PetSmart had violation the PAGA and various provisions of the California Labor Code.  On October 24, 2011, the LWDA provided notice to Plaintiff Harrison and Plaintiff Valdez and PetSmart of its intent not to investigate the allegations.

13.    On May 23, 2012, Plaintiffs filed this lawsuit in the Superior Court, County of Alameda on behalf of Plaintiffs and certain non-exempt California employees of PetSmart. Defendant removed the case to the United States District Court, Northern District of California on July 9, 2012.

14.    Plaintiffs' allege that PetSmart violated the California Labor Code, relevant Wage Order of the California Industrial Welfare Commission, and the California Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq*. with PetSmart's alleged policy of: (1) failing to pay minimum and overtime wages for all hours worked including time spent performing non-productive duties and working off-the-clock; (2) failing to reimburse for reasonably incurred work-related expenses (including grooming tools and equipment); (3) failing to compensate for meal and rest period violations; (4) failing to properly calculate vacation pay; (5) failing to timely and properly pay wages due upon termination of employment; (6) failing to provide suitable seats; and (7) engaging in unlawful/unfair business practices. In addition to the class action wage and hour claims, each of the four named Plaintiffs has an individual claim against PetSmart for failure to provide reasonable accommodation and failure to engage in the interactive process in violation of the California Fair Employment and Housing Act (FEHA).  Plaintiff Danette Moore also has an individual claim against PetSmart for wrongful termination in violation of public policy.  The proposed Settlement relates only Plaintiffs' class action and representative action claims.  Plaintiffs' individual claims have not yet been settled. The parties agreed to postpone settlement discussions related to Plaintiffs' individual claims until after the resolution of the class and representative action claims.

15.    Plaintiffs' allege that PetSmart's compensation scheme pays members of the Pet Stylists Settlement Class ("Pet Stylists") on a piece-rate basis because Pet Stylists are compensated for grooming services rendered at the rate of 50 % of the net sale price paid by the customer for the groom.

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1    PetSmart's compensation scheme pays Pet Stylists for time spent performing grooming services. Pet

2    Stylists have an hourly "fall back" rate. If a Pet Stylist's piece rate earnings in a given workweek do not

3    exceed what they would have earned at their fall back rate, PetSmart pays the hourly fall back rate for all

4    hours worked.  In these workweeks, it is undisputed that Pet Stylists are paid for all hours worked at

5    their fall back rate.  However, if the Pet Stylist earns more in piece rate in a given workweek than they

6    would have earned at their fall back rate, they are paid only the piece rate and are said to have

7    "commissioned out."  Plaintiffs' allege that in workweeks in which Pet Stylists commission out,

8    PetSmart fails to pay at least minimum wages for all hours worked because in addition to performing

9    grooming services, Pet Stylists are required to perform "non-productive" duties, work for which they do

10    not receive any additional compensation separate and apart from the piece-rate they earn while

11    grooming dogs. Non-productive duties include working in various departments throughout the store,

12    cashiering, assisting customers, stocking store shelves with product, taking inventory, cleaning the

13    grooming salon and grooming tools, making customer appointments, and answering the telephone in the

14    grooming salon.  Because Pet Stylists are not paid any additional wages during workweeks in which

15    they commission out, Plaintiffs allege that PetSmart fails to pay at any wages for the time spent

16    performing the non-productive duties. Defendant argued, that the existence of the fall back rate satisfied

17    their obligations to pay at least minimum wage for all hours worked in workweeks where the Pet Stylist

18    didn't commission out and that no additional wages were owed for time spent performing non-

19    productive duties or rest breaks. Defendant also argued that in workweeks in which Pet Stylists did

20    commission out, they earned more on average per hour than minimum wage and their fall back rate

21    when their piece rate compensation was averaged over the total number of hours worked in that

22    workweek.  Plaintiffs' argued that this pay averaging is illegal under California law. Additionally,

23    Plaintiffs allege that any time spent taking rest periods during workweeks when Pet Stylists

24    commissioned out was unpaid because Pet Stylists were only paid piece rate compensation in these

25    workweeks and were therefore not provided with paid rest breaks.

26        16.    Plaintiffs also allege that PetSmart failed to provide Pet Stylists with the necessary

27    grooming tools to perform their grooming job and failed to reimburse for the cost of grooming tools Pet

28    Stylists were required to purchase and maintain. PetSmart required Plaintiffs and other Pet Stylists to

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

9          12-CV-03577 EJD

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1    purchase a grooming tool kit in order to participate in the PetSmart grooming academy, which

2    employees had to complete prior to becoming a Pet Stylist. The grooming tool kit cost hundreds of

3    dollars. Additionally, throughout the course of their grooming career with PetSmart, Pet Stylists had to

4    purchase various grooming supplies including, among other things, grooming clippers, replacement

5    blades, scissors, and brushes.  PetSmart purported to provide the necessary grooming tools in the

6    grooming salon for the use of Pet Stylists.  However, in pre-mediation discovery, Plaintiffs obtained the

7    Grooming Tool Sign Out Sheets which showed that typically only one pair of grooming clippers was

8    available at each store for Pet Stylists to check out to borrow.  The Grooming Tool Sign Out Sheets

9    showed which Pet Stylist had checked out the single pair of clippers each shift, supporting Plaintiffs'

10   claim that Pet Stylists were not provided with adequate grooming tools and were in fact required to

11   bring their own grooming tools, including grooming clippers, to work every shift.  Additionally,

12   Plaintiffs obtained anecdotal evidence from the Pet Stylists interviewed that supported their position.

13        17.   On behalf of the Non-Exempt Employee Settlement Class, Plaintiffs allege that PetSmart

14   failed to provide its non-exempt employees with legally compliant meal and rest periods and failed to

15   pay wages for work performed off-the-clock because these employees were frequently interrupted by

16   PetSmart's customers during meal and rest breaks. PetSmart's policy required employees to assist

17   customers and sometimes this occurred while they were on a break. A frequent scenario was when an

18   employee clocked out for lunch at the time clock and then had to walk through the store to the break

19   room. Oftentimes the employees—who would be in uniform—would be asked questions by customers

20   while the employee was "off the clock."

21        18.   During the course of investigation, Plaintiffs learned that PetSmart calculates the vacation

22   wages of Pet Stylists by averaging the piece rate wages earned in the previous 26 weeks to obtain an

23   average hourly rate, which is then used to pay vacation wages. Because Plaintiffs allege that Pet Stylist

24   were not paid for all hours worked in workweeks when they commissioned out, Pet Stylists' vacation

25   wages were miscalculated and underpaid.

26        19.   Additionally, Plaintiffs allege that from 2005 through April 2011, PetSmart maintained

27   an illegal written meal and rest break policy, providing that employees receive one 30 minute unpaid

28   meal break if employees worked more than six hours but less than eight and one 15 minute rest break if

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1 employees work more than four hours but less than six. Plaintiffs' position is that the correct standard is

2 that a meal break should be provided on shifts greater than five hours and rest breaks on shifts of three

3 and a half hours or more.

4      20.   Counsel for the parties negotiated and jointly drafted the Joint Rule 26(f)

5 Report/Conference Statement and filed it with the Court on November 11, 2012. In the Joint Rule 26(f)

6 report, the parties indicated their willingness to attend mediation with a private mediator. The parties

7 agreed to postpone formal discovery to focus their efforts on mediation and settlement.

8      21.   Prior to commencement of formal discovery, the parties agreed to attend private

9 mediation with experienced employment law mediator Jeffrey Ross. The parties agreed that 10% of the

10 locations (selected randomly by Plaintiff's counsel utilizing an Excel Randomizer program) would

11 provide an adequate sample. PetSmart produced employment data and documents for non-exempt

12 employees from 14 stores of its 132 California stores, a 10.6% sample. PetSmart produced in excess of

13 33,000 pages of documents as well as electronic personnel and payroll data regarding PetSmart's

14 employees. Plaintiffs spent many hours analyzing this information and data. PetSmart provided

15 Plaintiffs with the names and contact information of all current and former non-exempt employees

16 employed at the 14 sample stores. Plaintiffs' counsel interviewed 47 putative class members, including

17 25 groomers, to obtain relevant information for mediation. Plaintiffs' counsel interviewed current and

18 former employees from the following California PetSmart locations: Freemont, Irvine, Merced,

19 Milpitas, Santa Maria, Sacramento, Mountain View, Lancaster, La Jolla, Palmdale, Pelandale, Rohnert

20 Park, Santa Cruz, San Jose, San Leandro, Santa Maria, Shingle Springs, Tustin, and Oceanside. Some of

21 the class members interviewed by Plaintiffs' counsel worked at multiple PetSmart locations throughout

22 California.

23      22.   In preparation for mediation, Class Counsel prepared a comprehensive damage analysis

24 based on information gathered from class member interviews and employment data provided by

25 PetSmart. Class Counsel prepared an extensive mediation brief containing detailed review of the

26 evidence and outlining the complex legal issues in this case. In February 2013, Plaintiffs took the

27 depositions of PetSmart's person most knowledgeable (PMK) about PetSmart's compensation policies

28 and practices for California employees as well as the PMK regarding PetSmart's compliance with IWC

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

11                          12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  Wage Order 7-2001. In March 2013, Defendant took the deposition of each of the four named Plaintiffs.

2  The parties each propounded one set of special interrogatories and requests for production of documents

3  but agreed to hold off on serving their responses until after the completion of mediation in order to

4  preserve the parties' resources and time and focus their efforts on resolving the case at mediation. I

5  believe the information exchanged thus far is sufficient for the parties to make an informed decision

6  about the resolution of this case at this time.

7       23.   On April 9, 2013, the parties engaged in mediation with mediator Jeffrey Ross. PetSmart

8  was represented by Michelle Heverly from Littler Mendelson, P.C. Plaintiffs were represented by

9  myself and Marta Manus of GrahamHollis APC. Although the parties were unable to reach a settlement

10 agreement on the day of the mediation, the parties continued their settlement negotiations through

11 mediator Jeffrey Ross and ultimately, on May 15, 2013, accepted the mediator's proposal, reaching the

12 settlement on the terms for which they now seek preliminary approval. The parties devoted substantial

13 time and effort to reaching a proposed settlement. At all times, the negotiations were conducted at arms'

14 length and through the mediator. Since accepting the mediator's proposal in May 2013, the parties have

15 engaged in extensive meet and confer discussions to finalize the Settlement.

16      24.   The Plaintiffs now seek, and Defendant will not oppose, preliminary approval of the

17 Settlement reached through the mediator.

18                         **The Settlement Agreement**

19      25.   The proposed Settlement resolves all class and representative action claims of the

20 Plaintiffs and the Settlement Class Members against PetSmart. The detailed Settlement Agreement is

21 attached hereto as Exhibit 1. The settlement terms may be summarized as follows:

22 A.   **Settlement Amount**

23      26.   The Settlement provides that PetSmart will pay the sum of $10,000,000.00 ("Total

24 Settlement Amount".) (Settlement Agreement, ¶ 1.20.) Subject to Court Approval, the Total Settlement

25 Amount will be used to make all payments to the Settlement Class Members, Settlement Class Counsel

26 for attorneys' fees and costs, California Labor and Workforce Development Agency ("LWDA"), all tax

27 obligations of Plaintiffs, Settlement Class Members, and PetSmart arising out of the settlement and the

28 costs of settlement administration. Once these deductions are made, the balance of the Total Settlement

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

12                                    12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1   Amount will be available for distribution to Settlement Class Members ("Net Distribution Amount".)

2   (Settlement Agreement, ¶ 1.11.)

3   **B.**   **Settlement Class**

4       27.   The Net Distribution Amount will be distributed to Settlement Class Members who

5   submit a valid and timely Claim Form/FLSA Consent Form ("Claim Form".)  The proposed Claim Form

6   is attached hereto as Exhibit 2.

7       28.   The Settlement Class is defined as follows:

8       All individuals who are or were employed by PetSmart as a Pet Stylist, Groomer, Grooming

9   Trainee, and/or Salon Manager in California at any time during the period from May 23, 2008 to the
present ("Pet Stylist Settlement Class");

10       All individuals who are or were employed by PetSmart as an hourly paid, non-exempt employee

11   in California at any time during the period May 23, 2008 to the present  in a position other than Pet
Stylist, Groomer, Grooming Trainee, or Salon Manager ("Non-Exempt Employee Settlement Class")

12   The Settlement Class includes a Waiting Time Penalties Settlement Sub-Class defined as follows:

13

14       All individuals who are members of the Non-Exempt Employee Settlement Class or the Pet
Stylist Settlement Class who separated from their employment with PetSmart at any time between May

15   23, 2009 and the date of preliminary approval of the settlement ("Waiting Time Penalties Settlement
Sub-Class").

16

17      (Settlement Agreement, ¶ 1.16.)

18   **C.**   **Calculation of Class Members' Individual Settlement Amounts**

19       29.   Under the Settlement Agreement, "Claimants" are those Settlement Class Members who

20   submit a valid and timely Claim Form. (Settlement Agreement, ¶ 1.3.)  The "Individual Settlement

21   Amount" is the amount of money that shall be paid to each Claimant and includes any taxes withheld

22   from the Settlement paid to such Claimants. (Settlement Agreement, ¶ 1.9.)

23       30.   Assuming the Court approves Plaintiffs' request for service awards and Class Counsel's

24   attorneys' fees and costs, as well as the costs of settlement administration, a Net Distribution Amount,

25   the amount left after the payment of the above will be available for distribution to Claimants.

26   (Settlement Agreement, ¶ 1.9, § IV, ¶¶ 4.2 – 4.5.)  If the Court does not award 33.33% of the Total

27   Settlement Amount as attorneys' fees and costs, the unawarded amount shall be returned to PetSmart

28   and shall not be available for distribution to the Settlement Class.  (Settlement Agreement § IV, ¶ 4.10.)

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

31.    A portion of the Net Distribution Amount will first be allocated to the Waiting Time Penalties Settlement Sub-Class for penalties pursuant to Labor Code section 203.  The amount allocated to the Waiting Time Penalties Settlement Sub-Class will be deducted from the Net Distribution Amount prior to the calculation of the Individual Settlement Amounts of Claimants.  Each member of the Waiting Time Penalties Settlement Sub-Class who was employed by PetSmart in California as a Pet Stylist, Groomer, Grooming Trainee or Salon Manager at the time of separation from employment will be entitled to receive $400 as a waiting time penalty in addition to their Individual Settlement Amount. Each member of the Waiting Time Penalties Settlement Sub-Class who was employed by PetSmart in a position other than Pet Stylist, Groomer, Grooming Trainee or Salon manager at the time of separation from employment will be entitled to receive $200 as a waiting time penalty in addition to their Individual Settlement Amount. (Settlement Agreement § IV ¶ 4.4.)

32.    After deducting from the Net Distribution Amount the payments claimed by the Waiting Time Penalties Settlement Sub-Class, two-thirds (2/3) of the remaining Net Distribution Amount will be allocated to payment of the Individual Settlement Amounts of the Pet Stylist Settlement Class Members and one-third (1/3) of the remaining Net Distribution Amount will be allocated to those Settlement Class Members who are members of the Non-Exempt Employee Settlement Class. (Settlement Agreement § IV ¶ 4.5.)  The allocation of the Net Distribution Amount between the Pet Stylist Settlement Class and the Non-Exempt Employee Settlement Class is based on the proportional value of the claims of the classes.  The claims alleged on behalf of the Pet Stylists Settlement Class account for 2/3 of the total amount of damages estimated and the claims alleged on behalf of the Non-Exempt Employee Settlement Class account for 1/3 of the total amount of damages which Plaintiffs' damages analysis yielded.

33.    The Individual Settlement Amount for each Claimant who is a member of the Pet Stylist Settlement Class will be determined as follows: After the deductions from the Net Distribution Amount for the payments to the Waiting Time Penalties Settlement Sub-Class, the Settlement Administrator will divide two-thirds (2/3) of the remaining Net Distribution Amount by the total gross (pre-tax) compensation paid to Pet Stylist Settlement Class Members for the time period when such Pet Stylist Settlement Class Members were employed as Pet Stylists, Groomers, Grooming Trainees and/or Salon Mangers during the Covered Timeframe to determine a multiplier ("Pet Stylist Multiplier").  The

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

14                                    12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1 Individual Settlement Amount payable to each Pet Stylist Settlement Class Member will equal that

2 Claimant's gross (pre-tax) compensation earing during the Covered Timeframe times the Pet Stylist

3 Multiplier. (Settlement Agreement § IV ¶ 4.5(a).)

4      34.    The Individual Settlement Amount for each Claimant who is a member of the Non-

5 Exempt Employee Class will be determined as follows: After the deductions from the Net Distribution

6 Amount for the payments to the Waiting Time Penalties Settlement Sub-Class, the Settlement

7 Administrator will divide one-third (1/3) of the remaining Net Distribution Amount by the total gross

8 (pre-tax) compensation paid to Non-Exempt Employee Settlement Class Members for the time period

9 when such Non-Exempt Employee Class Members were employed in positions other than Pet Stylists,

10 Groomers, Grooming Trainees and/or Salon Mangers during the Covered Timeframe to determine a

11 multiplier ("Non-Exempt Employee Multiplier").  The Individual Settlement Amount payable to each

12 Non-Exempt Employee Settlement Class Member will equal that Claimant's gross (pre-tax)

13 compensation earned during the Covered Timeframe times the Non-Exempt Employee Multiplier.

14 (Settlement Agreement § IV, ¶ 4.5(b).)

15      35.    The parties agree that it is more equitable to use Claimants' gross compensation earned

16 during the Covered Timeframe instead of the number of work weeks worked to calculate their

17 Individual Settlement Amount. A detailed analysis of PetSmart's payroll records revealed that there was

18 a wide range of hourly rates earned by the Petsmart employees, particularly among groomers.

19 Additionally, many employees worked part-time. Based on our investigation we determined that those

20 employees who worked more hours were more likely to suffer more unpaid time. Also the higher the

21 hourly rate for an employee that suffers unpaid time, the greater will be the amount of money owed to

22 the particular employee.  If the class members were paid from the settlement based on work weeks this

23 might result in an inequitable distribution of the settlement. Employees who worked fewer hours per

24 week or were paid less might be paid the same amount per work weeks there coworkers who had more

25 unpaid time or lost more because their hourly rate was higher.  By paying the class members according

26 to their relative W-2 income during the class period the allocation is much more likely to be fair.

27      36.    The Individual Settlement Amounts will be allocated among wages, interest, and civil

28 (PAGA) penalties.  Fifty percent (50%) of each Claimant's Individual Settlement Amount shall

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  represent wages. Fifty percent (50%) of each Claimant's Individual Settlement Amount shall represent

2  interest and penalties. The portion of each Claimant's Individual Settlement Amount representing

3  wages will be subject to standard employment tax withholdings (e.g., withholdings for state and federal

4  income tax, employee FICA tax, California SDI, etc.) with the Settlement Administrator remitting all

5  such employment tax withholdings directly to the pertinent state and federal taxing authorities. The

6  portion of each Claimant's Individual Settlement Amount representing interest or penalties will be

7  reported on a Form 1099 provided to each Claimant, with the required copies of the Form 1099's

8  provided to the pertinent taxing authorities. Employer tax obligations on any amounts paid to Plaintiffs

9  and Claimants will be paid from the Total Settlement Amount. (Settlement Agreement § IV, ¶ 4.6.)

10      37.      Plaintiffs cannot calculate the exact Individual Settlement Amount per Claimant for a

11  number of reasons, including because, among other things, they do not presently know the exact amount

12  of (1) fees and costs that will be awarded to Class Counsel by the Court; (2) the total amount of the

13  employer's share of the payroll taxes on the Individual Settlement Amounts that will be deducted from

14  the Total Settlement Amount; (3) the total number of Claimants; and (5) the total amount of gross

15  compensation paid by PetSmart to Claimants. Assuming the Court awards the full amount of fees and

16  costs requested by Class Counsel, approves $105,000 in settlement administration costs to Simpluris,

17  $30,000 in class representative service awards, and the payment of $37,500 (75% of $50,000) to the

18  LWDA for PAGA penalties, the Net Distribution Amount, excluding payroll taxes, available for

19  distribution to Claimants will be approximately $6,494,000.00.

20      38.      From the estimated Net Distribution Amount of $6,494,000.00, the amount that the

21  parties agreed allocated to the Waiting Time Penalties Settlement Sub-Class will be deducted prior to

22  dividing the balance of the Net Distribution Amount between the Pet Stylist Settlement Class and the

23  Non-Exempt Employee Settlement Class. Based on the data provided to Class Counsel by PetSmart,

24  there are approximately 908 former Pet Stylists Settlement Class Members who are also members of the

25  Waiting Time Penalties Settlement Sub-Class, and who, according to the terms of the Settlement, will

26  receive a payment of $400 as a waiting time penalty and there are approximately 10,041 former Non-

27  Exempt Employee Settlement Class Members who are also members of the Waiting Time Penalties

28  Settlement Sub-Class, and who, according to the terms of the Settlement, will receive a payment of $200

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

16                                                   12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1   as a waiting time penalty.  Therefore, approximately $363,200 of the Net Distribution Amount of

2   $6,4949,000 will be allocated to the Pet Stylists Settlement Class Members who are also members of the

3   Waiting Time Penalties Settlement Sub-Class as a waiting time penalty and approximately $2,008,200

4   of the Net Distribution Amount will be allocated to the members of the Non-Exempt Employee

5   Settlement Class Members who are also members of the Waiting Time Penalties Settlement Sub-Class

6   as a waiting time penalty. On an individual basis, members of the Pet Stylist Settlement Class who are

7   also members of the Waiting Time Penalties Settlement Sub-Class will receive a greater amount ($400

8   per individual) as a waiting time penalty because, according the PetSmart's employment records,

9   individuals in the Pet Stylists Settlement Class earned significantly more on average in gross

10  compensation than members of the Non-Exempt Employee Settlement Class.

11         39.       After the deduction of the amount allocated to the Waiting Time Penalties Settlement

12  Sub-Class, the balance of the Net Distribution Amount, estimated to be approximately $4,122,600.00

13  will be divided between the Pet Stylist Settlement Class and the Non-Exempt Employee Settlement

14  Class with 2/3, or $2,748,400, available for distribution to the Pet Stylist Settlement Class and 1/3, or

15  $1,374,200, available for distribution to the Non-Exempt Employee Settlement Class. Based on the data

16  provided by PetSmart to Class Counsel in June 2013, the total number of individuals (current and

17  former) in the Pet Stylist Settlement Class is approximately 2,068.  Assuming 100% participation rate,

18  the average Individual Settlement Amount for the Pet Stylist Settlement Class members would be

19  approximately $1,300.00.  Additionally, based on the data provided by PetSmart to Class Counsel, the

20  total number of individuals (current and former) in the Non-Exempt Employee Settlement Class is

21  approximately 14,345. Again, assuming 100% claims participation rate, the average Individual

22  Settlement Amount for the Non-Exempt Employee Settlement Class members would be approximately

23  $100.00.  These averages will likely be higher because the participation rate will be lower and the

24  redistributions will increase the average Individual Settlement Amounts. Realistically, however, there

25  will be less than 100% participation rate, increasing the average amount, and the actual amount of

26  Individual Settlement Amounts paid to Claimants will also be higher due to redistribution of the

27  unclaimed funds.

28         40.       Settlement Class Members who submit a timely and valid Claim Form will receive their

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

17                                                              12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  Individual Settlement Amount  To the extent that any member of the Non-Exempt Employee Settlement

2  Class does not, for any reason, become a Claimant and there are unclaimed funds remaining of the one-

3  third (1/3) portion of the Net Distribution Amount allocated to the Non-Exempt Employee Settlement

4  Class, the Settlement Administrator shall first redistribute the unclaimed funds to the Claimants in the

5  Non-Exempt Employee Settlement Class in proportion to each Claimant's Individual Settlement

6  Amount.  Notwithstanding the pro-rata increase, no Claimant shall be entitled to recover more than three

7  times (3x) his or her original Individual Settlement Amount.  In the event that the redistribution causes

8  Claimants' Individual Settlement Amounts to be increased by more than three times (3x) his or her

9  original Individual Settlement Amount, the Settlement Administrator shall then redistribute the

10  remaining unclaimed funds to the Claimants in the Pet Stylist Settlement Class in proportion to each

11  Claimant's Individual Settlement Amount.  Notwithstanding the pro-rata increase, no Claimant shall be

12  entitled to recover more than three times (3x) his or her original Individual Settlement Amount.  In the

13  event that the redistribution causes Claimants' Individual Settlement Amounts to be increased by more

14  than three times (3x) his or her original Individual Settlement Amount, the remaining unclaimed funds

15  shall first be used to pay PetSmart's share of any taxes owed pursuant to the Settlement. Any Net

16  Distribution Amount remaining after the payment of employer taxes shall be paid to the Legal Aid

17  Society – Employment Law Center ("ECL"), 180 Montgomery Street, Suite 600, San Francisco, CA

18  94104, the *cy pres* beneficiary jointly designated by the parties.  (Settlement Agreement § IV, ¶ 4.5(c).)

19       41.     The Legal Aid Society – Employment Law Center is an appropriate *cy pres* beneficiary

20  under Code of Civil Procedure section 384(b) because it is a nonprofit organization that supports

21  projects that will benefit employees similarly situated to Settlement Class Members consistent with the

22  objectives and purposes of the underlying wage and hour causes of action in this case, and because it

23  provides civil legal services to the indigent.  ECL has several programs designed to protect the rights of

24  low-income workers to work in a safe, respectful environment that is free from discrimination, and in

25  compliance with the law. In particular, ECL runs a Wage and Hour Program that works to ensure that all

26  workers benefit from laws that regulate pay and work hours through a number of methods, including

27  representing individuals through litigation and administrative advocacy to enforce their wage and hour

28  rights, running a Workers' Rights Clinic to provide assistance to low wage and indigent workers on their

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

18                                          12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  legal claims, and conducting public education and outreach for workers, community advocates, and legal

2  aid and pro bono attorneys.

3  **D.    Content of Class Notice and Claim Form/FLSA Consent Form**

4      42.    A copy of the proposed Notice of Class Action Settlement ("Class Notice") is attached

5  hereto as Exhibit 2. The Class Notice in this case is accurate and informative. The Class Notice informs

6  Settlement Class Members, in plain language, about the terms of the Settlement and explains the

7  payments to which they are entitled under the Settlement.  It provides information on the meaning and

8  nature of the proposed Settlement, the terms and provisions of the Settlement, the relief the Settlement

9  will provide Settlement Class members, the amount of proposed service awards to the Class

10  Representatives, the amount of Class Counsel's request for reimbursement of costs and attorneys' fees

11  from the Settlement, the proposed cost of administration, the payment to the LWDA, the date, time and

12  place of the final approval hearing, and the procedure and deadlines for participating in and opting out of

13  the settlement, submitting Claim Forms, comments and objections to the Settlement, and how class

14  members can obtain additional information. The Class Notice clearly states that the Settlement does not

15  constitute an admission of liability by PetSmart, and recognizes that the Court has not ruled on the

16  merits of the action.  It also states that the final settlement approval decision as yet to be made.

17      43.    The Class Notice and the Claim Form are attached as Exhibits 2 and 3 to this Declaration.

18  The Claim Form informs, in plain language, Settlement Class Members and of the deadline to submit the

19  Claim Form.  The Claim Form informs the Settlement Class members of the estimate amount of their

20  Individual Settlement Amount, the total amount of gross compensation they earned from PetSmart

21  during their employment and as a member of one of more of the Settlement Classes, and their dates of

22  employment in one or more of the Settlement Classes during the Covered Timeframe.  It also informs

23  Settlement Class Members who wish to challenge the information provided on the Claim Form, the

24  procedure for submitting filing a dispute with the Settlement Administrator. The Claim Form also serves

25  as the FLSA Consent Form to opt into the Settlement for those Settlement Class Members who were

26  employed by PetSmart within the three year period prior to preliminary approval of the Settlement.

27  (Settlement Agreement § IV, ¶ 5.4.)

28  / / /

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

**E.** **Administration of Notice, Objections, and Claims**

44.     The reasonable costs of settlement administration will be deducted from the Total Settlement Amount. The parties have selected Simpluris, to serve as the Settlement Administrator. Simpluris has provided the parties with a detailed estimate of the claims administration process, as described below, not to exceed $105,000.  Within fifteen business days of preliminary approval, PetSmart will provide Simpluris, the Settlement Administrator and Class Counsel with the names, addresses, social security numbers, phone numbers, and relevant employment dates for each Settlement Class Member. (Settlement Agreement § IV, ¶ 6.2.)  PetSmart will indicate which Settlement Class Members worked as Pet Stylists and/or Salon Managers during the Covered Timeframe. As to those Class Members who received pay as Pet Stylists or Salon Managers as well as in a position(s) other than Pet Stylist or Salon Manager during the Covered Timeframe, PetSmart will provide the amount of gross (W-2) compensation paid to each such Settlement Class Member who worked: (1) as a Pet Stylist and/or Salon Manager, and (2) in a position(s) other than Pet Stylist or Salon Manager.  The address, telephone number, wage and Social Security information will be kept completely confidential and will not be released or used for any purpose other than identifying Settlement Class Members and researching current contact information. (Settlement Agreement § IV, ¶ 6.2.)

45.     Simpluris shall mail the Class Notice in the form approved by the Court, no later than twenty-five (25) days after the Court grants Preliminary Approval. (Settlement Agreement § IV, ¶ 6.3.) The Class Notice will include an explanation of the Settlement Class Member's right to be excluded from the Settlement Class by submitting a written request for exclusion.  Attached to the Class Notice will be the Claim Form/FLSA Consent Form, in the form approved by the Court. Included with the Class Notice shall be a pre-paid, pre-addressed envelope for the Class Member to respond to the Claim Notice. For Settlement Class Members who according to the records provided by PetSmart are listed as former employees, Simpluris will undertake a reasonable address verification using Accurint to skip trace to ascertain the accuracy of the last known address. To the extent this process yields an updated address, that updated address shall replace the last known address and be treated as the last known address for purposes of Class Notice mailing. If a Settlement Class Member is known to be deceased, the Class Notice for that Settlement Class Member shall be mailed to the last known address (or updated

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1    address, if applicable) of the legal representative of the deceased Settlement Class Member's estate, to

2    the extent known.  (Settlement Agreement § IV, ¶ 6.4.)

3         46.      With respect to those Settlement Class Members whose Notice is returned as

4    undeliverable, Simpluris will use Experian (or similar service) to obtain a current address and re-mail

5    the Notice within three business days of receipt of the returned Notice. (Settlement Agreement § VI, ¶

6    6.4.)  Simpluris shall maintain a toll-free telephone line that shall be staffed and/or provide automated

7    Interactive Voice Response with the ability for Settlement Class Members to leave messages during

8    non-business hours. Simpluris shall also maintain an interactive website with the URL

9    www.petsmartsettlement.com that Settlement Class Members can use to file a Claim Form, track the

10    processing of a Claim Form, and contact the Settlement Administrator if they have questions.

11    (Settlement Agreement § VI, ¶ 6.5 – 6.6.)

12         47.      Settlement checks that are returned a second time and settlement checks not cashed

13    within 180 days of issuance will not be re-issued.  If a Claimant does not cash or deposit his or her check

14    within 180 days from the date of issuance, or if a settlement check is returned for a second time, the

15    Settlement Administrator shall cause that Claimant's payment to be sent to the California State

16    Controller's office to be placed in the Unclaimed Property Fund for the benefit of the Claimant.

17    (Settlement Agreement § VI, ¶ 7.5.)

18    **F.**      **Release of Claims**

19         48.      Settlement Class Members who submit a Claim Form/FLSA Consent Form and do not

20    opt out will release wage-and-hour claims against PetSmart, with the exception that Plaintiffs may

21    continue to pursue their individual claims as stated in Plaintiffs' Complaint for wrongful termination in

22    violation of public policy, failure to accommodate and failure to engage in the interactive process under

23    the Fair Employment and Housing Act. Specifically, each member of the Settlement Class (other than

24    opt-outs), regardless of whether he or she has timely submitted a Claim Form, will fully release and

25    discharge PetSmart, including its former and present parent companies, subsidiaries, divisions, concepts,

26    related or affiliated companies, shareholders, officers, directors, employees, partners, agents,

27    representatives, attorneys, insurers, successors and assigns, and any individual or entity that could be

28    jointly liable with any of the foregoing ("Released Parties") from any claims, causes of action, damages,

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1   wages, benefits, expenses, penalties, debts, liabilities, demands, obligations, attorneys' fees, costs, and

2   any other form of relief or remedy in law, equity, or whatever kind or nature, whether known or

3   unknown, suspected or unsuspected, arising from: (1) the Action and any claims arising out of, or

4   related to the actual claims asserted or factual allegations in the Action including all claims made under

5   the California Labor Code, Industrial Welfare Commission Wage Orders, and the California Business

6   and Professions Code, claims under PAGA, claims for restitution and other equitable relief, liquidated

7   damages, punitive damages, waiting time penalties, penalties of any nature whatsoever, other

8   compensation or benefits; and (2) any alleged wage and hour violations that were made  or could have

9   been made based on the actual claims asserted or factual allegations in the Action, whether premised on

10  statute, contract, tort or other theory of liability under state or local law, by any Class Member against

11  the Released Parties (collectively, the "Released Claims"), and including, but not limited to, any claims

12  specifically referenced herein.  In addition, any Class Member who timely submits a Claim Form will

13  fully and forever release and discharge the Released Parties from any claims arising out of, or related to

14  the actual claims asserted or factual allegations in the Action including all claims made under the Fair

15  Labor Standards Act ("FLSA") and any alleged federal wage and hour violations/allegations that were

16  made or could have been made based on the actual claims asserted or factual allegations in the Action,

17  whether premised on statute, regulation contract, tort or other theory of liability under federal law or

18  regulation by any Class Member against the Released Parties (collectively, the "FLSA Released

19  Claims").  The release will include any claims arising from or that may have arisen from the Parties'

20  respective prosecution and/or defense of this litigation.  The release will apply to the Covered Time

21  Frame and include any cause of action alleged in or which could have been alleged based on the facts in

22  the Complaint or any Amended Complaint that may be filed prior to the approval of this Settlement.  All

23  Released Claims are released for all Class Members regardless of whether they submit a Claim Form or

24  receive any payment under the Settlement unless they Opt-Out of the Settlement, and all FLSA Released

25  Claims are released for all Class Members who timely submit a Claim Form, regardless of whether they

26  receive any payment under the Settlement.  The Released Claims and FLSA Released Claims do not

27  include claims for workers' compensation benefits or any of the claims that may not be released by law.

28  The four Plaintiffs will execute a general release of all known and unknown claims each may have

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

22                                          12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  against PetSmart, with the exception that Plaintiffs may continue to pursue their individual claims as

2  stated in Plaintiffs' Complaint. Settlement Class Members will have the opportunity to object to, and opt

3  out of the Settlement, as well as challenge the total amount of gross compensation paid to them PetSmart

4  during the Covered Timeframe. (Settlement Agreement § VI, ¶ 6.7 – 6.10.)

5  **G.    Other Settlement Considerations**

6        49.    The Settlement falls well within the range of reasonableness, given that it results in a

7  substantial benefit to all Settlement Class Members – up to $10,000,000.  As detailed above, the

8  Settlement provides meaningful relief for the vigorously disputed wage and hour violations and related

9  claims that make it well within the range of reasonableness.

10       50.    In reaching the Settlement, counsel on both sides relied on their respective substantial

11  litigation experience in similar employment class action, and thorough analysis of the legal and factual

12  issues presented in this case.

13       51.    Plaintiffs faced numerous risks in further judicial proceedings.  Plaintiffs' claim on behalf

14  of Pet Stylists for unpaid wages for non-productive time was a relatively novel claim at the time this

15  case was filed. In fact, PetSmart zealously argued that Pet Stylists were paid a commission as opposed to

16  piece rate and that PetSmart's commission pay structure was legal under California law. The largest

17  dispute between the parties was with respect to the duties Plaintiffs claimed were non-productive duties

18  for which they did not receive any compensation. The alleged non-productive duties included duties

19  such as contacting customers, filling out customer paperwork, checking dogs in and out before and after

20  appointments, stocking and facing product on store shelves, assisting in other departments throughout

21  the store, taking inventory, cleaning the grooming salon, and prospecting for new grooming customers.

22  PetSmart maintains that many of these duties are incidental to performing grooming services for which

23  Pet Stylists' compensation plan pays at the rate of 50% of the net sale price the customer pays for each

24  grooming service.

25       52.    In preparation for mediation, Plaintiffs' counsel performed extensive damages analysis

26  on the data obtained from PetSmart to calculate an estimated amount of damages for Plaintiffs' claims.

27  Plaintiffs' damages for the unpaid wages claim was estimated using the anecdotal evidence obtained

28  from class member interviews as well as the Commission Reports produced by PetSmart prior to the

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

23                                                    12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  mediation.  Based on this information, Plaintiffs estimated an average number of non-productive hours

2  per shift that wages were owed. Plaintiffs argued that the non-productive time should be compensated at

3  the average hourly fall back rate paid to Pet Stylists. PetSmart argued that the average number of non-

4  productive time was minimal, and none at all in workweeks in which Pet Stylists do not commission out,

5  and that average rate of pay should be minimum wage as opposed to the average hourly rate. Assuming

6  one hour of non-productive time per shift at minimum wage during the Covered Timeframe, the

7  maximum value of Plaintiffs' claim for unpaid wages would be approximately $9,700,000.  However,

8  this amount assumes that Pet Stylists are owed unpaid wages for non-productive time for 100% of the

9  workweeks, which is not the case because in some workweeks Pet Stylists did not commission out, and

10  were therefore paid for all hours at their fall back rate.

11      53.    Plaintiffs allege that in workweeks in which Pet Stylists commissioned out, they did not

12  get paid rest breaks because PetSmart only paid piece rate compensation during such workweeks and did

13  not pay any wages for time spent taking rest breaks. PetSmart's written rest break policy provides for

14  15-minutes rest breaks. Plaintiffs therefore argued that Pet Stylists were contractually entitled to 15-

15  minute rest breaks. PetSmart argued that if it owed any unpaid wages for unpaid rest breaks, the amount

16  owed should be calculated at minimum wage and for the statutorily required 10-minute rest break.

17  Assuming 30-minutes of unpaid wages for rest break time per shift at minimum wage, the maximum

18  value of this claim is $4,800,000.  This maximum amount assumes that rest break wages are owed for

19  100% of the shifts. However, in workweeks in which Pet Stylists did not commission out and were paid

20  their hourly fall back rate, they would not be owed any additional wages for rest break wages.

21      54.    To calculate vacation wages owed for Pet Stylists, PetSmart uses an average of the total

22  amount piece rate compensation paid for the prior 26 weeks.  Because Pet Stylists are not paid any

23  wages for non-productive time, the average pay for the prior 26 weeks is underpaid.  Plaintiffs'

24  estimated value for the vacation wages for Pet Stylists is between $600,000 - $700,000.

25      55.    Plaintiffs' claim for meal and rest break violations on behalf of both classes was premised

26  on PetSmart's illegal written meal and rest break policy, which was in effect from 2005 through April

27  2011. To calculate the value of these claims, Plaintiffs limited the meal premium claim to shifts between

28  5 – 6 hours and the rest premium claim to shifts between 3.5 – 4 hours for both the Pet Stylist Settlement

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

24                                          12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1   Class and the Non-Exempt Employee Class. Assuming Plaintiffs prevailed on this claim and PetSmart's

2   policy was found to be illegal, the estimated maximum value of meal premiums owed to Pet Stylists

3   assuming one meal premium for each shift from 2008 – April 2011 at the rate of minimum wage would

4   be approximately $1,178,000.  The maximum amount of meal premiums owed to Non-Exempt

5   Employees other than Pet Stylists is approximately $8,100,000. PetSmart vehemently defended against

6   this claim arguing that the written policy was not enforced and that all non-exempt employees, including

7   Pet Stylists, were all verbally informed that they were entitled to a meal break after the fifth hour of

8   work. An additional defense against the meal break claim was that employees can waive meal periods

9   on shifts less than 6 hours. The maximum value of the claim for rest break premiums for Pet Stylists

10  assuming one rest break premium per shift at minimum wage is $9,700,000.  The claim for rest break

11  premiums on behalf of the Pet Stylists was not limited to the period 2008 – April 2011 because Plaintiffs

12  allege that Pet Stylists were denied compliant rest breaks throughout the entire class period, May 2008 -

13  present. The maximum value of the rest break claim for Non-Exempt Employees other than Pet Stylists

14  is approximately $906,000. This amount was limited to 2008 – April 2011 because it was based on

15  PetSmart's allegedly illegal written rest break policy, which was revised in April 2011.

16        56.   Plaintiffs' off-the-clock claim was premised on the theory that Pet Stylists and other Non-

17  Exempt Employees would clock out at the front of the store and then walk through the store to the break

18  room while clocked out, which would inevitable result in being interrupted by customers at times,

19  although not every shift and not every time they were clocked out. Plaintiffs allege that PetSmart did not

20  have a method for paying these employees for work performed off-the-clock. (PetSmart defended this

21  claim by arguing that it did in fact allow employees who had to assist customers while off-the-clock to

22  inform their store manager and get paid or to extend their break time to ensure they received a full meal

23  or rest break. Plaintiffs estimated the value of the off-the-clock claim for Pet Stylists to be

24  approximately $971,000 and for the Non-Exempt Employee Settlement Class to be approximately

25  $2,795,000.  Lastly, the tool claim on behalf of the Pet Stylist Settlement Class was estimated to be

26  approximately $1,500,000.  Plaintiffs recognized the difficulties and risks moving forward with class

27  certification of the off-the-clock claim. Additionally, the time spent working off-the-clock was minimal

28  and the majority of the value of this claim comes from the wages owed to former employees in the form

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  of a waiting time penalty.

2       57.     PetSmart denies that it failed to pay all wages due for all hours worked under California

3  law. Moreover, PetSmart hotly contested the average number of unpaid non-productive hours that

4  Plaintiffs estimated were worked by Pet Stylists per shift.  Plaintiffs faced additional difficulties in

5  continued litigation because the number of non-productive time was not recorded. In fact, Pet Stylists

6  often groom multiple dogs simultaneously, making it very difficult to accurately estimate the average

7  non-productive time. Plaintiffs faced additional risk in continued litigation in that the duties Plaintiffs

8  believe are non-productive duties would in fact be found by a Court to be duties which are incidental to

9  grooming and therefore covered by the piece rate compensation paid by PetSmart for performing

10 grooming services. Additionally, PetSmart vehemently denies that non-exempt employees worked off-

11 the-clock because they were interrupted by customers. PetSmart also disputed Plaintiffs' use of the

12 average hourly rate for the alleged violations.  PetSmart also raised a number of factual issues it argued

13 would show substantial variation as to how employees spend their time and the duties performed at each

14 store, which could present substantial risks at the class certification stage. Finally, PetSmart claims its

15 compensation scheme is legal because in workweeks in which Pet Stylists are paid their hourly fall back

16 rate because they haven't commissioned out, they are paid for all hours worked. Plaintiffs do not dispute

17 that Pet Stylists are paid for all hours worked during workweeks when they are paid the fall back rate.

18 However, in workweeks in which Pet Stylists commission out and earn only their piece rate

19 compensation, Plaintiffs allege that Pet Stylists are not paid any wages for time spent performing non-

20 productive duties and time spent taking rest breaks.

21      58.     During the course of Plaintiffs' investigation and review of the employment data

22 provided by PetSmart, Plaintiffs learned that the manner in which PetSmart calculates vacation wages

23 for Pet Stylists was inaccurate and vacation wages were underpaid. PetSmart uses an average of the total

24 amount piece rate compensation paid to each Pet Stylist for the past 26 weeks of their employment to

25 calculate an average rate per hour for each vacation hour owed. Because Pet Stylists are not paid any

26 wages for non-productive time, Plaintiffs allege that the average pay for the 26 week period used to

27 calculate vacation wages is underpaid. The parties agreed to mediate the vacation claim and this claim

28 was included in this Settlement. Class Counsel estimated the total amount of unpaid vacation wages

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1 owed to the Pet Stylist Settlement Class during the Covered Timeframe to between $600,000 -

2 $700,000.

3     59.    Given all of these contested issues, Class Counsel's assessment of the litigation risks

4 Plaintiffs faced, and the time value of money (due to the time required to take this case to trial and

5 through appeal), Plaintiffs agreed to compromise and settle the claims of the Settlement Classes as

6 described in the Settlement Agreement. Additionally, given the novel nature of Plaintiffs' primary claim

7 for unpaid wages and the uncertainty regarding the state of the law concerning piece rate and

8 commission pay structures, Plaintiffs' claim for unpaid wages could have been significantly discounted

9 by a jury. All of these issues required Plaintiffs to compromise their original demands, where were

10 calculated based on the maximum exposure PetSmart faced if Plaintiffs prevailed on everything.

11     60.    While the parties have disagreed over the scope of PetSmart's exposure to the alleged

12 claims as well as the merits of the claims themselves, counsel for both parties agree that the settlement

13 reach is fair, reasonable, and adequate and is in the best interest of the Settlement Class Members in

14 light of all known facts and circumstances, including the risk of significant delay and defenses asserted

15 by PetSmart.

16     61.    The Settlement commits PetSmart to a Total Settlement Amount of $10,000,000.00 to

17 compensate Settlement Class Members for their alleged damages, which is expected to result in a

18 significant recovery for each Claimant. Based on the information available to Class Counsel presently, it

19 is estimated that the average Individual Settlement Amount to be approximately $1,300.00 for members

20 of the Pet Stylist Settlement Class and approximately $100.00.00 for members of the Non-Exempt

21 Employee Settlement Class. These estimates of the average amounts are based on a 100% claims rate,

22 which is highly unlikely in this type of case. Also, these estimates do not account for variations in

23 compensation paid by PetSmart to the Claimants or for any amounts that may be redistributed to

24 Claimants. In addition, any member of the Pet Stylist Settlement Class who is also a member of the

25 Waiting Time Penalties Settlement Sub-Class will receive an additional $400 and any member of the

26 Non-Exempt Employee Settlement Class who is also a member of the Waiting Time Penalties

27 Settlement Sub-Class will receive an additional $200.  In contrast, continued litigation would be costly

28 and time consuming, and appeal from any judgment would be likely. Such efforts would likely result in

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1  a delay of years before this case would finally be resolved.  This Settlement provides a significant and

2  timely recovery to the Settlement Class and easily falls within the range of reasonableness. The

3  estimated average Individual Settlement Amounts to be recovered by Claimants in this case are, in my

4  experience, very favorable for a case of this type.

5      62.     In addition to the monetary results achieved by Plaintiffs by this Settlement, PetSmart has

6  agreed to provide grooming tools for its in-store salons to be used by Pet Stylists.  As part of this

7  Settlement, PetSmart retained a safety and ergonomic consultant to conduct an ergonomic evaluation of

8  PetSmart's practices and to review PetSmart's policies and procedures with regard to whether Pet

9  Stylists are allowed to sit while performing grooming tasks.

10      63.     The settlement of the claim for penalties under the Private Attorneys General Act

11  ("PAGA") for $50,000.00, or 0.50% of the Total Settlement Amount, is reasonable under the

12  circumstances. The parties negotiated a good faith amount for PAGA penalties, and this amount was not

13  the result of self-interest at the expense of the Settlement Class Members. Of this amount, 75%

14  ($37,500) will be paid to the LWDA, and 25% ($12,500) will be distributed to Claimants in addition to

15  their pro rate settlement shares.

16      64.     The Plaintiffs, in the settlement of this wage and hour class action, are entitled to

17  payment of attorney's fees and costs. An attorney's fee award is justified where the legal action has

18  produced its benefits by way of a voluntary settlement.  Normally, courts make the determination as to

19  the fee and costs award contemporaneously with the motion for final settlement approval. Plaintiffs will

20  fully brief the fee application at that time and support their application with appropriate factual showing

21  by declaration.

22      65.     Here, upon final approval of the Settlement, Plaintiffs will seek an award of Class

23  Counsel's attorney's fees under the common fund doctrine, which is customarily used in awarding fees

24  and costs in settlements of wage and hour class actions and, as indicated in the Memorandum filed

25  herewith, is an approved method under California case law.

26      66.     Under the Settlement, Class Counsel may seek a total award of attorneys' fees and costs

27  of up to 33-1/3% of the Total Settlement Amount of $10,000,000.  Based on my experience and

28  knowledge of the relevant legal market for wage and hour class actions, this amount accurately reflects

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1    the marketplace for representation of plaintiffs in wage and hour cases of this type on a contingency

2    basis.

3         67.    Class Counsel has incurred expenses for items such as filing fees, mediation fees, travel,

4    postage, delivery, online research, telephone, and copying, in excess of $40,000.00.  These are

5    categories of expenses for which Class Counsel and other law firms customarily charges its fee-paying

6    clients. A detailed summary of the costs incurred will be supplied at the time of the final approval

7    hearing.

8         68.    I believe that, under the circumstances, the fee and cost award requested by Plaintiffs is

9    appropriate and should be preliminarily approved as fair and reasonable, subject to the Court's final

10   determination at the time of final approval.

11        69.    Plaintiffs have proposed that the Class Representatives receive service awards in the

12   amount of $10,000 each to Plaintiff Alanna Harrison and Plaintiff Alisa Valdez and $5,000 each to

13   Plaintiff Danette Moore and Plaintiff Latresa Myers.  The service awards shall be in addition to the

14   payment they may otherwise receive as a Settlement Class Member.  Such service awards are routinely

15   made in wage and hour class actions like this case.  Plaintiffs provided significant assistance to counsel

16   to investigate and litigate this case.  They initiated this action by seeking legal assistance from Class

17   Counsel, assisted with the preparation of the complaint, provided documents, identified potential

18   witnesses, and worked closely with Class Counsel throughout the case. Plaintiffs each attended their

19   deposition in San Francisco as well as the mediation, in some cases having to take time off from work

20   and drive several hours to do so. Each Plaintiff reviewed and executed the Settlement Agreement and

21   provided a declaration in support of preliminary approval of the Settlement. It is my belief that no action

22   would have been taken by class members individually, and no compensation would have been recovered

23   for them at all, but for the representative Plaintiffs' actions on their behalf.  Class Representatives, in

24   agreeing to bring this action, formally agreed to accept the responsibilities of representing the interests

25   of all class members, and to assume risks and potential costs that other class members were not subject

26   to in this case. In addition, by actively pursuing this action, Class Representatives also furthered the twin

27   California public policy goals of enforcing the overtime laws and making appropriate use of the class

28   action device.  Additionally, the Plaintiffs agreed to postpone settlement negotiations related to their

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

29                                                                12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1  individual FEHA claims until the resolution of the class and representative action claims.

2      70.      Moreover, PetSmart does not oppose payment of a total of $30,000 for the service awards

3  to the Class Representatives.  Accordingly, the payments to the Class Representatives are appropriate

4  and justified as part of the overall Settlement.

5      71.      In conclusion, it is my opinion, that this Settlement Agreement is fair, reasonable and

6  adequate, and in the best interest of the class. The settlement amount of $10,000,000 is an excellent

7  result, considering the formidable arguments PetSmart advanced against class certification, liability, and

8  damages.  Difficult issues remained as to class-wide proof of the number of unpaid non-productive

9  hours, meal and rest period violations, miscalculated vacation pay, unreimbursed tool expenses , and the

10  willfulness and intent elements of the waiting time penalties and inaccurate wage statement claims. In

11  light of these issues, and the fact that the settlement was the product of protracted, contentious, and

12  arm's length negotiation before an experienced mediator, Class Counsel believes that the settlement

13  should be preliminarily approved, notice be disseminated to the Settlement Class Members, and a final

14  approval hearing be scheduled.

15      I declare under penalty of perjury under the laws of the State of California and the United States

16  that the foregoing is true and correct.

17      Executed this 31st day of January, 2014, in San Diego, California.

18  Respectfully submitted,

19

20  Dated: January 31, 2014                              GRAHAM**HOLLIS** APC

21

22                                      By:   /s/ Graham S.P. Hollis
                                           Graham S.P. Hollis, Esq.
23                                         Email: ghollis@grahamhollis.com
                                           Marta Manus, Esq.
24                                         Email: mmanus@grahamhollis.com
                                           Attorneys for Plaintiffs

25

26

27

28

*(left margin, vertical text)* GRAHAM**HOLLIS** APC  3555 FIFTH AVENUE  SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

# EXHIBIT B



1  GRAHAM**HOLLIS** APC
   GRAHAM S.P. HOLLIS (SBN 120577)
2  ghollis@grahamhollis.com
   MARTA MANUS (SBN 260132)
3  mmanus@grahamhollis.com
   3555 Fifth Avenue
4  San Diego, California  92103
   Telephone: 619.692.0800
5  Facsimile: 619.692.0822

6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

10

11  DANETTE M. MOORE, LATRESA MYERS,      Case No.:   12-CV-03577 EJD
    ALANNA HARRISON and ALISA VALDEZ
12  individually and on behalf of others similarly   **DECLARATION OF GRAHAM S.P. HOLLIS**
    situated,                              **IN SUPPORT OF PLAINTIFFS'**
13                                         **SUPPLEMENTAL BRIEF IN SUPPORT OF**
                                           **PLAINTIFFS' MOTION FOR PRELIMINARY**
              Plaintiffs,                  **APPROVAL OF CLASS ACTION**
14                                         **SETTLEMENT**
        v.
15
    PETSMART, INC, and Does 1 through 100,
16  inclusive,
                                           Date:       April 3, 2014
17            Defendants.                  Time:       1:30 p.m.
                                           Courtroom:  4 –5th Floor
18                                         Judge:      Hon. Edward J. Davila

19

20

21

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                                    1                        12-CV-03577 EJD
    DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
          BRIEF RE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

I, Graham S.P. Hollis, state and declare:

1.    I am an attorney at law licensed to practice before all courts of the State of California. I am a partner with the law firm of Graham**Hollis**, A.P.C. ("Graham**Hollis**") in San Diego, California. I am thoroughly familiar with and have personal knowledge of all of the facts set forth herein. If called as a witness, I could and would competently testify thereto.

2.    I have been a member of the State Bar of California since 1985. I am also admitted to practice in various Districts of United States District Court. I have personally tried many bench and jury trials to verdict in various courts in California. I have represented employees and employers in employment litigation matters since 1995. My involvement in various forms of class action litigation spans more than twenty years.

3.    My law firm, GrahamHollis and my associate Marta Manus are the attorneys of record for Plaintiffs Danette Moore, Latresa Meyers, Alanna Harrison, and Alisa Valdez (collectively "Plaintiffs"). I submit this declaration in support of Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

4.    On January 31, 2014, Plaintiffs' filed their Motion for Preliminary Approval of Class Action Settlement, requesting approval of the settlement reached by the parties.

5.    On March 7, 2014, the parties attended the hearing on Plaintiffs' Motion for Preliminary Approval, at which time this Court requested that the parties submit supplemental briefing clarifying specific provisions of the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"). Specifically, the Court asked the parties to provide supplemental briefing addressing the following: (1) the provision in the Settlement Agreement that any amount not awarded by the Court to class counsel for attorney's fees will be retained by Defendant and will not increase the amount available for distribution to the settlement class members; (2) a lodestar cross-check of class counsel's requested attorney's fees; (4) the sampling methodology utilized for the valuation of the Plaintiffs' claims and allocation of settlement funds among the settlement classes; and (4) the reasonableness of the amount of the incentive awards requested by each of the four Plaintiffs.

6.    On April 9, 2013, the parties engaged in mediation with mediator Jeffrey Ross. Although the parties were unable to reach a settlement agreement on the day of the mediation, the parties

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

2    12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF RE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  continued their settlement negotiations through mediator Jeffrey Ross and ultimately, on May 15, 2013,

2  accepted the mediator's proposal, reaching the settlement on the terms for which they now seek

3  preliminary approval.  The parties devoted substantial time and effort to reaching a proposed settlement.

4  At all times, the negotiations were conducted at arms' length and through the mediator.  The fee

5  discussions were handled separately and after the discussion of substantive relief that PetSmart agreed to

6  pay to the settlement class. The mediator proposed a 33 1/3% amount for attorney's fees after mediating

7  the case extensively.  The mediator also made a mediator's proposal that because the fees were

8  negotiated separately that in the event that less than the full amount of fees be awarded that the un-

9  awarded portion revert back to the defendant.

10      7.      PetSmart has committed to paying the Net Distribution Amount of $6,494,000, none of

11  which will revert to PetSmart because any unclaimed funds will be redistributed to the participating

12  settlement class members, not to exceed three times their original claim amount, with the remaining

13  unclaimed funds distributed to the *cy pres* beneficiary mutually designated by the parties.

14      8.      Plaintiffs' claim for unpaid minimum wages for non-productive time, comprising the

15  majority of the value of the claims in this case, is a very challenging claim to prove given the fact that

16  PetSmart does not require groomers to record the start and end times of each grooming job, making it

17  very difficult to estimate the average amount of time spent on non-grooming tasks (i.e. non-productive

18  time).

19      9.      In December 2008, the United States District Court for the Eastern District granted final

20  approval in *Sorenson, et al v. PetSmart, Inc.* (E.D. Cal. Case No.: 2:06-cv-02674-JAM-DAD)

21  ("*Sorenson* lawsuit"). The *Sorenson* lawsuit alleged wage and hour violations involving the same Labor

22  Code provisions as in the instant case, including violations of California Labor Code section 226.7 for

23  failure to provide meal and rest breaks and derivative claims for Labor Code sections 203, and 226. The

24  *Sorenson* lawsuit settled for a reversionary maximum settlement amount of $1,950,000 on behalf of two

25  sub-classes, Groomers and Non-Groomers, with a total of 21,813 class members. The settlement was

26  allocated between the two sub-classes, with 62% of the net settlement sum allocated to the Groomer

27  Class and 38% allocated to the Non-Groomer Class based on the respective valuation of the claims of

28  the sub-classes. The Court approved the settlement, awarding class counsel $585,000 (30% of maximum

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

3                                                          12-CV-03577 EJD

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF RE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

settlement amount), and an incentive award to the named Plaintiff of $15,000.  Because the amount of any unclaimed funds reverted to PetSmart and the settlement had a minimum distribution of 60% of the net settlement fund, the total payout to the two sub-classes was $747,000, with $463,140 distributed to the Groomer sub-class, and $283,860 distributed to the Non-Groomer sub-class, with a total of 4,442 claims paid.

10.      In April 2009, the United States District Court for the Eastern District granted final approval of another settlement reached by PetSmart in *Enabnit, et al. v. PetSmart, Inc.* (E.D. Cal. Case No.: 2:07-cv-00165-JAM-DAD) ("*Enabnit* lawsuit"). The *Enabnit* lawsuit alleged various wage and hour violations on behalf of three sub-classes including "commissioned salon employees" (i.e. groomers) for various Labor Code violations including a claim for failure to pay minimum wages and failure to provide reimbursement for grooming tools to commissioned salon employees. The *Enabnit* lawsuit also settled for a reversionary maximum settlement amount of $1,950,000 on behalf of three sub-classes, "employees without direct deposit" (sub-class A), "commissioned salon employees" (sub-class B), and "salon employees" (sub-class C), with total of 20,455 class members.  Because the amount of any unclaimed funds reverted to PetSmart, the total payout to the three sub-classes was $369,665, with a total of 1,790 claims paid. The Court approved the settlement, awarding class counsel $570,000 (29.23% of the max settlement amount), and an incentive award to the named Plaintiff of $30,000.  The *Enabnit* lawsuit alleged a minimum wage claim and a tool claim on behalf of sub-class B, the commissioned salon employees, nearly identical to the Moore allegations. The result of the *Enabnit* lawsuit was that PetSmart's groomer employees released their minimum wage claim through December 1, 2008. Because there were overlapping classes in *Sorenson* and *Enabnit,* the *Enabnit* settlement agreement specifically excluded claims that were being litigated in the first-filed *Sorenson* action.

11.      Although the *Sorenson* settlement released Labor Code § 203 claims for waiting time penalties, it did not award the former employees, the only employees entitled to a waiting time penalty, any additional monetary recovery.  In contrast, the settlement in this case specifically includes a Waiting Times Penalties Settlement Sub-Class, the members of which will receive an additional monetary recovery of either $200 or $400 depending on whether they are a part of the Pet Stylist Settlement Class or Non-Exempt Employee Settlement Class, in addition to the monetary recovery they receive for their

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF RE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Exhibit B Page 4 of 12

1 claim. On an individual basis, members of the Pet Stylist Settlement Class who are also members of the

2 Waiting Time Penalties Settlement Sub-Class will receive a greater amount ($400 per individual) as a

3 waiting time penalty because, according the PetSmart's employment records, individuals in the Pet

4 Stylists Settlement Class earned significantly more on average in gross compensation than members of

5 the Non-Exempt Employee Settlement Class.

6        12.    Both the *Sorenson* and *Enabnit* settlements were distributed on a workweek basis,

7 whereas the Moore settlement will be distributed based on class members' W-2 income.  The parties

8 agreed that it is more equitable to use gross compensation earned instead of the number of workweeks

9 worked to calculate Individual Settlement Amounts.  A detailed analysis of PetSmart's payroll records

10 revealed that there was a wide range of hourly rates earned by the Petsmart employees, particularly

11 among groomers. Additionally, many employees worked part-time. Based on our investigation, we

12 determined that those employees who worked more hours were more likely to suffer more unpaid time.

13 Also the higher the hourly rate for an employee that suffers unpaid time, the greater will be the amount

14 of money owed to the particular employee.  If the class members were paid from the settlement based on

15 workweeks this might result in an inequitable distribution of the settlement. Employees who worked

16 fewer hours per week or were paid less might be paid the same amount per work weeks there coworkers

17 who had more unpaid time or lost more because their hourly rate was higher.  By paying the class

18 members according to their relative W-2 income during the class period the allocation is much more

19 likely to be fair.

20        13.    The settlement also provides additional value in the form of forward-looking relief

21 because, as a direct result of this settlement, PetSmart has revised its compensation policy for

22 commissioned Pet Stylist employees and as of January 2014, PetSmart pays these employees a

23 commission *and* an hourly rate as opposed to a commission *or* an hourly rate. Additionally, PetSmart

24 has agreed to provide grooming tools for its in-store salons to be used by Pet Stylists.  As part of this

25 Settlement, PetSmart retained a safety and ergonomic consultant to conduct an ergonomic evaluation of

26 PetSmart's practices and to review PetSmart's policies and procedures with regard to whether Pet

27 Stylists are allowed to sit while performing grooming tasks.

28        14.    Although I believe the appropriate method of calculating the fees award is the

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF RE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   percentage-of-the-fund method, the Court has requested that Plaintiffs provide the Court with their

2   lodestar to cross-check the reasonableness of the requested fees. To date, my firm's lodestar is

3   approximately $1,145,000.00 and the lawyers and paralegals in my firm have spent approximately 2,531

4   hours litigating this case. All of the time is recorded contemporaneously and billed in increments of

5   tenths of an hour. I have supervised the work on the case. I have practiced law in California since 1985

6   and my practice is almost exclusively devoted to handling wage and hour class action litigation. My

7   hourly rate is $690.00 which I believe is reasonable given my experience and the nature of the work

8   involved. The primary handling associate assigned to the file is Marta Manus who has practiced law in

9   California since 2008. Her hourly rate is $460.00. Two experienced paralegals have performed the

10  majority of the paralegal work on the case and their hourly rate is $215.00. I will provide the court with

11  a detailed summary breakdown of the work performed based on the various tasks and time spent

12  litigating the case at the time I submit a motion for attorney's fees.

13          15.     There are significant risks of continued litigation here. Defendant is represented by an

14  experienced and well-resourced defense firm. Defendant has severable viable defenses to liability and

15  Plaintiffs are confident that Defendant is ready, willing, and able to vigorously defend this case in the

16  event that the settlement is not approved. Absent the settlement, Plaintiffs would face challenging

17  hurdles both factually and legally. At the time the settlement was reached, the law in this area was

18  sparse and the outcome of any litigation was far from clear. The legal uncertainty at the time this

19  settlement was reached with respect to the whether commissioned employees are entitled to be paid

20  wages for non-productive time favors settlement of the instant action.

21          16.     Although the parties agreed to postpone serving responses to formal discovery requests,

22  the parties engaged in extensive relevant discovery prior to mediation. In addition to the documents and

23  information exchanged, a total of six depositions between the parties were taken. Plaintiffs' estimate of

24  the maximum loss to the class was based on hard data obtained from paper and electronically stored

25  records produced by Defendant. Plaintiffs' counsel reviewed several thousands of pages of employment

26  records and data produced by Defendant, interviewed dozens of class members, and took the depositions

27  of two of Defendant's corporate representatives and designated persons most knowledgeable. Defendant

28  took the depositions of the four plaintiffs, compiled and produced thousands of pages of documents and

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF RE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  electronic data, reviewed documents produced by Plaintiffs, and retained an outside consultant to

2  perform an analysis of the seating requirements in PetSmart's California stores.

3        17.    The parties agreed that 10% of the locations (selected randomly by Excel randomizer

4  program) would provide an adequate sample for purposes of mediation. PetSmart produced

5  employment data and documents for non-exempt employees from 14 stores of its 132 California stores,

6  a 10.6% sample. PetSmart produced in excess of 33,000 pages of documents as well as electronic

7  personnel and payroll data regarding PetSmart's employees. Plaintiffs spent many hours analyzing this

8  information and data. PetSmart provided Plaintiffs with the names and contact information of all current

9  and former non-exempt employees employed at the 14 sample stores. Plaintiffs' counsel interviewed

10  current and former employees from 19 the following California PetSmart locations, 14.4% of the stores.

11        18.    We sampled electronic timekeeping records for a total of approximately 251 Pet Stylists

12  and approximately 1,243 Non-Exempt Employees other than Pet Stylists. To determine the estimated

13  damages owed for Plaintiffs' meal and rest period claim, we used the timekeeping records to count the

14  number of shifts between 3.5 hours – 4 hours in length and the number of shifts between 5 hours – 6

15  hours in order to determine the number of qualifying shifts with violations. We then extrapolated the

16  number of shifts qualifying for a meal break or a rest break premium over the course of the liability

17  period for the meal break and rest break claims, December 2008 – April 2011 (date when PetSmart

18  revised its written meal and rest break policy). Plaintiffs' estimated damages for meal premiums owed

19  to the Pet Stylists Class is approximately $1,178,000. The estimated damages for meal premiums owed

20  to the Non-Exempt Employee Class members is approximately $8,100,000. Plaintiffs' estimated

21  damages for the rest premiums owed to the Pet Stylist Class is approximately $9,700,000. The estimated

22  amount owed for rest break premiums to the Non-Exempt Employee Class is approximately $906,000.

23        19.    Plaintiffs' damages for the unpaid wages for non-productive time claim was estimated

24  using the information obtained from class member interviews as well as the commission reports

25  produced by PetSmart. In order to estimate the damages for unpaid wages for non-productive time for

26  the Pet Stylist Class, we reviewed approximately 6,000 pages of paper commission reports (the

27  commission reports list the name of each pet groomed on each day by each groomer) to locate the

28  commission reports for Pet Stylist employees. Using this information in conjunction with the

GRAHAM **HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF RE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   timekeeping records allowed us to obtain an average amount of unpaid non-productive time per shift.

2   Given the difficulties in evaluating this claim due to the fact that groomers do not record the start and

3   end times of each groom job, we estimated one hour of non-productive time per shift at minimum wage.

4   The estimated value of the unpaid minimum wages claim is approximately $9,700,000.  However, this

5   amount assumed that Pet Stylists are owed unpaid wages for non-productive time for 100% of the

6   workweeks, which is not the case because in some workweeks Pet Stylists did not "commission out," in

7   which case they were paid for all hours worked and would not be entitled to any additional wages.

8        20.     The valuation of the damages for the unpaid off-the-clock time was estimated based on

9   anecdotal evidence provided by class member interviews to obtain an average number of times per week

10  that employees had to work off-the-clock while on breaks. We took the average amount of time worked

11  off-the-clock per week and multiplied it by the actual number of workweeks worked according to the

12  timekeeping records from the sample to obtain a total number of hours per workweek worked off-the-

13  clock.  The estimated value of the off-the-clock claim for Pet Stylists is approximately $971,000 and

14  approximately $2,795,000 for the Non-Exempt Employees.

15       21.     Plaintiffs' tool claim on behalf of the Pet Stylists was estimated based on information

16  obtained from class members as to the cost of the tool kit (approximately $500) and regularly purchased

17  grooming tools as well as receipts from Plaintiffs showing the amount of money they spent on grooming

18  tools throughout a year, which was then estimated to obtain an average amount of monthly recurring

19  expenses for grooming tools.  The estimated value of tool claim is approximately $1,500,000.

20       22.     The apportionment of the Net Distribution Amount is based on the estimated damages for

21  the members of the Pet Stylist Class accounting for approximately 2/3 of the total damages and the

22  damages for the Non-Exempt Employee Class accounting for the other 1/3. Two-thirds of the total

23  damages are going to be paid to the Pet Stylist Class, which has significantly less employees than the

24  Non-Exempt Employee Class. Therefore, on an individual basis, the Pet Stylist will receive much larger

25  individual payment amounts

26       23.   I believe the incentive awards in the amounts of $5,000 each to Moore and Myers and

27  $10,000 each to Harrison and Valdez, are well-deserved.  The Plaintiffs have spent a great deal of time

28  and effort in assisting me and my associate with the litigation of this case.  They maintain regular

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF RE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    contact with us and are easily reachable for assistance and information. All four Plaintiffs were deposed

2    and had to travel to Oakland for the mediation and San Francisco for their depositions. Harrison and

3    Valdez were both current employees of PetSmart at the San Leandro store when this lawsuit was filed in

4    May 2012. They genuinely and realistically feared workplace retaliation because they were filing a

5    lawsuit against their current employer. In July 2012, the online forum Law360 published an article

6    about the lawsuit identifying all four of the class representatives by first and last name. (Attached hereto

7    as Exhibit 1 is the Law360 article). As a result a Google search will identify them as being the

8    employees who filed the lawsuit against PetSmart and they have legitimate concerns that this

9    information might easily discourage a prospective employer from hiring them in the future. Overall, the

10    four Plaintiffs have done an exceptional job participating and assisting us through the course of this

11    lawsuit. I am confident they will continue to participate actively in this case through its resolution.

12

13       I declare under penalty of perjury under the laws of the State of California and the United States

14    that the foregoing is true and correct.

15       Executed this 28th day of March, 2014, in San Diego, California.

16                     By:    /s/ Graham S.P. Hollis

17                          Graham S.P. Hollis, Esq.
                              Email: ghollis@grahamhollis.com

18

19

20

21

22

23

24

25

26

27

28

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF RE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# EXHIBIT 1

## To the Declaration of Graham S.P. Hollis ISO Supplemental Brief in Support of Preliminary Approval

**EXHIBIT 1**
To the Declaration of Graham S.P. Hollis ISO Supplemental Brief in Support of Preliminary Approval

3/24/2014                          PetSmart Pays $10M To Settle Wage Class Action - Law360



**Portfolio Media. Inc.** | 860 Broadway, 6th Floor | New York, NY 10003 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# PetSmart Pays $10M To Settle Wage Class Action

By **Allissa Wickham**

Law360, New York (February 03, 2014, 6:58 PM ET) -- PetSmart Inc. has agreed to pay $10 million to settle claims that it underpaid more than 16,000 current and former animal groomers and other workers across 132 stores, according to documents filed in California federal court on Friday.

The plaintiffs asked U.S. District Judge Edward J. Davila to grant preliminary approval to the settlement, which releases PetSmart from claims that its method for paying pet stylists violated minimum wage laws. The agreement also settles wage claims from nonexempt employees, who said they weren't paid for helping customers during meal breaks.

"This was a long, hard-fought settlement," Graham Stephen Paul Hollis, an attorney for the plaintiffs, told Law360 on Monday. "But PetSmart has been pretty good about addressing these policies and realizing that mistakes had been made."

Attorneys for PetSmart were not immediately available for comment.

Originally filed in Alameda County Superior Court in 2012, **the plaintiffs alleged** that PetSmart violated labor law by failing to compensate its groomers for the time they spent performing nongrooming duties, such as stocking or cleaning. This stemmed from a claim that PetSmart paid its stylists 50 percent of the net price of a grooming fee, which failed to cover the minimum wage requirement for nongrooming duties.

Additionally, the pet stylists alleged that PetSmart did not reimburse them for purchasing grooming tools, didn't provide them with suitable seats, improperly calculated vacation pay, didn't provide timely payment after employees were terminated and failed to pay for meal break violations.

The settlement also resolves allegations that the company failed to compensate hourly employees for helping customers during meal breaks. Since the employee break room was located in the back of the store, workers were occasionally forced to assist customers after they had punched out on PetSmart's time clocks, which were located in the front, Hollis said.

"PetSmart had a policy that required employees to ask customers if they needed help," Hollis told Law360. "It was the culture of the store. But the company had no policy for how to compensate people for the time they spent working while they were clocked out."

The agreement also settles claims that PetSmart only allowed its hourly employees to take 30 minute meal breaks if they worked between six and eight hours, in violation of California labor law that mandates a meal period after five hours of work.

The settlement covers all hourly employees and stylists, grooming trainees and salon managers who worked in California PetSmart stores from May 23, 2008, to the present. The class for terminated employees stretches from May 23, 2009, to the present.

Case 5:12-cv-03577-EJD   Document 93-2   Filed 02/10/15   Page 66 of 136

3/24/2014                           Case5:12-cv-03577-EJD   Document66-1   Filed03/28/14   Page12 of 12
                                    PetSmart Pays $10M To Settle Wage Class Action - Law360

According to Hollis, the suit was initially filed on behalf of PetSmart groomers, but was expanded to include wage and meal break violations for nonexempt, hourly employees. Still, he said that the majority of the $10 million settlement would go to the groomers, who typically earned more than nongroomer employees.

Hollis also noted that his firm brought the suit before a California appeals **ruled in April** that a class of auto mechanics paid on a piece-rate basis were entitled to minimum wages for time spent waiting during their shifts. The question in that case, Gonzalez v. Downtown LA Motors, was whether an employer that paid automotive service technicians on a piece-rate basis for repair work must also pay them a separate hourly minimum wage for time spent waiting to work or performing other nonrepair tasks.

The Gonzalez case was based on a similar theory of compensation for the PetSmart groomers, according to Hollis, who said that by filing the suit before the appeals court issued that ruling, they were "ahead of the curve."

An approval hearing of the PetSmart settlement has been set for March 7.

The plaintiffs are represented by Graham Stephen Paul Hollis and Marta Manus of GrahamHollis APC.

PetSmart is represented by Michelle B. Heverly, Elisa Nadeau, Nathalie A. Le Ngoc and Sophia Behnia of Littler Mendelson PC.

The case is Danette M. Moore et al. v. PetSmart Inc. et al., case number 5:12-cv-03577, in the U.S. District Court for the Northern District of California.

--Additional reporting by Vin Gurrieri and Abigail Rubenstein. Editing by Katherine Rautenberg.

All Content © 2003-2014, Portfolio Media, Inc.

EXHIBIT C

1    MICHELLE B. HEVERLY, Bar No. 178660
     mheverly@littler.com
2    KARIN M. COGBILL, Bar No. 244606
     kcogbill@littler.com
3    SOPHIA BEHNIA, Bar No. 289318
     sbehnia@littler.com
4    LITTLER MENDELSON, P.C.
     50 W. San Fernando, 15th Floor
5    San Jose, California  95113.2303
     Telephone:    408.998.4150
6    Facsimile:    408.288.5686

7    Attorneys for Defendant
     PETSMART, INC.
8
9    GRAHAM HOLLIS, Bar No. 120577
     ghollis@grahamhollis.com
10   MARTA MANUS, Bar No. 260132
     mmanus@grahamhollis.com
11   GRAHAMHOLLIS APC
     3555 Fifth Avenue
12   San Diego, CA 92103
     Telephone:   619.692.0800
13   Facsimile:    619.692.0822

14   Attorneys for Plaintiffs
     DANETTE M. MOORE, LATRESA MYERS,
15   ALANNA HARRISON and ALISA VALDEZ

16                  UNITED STATES DISTRICT COURT

17                 NORTHERN DISTRICT OF CALIFORNIA

18

| | |
|---|---|
| 19 DANETTE M. MOORE, LATRESA MYERS, ALANNA HARRISON and ALISA VALDEZ, individually and on behalf of others similarly situated, | Case No.:    5:12-cv-03577-EJD **JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE** |
| 21    Plaintiffs, | |
| 22    v. | |
| 23 PETSMART, INC., and Does 1 through 100, inclusive, | |
| 25    Defendant. | |

26

27

28

CASE NO. 5:12-CV-03577-EJD

This stipulation of Class Action Settlement and Release ("Agreement" or "Settlement" is entered into by Plaintiffs Danette M. Moore, Latresa Myers, Alanna Harrison and Alisa Valdez ("Plaintiffs"), Jeanette Negrete (a Plaintiff in a related action), and PetSmart, Inc. ("Defendant" or "PetSmart").

IT IS HEREBY STIPULATED AND AGREED by the undersigned Parties subject to approval of the Court, that the settlement of this Action shall be effectuated upon and subject to the following terms and conditions.

## I.    DEFINITIONS

The following capitalized, defined terms used in this Agreement shall have the meanings ascribed to them below.

**1.1    Action, Lawsuit or Complaint:** Shall mean the operative Complaint in the case entitled "*Danette M. Moore, et al. v. PetSmart, Inc.*" venued in the United States District Court, Northern District of California, designated as Case No. 5:12-cv-03577, and any subsequent pleadings and amendments thereto.

**1.2    Agreement:** "Agreement" or "Settlement" means this Joint Stipulation of Class Action Settlement and Release.

**1.3    Claimant:** Shall mean every Settlement Class Member who submits a valid and timely Claim Form.

**1.4    Class Counsel:** Shall mean Lead Class Counsel in the Action for Named Plaintiffs and the Settlement Class Members, Graham S.P. Hollis and Marta Manus of GrahamHollis APC, 3555 Fifth Avenue, Suite 200, San Diego, CA 92103 (hereinafter, "Lead Class Counsel"), as well as Class Counsel for the Pet Stylist Settlement Class, Capstone Law APC, 1840 Century Park East, Suite 450, Los Angeles, CA 90067 (hereinafter, "Pet Stylist Settlement Class Counsel"). Capstone Law APC shall be deemed to represent only Class Representative Negrete and the Pet Stylist Settlement Class, as defined in Section 1.15 below.

**1.5    Covered Timeframe:** Shall mean the period of time beginning May 23, 2008 through the Date of Preliminary Approval of the Settlement Agreement.

**1.6    Covered Positions**: Shall mean all non-exempt employees employed by PetSmart in any of its retail stores located in California.

**1.7    Defendant's Counsel, Defense Counsel or Counsel for Defendant:** Shall mean Michelle B. Heverly, Karin M. Cogbill and Sophia Behnia, LITTLER MENDELSON, APC, 50 W. San Fernando Street, 15th Floor, San Jose, CA 95113-2431.

**1.8    Effective Date:**  Shall mean the date on which the Court grants final approval of the Settlement.

**1.9    Individual Settlement Amount:** Shall mean the portion of the Net Distribution Amount distributable to each Claimant, which will be distributed on a claims-made basis, calculated pursuant to Paragraph 4.5 below.

**1.10    Named Plaintiffs or Class Representatives:**  Shall mean Plaintiff Danette M. Moore, Plaintiff Latresa Myers, Plaintiff Alanna Harrison, Plaintiff Alisa Valdez, and Plaintiff Jeanette Negrete (a Plaintiff in a related action venued in U.S.D.C., Northern District, *Negrete v. PetSmart, Inc,* Case No. 5:13-cv-04300-EJD).  Jeanette Negrete shall be deemed to represent only the Pet Stylist Settlement Class, as defined in Section 1.15 below.

**1.11    Net Distribution Amount:**  Shall mean the Total Settlement Amount of Ten Million Dollars ($10,000,000.00) less the payment to the Labor and Workforce Development Agency (LWDA), attorney's fees and reasonable litigation costs awarded by the Court, the service payments to the Class Representatives awarded by the Court, the Reserve Fund, and the costs of administering the Settlement.

**1.12    Non-Exempt Employee Settlement Class:**  Shall mean all individuals who were employed by PetSmart as an hourly paid, non-exempt employee in California at any period of time during the Covered Timeframe in a position other than Pet Stylist, Groomer, Grooming Trainee, or Salon Manager.

**1.13    Parties:** Shall collectively refer to Plaintiffs and PetSmart.

**1.14    Pet Stylist:**  As used herein, shall mean those employees employed by PetSmart in the position of Pet Stylist, Groomer, Grooming Trainee and/or Salon Manager.

CASE NO. 5:12-CV-03577-EJD                     3.

Exhibit C Page 3 of 39

**1.15    Pet Stylist Settlement Class:**  Shall mean all individuals in the Settlement Class who were employed by PetSmart as a Pet Stylist, Groomer, Grooming Trainee or Salon Manager in California at any period of time during the Covered Timeframe.

**1.16    Reserve Fund:** Shall be One Hundred Thousand Dollars and No Cents ($100,000.00) payable from the Total Settlement Amount, which will be allotted for a reserve fund, for use in the event that late claims from Settlement Class Members are accepted, to compensate other Settlement Class Members who have raised issues such as errors or inadvertent exclusion (i.e. self-identifiers), to correct errors, and/or to resolve other disputes.   Any unused portion of the Reserve Fund will revert to the Net Distribution Amount, to be distributed to the Settlement Class Members.

**1.17    Settlement Class:**  Shall mean all individuals who are members of either the Non-Exempt Employee Settlement Class or the Pet Stylist Settlement Class during the Covered Time Frame.

**1.17    Settlement Administrator:**   Shall mean the third party administrator mutually selected by the Parties which the Parties have agreed will be responsible for administration of all payments to be made by Defendant pursuant to this Agreement.   In this case, Simpluris is the agreed upon third party administrator.

**1.18    Settlement Class Member:** The individual members of the Settlement Class are referred to herein individually as a "Settlement Class Member" or collectively as "Settlement Class Members".

**1.19    PetSmart or Defendant:**  is defined as, and includes, PetSmart, Inc., and each of its subsidiaries, affiliates, parents and divisions.

**1.20    Total Settlement Amount:**  Total Settlement Amount is an amount up to Ten Million Dollars ($10,000,000.00).   The Total Settlement Amount is the maximum that Defendant shall be required to pay under this Agreement, and shall be deemed in satisfaction of all claims arising out of, related to or which could have been brought as part of the *Moore* Complaint, including claims for: (1) all wages, penalties, interest, and/or other amounts to be paid to Settlement

CASE NO. 5:12-CV-03577-EJD

4.

Class Members; (2) the payment to the Labor and Workforce Development Agency ("LWDA") pursuant to the Private Attorneys' General Act ("PAGA"); (3) attorneys' fees and costs of Class Counsel; (4) the service payments to the Class Representatives, approved by the Court; (5) all costs of administration, including, without limitation, settlement administration fees; and (6) the employee's share of payroll taxes. The Total Settlement Amount also includes the Reserve Fund of $100,000.00.

        **1.21**    **Waiting Time Penalties Settlement Sub-Class:** Shall mean all individual members of the Non-Exempt Employee Settlement Class and/or the Pet Stylist Settlement Class who separated from their employment with PetSmart at any time between May 23, 2009 and the date of Preliminary Approval of the Settlement Agreement.

## II.    GENERAL BACKGROUND

        **2.1**    Plaintiffs initiated the Action in the Superior Court of California, County of Alameda on May 23, 2012. In addition to individual disability-based claims, Plaintiffs alleged in the Complaint and claimed damages and penalties at mediation for: unpaid compensation for all hours worked, payment of minimum wages and overtime, payment for unpaid "unproductive time," reimbursement of reasonably incurred work-related expenses, compensation for meal and rest period violations, miscalculation of vacation pay, failure to timely and properly pay wages due upon termination of employment, failure to provide suitable seats, unfair competition, statutory penalties (including PAGA penalties), interest and attorneys' fees and costs, under California Labor Code §§ 201, 202, 203, 223, 226, 226.7, 512, 1194, 1197, 1198, 2698 *et seq.*, 2802, California Code of Civil Procedure §1021.5, and California Industrial Welfare Commission (IWC) Wage Order 7-2001, 8 Cal. Code of Reg. § 11040; and seeks specific enforcement of penalties and restitution of all benefits PetSmart is alleged to have enjoyed from its alleged failure to pay minimum wages; pay for all hours worked; provide meal and rest periods; properly calculate the payment of vacation pay; properly and timely pay all wages due at the time of termination; provide suitable seats; and/or reimburse all reasonably incurred business-related expenses. Plaintiff Negrete brought an action alleging similar

claims on behalf of pet stylists in the Superior Court of California, County of Shasta, on September 20, 2012.

   **2.2** PetSmart denies any liability or wrongdoing of any kind associated with the claims alleged in the Action.  PetSmart contends, among other things, that it has complied at all times with the California Labor Code, the Industrial Welfare Commission Wage Orders, and the California Business and Professions Code.  Moreover, PetSmart contends, specifically, that it provides its non-exempt employees with all minimum and overtime wages owed, requisite meal and rest periods, complies with all seating requirements, provides reimbursement for incurred work-related expenses as required by law, and timely pays all wages at the time of termination as required by the Labor Code, including, but not limited to, regular wages, incentive compensation and accrued vacation.  For its part, PetSmart took the depositions of each of the Named Plaintiffs, reviewed its own electronic time records, reviewed various documents related to sample stores and engaged in settlement discussions with Class Counsel.

   **2.3** Plaintiffs contend that the Action is meritorious and that class certification is appropriate.

   **2.4** Lead Class Counsel has conducted a thorough investigation into the facts of the Action including extensive formal and informal discovery, and voluntary exchanges of information between the parties.  Lead Class Counsel's work has included interviewing Settlement Class Members, reviewing and analyzing computer time records for a sampling of Class Members, reviewing relevant wages statements, and reviewing documents related to PetSmart's practices at its California locations.  Lead Class Counsel also took the depositions of the persons most knowledgeable regarding various policies and practices of Defendant PetSmart.  Lead Class Counsel is knowledgeable about and has done extensive research with respect to the applicable law and potential defenses to the claims of the Settlement Class.  Lead Class Counsel has diligently pursued an investigation of the Settlement Class Members' claims against PetSmart.  Pet Stylist Settlement Class Counsel also conducted a thorough investigation into the facts of the related Negrete Action

CASE NO. 5:12-CV-03577-EJD     6.

Exhibit C Page 6 of 39

including extensive formal and informal discovery, and voluntary exchanges of information between the parties.

    **2.5**    Following thorough investigation by both Parties, a mediation was held on April 9, 2013, before Jeff Ross, in Oakland California. Although the Parties made their best efforts, no settlement was reached on the day of mediation. After the mediation, the Parties continued discussing settlement and exchanged additional information related to the class size and number of shifts worked by the non-exempt employees. Specifically, Lead Class Counsel and counsel for Defendant had multiple lengthy conversations with Mr. Ross and continued to engage in telephonic negotiations. Those negotiations continued for several months and culminated with a Mediator's Proposal from Mr. Ross. The Parties eventually accepted the terms of the Mediator's Proposal, with some modification.

    **2.6**    Based on the data exchanged, the information provided by Defendant, and on their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with PetSmart for the consideration and on the terms set forth in this Agreement is fair, reasonable, and adequate and is in the best interest of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by PetSmart, and numerous potential appellate issues. Although Defendant denies any liability, PetSmart has agreed to settle the claims on the terms set forth herein.

    **2.7**    For settlement purposes only, PetSmart will stipulate that the Settlement Class described herein should be certified.

    **2.8**    This Agreement is contingent upon the approval and certification by the Court of the Class as a non-mandatory (i.e. "opt-out") class for settlement purposes only.

**III.**    **CONDITIONS PRECEDENT TO SETTLEMENT TAKING EFFECT**

    **3.1**    The Parties enter into this Agreement on a conditional basis. This Agreement is contingent upon, and will become final and effective only upon the occurrence, of all the following events:

(a)    The Court enters an order granting preliminary approval of the Settlement consistent with each and every term described in this Agreement (or as otherwise agreed upon in writing by the Parties);

(b)    Mailing of the Class Notice and Claim Form to Settlement Class Members in accordance with the Court's order of preliminary approval;

(c)    The Court setting and conducting a fairness hearing;

(d)    The Court entering an order granting final approval of the Settlement consistent with each and every term described in this Agreement (or as otherwise agreed upon in writing by the Parties); and

(e)    The Payment of Settlement Funds as described in Paragraph 7 is complete.

(f)    Judgment is entered by the Court dismissing the lawsuit as to all class claims with prejudice; and

(g)    PetSmart has not exercised its right to revoke the Agreement, as described in Section 6.14.

**3.2**    This Agreement is contingent upon each of the conditions precedent in paragraph 3.1 occurring and is entered into voluntarily by the Parties for settlement purposes only. To the extent this Agreement is deemed void or the Effective Date does not occur or for whatever reason does not result in the final resolution of this Action, Defendant does not waive, and instead expressly reserves its right to challenge all claims and allegations in the Action upon all procedural, factual and legal grounds, as well as asserting any and all other potential defenses or privileges, including all defenses to class certification. If the Settlement is not approved by the Court, nothing in this Agreement or any draft thereof, or any documents submitted to the Court in support of this Agreement or Court approval thereof, shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the Action or in any other proceeding or forum.

## IV.    TERMS OF SETTLEMENT

The terms of the Settlement are as follows:

CASE NO. 5:12-CV-03577-EJD

8.

**4.1**   <u>**Total Settlement Amount:**</u>   The Parties agree to settle the Action for a Total Settlement Amount of up to Ten Million Dollars ($10,000,000.00).   The Total Settlement Amount is the maximum that Defendant shall be required to pay under this Agreement, and shall be deemed in satisfaction of claims for: (1) all wages, penalties, interest, and/or other amounts to be paid to Settlement Class Members; (2) the payment to the Labor and Workforce Development Agency ("LWDA") pursuant to the Private Attorneys' General Act ("PAGA"); (3) attorneys' fees and costs of Class Counsel; (4) the service payments to the Class Representatives, approved by the Court; (5) all costs of administration, including, without limitation, settlement administration fees; and (6) the employee's share of payroll taxes.   The Total Settlement Amount also includes the Reserve Fund of $100,000.00.   In no event shall Defendant be required to pay anything more than the Total Settlement Amount of $10,000,000 in connection with the settlement of the Class Claims other than Defendant's share of payroll taxes.

**4.2**   <u>**Net Distribution Amount:**</u>   The "Net Distribution Amount" is defined as the Total Settlement Amount of Ten Million Dollars ($10,000,000.00) less the payment to the Labor and Workforce Development Agency (LWDA), attorney's fees and reasonable litigation costs awarded by the Court, the service payments to the Class Representatives awarded by the Court, the Reserve Fund, and the costs of administering the Settlement.

**4.3**   <u>**Settlement Classes**</u>: The Settlement Classes shall be as follows:

a)   Non-Exempt Employee Settlement Class:   All individuals who were employed by PetSmart as an hourly paid, non-exempt employee in California at any period of time during the Covered Timeframe in a position other than a Pet Stylist, Groomer, Grooming Trainee or Salon Manager.

b)   Pet Stylist Settlement Class:   All individuals in the Settlement Class who were employed by PetSmart as a Pet Stylist, Groomer, Grooming Trainee or Salon Manager in California at any period of time during the Covered Timeframe.

CASE NO. 5:12-CV-03577-EJD                                9.

Joint Stipulation of Class Action Settlement and Release
Exhibit C Page 9 of 39

c)      Waiting Time Penalties Settlement Sub-Class: Shall mean all individual members of the Non-Exempt Employee Settlement Class and/or the Pet Stylist Settlement Class who separated from their employment with PetSmart at any time between May 23, 2009 and the date of Preliminary Approval of the Settlement Agreement.

**4.4      Allocation of the Net Distribution Amount:** The Parties agree to allocate a portion of the Net Distribution Amount to the Waiting Time Penalties Settlement Sub-Class for penalties pursuant to Labor Code section 203.  The amount allocated to the Waiting Time Penalties Settlement Sub-Class will be deducted from the Net Distribution Amount prior to the calculation of the Individual Settlement Amounts of Claimants.  Each member of the Waiting Time Penalties Settlement Sub-Class who was employed by PetSmart in California as a Pet Stylist, Groomer, Grooming Trainee or Salon Manager at the time of separation from employment will be entitled to receive $400 as a waiting time penalty in addition to their Individual Settlement Amount.  Each member of the Waiting Time Penalties Settlement Sub-Class who was employed by PetSmart in a position other than Pet Stylist, Groomer, Grooming Trainee or Salon manager at the time of separation from employment will be entitled to receive $200 as a waiting time penalty in addition to their Individual Settlement Amount.  If a member of the Waiting Time Penalties Settlement Sub-Class was separated from employment on more than one occasion during the applicable time period, that individual will only receive payment of one waiting time penalty, and such amount shall be the higher of the two applicable amounts.  In other words, if a member of the Waiting Time Penalties Settlement Sub-Class was terminated from employment as a Pet Stylist, Groomer, Grooming Trainee or Salon Manager, and later terminated from subsequent employment in a position *other than* Pet Stylist, Groomer, Grooming Trainee or Salon Manager, all during the applicable class period, that individual will receive a single waiting time penalty payment of $400 in addition to their Individual Settlement Amount.

**4.5      Calculation of the Individual Settlement Amounts:**

After deducting from the Net Distribution Amount the payments claimed by the Waiting Time Penalties Settlement Sub-Class, the Settlement Administrator shall first allocate to each Settlement Class Member from the Net Distribution Amount a Base Payment of $20.00, which shall be the minimum allocation that each individual Settlement Class Member will be paid under the Settlement. After deduction of the waiting time penalty amounts and the Base Payment for each Settlement Class Member, two-thirds (2/3) of the remaining Net Distribution Amount will be allocated to payment of the Individual Settlement Amounts of the Pet Stylist Settlement Class Members and one-third (1/3) of the remaining Net Distribution Amount will be allocated to those Settlement Class Members who are members of the Non-Exempt Employee Settlement Class. Each Claimant's Individual Settlement Amount will be based on the total gross (pre-tax) compensation paid to each Claimant who worked in a Covered Position during the Covered Timeframe. As the term is used in this Stipulation, "total gross (pre-tax) compensation" shall include all hourly and overtime pay (or non-exempt salary and overtime pay, if the position was salaried) plus commissions, based on PetSmart's compensation data. The calculation of the Individual Settlement Amounts shall be determined as follows:

a.      The Individual Settlement Amount for each Claimant who is a member of the Pet Stylist Settlement Class will be determined as follows: After the deductions from the Net Distribution Amount for the payments to the Waiting Time Penalties Settlement Sub-Class and for the Base Payments, the Settlement Administrator will divide two-thirds (2/3) of the remaining Net Distribution Amount by the total gross (pre-tax) compensation (as defined above) paid to Pet Stylist Settlement Class Members for the time period when such Pet Stylist Settlement Class Members were employed as Pet Stylists, Groomers, Grooming Trainees and/or Salon Mangers during the Covered Timeframe to determine a multiplier ("Pet Stylist Multiplier"). The Individual Settlement Amount payable to each Pet Stylist Settlement Class Member will equal that Claimant's gross (pre-tax) compensation earned during the Covered Timeframe times the Pet Stylist Multiplier.

b.      The Individual Settlement Amount for each Claimant who is a member of the Non-Exempt Employee Class will be determined as follows: After the deductions from the Net

Distribution Amount for the payments to the Waiting Time Penalties Settlement Sub-Class, the Settlement Administrator will divide one-third (1/3) of the remaining Net Distribution Amount by the total gross (pre-tax) compensation (as defined above) paid to Non-Exempt Employee Settlement Class Members for the time period when such Non-Exempt Employee Class Members were employed in positions other than Pet Stylists, Groomers, Grooming Trainees and/or Salon Mangers during the Covered Timeframe to determine a multiplier ("Non-Exempt Employee Multiplier"). The Individual Settlement Amount payable to each Non-Exempt Employee Settlement Class Member will equal that Claimant's gross (pre-tax) compensation earned during the Covered Timeframe times the Non-Exempt Employee Multiplier.

        c.     To the extent that any member of the Pet Stylist Settlement Class does not become a Claimant and there are unclaimed funds remaining of the two-thirds (2/3) portion of the Net Distribution Amount allocated to the Pet Stylist Settlement Class, the Settlement Administrator shall first redistribute the unclaimed funds to the Claimants in the Pet Stylist Settlement Class in proportion to each Pet Stylist Class Member's Individual Settlement Amount. Notwithstanding the pro-rata increase, no Claimant shall be entitled to recover more than three times (3x) his or her original Individual Settlement Amount. In the event that the redistribution causes Claimants' Individual Settlement Amounts to be increased by more than three times (3x) his or her original Individual Settlement Amount, the Settlement Administrator shall then redistribute the remaining unclaimed funds to the Claimants in the Non-Exempt Employee Settlement Class in proportion to each Claimant's Individual Settlement Amount. Notwithstanding the pro-rata increase, no Claimant shall be entitled to recover more than three times (3x) his or her original Individual Settlement Amount. In the event that the redistribution causes Claimants' Individual Settlement Amounts to be increased by more than three times (3x) his or her original Individual Settlement Amount, the remaining unclaimed funds shall first be used to pay PetSmart's share of any employer side payroll taxes owed pursuant to Section 4.1. Any Net Distribution Amount remaining after the payment of employer taxes shall be paid to a *cy pres* recipient designated jointly by the parties as Legal Aid Society – Employment Law Center, 180 Montgomery Street, Suite 600, San Francisco, CA 94104.

To the extent that any member of the Non-Exempt Employee Settlement Class does not, for any reason, become a Claimant and there are, for this or any reason, unclaimed funds remaining of the one-third (1/3) portion of the Net Distribution Amount allocated to the Non-Exempt Employee Settlement Class, the Settlement Administrator shall first redistribute the unclaimed funds to the Claimants in the Non-Exempt Employee Settlement Class in proportion to each Claimant's Individual Settlement Amount.  Notwithstanding the pro-rata increase, no Claimant shall be entitled to recover more than three times (3x) his or her original Individual Settlement Amount.  In the event that the redistribution causes Claimants' Individual Settlement Amounts to be increased by more than three times (3x) his or her original Individual Settlement Amount, the Settlement Administrator shall then redistribute the remaining unclaimed funds to the Claimants in the Pet Stylist Settlement Class in proportion to each Claimant's Individual Settlement Amount.  Notwithstanding the pro-rata increase, no Claimant shall be entitled to recover more than three times (3x) his or her original Individual Settlement Amount.  In the event that the redistribution causes Claimants' Individual Settlement Amounts to be increased by more than three times (3x) his or her original Individual Settlement Amount, the remaining unclaimed funds shall first be used to pay PetSmart's share of any taxes owed pursuant to Section 4.1.  Any Net Distribution Amount remaining after the payment of employer taxes shall be paid to a *cy pres* recipient designated jointly by the parties as Legal Aid Society – Employment Law Center, 180 Montgomery Street, Suite 600, San Francisco, CA 94104.

**4.6**     **Allocation of Individual Settlement Amounts:**  Fifty percent (50%) of each Claimant's Individual Settlement Amount will be treated as back wages and subject to normal tax withholding and shall be reported to the taxing authorities on an IRS Form W-2.  Fifty percent (50%) of each Claimant's Individual Settlement Amount will be treated as prejudgment interest and statutory penalties on which there will be no tax withholding and for which an IRS Form 1099 (marked "Other Income") shall be issued if the payment is above the minimum threshold required for the issuance of a Form 1099.    The Individual Settlement Amounts and/or the Class Representatives' service payment, will not count or be counted for determination of eligibility for, or calculation of, any employee benefits (e.g., vacations, holiday pay, retirement plans, non-qualified

deferred compensation plans, pension plans, matching contributions, etc.), or otherwise modify any eligibility criteria under any employee pension benefit plan or employee welfare plan sponsored by PetSmart, unless otherwise required by law.  Defendant and Class Counsel make no warranty and have provided no advice regarding the tax treatment of payments.  All taxes, other than the employer's share of payroll taxes, are the sole responsibility of the Claimant receiving the payment.

        **4.7**    <u>**LWDA Private Attorney General Act ("PAGA") Payment:**</u>  The Parties agree that $50,000 of the Total Settlement Amount shall be allocated as settlement of claims under the California Private Attorney General Act ("PAGA").  Seventy-five percent (75%) of that total or, $37,500 shall be paid to the LWDA pursuant to the provisions of PAGA.  The remaining twenty-five percent (25%), or $12,500, shall be distributed to the Claimants as part of the Net Distribution Amount.

        **4.8**    <u>**Service Payment to Class Representatives:**</u>  The amount, if any, awarded to the Class Representative as a service payment will be set by the Court.  PetSmart does not endorse the following amounts, but agrees not to file any pleading in opposition to Plaintiffs' request for a service payment up to $10,000 for Plaintiff Harrison and Plaintiff Valdez and up to $5000 for Plaintiff Moore, Plaintiff Myers, and Jeanette Negrete. This amount will come from the Total Settlement Amount.  The service payment will be in addition to the Individual Settlement Amount awarded to the Class Representatives.  The Settlement Administrator will issue an IRS Form 1099 with regard to the service payment and all taxes on this payment shall be the sole responsibility of each respective Class Representative.  In the event the Court reduces the service payment and awards less than $10,000 for Plaintiff Harrison and Plaintiff Valdez and $5,000 for Plaintiff Moore, Plaintiff Myers, and Negrete, the unawarded amount shall be returned to PetSmart and shall not be available for class distribution.  If the Court does not specifically approve the release provided by the Plaintiffs as specified in Sections 5.5, Plaintiffs/Class Representatives shall not be entitled to any service payment award, and the unawarded amount shall be returned to PetSmart and shall not be available for class distribution.  Lead Class Counsel GrahamHollis APC shall be responsible for providing declarations from Plaintiffs Moore, Myers, Harrison and Valdez in support of their

CASE NO. 5:12-CV-03577-EJD

requests for service payments. Pet Stylist Settlement Class Counsel Capstone Law shall be responsible for providing a declaration from Negrete in support of her request for a service payment.

**4.9** **Attorneys' Fees and Costs to Class Counsel:** PetSmart agrees not to oppose a total award of fees to Class Counsel of up to 33.33% of the Total Settlement Amount. Lead Class Counsel GrahamHollis APC shall apply for an award of fees of up to 28.83% of the Total Settlement Amount (or $2,883,000), and costs incurred by Lead Class Counsel. Pet Stylist Settlement Class Counsel Capstone Law APC shall apply for an award of fees of up to 4.5% of the Total Settlement Amount (or $450,000), and costs incurred by Pet Stylist Settlement Class Counsel. Class Counsel agree that they shall not oppose the attorneys' fee awards requested by each other. Said fees shall be in addition to payment of all costs actually incurred by Class Counsel in connection with this matter. Failure of the court to award the requested attorney's fees and costs is not a ground to void the Agreement.

**4.10** If the Court does not award a total of 33.33% of the Total Settlement Amount as attorneys' fees, or the requested amounts of 28.83% to Lead Class Counsel and 4.5% to Pet Stylist Settlement Class Counsel, the unawarded amounts shall be returned to PetSmart and shall not be available for class distribution.

**4.11** **Non-Monetary Terms of the Settlement:** In addition to the monetary Settlement identified in Section 4.1, as part of the resolution of this matter, PetSmart also agrees to the following:

a.     PetSmart has agreed to provide additional grooming tools for its in-store salons to be used by its Pet Stylists. Moreover, PetSmart is providing specific communication to Pet Stylists on the use of store tools by Pet Stylists. The Parties agree that provision of these additional in-store grooming tools for use by Pet Stylists to perform their grooming duties satisfies PetSmart's obligations under Labor Code section 2802 and/or any other state or federal law requiring the reimbursement of business expenses.

b.     PetSmart has agreed to revise its Pet Stylist pay plans to specifically confirm that grooming employees are being paid for all hours worked at their regular rate, and that any other

CASE NO. 5:12-CV-03577-EJD                                      15.

amounts paid are in addition to the hourly rate.  The Parties agree that the revised pay plan complies with the requirements of state and federal law.

      c.    As part of the agreement between the Parties, Defendant retained a consultant specializing in safety and ergonomic issues to conduct an ergonomic and safety evaluation of its current practices and to review its policies and procedures with regard to addressing whether to allow Pet Stylists to sit while performing grooming tasks.  PetSmart's retention of the consultant, and the results of the review, is subject to attorney-client privilege and/or attorney work product doctrine.  PetSmart is not obligated, through this Agreement, or otherwise, to disclose the results and findings of the consultant or to make any changes to its current practices.

      d.    PetSmart has revised its policies to emphasize that all hours worked will be paid, to expressly prohibit off-the clock work, to require that any employee who performs work off-the-clock must inform his or her manager of such incident, and to allow employees who are interrupted during meal or rest breaks additional time to take a full, uninterrupted meal or rest break.

      **4.12**    Plaintiffs believe that the settlement is fair and reasonable and will so represent to the Court.  Although it denies any liability, PetSmart has agreed to settle the claims on the terms set forth herein.

## V.    RELEASE OF CLAIMS BY SETTLEMENT CLASS MEMBERS WHO DO NOT OPT-OUT

      **5.1**    Upon the final approval of the Settlement by the Court, and except as to such rights or claims as may be created by this Agreement, each member of the Settlement Class (other than opt-outs), regardless of whether he or she has timely submitted a Claim Form, will fully release and discharge PetSmart, including its former and present parent companies, subsidiaries, divisions, concepts, related or affiliated companies, shareholders, officers, directors, employees, partners, agents, representatives, attorneys, insurers, successors and assigns, and any individual or entity that could be jointly liable with any of the foregoing ("Released Parties") from any claims, causes of action, damages, wages, benefits, expenses, penalties, debts, liabilities, demands, obligations, attorneys' fees, costs, and any other form of relief or remedy in law, equity, or whatever kind or

nature, whether known or unknown, suspected or unsuspected, arising from: (1) the Action and any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the California Labor Code, Industrial Welfare Commission Wage Orders, and the California Business and Professions Code, claims under PAGA, claims for restitution and other equitable relief, liquidated damages, punitive damages, waiting time penalties, penalties of any nature whatsoever, other compensation or benefits; and (2) any alleged wage and hour violations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, contract, tort or other theory of liability under state or local law, by any Class Member against the Released Parties (collectively, the "Released Claims"), and including, but not limited to, any claims specifically referenced herein.  In addition, any Class Member who timely submits a Claim Form will fully and forever release and discharge the Released Parties from any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the Fair Labor Standards Act ("FLSA") and any alleged federal wage and hour violations/allegations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, regulation contract, tort or other theory of liability under federal law or regulation by any Class Member against the Released Parties (collectively, the "FLSA Released Claims").  The release will include any claims arising from or that may have arisen from the Parties' respective prosecution and/or defense of this litigation.  The release will apply to the Covered Time Frame and include any cause of action alleged in or which could have been alleged based on the facts in the Complaint or any Amended Complaint that may be filed prior to the approval of this Settlement.  All Released Claims are released for all Class Members regardless of whether they submit a Claim Form or receive any payment under the Settlement unless they Opt-Out of the Settlement, and all FLSA Released Claims are released for all Class Members who timely submit a Claim Form, regardless of whether they receive any payment under the Settlement.  The Released Claims and FLSA Released Claims do not include claims for workers' compensation benefits or any of the claims that may not be released by law.

**5.2**     The release will cover all remedies that could be claimed based on the actual claims in the causes of action described in the Action including but not limited to, statutory, constitutional, contractual and common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief.  The release will cover all statutory violations that could be claimed for the causes of action described in the Action including but not limited to, the federal Fair Labor Standards Act, the California Labor Code Sections 96 through 98.2 *et seq.*, the California Payment of Wages Law, and in particular, California Labor Code §§200 *et seq.*, including California Labor Code §§200 through 243, and §§203 and 218 and 218.5 in particular, California Labor Code §§300 *et seq.*; California Labor Code §§400 *et seq.*; California Working Hours Law, California Labor Code §§500 *et seq.*, California Labor Code §1194; the California Unfair Competition Act, and in particular, California Business & Professions Code §§17200 *et seq.*; the PAG Act, codified at California Labor Code §§2698 through 2699; California Code of Civil Procedure §1021.5; and any other provision of the California Labor Code or any applicable California Industrial Welfare Commission Wage Orders, in all of their iterations.  Nothing in this paragraph is intended to extend the scope of the release applicable to the Settlement Class Members as described in Paragraph 5.1.

**5.3**     The release of claims provided by this Agreement includes claims that are described in the Action and as to those claims each Settlement Class Member, including the Class Representatives, waives all rights and benefits afforded by Section 1542 of the California Civil Code as to unknown claims and does so understanding the significance of that waiver.  Section 1542 provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Nothing in this paragraph is intended to extend the scope of the release applicable to the Class Members as described in Paragraph 5.1.

CASE NO. 5:12-CV-03577-EJD

18.

 5.4   All Class Members shall be enjoined from filing any DLSE claims or from initiating or pursuing any proceedings regarding claims released by the Agreement before opting out of the Settlement.   In addition, Class Members who file a claim and who thereby opt into the settlement of all FLSA claims shall be enjoined from initiating or pursuing any proceedings regarding any California state law claims or any federal FLSA claims released by this Agreement.

 5.5   Upon final approval of the settlement and payment of all sums required under this Agreement, Named Plaintiffs/Class Representatives will execute a general release of all known and unknown claims each may have against PetSmart as of that date, with the sole exception that Plaintiffs may continue to pursue their individual claims as stated in the Complaint for wrongful termination in violation of public policy, failure to accommodate and failure to engage in the interactive process under the Fair Employment and Housing Act.   The unreleased claims are specifically limited to the following: the First, Third and Fourth cause of action as to Plaintiff Moore; the First and Third causes of action as to Plaintiff Myers as well as Plaintiff Myers' potential wrongful termination in violation of public policy claim; the First and Third causes of action as to Plaintiff Valdez and any claim related to Plaintiff Valdez's current employment with PetSmart; and the Second and Third causes of action as to Plaintiff Harrison and any claim related to Plaintiff Harrison's current employment with Petsmart (hereinafter "Unreleased Claims"). To ensure that the releases provided for in this Agreement are fully enforceable in accordance with their terms, with the exception of the Unreleased Claims, Plaintiffs knowingly and voluntarily waive any protection that they might have by virtue of Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

In addition, Plaintiffs hereby knowingly and voluntarily waive any protection that may exist under any comparable or similar statutes under the laws of any state and/or principles of common law, as it pertains to the enforcement of the release provided for in this paragraph.   The releases by the

Plaintiffs are intended to be broad and the Plaintiffs agree to release any and all claims, whether known or unknown, they may have against PetSmart as of the date of Preliminary Approval of the Settlement, with the exception of the specific Unreleased Claims.

**5.6**    Other than the need to file a Claim Form and the requirement that objectors make themselves available, the release of claims described in sections 5.1-5.4 shall be the sole requirement that the Settlement places on Settlement Class Members other than the Class Representatives.  Excepting the foregoing, the Settlement shall not impose any affirmative duties or obligations on the Settlement Class Members.

5.7    In addition to the release of claims provided for herein, Class Representative Jeanette Negrete agrees to join the parties in seeking approval of the settlement, and to file a notice of dismissal with prejudice of, or take any other actions necessary to dismiss with prejudice, her appeal before the United States Court of Appeals for the Ninth Circuit, Case No. 14-15631, and her separately filed civil action pending before the Northern District of California, captioned *Jeanette Negrete, individually and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA") v. PetSmart, Inc., Randy Mosbacher and Does 1-10,* Case No. 13-cv-04300-EJD.  With respect to her appeal, Negrete must file the requisite notice or stipulation of dismissal with prejudice with the Court of Appeals within two business days of the Parties' execution of this Stipulation.  With respect to Case No. 13-cv-04300-EJD pending before the Northern District of California, upon execution of this Stipulation, Negrete agrees to jointly (with PetSmart) seek a stay of proceedings pending final approval of the settlement.  Negrete must file the requisite notice or stipulation of dismissal with prejudice within five days of the order granting final approval to the Settlement and payment of sums owed to her under this Agreement.

## VI.    NOTICE AND CLAIM PROCESS

**6.1**    The Parties have received bids for four settlement administrators from the list approved by defense counsel, and have mutually selected Simpluris to act as the Settlement Administrator for this matter.  The duties of the Settlement Administrator will include compiling the

class list from information provided by the Parties, handling all mailings to the Settlement Class, tracing undeliverable mailings, recording and tracking responses to the mailing to the Settlement Class (including recording the identity of any Settlement Class Members who submit Claim Forms or request exclusion), responding to inquiries made by the Settlement Class, calculating Individual Settlement Amounts, issuance of and mailing out of Individual Settlement Amounts, reporting payment of the Individual Settlement Amounts to all required taxing and other authorities, taking appropriate withholding from the Individual Settlement Amounts, and paying all employer payroll taxes and other required payments withheld, and other related tasks as mutually agreed to by the Parties. It is also understood that the Settlement Administrator will establish a Qualified Settlement Fund ("QSF") pursuant to Section 468B(g) of the Internal Revenue Code, and regulations promulgated thereunder for the purpose of administering this Settlement. All of the costs, fees, expenses, and liabilities incurred by the Settlement Administrator in performing these functions shall be paid out of the Total Settlement Amount.

      **6.2**     No later than five (5) business days before the notice mailing deadline, PetSmart shall provide the Settlement Administrator and Class Counsel with a list in electronically usable format regarding all Settlement Class Members, including their (a) last known address, (b) telephone number (if available), (c) Social Security Number, (d) weeks worked in a Covered Position(s) in each of the Settlement Classes during the Covered Timeframes, (e) total gross compensation paid to Settlement Class Members during the Covered Timeframe, which shall include all hourly and overtime pay (or non-exempt salary and overtime pay, if the position was salaried) plus commissions, based on PetSmart's compensation data;[1] and (f) estimated payout (as calculated

---

[1]    Computations and distributions are based on the HRIS (Human Resources Information System) and compensation data produced by PetSmart. Reasonable assumptions were applied where there were limitations such as, e.g., where different information systems (in place at different times within the statute of limitations) had to be combined and normalized to calculate class member workweeks in each class. Any class member with less than one full workweek in a particular class was allocated one full workweek within that class. Available compensation data was de-duplicated and allocated to the specific class in which it was earned to the extent possible. To the extent that only a portion of the total compensation earned in a particular pay period was within the relevant time period for one of the classes, all of the earned compensation (as defined above) for that pay period was credited to that class. If a pay period spanned time worked in both the Non-Exempt Employee Settlement Class and the Pet Stylist Settlement Class and compensation could not precisely be apportioned between the two, the compensation was credited to the Pet Stylist Settlement Class for purposes of this analysis. Additionally, for class members who worked during the Covered Timeframe

CASE NO. 5:12-CV-03577-EJD            21.

under Section 4.4) in connection with the Waiting Time Penalties Settlement Sub-Class. Class Counsel may provide the Settlement Administrator with any information that may assist the Settlement Administrator in obtaining current contact information for any Settlement Class Member. The Parties agree that the information provided pursuant to this Section will be kept completely confidential and will not be released or used for any purpose other than identifying Settlement Class Members and researching current contact information.

      **6.3**    The Settlement Administrator shall mail a Notice of Pendency of Class Action, Proposed Settlement and Hearing Date for Court Approval ("Notice") in the form approved by the Court, no later than twenty-five (25) days after the Court grants Preliminary Approval or as otherwise ordered by the Court. The Notice will include an explanation of the Settlement Class Member's right to be excluded from the Settlement Class by submitting a written request for exclusion. Attached to the Notice will be a Claim Form and Release ("Claim Form"), in the form approved by the Court. The envelope containing the Class Notice shall bear the following phrase in bold type, "RETURN SERVICE REQUESTED." The envelope shall also bear the following phrase in the bottom left hand corner: IMPORTANT—PETSMART CLASS ACTION SETTLEMENT INFORMATION. PLEASE OPEN IMMEDIATELY. Included with the Class Notice shall be a pre-paid, pre-addressed envelope for the Class Member to respond to the Claim Notice.

      **6.4**    The Settlement Administrator will take reasonable steps to ensure that the Notice and Claim Form are sent to all Settlement Class Members. For each Class Member who according to the records provided by PetSmart is a current active employee, the Settlement Administrator shall mail the Class Notice to the last known address provided by PetSmart. No reasonable verification or Accurint skip tracing will be conducted on Class Members designated in PetSmart's records as active, as the settling Parties agree that PetSmart should have the most up to date address information for these Class Members. For Class Members who according to the records provided by PetSmart are former employees, and who are not Class Representatives, prior to mailing the Class Notice, the Settlement Administrator shall undertake a reasonable address verification and

---

and had compensation of less than $100 in any class, a minimum of $100 was assumed to have been earned for that class member for purposes of determining their proportional share of the applicable class's payout.

Accurint skip tracing to ascertain the accuracy of the last known address of the Class Member. To the extent this process yields an updated address, that updated address shall replace the last known address and be treated as the last known address for purposes of this Stipulation and for Class Notice mailing. If a Class Member is known to be deceased, the Class Notice for that Class Member shall be mailed to the last known address (or updated address, if applicable) of the legal representative of the deceased Class Member's estate, to the extent known. Unless the Settlement Administrator receives a Class Notice returned from the United States Postal Service for reasons stated below, that Class Notice shall be deemed mailed and received by the Class Member to whom it was sent five (5) days after mailing. In the event that subsequent to the first mailing of a Class Notice and prior to the Claim Deadline, that Class Notice is returned to the Settlement Administrator by the United States Postal Service because the address is no longer valid i.e. the envelope is marked "Return to sender" the Settlement Administrator shall undertake Experian (or similar service) skip tracing on the Class Member to attempt to ascertain the current address of the particular Class Member and, if such an address is ascertained, the Settlement Administrator will resend the Class Notice within three (3) business days of receipt of the returned Class Notice. In either event the class Notice will be deemed received once it is mailed for the second time. In the event that the Settlement Administrator must re-mail any class Notice pursuant to the provisions of this paragraph the Claim, the Opt-Out and Objection Deadlines shall be extended for those re-mailings to no later than ten (10) calendar days from the date of re-mailing of the Class Notice. The Settlement Administrator shall include a cover letter with any re-mailing informing the Class Member of the re-mailing of the Class Notice and that he or she has ten (10) calendar days from the date of the re-mailing (which shall be the date the re-mailing of the Class Notice is postmarked) to return to the Settlement Administrator via U.S. first class mail (or submit via the Settlement Claim website for a claim only) any response allowed by the Stipulation and Class Notice, even if postmarked after the original Claim, Objection and Opt-Out Deadlines. Compliance with the procedures outlined in this paragraph shall constitute sufficient notice to Class Members of this proposed settlement and of the Settlement Hearing, and shall satisfy the requirements of due process. Nothing else shall be required to be done by the Settling Parties,

CASE NO. 5:12-CV-03577-EJD

23.

Class Counsel, Counsel for PetSmart, or the Settlement Administrator to provide notice of the proposed settlement and Settlement Hearing. For the five Class Representatives the Settlement Administrator shall mail the Class Notice to the Class Representatives in care of Class Counsel at Class Counsel's address – specifically, the Class Notices to the four Named Plaintiffs will be sent to Lead Class Counsel, and the Class Notice to Class Representative Negrete will be sent to Pet Stylist Settlement Class Counsel.

      **6.5**    The Settlement Administrator shall maintain a toll-free telephone line that shall be staffed and/or provide automated Interactive Voice Response with the ability for Settlement Class Members to leave messages during non-business hours.

      **6.6**    The Settlement Administrator shall maintain a website with the URL www.petsmartsettlement.com that Settlement Class Members can use to file a Claim Form, track the processing of a Claim Form, and contact the Settlement Administrator if they have questions. The form of the website shall be subject to the approval of Class Counsel and Defendant's Counsel.

      **6.7**    Each Claim Form will show the minimum estimated payment amount for that Settlement Class Member and the total number of workweeks that the Settlement Class Member worked as either a Pet Stylist, Groomer, Grooming Trainee and/or Salon Manager, or, in a position other than a Pet Stylist, Groomer, Grooming Trainee and/or Salon Manager, during the Covered Timeframe. If a Settlement Class Member disputes the number of workweeks or the estimated payment amount listed on his or her Claim Form, the Settlement Class Member may provide written documentation to the Settlement Administrator to support his or her dispute. When a Settlement Class Member disputes the number of workweeks or estimated payment listed on his or her Claim Form, PetSmart's records will control. Resolution of these and similar issues will be paid from the Reserve Fund until it is exhausted. In no event, however, shall the resolution of any such dispute result in PetSmart being required to pay more than the Total Settlement Amount.

      **6.8**    Each Settlement Class Member will have sixty (60) calendar days from the date the Claim Forms were mailed to submit the completed Claim Form or request exclusion by U.S. first class mail to the Settlement Administrator. For a Class Member to validly exclude himself or

herself from the Class and this Settlement (*i.e.*, to validly opt-out), a written request for exclusion must be signed by the Class Member, and must be sent to the Settlement Administrator, the Class Notice shall contain instructions on how to opt-out, including the language to be used in a request for exclusion.  By submitting such a request for exclusion, a Class Member shall be deemed to have exercised his or her option to opt out of the class action lawsuit, except that exercising the option to opt out does not alter the binding nature of the release of PAGA claims or remedies pursuant to the final Judgment pursuant to *Arias v. Superior Court*, 46 Cal. 4th 969 (2009).  Accordingly, a Class Member who timely submits a valid request for exclusion will not be entitled to any money under this Settlement.

6.9     Thirty (30) days after the initial mailing of the Notice and Claim Form, the Settlement Administrator will mail to each Settlement Class Member who has not responded with the return of a Claim Form or a request for exclusion, a postcard to remind each such Settlement Class Member to submit a Claim Form before the deadline in the form approved by the Court.

6.10     Any Settlement Class Member who objects to this Settlement shall file his or her objection with the Court and serve the objection on Class Counsel and Counsel for Defendant within thirty (30) calendar days from the date the Claims Forms were mailed.

6.11     A Claim Form or request for exclusion must be signed and dated to be valid. In the case of Claim Forms submitted via the website, an electronic signature shall be sufficient for all purposes.  If a Settlement Class Member submits both a Claim Form and a request for exclusion, the Claim Form shall control and the request for exclusion shall have no effect.

6.12     If a Claim Form or request for exclusion is returned by a Settlement Class Member but has not been signed or is otherwise materially deficient, the Settlement Administrator will send a deficiency notice to the Settlement Class Member within three (3) business days of the date the Settlement Administrator becomes aware of such deficiency.  Any deficient Claim Form that was originally submitted on or before the deadline to submit a claim shall be accepted and paid if the deficiency is cured within seven (7) calendar days prior to the date of the Final Approval Hearing.  Any request for exclusion that was originally submitted on or before the deadline to submit

CASE NO. 5:12-CV-03577-EJD                          25.

a request for exclusion shall be effective if the deficiency is cured within seven (7) calendar days prior to the date of the Final Approval Hearing.

**6.13**    At least ten (10) court days prior to the deadline for filing the Motion for Final Approval the Settlement Administrator shall provide counsel for the Parties a declaration of due diligence and proof of mailing with regard to the mailing of the Notice and Claim Form.

**6.14**    If more than 10% of the Settlement Class Members submit a request for exclusion of the settlement, PetSmart may at its own election void this Agreement.

**6.15**    If there is an objection and/or an appeal as a result of said objection, all sides will bear their own costs of appeal, including legal fees.

**6.15**    PetSmart retains the right, solely at its own discretion, to accept any late filed Claim Forms from Settlement Class Members, up to and including fifteen (15) calendar days prior to the final approval hearing, and to review and accept the claims of any self-identifiers.  Resolution of these and similar issues will be paid from the Reserve Fund until it is exhausted.

## VII.    PAYMENT OF SETTLEMENT FUNDS

**7.1**    Within fifteen (15) business days after the Court grants Final Approval, PetSmart will deliver to the Settlement Administrator the Total Settlement Amount, provided that the Settlement Administrator has provided PetSmart with the appropriate wire transfer information and an executed IRS Form W9.

**7.2**    If no objection to the Settlement is pending at the time of the Final Approval Hearing, the Settlement Administrator shall disburse payments according to the following schedule: No later than five (5) calendar days after receiving payment, the Settlement Administrator shall transfer to Lead Class Counsel and Pet Stylist Settlement Class Counsel by separate wire transfers the attorney's fees and costs awarded to each by the Court.  No later than ten (10) calendar days after receiving payment, the Settlement Administrator shall send to Lead Class Counsel via overnight mail checks to Named Plaintiffs/Class Representative Moore, Myers, Harrison, and Valdez in the amounts of the Service Payments ordered by the Court, and a separate check to Pet Stylist Settlement Class Counsel for the amount of the Service Payment ordered by the Court for Class

Representative Negrete (on the condition that her appeal and her other civil action before the Northern District of California have both been dismissed with prejudice).  No later than thirty-five (35) calendar days after receipt of the funds from PetSmart, the Settlement Administrator will mail the payments to the Claimants and the LWDA, and will pay the settlement administration fees and costs.

**7.3**    If an objection is pending at the time of the Final Approval Hearing, the Settlement Administrator shall hold the Net Settlement Amount in escrow until the deadline for appeal from the judgment granting Final Approval to the Settlement has passed.  If there is an appeal of the order granting final approval, the Settlement Administrator shall hold the Net Settlement Amount in escrow until the appeal has been resolved.  The Settlement Administrator shall disburse all undistributed funds within fifteen (15) days after the escrow period ends.

**7.4**    If a settlement check is returned by the postal service, the Settlement Administrator may use appropriate methods including but not limited to skip-trace and telephone follow-up to obtain the current address of the Claimant.  The Settlement Administrator will re-mail all checks that were returned by the postal service within five (5) days.

**7.5**    Settlement checks that are returned a second time and settlement checks not cashed within 180 days of issuance will not be re-issued.  If a Claimant does not cash or deposit his or her check within 180 days from the date of issuance, or if a settlement check is returned for a second time, the Settlement Administrator shall cause that Claimant's payment to be sent to the California State Controller's office to be placed in the Unclaimed Properly Fund for the benefit of the Claimant. In such event, this Agreement will be binding upon the Claimant to the same extent as if he or she had received and timely cashed the settlement check.

## VIII.   DUTIES OF THE PARTIES PRIOR TO PRELIMINARY APPROVAL

**8.1**    Promptly after execution of this Agreement, Plaintiffs shall move the Court for Preliminary Approval of this Settlement and entry of an order accomplishing the following:

(a)      scheduling a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the Settlement Class Members;

(b)      approving as to form and content the proposed Notice;

(c)      approving as to form and content the proposed Claim Form;

(d)      directing the mailing of the Notice and Claim Form by first class mail to the Settlement Class Members;

(e)      preliminarily approving this Settlement;

(f)      preliminarily certifying the Settlement Class for purposes of settlement; and

(g)      preliminarily approving the PAG Act payment to the LWDA.

**8.2**     Class Counsel shall be responsible for drafting and filing the Motion for Preliminary Approval, but shall provide Defendant with the opportunity to review and comment prior to filing.  The Parties shall submit this Agreement in support of the Motion for Preliminary Approval of the Settlement.

**8.3**     Prior to the filing of the Motion for Preliminary Approval, Class Counsel shall treat the terms of this settlement, both the fact of and the amount, as strictly confidential.  Neither the fact of nor the amount of this settlement shall be disclosed to any person prior to the filing.  As the sole exception, the settlement and its terms may be discussed among those who have signed a mediation confidentiality agreement and who agree to keep the terms of this agreement strictly confidential.

## IX.      DUTIES OF THE PARTIES PRIOR TO FINAL APPROVAL

**9.1**     In connection with the hearing on final approval of the Settlement, Plaintiffs will submit a proposed final order approving the Settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions.  Lead Class Counsel shall be responsible for drafting and filing the Motion for Final Approval, but shall allow opportunity for Defendant's counsel to review and comment prior to filing.

CASE NO. 5:12-CV-03577-EJD

28.

**9.2**     Lead Class Counsel shall be responsible for filing their Motion for Approval of their Attorneys' Fees and Costs, with supporting documentation.  Pet Stylist Settlement Class Counsel shall be responsible for filing their Motion for their Attorneys' Fees and Costs, with supporting documentation.

**9.3**     The Parties each expressly waives any right to appeal they may have in connection with any ruling of the Court in connection with the Action and this Settlement.

**9.4**     Upon a showing that PetSmart has made all payments required by this Agreement, the Parties will jointly move for an order dismissing the Action on the merits and with prejudice, and permanently barring all Settlement Class Members who did not otherwise opt-out of the Settlement from prosecuting any Released Claims against any of the Released Parties.

## X.     SIGNATORIES AUTHORITY

**10.1**     The signatories hereto represent that they are fully authorized to enter into this Agreement and bind the Parties hereto.

## XI.     MUTUAL FULL COOPERATION

**11.1**     The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their best efforts, including all reasonable efforts contemplated by this Agreement and any other reasonable efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Class Counsel shall, with the assistance and cooperation of PetSmart and their counsel, take all reasonably necessary steps to secure the Court's preliminary and final approval of the settlement.

## XII.     NO PRIOR ASSIGNMENTS

**12.1**     The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged by this Agreement.

CASE NO. 5:12-CV-03577-EJD                                29.

## XIII.   ENFORCEMENT ACTION

**13.1**     Except as otherwise provided in this Agreement, in the event that one or more of the Parties to this Agreement institutes any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including expert witness fees, incurred in connection with any enforcement action.

## XIV.   NOTICES

**14.1**     Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed:

>     To the Settlement Class:
>         Graham S.P. Hollis
>         GRAHAM**HOLLIS** APC
>         3555 Fifth Avenue
>         San Diego, CA 92103
>
>         Raul Perez
>         Capstone Law APC
>         1840 Century Park East, Suite 1840
>         Los Angeles, CA 90067
>
>     To PetSmart, Inc.:
>         Michelle Heverly
>         Littler Mendelson
>         50 W. San Fernando St., 15th Floor
>         San Jose, CA 95113

## XV.   OTHER MATTERS

**15.1**     **Construction.** The Parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arms' length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his or its counsel participated in the drafting of this Agreement.

**15.2    Captions and Interpretations.** Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.   Each term of this Agreement is contractual and not merely a recital.

**15.3    Modification.**   This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.   This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by all of the Parties hereto.

**15.4    Integration Clause.**   This Agreement contains the entire agreement between the Parties relating to the Settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein, including but not limited to the Memorandum of Understanding.   No rights hereunder may be waived except in writing.

**15.5    Signatures of All Settlement Class Members Unnecessary to be Binding.** It is agreed that, because the members of the Settlement Class are numerous, it is impossible or impractical to have each Settlement Class Member execute this Agreement.   The Notice will advise all Settlement Class Members of the binding nature of the release provided herein and such shall have the same force and effect as if this Agreement were executed by each Settlement Class Member.

**15.6    Confidentiality Prior to Preliminary Approval.**   With the exception of communications among those who executed the Mediation Confidentiality Agreement on April 9, 2013, the Plaintiffs and Class Counsel agree not to discuss the Settlement amounts, the terms of the Agreement, or any of the issues discussed during mediation or surrounding terms of the Settlement Agreement or the amounts provided therein until the date of the filing of the Motion for Preliminary Approval.   Following the filing of the Motion for Preliminary Approval, Class Counsel will limit publicity regarding this Settlement to a posting on its website of the Notice.

**15.7   Counterparts.**  This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one fully-signed Agreement, which shall be binding upon and effective as to all Parties.

**15.8   No Retaliation.**  PetSmart agrees not to retaliate against any employee making a claim for proceeds under this Agreement, nor to take any action to encourage or discourage employees from participating in the Settlement Process.

IT IS SO STIPULATED

Dated: November 12, 2014               PetSmart, Inc.


                                       David Lenhardt
                                       CEO PetSmart, Inc.


Dated:                                 GRAHAM**HOLLIS** APC FOR GRAHAMHOLLIS
                                       APC, PLAINTIFFS DANETTE MOORE, LATRESA
                                       MYERS, ALANNA HARRISON, ALISA VALDEZ


                                       Attorneys for Plaintiffs/Lead Class Counsel

Dated:                                 CAPSTONE LAW APC FOR CAPSTONE LAW APC
                                       AND PLAINTIFF JEANETTE NEGRETE


                                       Pet Stylist Settlement Class Counsel


Dated:                                 Littler Mendelson, P.C.


                                       Attorneys for PetSmart, Inc.

DB1 81127771.2

CASE NO. 5:12-CV-03577-EJD                       32.

Joint Stipulation of Class Action Settlement and Release

Exhibit C Page 32 of 39

**15.7 Counterparts.** This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one fully-signed Agreement, which shall be binding upon and effective as to all Parties.

**15.8 No Retaliation.** PetSmart agrees not to retaliate against any employee making a claim for proceeds under this Agreement, nor to take any action to encourage or discourage employees from participating in the Settlement Process.

IT IS SO STIPULATED

Dated:                                   PetSmart, Inc.


_____
David Lenhardt
CEO PetSmart, Inc.

Dated:  *11-10-14*                       GRAHAM**HOLLIS** APC FOR GRAHAMHOLLIS
                                         APC, PLAINTIFFS DANETTE MOORE, LATRESA
                                         MYERS, ALANNA HARRISON, ALISA VALDEZ

_____
Attorneys for Plaintiffs/Lead Class Counsel

Dated:                                   CAPSTONE LAW APC FOR CAPSTONE LAW APC
                                         AND PLAINTIFF JEANETTE NEGRETE


_____
Pet Stylist Settlement Class Counsel

Dated:  *11.10.2014*                     Littler Mendelson, P.C.


_____
Attorneys for PetSmart, Inc.

DB1/ 81127771.2

CASE NO. 5:12-CV-03577-EJD                 32.

Joint Stipulation of Class Action Settlement and Release

Exhibit C Page 33 of 39

**15.7   Counterparts.** This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one fully-signed Agreement, which shall be binding upon and effective as to all Parties.

**15.8   No Retaliation.** PetSmart agrees not to retaliate against any employee making a claim for proceeds under this Agreement, nor to take any action to encourage or discourage employees from participating in the Settlement Process.

IT IS SO STIPULATED

Dated:                                    PetSmart, Inc.



                                          _____
                                          David Lenhardt
                                          CEO PetSmart, Inc.


Dated:                                    GRAHAM**HOLLIS** APC FOR GRAHAMHOLLIS
                                          APC,  PLAINTIFFS DANETTE MOORE, LATRESA
                                          MYERS, ALANNA HARRISON, ALISA VALDEZ


                                          _____
                                          Attorneys for Plaintiffs/Lead Class Counsel

Dated: 11/10/2014                         CAPSTONE LAW APC FOR CAPSTONE LAW APC
                                          AND PLAINTIFF JEANETTE NEGRETE


                                          _____
                                          Pet Stylist Settlement Class Counsel



Dated:                                    Littler Mendelson, P.C.



                                          _____
                                          Attorneys for PetSmart, Inc.

DB1/ 81127771.2

CASE NO. 5:12-CV-03577-EJD                        32.

Joint Stipulation of Class Action Settlement and Release

Exhibit C Page 34 of 39

1

2   Dated: 11/10/14                          Danette Moore, Plaintiff/Class Representative

3

4

5   Dated:                                   Latresa Myers, Plaintiff/Class Representative

6

7   Dated:                                   Alanna Harrison, Plaintiff/Class Representative

8

9

10  Dated:                                   Alisa Valdez, Plaintiff/Class Representative

11

12  Dated:                                   Jeanette Negrete, Class Representative for Pet

13                                           Stylist Settlement Class

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 5:12-CV-03577-EJD              33.

Joint Stipulation of Class Action Settlement and Release

Exhibit C Page 35 of 39

1

2     Dated: _____        _____
                                             Danette Moore, Plaintiff/Class Representative
3

4

5     Dated: _____        *Latresa Myers*
                                             Latresa Myers, Plaintiff/Class Representative
6

7     Dated: _____        _____
                                             Alanna Harrison, Plaintiff/Class Representative
8

9

10    Dated: _____        _____
                                             Alisa Valdez, Plaintiff/Class Representative
11

12    Dated: _____        _____
                                             Jeanette Negrete, Class Representative for Pet
13                                           Stylist Settlement Class

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 5:12-CV-03577-EJD                       33.
                    Joint Stipulation of Class Action Settlement and Release

Exhibit C Page 36 of 39

1

Dated:

2
                                     Danette Moore, Plaintiff/Class Representative

3

4

5

Dated:

6
                                     Latresa Myers, Plaintiff/Class Representative

7

Dated: 11/10/2014

8
                                     Alanna Harrison, Plaintiff/Class Representative

9

10

Dated:

11
                                       Alisa Valdez, Plaintiff/Class Representative

12

Dated:

13
                                     Jeanette Negrete, Class Representative for Pet Stylist Settlement Class

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 5:12-CV-03577-EJD

33.

Joint Stipulation of Class Action Settlement and Release

Exhibit C Page 37 of 39

1

2  Dated: _____

3                                                    _____
                                                     Danette Moore, Plaintiff/Class Representative

4

5  Dated: _____

6                                                    _____
                                                     Latresa Myers, Plaintiff/Class Representative

7

8  Dated: _____

9                                                    _____
                                                     Alanna Harrison, Plaintiff/Class Representative

10 Dated: 11/10/14

11                                                   _____
                                                     Alisa Valdez, Plaintiff/Class Representative

12

13 Dated: _____

14                                                   _____
                                                     Jeanette Negrete, Class Representative for Pet
                                                     Stylist Settlement Class

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 5:12-CV-03577-EJD

33.

Joint Stipulation of Class Action Settlement and Release

Exhibit C Page 38 of 39

1

2    Dated: _____

                        _____

3                          Danette Moore, Plaintiff/Class Representative

4

5    Dated: _____

                        _____

6                          Latresa Myers, Plaintiff/Class Representative

7    Dated: _____

                        _____

8                          Alanna Harrison, Plaintiff/Class Representative

9

10   Dated: _____

                        _____

11                         Alisa Valdez, Plaintiff/Class Representative

12   Dated: Nov 19th, 2014

                        *Jeanette Negreta*

13                         Jeanette Negrete, Class Representative for Pet
                         Stylist Settlement Class

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 5:12-CV-03577-EJD

33.

Joint Stipulation of Class Action Settlement and Release

Exhibit C Page 39 of 39

EXHIBIT D

1 | GRAHAM**HOLLIS** APC
GRAHAM S.P. HOLLIS (SBN 120577)
2 | ghollis@grahamhollis.com
MARTA MANUS (SBN 260132)
3 | mmanus@grahamhollis.com
3555 Fifth Avenue
4 | San Diego, California  92103
Telephone: 619.692.0800
5 | Facsimile: 619.692.0822

6 | Attorneys for Plaintiffs

7

8 |              UNITED STATES DISTRICT COURT

9 |      NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

10 | DANETTE M. MOORE, LATRESA MYERS,      Case No.:   12-CV-03577 EJD
ALANNA HARRISON and ALISA VALDEZ
11 | individually and on behalf of others similarly      **DECLARATION OF DANNETTE MOORE IN**
situated,                                             **SUPPORT OF PLAINTIFFS' UNOPPOSED**
12 |                                                    **MOTION FOR (1) PROVISIONAL**
                    Plaintiffs,                        **CERTIFICATION OF SETTLEMENT CLASS;**
13 |                                                    **(2) PRELIMINARY APPROVAL OF CLASS**
         v.                                            **ACTION SETTLEMENT; (3) APPROVAL OF**
14 |                                                    **CLASS NOTICE AND NOTICE PLAN; (4)**
PETSMART, INC, and Does 1 through 100,                **APPOINTMENT OF CLASS COUNSEL AND**
15 | inclusive,                                         **CLASS REPRESENTATIVES; AND (5)**
                                                       **SETTING A FINAL APPROVAL HEARING**
16 |                    Defendants.

17 |                                                    Date:      **March 7, 2014**
                                                       Time:         9:00 a.m.
18 |                                                    Courtroom:  4 –5th Floor
                                                       Judge:      Hon. Edward J. Davila
19

20 |                                                    Trial Date: None set

21

22 | ///

23 | ///

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1                                     12-CV-03577 EJD
**DECLARATION OF DANETTE MOORE IN SUPPORT OF MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit C Page 1 of 4

I, Danette Moore, state and declare:

1.     I make this Declaration in support of Plaintiffs' motion for preliminary approval of class action settlement. The contents of which are based upon my personal knowledge and if called as a witness, I could and would testify as to the truthfulness of its contents.

2.     I am one of the four named Plaintiffs in the above captioned case, *Moore, et al v. PetSmart, Inc.*, Case No. 12-CV-03577(EJD). I was employed by PetSmart, Inc. ("PetSmart" or "Defendant") from November 5, 2007 to approximately April 2011. During my employment with PetSmart I have held the position of cashier, bather and groomer (also referred to as "Pet Stylist") in PetSmarts San Leandro store location.

3.     I believe that I, and other non-exempt and Pet Stylist employees of Defendant, was subjected to unlawful wage and hour and seating practices at PetSmart. As a result, I decided to file a lawsuit against Defendant for these practices. In doing so, I decided that I wanted to pursue relief not only for myself but other employees of Defendant so that, through my action, I could try to make things right and for the benefit of all other non-exempt and Pet Stylist employees who suffered from the same claims. In doing so I agreed to consider the interests of all other employees affected by the claims alleged just as I would consider my own interests.

4.     In bringing this action, I knew that I was taking a big risk in filing a claim against a former employer. I knew, for example, that my name could easily be located on the internet or through other searches and that any prospective employer may find out that I had sued my former employer. I also knew that by pursuing claims on behalf of others and acting as their representative, I could not put my interests and claims above those of other employees of Defendant. I also knew and agreed to participate actively in this case even if it meant having to devote many hours to investigations, meetings, depositions, discovery and mediations. Even though I knew all of these things and that I was taking a big risk, I knew I had to do what I believe was right, that is, pursue claims on behalf of other employees of Defendant and attempt to change the wage and hour and safety practices for non-exempt and Pet Stylist employees at PetSmart for them. As explained below, I am extremely pleased with the terms of the settlement and the policy changes being made at PetSmart and settlement monies obtained through the proposed settlement.

Graham**Hollis** APC
3555 Fifth Avenue
San Diego, California 92103

2              12-CV-03577 EJD

**DECLARATION OF DANETTE MOORE IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit C Page 2 of 4

5.     Well before the action was filed through the present date, I have been a very active participant in this action and the resulting settlement.  For example, I have actively participated in numerous in-person and telephonic investigative and strategy meetings with my counsel; have been in constant contact with my lawyer's office as the need arises; remained in constant contact with the other three named plaintiffs and other class members regarding the status of the case, factual investigation, and strategy; reviewed documents and information that was exchanged in this action and shared factual information with my counsel regarding the practices, policies and procedures of Defendant; participated in informal and formal discovery; traveled to (approximately two hours roundtrip) and participated in my half day deposition; reviewed my deposition transcript and all of its exhibits for accuracy; traveled to (approximately two hours roundtrip) and participated in a full day mediation session and post-mediation settlement discussions that ultimately lead to the resolution of this matter; participated in the settlement process including reviewing and executing the settlement agreement, providing my input and preparing this declaration.  All in all, through the claims I have brought against PetSmart and assisting in the resulting settlement agreement, I have spent in excess of 80 hours for the benefit of other non-exempt employees and Pet Stylists.

6.     Through the settlement we have achieved not only considerable monetary relief for Class Members, but substantial policy changes at PetSmart that were important to me in bringing this lawsuit as a class action.  In bringing this lawsuit, it was important to me that all grooming employees of Defendant are provided a safe working environment. This was important because I have suffered medically diagnosed complications affecting my back in performing grooming duties as a Pet Stylists for Defendant as result of their seating policy. Through this litigation and the terms of the proposed settlement, Defendant has agreed to hire a consultant specializing in safety and ergonomic issues to review its current policies and ensure it provides it employees with a safe working environment. Also, Defendant has agreed to provide grooming tools for all of its Pet Stylists, revise its commission structure to ensure grooming employees are being paid for all hours worked at their regular rate of pay, and ensure that non-exempt employees are being paid for hours worked off-the-clock. These are major changes that provide additional monetary and other benefits to class members, as well as, future employees of Defendant.  In light of the monetary and policy changes we have achieved through the

GRAHAM HOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

3                                    12-CV-03577 EJD

**DECLARATION OF DANETTE MOORE IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit C Page 3 of 4

1  the employees of PetSmart.  Considering the amount of work, hours and ultimate service I have

2  dedicated to the pursuit of money damages and policy changes on behalf of other employees, the fact

3  that I am agreeing to a broader release of claims than class members in order to achieve this settlement,

4  and the financial and professional risks I took by pursuing a lawsuit against a former employer I believe

5  the requested $5,000.00 service award is very fair and reasonable.

6       8.     Having been so actively involved in bringing these claims and assisting in resolution of

7  the claims and having read the settlement agreement, it is my opinion that the proposed settlement

8  achieved is fair, adequate and reasonable.

9       9.     I have been extremely pleased with my attorneys' work on this case.  I found that they

10 worked effectively and very efficiently to attain the excellent results achieved for the benefit of all Class

11 Members.

12      10.    I respectfully request the Court grant preliminary approval of the settlement, appoint

13 Class Counsel, appoint myself and the other three plaintiffs as Class Representatives, and do everything

14 else that needs to be done to finalize this settlement. I am committed to this case and will continue to

15 make myself available as needed throughout the course of the settlement process.

16      I declare under penalty of perjury under the laws of the State of California that the foregoing is

17 true and correct.

18      Executed this 27 th day of January, 2014, at Hayward, California.

19

20      *Danette M. Moore*
        Danette M. Moore

21

22

23

24

25

26

27

28

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

                                        4                              12-CV-03577 EJD

**DECLARATION OF DANETTE M. MOORE IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

                                                        Exhibit C Page 4 of 4

# EXHIBIT E

1  GRAHAM**HOLLIS** APC
   GRAHAM S.P. HOLLIS (SBN 120577)
2  ghollis@grahamhollis.com
   MARTA MANUS (SBN 260132)
3  mmanus@grahamhollis.com
   3555 Fifth Avenue
4  San Diego, California  92103
   Telephone: 619.692.0800
5  Facsimile: 619.692.0822

6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

10 | DANETTE M. MOORE, LATRESA MYERS, | Case No.:   12-CV-03577 EJD
   | ALANNA HARRISON and ALISA VALDEZ |
11 | individually and on behalf of others similarly | **DECLARATION OF LATRESA MYERS IN**
   | situated, | **SUPPORT OF PLAINTIFFS' UNOPPOSED**
12 |  | **MOTION FOR (1) PROVISIONAL**
   |       Plaintiffs, | **CERTIFICATION OF SETTLEMENT CLASS;**
13 |  | **(2) PRELIMINARY APPROVAL OF CLASS**
   |       v. | **ACTION SETTLEMENT; (3) APPROVAL OF**
14 |  | **CLASS NOTICE AND NOTICE PLAN; (4)**
   | PETSMART, INC, and Does 1 through 100, | **APPOINTMENT OF CLASS COUNSEL AND**
15 | inclusive, | **CLASS REPRESENTATIVES; AND (5)**
   |  | **SETTING A FINAL APPROVAL HEARING**
16 |       Defendants. |

17                                            **Date:**      **March 7, 2014**
                                             Time:          9:00 a.m.
18                                           Courtroom:   4 –5th Floor
                                             Judge:       Hon. Edward J. Davila
19

20                                           Trial Date: None set

21

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

*(left margin, vertical text:)* GRAHAM**HOLLIS** APC  3555 FIFTH AVENUE  SAN DIEGO, CALIFORNIA 92103

                                              1                        12-CV-03577 EJD
   **DECLARATION OF LATRESA MYERS IN SUPPORT OF MOTION FOR PRELIMINARY**
                     **APPROVAL OF CLASS ACTION SETTLEMENT**

I, Latresa Myers, state and declare:

1.     I am one of the four named Plaintiffs in this case, *Moore, et al v. PetSmart, Inc.*, Case No. 12-CV-03577(EJD). I started working for PetSmart on April 27, 1998 until April of 2011 when I was told by PetSmart that I could not continue to work for them. During my employment with PetSmart I worked in several positions. I worked as a bather, a groomer trainee, and finally a groomer (also referred to as "Pet Stylist") in PetSmart's San Leandro store.

2.     I make this Declaration in support of Plaintiffs' motion for preliminary approval of class action settlement. This information is from my personal knowledge and if called as a witness, I would testify as to the truthfulness.

3.     I believe that hourly paid employees of PetSmart, including myself, were subjected to illegal practices at PetSmart. As a result, I hired a lawyer and decided that if it was necessary, would file a lawsuit against PetSmart. I wanted to make things right for the benefit of all other Pet Stylists and other employees who suffered from the same illegal actions, and agreed to consider the interests of all other employees affected by the claims in the lawsuit just as I would consider my own interests. I hoped that by bringing this lawsuit I could change PetSmart's practices for the benefit of all of their hourly paid employees and to obtain compensation for me and other hourly employees of PetSmart for their illegal practices.

4.     I realized that by bringing this lawsuit, I was taking a big risk in filing a claim against a former employer. I knew that by pursuing claims on behalf of others and acting as their representative, I could not put my interests and claims above those of other employees of PetSmart. I also knew and agreed to participate actively in this case even though it meant having to devote many hours to investigations, meetings, having my deposition taken, answering questions and attending mediations. Most importantly, I knew that my name could easily be located on the internet or through other online searches and that any prospective employer may find out that I had sued my former employer. Despite knowing the risks and challenges that bringing this lawsuit would involve, I knew I had to do what was right and pursue claims on behalf of other employees of PetSmart and attempt to change the pay practices for Pet Stylists and other employees. I am extremely pleased with the terms of the settlement, the policy changes being made at PetSmart and the money obtained for the employees affected by

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

2                                              12-CV-03577 EJD

**DECLARATION OF LATRESA MYERS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  PetSmart's practices through the proposed settlement.

2      5.      I have been very involved in this lawsuit and the settlement the other plaintiffs, myself,

3  and our lawyers were able to achieve.  Through the claims I brought against PetSmart and assisting in

4  reaching the proposed settlement, I have spent in excess of 85 hours for the benefit of myself as well as

5  the other affected employees and Pet Stylists.   Even before the complaint was filed by my attorneys, I

6  actively participated in this case. For example, I took part in many in-person and telephonic interviews

7  and strategy meetings with my attorneys; searched for documents requested by my attorneys; have been

8  in continual contact with my lawyer's office whenever they needed me; remained in regular contact with

9  the other three plaintiffs and several other class members regarding the status of the case, factual

10  investigation, and strategy; reviewed documents and information that was exchanged in the lawsuit and

11  shared information with my lawyers regarding the company practices, policies and procedures of

12  PetSmart; participated in informal and formal discovery; traveled to (approximately four hours roundtrip

13  in traffic) and participated in my deposition in San Francisco; reviewed my deposition transcript and all

14  of its exhibits for accuracy; traveled to (approximately four hours roundtrip) and participated in a full

15  day mediation session in San Francisco and post-mediation settlement discussions that lead to the

16  settlement; participated in the procedures after the mediation including reviewing the settlement

17  agreement, providing my input and preparing this declaration.

18      6.      Through the settlement, we have achieved everything I had hoped for. PetSmart has

19  agreed to provide grooming tools for all of its Pet Stylists, revise its commission structure so that all the

20  groomers are being paid for all of the time they are working and made sure that employees are being

21  paid for the time that they have to assist customers when they have clocked out. These are major

22  changes that provide additional money and other benefits to class members, as well as, future employees

23  of PetSmart. I am very proud for having made the decision to bring this lawsuit on behalf of all Pet

24  Stylists and other employees.  We have also made PetSmart agree to pay ten million dollars to

25  compensate their employees and pay all of the costs and expenses, and lawyer fees in bringing this case.

26  These are the reasons I brought this lawsuit as a class action, and am glad we have achieved such great

27  results.

28      7.      For the work and dedication I have put into this case for the benefit of all other hourly

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

3                                                    12-CV-03577 EJD

**DECLARATION OF LATRESA MYERS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

1   employees of PetSmart, I am requesting a service award of $5,000. From the time I decided to bring this

2   class action case against PetSmart, I have always placed and the other Pet Stylists employees' interests

3   above my own.  Through my service, and that of the other three plaintiffs, we have achieved enormous

4   settlement amount and policy changes that benefit all the employees of PetSmart.  I believe the

5   requested $5,000.00 service award is very fair and reasonable based on the amount of work, hours and

6   service I have dedicated to the pursuit of policy changes and money damages on behalf of other

7   employees, the fact that I am agreeing to a broader release of claims than class members in order to

8   achieve this settlement, and the financial and professional risks I took by pursuing a lawsuit against a

9   former employer.

10       8.       Having read the settlement agreement and been so actively involved in this case and

11   assisting in the resolution of the claims, it is my opinion that the proposed settlement we have reached is

12   fair, adequate and reasonable.

13       9.       I am very pleased with my attorneys' work on our case.  I believe they worked very

14   effectively and efficiently to get the excellent results achieved for the benefit of all Class Members.

15       10.      I respectfully request the Court grant preliminary approval of the settlement, appoint

16   Class Counsel, appoint myself and the other three plaintiffs as Class Representatives, and do everything

17   else that needs to be done to finalize this settlement. I am committed to this case and will continue to

18   make myself available as needed throughout the settlement process.

19

20       I declare under penalty of perjury under the laws of the State of California that the foregoing is

21   true and correct.

22       Executed this 27 th day of January, 2014, at Modesto, California.

23

24                                             _Latresa Myers_
                                               Latresa Myers

25

26

27

28

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

4                                      12-CV-03577 EJD

**DECLARATION OF LATRESA MYERS IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT** Exhibit E Page 4 of 4

EXHIBIT F

1  GRAHAM**HOLLIS** APC
   GRAHAM S.P. HOLLIS (SBN 120577)
2  ghollis@grahamhollis.com
   MARTA MANUS (SBN 260132)
3  mmanus@grahamhollis.com
   3555 Fifth Avenue
4  San Diego, California  92103
   Telephone: 619.692.0800
5  Facsimile: 619.692.0822

6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

10  DANETTE M. MOORE, LATRESA MYERS,          Case No.:   12-CV-03577 EJD
    ALANNA HARRISON and ALISA VALDEZ
11  individually and on behalf of others similarly   **DECLARATION OF ALANNA HARRISON IN**
    situated,                                 **SUPPORT OF PLAINTIFFS' UNOPPOSED**
12                                            **MOTION FOR (1) PROVISIONAL**
                    Plaintiffs,              **CERTIFICATION OF SETTLEMENT CLASS;**
13                                            **(2) PRELIMINARY APPROVAL OF CLASS**
         v.                                   **ACTION SETTLEMENT; (3) APPROVAL OF**
14                                            **CLASS NOTICE AND NOTICE PLAN; (4)**
    PETSMART, INC, and Does 1 through 100,    **APPOINTMENT OF CLASS COUNSEL AND**
15  inclusive,                                **CLASS REPRESENTATIVES; AND (5)**
                                              **SETTING A FINAL APPROVAL HEARING**
16                  Defendants.

17                                            Date:      **March 7, 2013**
                                              Time:       9:00 am
18                                            Courtroom:  4 –5th Floor
                                              Judge:     Hon. Edward J. Davila
19

20                                            Trial Date: None set

21

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                                      1                      12-CV-03577 EJD
    **DECLARATION OF ALANNA HARRISON IN SUPPORT OF MOTION FOR**
    **PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
                                                    Exhibit F Page 1 of 4

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1    I, Alanna Harrison, state and declare:

2        1.       I am one of the four named Plaintiffs in this case, *Moore, et al v. PetSmart, Inc.*, Case

3    No. 12-CV-03577(EJD). I first began working for PetSmart on September 29, 2008 and still work for

4    PetSmart as a groomer (also referred to as "Pet Stylist") in PetSmart's San Leandro store.

5        2.       I make this Declaration in support of Plaintiffs' motion for preliminary approval of the

6    class action settlement. This information is from my personal knowledge and I would testify as to the

7    truthfulness if called as a witness.

8        3.       I believe that hourly paid employees of PetSmart, including myself, were subjected to

9    illegal pay practices at PetSmart.  As a result, I hired GrahamHollis, APC to be my attorneys and

10   decided to file a lawsuit against PetSmart.  When I made this decision, I feared that I would be retaliated

11   against by PetSmart and my managers for having brought a lawsuit against my current employer. I

12   wanted to do what was right. That is why I agreed to file this lawsuit and consider the interests of all

13   other employees affected by the claims in the lawsuit just as I would consider my own interests. I hoped

14   that this lawsuit would make PetSmart's change its practices for the benefit of all of their hourly paid

15   employees and to obtain compensation for me and other hourly employees of PetSmart for their illegal

16   practices.

17       4.       I realized that by bringing this lawsuit, I was taking a huge risk in filing a claim against

18   my current employer and that PetSmart or my manager would retaliate against me for doing so. I knew

19   that my name could easily be located on the internet or through other online searches and that any future

20   employer may find out that I had sued my current employer.  I also knew that if we were not successful,

21   I might have to pay out of my own pocket PetSmart's attorney's fees.  Even though I faced these risks, I

22   made the decision to move forward with this lawsuit.  When I agreed to file the lawsuit I also agreed to

23   participate actively in this case even though it meant having to devote countless hours to searching for

24   documents, investigations, meetings, having my deposition taken, answering questions and attending

25   mediations.  I knew that by pursuing claims on behalf of others I had to put their interest above my own.

26   Despite knowing the risks and challenges this lawsuit would involve, I knew I had to do what was right

27   and pursue claims on behalf of other employees of PetSmart and attempt to change the pay practices for

28   Pet Stylists and other employees. I am very pleased with the terms of the settlement, the policy changes

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF ALANNA HARRISON IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit F Page 2 of 4

1  being made at PetSmart and the large amount of money obtained for the employees affected by

2  PetSmart's practices through the proposed settlement.

3      5.      I have been very involved in this lawsuit and the settlement myself, my attorneys and the

4  other three plaintiffs have been able to achieve.  Even before the complaint was filed by my attorneys, I

5  actively participated in this case and  have spent in excess of 65 hours for the benefit of other affected

6  employees and Pet Stylists and myself up to this point in the lawsuit. For example, I took part in many

7  in-person and telephonic interviews and strategy meetings with my attorneys; searched for documents

8  requested by my attorneys; have been in continual contact with my lawyer's office whenever they

9  needed me; remained in regular contact with the other three plaintiffs and several other class members

10  regarding the status of the case, factual investigation, and strategy; reviewed documents and information

11  that was exchanged in the lawsuit and shared information with my lawyers regarding the company

12  practices, policies and procedures of PetSmart; participated in informal and formal discovery; traveled to

13  (approximately on two hours roundtrip in traffic) and participated in my deposition; reviewed my

14  deposition transcript and all of its exhibits for accuracy; traveled to (approximately two hours roundtrip)

15  and participated in a full day mediation session in San Francisco and post-mediation settlement

16  discussions that lead to the settlement; participated in the procedures after the mediation including

17  reviewing the settlement agreement, providing my input and preparing this declaration.

18      6.      We have achieved everything I had hoped for through the settlement. PetSmart has

19  agreed to pay ten million dollars to affected employees, provide grooming tools for all of its Pet Stylists,

20  revise its commission structure so that groomers are being paid for all of the time they are working and

21  to make sure that employees are being paid for the time that they have to assist customers when they

22  have clocked out. These are major changes that provide substantial money and other benefits to class

23  members, as well as future employees of PetSmart.  I am very happy I made the decision to bring this

24  lawsuit on behalf of all Pet Stylists and other employees.  I am very proud for being able to achieve such

25  great results in bringing this lawsuit.

26      7.      For the work and dedication I have put into this case for the benefit of all other hourly

27  employees of PetSmart, as well as, the risk I took in bringing a lawsuit against my current employer I

28  am requesting a service award of $10,000.  From the time I decided to bring this class action case

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

3                                    12-CV-03577 EJD

**DECLARATION OF ALANNA HARRISON IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1   against PetSmart, I have always placed the other Pet Stylists employees' interests above my own.

2   Through my service, and that of the other three plaintiffs, we have achieved a large settlement amount

3   and important policy changes that benefit all the employees of PetSmart. Based on the amount of work,

4   hours and service I have dedicated to the pursuit of policy changes and money damages on behalf of

5   other employees, the fact that I am agreeing to a broader release of claims than class members in order

6   to achieve this settlement, and the financial and professional risks I took by pursuing a lawsuit against a

7   current employer that the requested $10,000 service award is very fair and reasonable.

8        8.     Having read the settlement agreement and been so actively involved in this case and

9   assisting in the resolution of the claims, it is my opinion that the proposed settlement we have reached is

10  fair, adequate and reasonable.

11       9.     I am very happy with my attorneys' work on our case. I believe they worked effectively

12  and efficiently to get the excellent results achieved for the benefit of all Class Members.

13       10.    I respectfully request the Court grant preliminary approval of the settlement, appoint

14  Class Counsel, appoint myself and the other three plaintiffs as Class Representatives, and do everything

15  else that needs to be done to finalize this settlement. I am committed to this case and will continue to

16  make myself available as needed throughout the settlement process.

17       I declare under penalty of perjury under the laws of the State of California that the foregoing is

18  true and correct.

19       Executed this 30 th day of January, 2014, at Oakland, California.

20

21

22       Alanna Harrison

23

24

25

26

27

28

GRAHAM HOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

4

12-CV-03577 EJD

**DECLARATION OF ALANNA HARRISON IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

EXHIBIT G

GRAHAM**HOLLIS** APC
GRAHAM S.P. HOLLIS (SBN 120577)
ghollis@grahamhollis.com
MARTA MANUS (SBN 260132)
mmanus@grahamhollis.com
3555 Fifth Avenue
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| DANETTE M. MOORE, LATRESA MYERS, ALANNA HARRISON and ALISA VALDEZ individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>PETSMART, INC, and Does 1 through 100, inclusive,<br><br>        Defendants. | Case No.:   12-CV-03577 EJD<br><br>**DECLARATION OF ALISA VALDEZ IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR (1) PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS; (2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (3) APPROVAL OF CLASS NOTICE AND NOTICE PLAN; (4) APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES; AND (5) SETTING A FINAL APPROVAL HEARING**<br><br>Date:      **March 7, 2014**<br>Time:     9:00 a.m.<br>Courtroom: 4 –5th Floor<br>Judge:    Hon. Edward J. Davila<br><br>Trial Date: None set |

///
///
///
///
///
///
///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1                                                              12-CV-03577 EJD
**DECLARATION OF ALISA VALDEZ IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit G Page 1 of 4

I, Alisa Valdez, state and declare:

1.      I am one of the four named Plaintiffs in this case, *Moore, et al v. PetSmart, Inc.*, Case No. 12-CV-03577(EJD). I started working for PetSmart on October 10, 2005 and am currently still employed by PetSmart as a groomer (also referred to as "Pet Stylist") in PetSmart's San Leandro store.

2.      I make this Declaration in support of Plaintiffs' motion for preliminary approval of the class action settlement. This information is from my personal knowledge and I would testify as to the truthfulness if called as a witness.

3.      I believe that hourly paid employees of PetSmart, including myself, were subjected to illegal practices at PetSmart. As a result, I hired a lawyer and decided that if it was necessary, I would file a lawsuit against PetSmart. I feared that I would be retaliated against by PetSmart and my managers for having brought a lawsuit against my current employer, but wanted to make things right for the benefit of all other Pet Stylists and other employees who suffered from the same illegal actions. I agreed to filing this lawsuit and to consider the interests of all other employees affected by the claims in the lawsuit just as I would consider my own interests. I hoped that by bringing this lawsuit I could change PetSmart's practices for the benefit of all of their hourly paid employees and to get money owed to me and other hourly employees of PetSmart for their illegal practices.

4.      I realized that by bringing this lawsuit, I was taking a huge risk of retaliation by PetSmart in filing a claim against my current employer. I knew that my name could easily be located on the internet or through other online searches and that any future employer may find out that I had sued my current employer. I also knew that if we were not successful, I might have to pay out of my own pocket PetSmart's attorney's fees. Knowing all of this, I still made the decision to do what was right and agreed to participate actively in this case even though it meant having to devote many hours to investigations, meetings, having my deposition taken, answering questions and attending mediation. I knew that by pursuing claims on behalf of others I had to put their interest above my own. Despite knowing the risks and challenges this lawsuit would involve, I knew I had to do what I believe was right and pursue claims on behalf of other employees of PetSmart and attempt to change the pay practices for Pet Stylists and other employees. I am very pleased with the terms of the settlement, the policy changes being made at PetSmart and the money obtained for the employees affected by PetSmart's practices

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

2                              12-CV-03577 EJD

**DECLARATION OF ALISA VALDEZ IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit G Page 2 of 4

1   through the proposed settlement.

2      5.      I have been very involved in this lawsuit and the settlement we have achieved and have

3   spent in excess of 65 hours for the benefit of other affected employees and Pet Stylists and myself up to

4   this point in the lawsuit.  Even before the complaint was filed by my attorneys, I actively participated in

5   this case. For example, I took part in many in-person and telephonic interviews and strategy meetings

6   with my attorneys; searched for documents requested by my attorneys; have been in continual contact

7   with my lawyer's office whenever they needed me; remained in regular contact with the other three

8   plaintiffs and several other class members regarding the status of the case, factual investigation, and

9   strategy; reviewed documents and information that was exchanged in the lawsuit and shared information

10  with my lawyers regarding the company practices, policies and procedures of PetSmart; participated in

11  informal and formal discovery; traveled to (approximately on two hours roundtrip in traffic) and

12  participated in my deposition; reviewed my deposition transcript and all of its exhibits for accuracy;

13  traveled to (approximately two hours roundtrip) and participated in a full day mediation session in San

14  Francisco and post-mediation settlement discussions that lead to the settlement; participated in the

15  procedures after the mediation including reviewing the settlement agreement, providing my input and

16  preparing this declaration.

17     6.      We have achieved everything I had hoped for through the settlement. PetSmart has

18  agreed to revise its commission structure so that all the groomers are being paid for all of the time they

19  are working and made sure that employees are being paid for the time that they have to assist customers

20  when they have clocked out, and provide grooming tools for all of its Pet Stylists,. These are major

21  changes that provide additional money and other benefits to class members, as well as, future employees

22  of PetSmart.  I am very delighted I made the decision to bring this lawsuit on behalf of all Pet Stylists

23  and other employees.  We have also gotten PetSmart to agree to pay ten million dollars to compensate

24  their employees and pay all of the costs and expenses, and lawyer fees in bringing this case. I brought

25  this lawsuit as a class action to accomplish these goals, and I am glad we have achieved such great

26  results.

27     7.      For the work and dedication I have put into this case for the benefit of all other hourly

28  employees of PetSmart, as well as, the risk I took in bringing a lawsuit against my current employer I

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

3                                              12-CV-03577 EJD

**DECLARATION OF ALISA VALDEZ IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

1   am requesting a service award of $10,000.  From the time I decided to bring this class action case

2   against PetSmart, I have always placed and the other Pet Stylists employees' interests above my own.

3   Through my service, and that of the other three plaintiffs, we have achieved a large settlement amount

4   and important policy changes that benefit all the employees of PetSmart.  I believe the requested

5   $10,000.00 service award is very fair and reasonable based on the amount of work, hours and service I

6   have dedicated to the pursuit of policy changes and money damages on behalf of other employees, the

7   fact that I am agreeing to a broader release of claims than class members in order to achieve this

8   settlement, and the financial and professional risks I took by pursuing a lawsuit against my current

9   employer.

10          8.      Having read the settlement agreement and been so actively involved in this case and

11   assisting in the resolution of the claims, it is my opinion that the proposed settlement we have reached is

12   fair, adequate and reasonable.

13          9.      I am very happy with my attorneys' work on our case.  I believe they worked effectively

14   and efficiently to get the excellent results achieved for the benefit of all Class Members.

15          10.     I respectfully request the Court grant preliminary approval of the settlement, appoint

16   Class Counsel, appoint myself and the other three plaintiffs as Class Representatives, and do everything

17   else that needs to be done to finalize this settlement. I am committed to this case and will continue to

18   make myself available as needed throughout the settlement process.

19

20          I declare under penalty of perjury under the laws of the State of California that the foregoing is

21   true and correct.

22          Executed this 27th day of January, 2014, at Oakland, California.

23

24

25          Alisa Valdez

26

27

28

4                                          12-CV-03577 EJD

**DECLARATION OF ALISA VALDEZ IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**                    Exhibit G Page 4 of 4

# EXHIBIT H

1 | GRAHAM**HOLLIS** APC
GRAHAM S.P. HOLLIS (SBN 120577)
2 | ghollis@grahamhollis.com
MARTA MANUS (SBN 260132)
3 | mmanus@grahamhollis.com
3555 Fifth Avenue
4 | San Diego, California  92103
Telephone: 619.692.0800
5 | Facsimile: 619.692.0822

6 | Attorneys for Plaintiffs

7

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA -- SAN JOSE DIVISION

10

11 | DANETTE M. MOORE, LATRESA MYERS, ALANNA HARRISON and ALISA VALDEZ individually and on behalf of others similarly situated,

Case No.:   12-CV-03577 EJD

**DECLARATION OF ALISA VALDEZ IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMNARY APPROVAL**

12

13 | 

14 | Plaintiffs,

v.

15 | PETSMART, INC, and Does 1 through 100, inclusive,

Date:      April 3, 2014
Time:      1:30 a.m.
Courtroom:  4 –5th Floor
Judge:      Hon. Edward J. Davila

16 | 

17 | Defendants.

18

19

20

21

22 | ///

23 | ///

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

1

12-CV-03577 EJD

DECLARATION OF ALISA VALDEZ IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

Exhibit H Page 1 of 4

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

I, Alisa Valdez, state and declare:

1.      I am one of the four named Plaintiffs in this case, *Moore, et al v. PetSmart, Inc.*, Case No. 12-CV-03577(EJD).  I make this Declaration in support of Plaintiffs' Supplemental Brief in support of Plaintiffs' Motion for Preliminary Approval of the class action settlement, which was filed on January 31, 2014. This information is from my personal knowledge and I would testify as to the truthfulness if called as a witness.

2.      I started working for PetSmart on October 10, 2005 and am currently still employed by PetSmart as a groomer (also called a "Pet Stylist") in PetSmart's San Leandro store. When I decided to file this lawsuit, I was employed by PetSmart as a Pet Stylist.  I became a Pet Stylist in mid-2006 after attending PetSmart's groomer training academy.   I knew that filing a lawsuit against my current employer was a big risk and that I might be fired or somehow retaliated against by my supervisor or someone else at PetSmart. Although I was very worried about being retaliated against, I decided that I wanted to file the lawsuit. The reason I agreed to take this risk was because I felt that the issues that me and the other PetSmart employees were dealing with at work were not going to be fixed unless I did something. I decided to risk my job because I thought it would be worth it in the long run and I wanted things at work to get better for me and everyone else I worked with.

3.      Prior to filing the lawsuit, I spent several months helping my lawyers investigate the claims by meeting with my lawyers, regularly communicating with my lawyers on the phone and through email, searching for documents, and providing information about my co-workers and PetSmart's employment practices.

4.      Once the lawsuit was filed, I was a bit nervous and worried that my supervisor would pick on me more than others and watch my every move because I filed the lawsuit, which I believe may have happened. I recall one time when my grooming salon manager named Vilma changed my work schedule and took a day off of my weekly work schedule for no apparent reason. I didn't understand why my schedule was suddenly changed without any explanation so I asked my store manager, Candace. Candace told me that it was done because Vilma said that I had an attitude. This was not true because nothing had happened between Vilma and I that would make Vilma say such a thing. The store manager, Candace, changed my schedule back to my regular weekly schedule. I did end up feeling like I

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF ALISA VALDEZ IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

1  was being singled out because the managers never change anyone's schedule without first talking to

2  them and this was an unusual occurrence. On another occasion, my manger asked me to sign a yellow

3  slip when a customer was refunded their money for a groom job that I performed. This was also unusual

4  because no one else ever had to sign anything if a customer was refunded their money for a groom.

5  Although I was not fired, I did end up feeling like I had to watch my every move and be very careful

6  because I was under a microscope and being more closely watched than my co-workers, which I think

7  was the result of this lawsuit.

8      5.    I've spent a lot of time working on this case with my lawyers. In March 2013, I had my

9  deposition taken by PetSmart in San Francisco.  The day before my deposition, I had to travel from my

10 home in Oakland to San Francisco to meet with my lawyers to prepare for my deposition.  This meeting

11 lasted several hours.  On the day of my deposition, I once again traveled from Oakland to San Francisco

12 and stayed all day for my deposition.  I also attended the mediation in April 2013 in Oakland.  I spent

13 the day at the mediation with my lawyers, the other class representatives, and the mediator.   The

14 mediator asked us several questions about our work at PetSmart.

15     6.    At the mediation, it was explained to me that we were only at the mediation to deal with

16 the class action claims and that we were not negotiating anything related to my individual claims against

17 PetSmart. When I was told about the request for a service award of $10,000, I understood that the

18 service award was for all of the work I had done in helping my lawyers settle the class action claims. I

19 also understood that I still have my individual claims against PetSmart, which may or may not be settled

20 and might end up going to trial.

21     7.    I have spent several years working on this case with my lawyers.  I first met my lawyer,

22 Graham Hollis in mid-2011.  Over the past three years since the investigation into this case first started,

23 I have been committed to helping my lawyers in any way possible and have made myself available to

24 my lawyers and easily accessible to help with whatever needs to be done in the case.

25     8.    I knew that by filing this lawsuit, I was taking a big risk that could negatively affect my

26 employment with PetSmart or that I might lose my job. I also knew that if we didn't win the lawsuit, I

27 might have to pay for PetSmart's attorney's fees.  I was aware of all of all of the risks but I still decided

28 to pursue this lawsuit and have actively participated in this lawsuit from day one.  I am committed to

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF ALISA VALDEZ IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

Exhibit H Page 3 of 4

1  making sure this lawsuit ends with a good result for all of the PetSmart employees.

2       9.    As explained in my prior declaration in support of Plaintiffs' Motion for Preliminary

3  Approval, I have spent a great deal of time, more than 65 hours, helping my lawyers in this lawsuit. I

4  think my efforts and all of the time I have invested in this case as well as the fact that I risked my current

5  employment for the sake of this lawsuit justify my request for a service award in the amount of $10,000.

6  I understand that the amount awarded to me as a service award is up to the Court and is not in lieu of

7  any amount I may ultimately get for my individual claims against PetSmart.

8       10.    I respectfully request the Court grant preliminary approval of the settlement, appoint

9  Class Counsel, appoint myself and the other three plaintiffs as Class Representatives, and grant the

10  requests for the service awards, and do everything else that needs to be done to finalize this settlement. I

11  am committed to this case and will continue to make myself available as needed throughout the

12  settlement process.

13

14       I declare under penalty of perjury under the laws of the State of California that the foregoing is

15  true and correct.

16       Executed this _25_ th day of March, 2014, at Oakland, California.

17

18

19                            _Alisa Valdez_

20                            Alisa Valdez

21

22

23

24

25

26

27

28

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

4
12-CV-03577 EJD

DECLARATION OF ALISA VALDEZ IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

# EXHIBIT I

GRAHAM**HOLLIS** APC
GRAHAM S.P. HOLLIS (SBN 120577)
ghollis@grahamhollis.com
MARTA MANUS (SBN 260132)
mmanus@grahamhollis.com
3555 Fifth Avenue
San Diego, California  92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| DANETTE M. MOORE, LATRESA MYERS, ALANNA HARRISON and ALISA VALDEZ individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PETSMART, INC, and Does 1 through 100, inclusive, <br><br> Defendants. | Case No.:   12-CV-03577 EJD <br><br> **DECLARATION OF ALANNA HARRISON IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMNARY APPROVAL** <br><br> Date:          April 3, 2013 <br> Time:          1:30 am <br> Courtroom:   4 –5th Floor <br> Judge:         Hon. Edward J. Davila |

///
///
///
///
///
///
///

1

12-CV-03577 EJD

DECLARATION OF ALANNA HARRISON IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

Exhibit I Page 1 of 4

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

I, Alanna Harrison, state and declare:

1.      I am one of the four named Plaintiffs in this case, *Moore, et al v. PetSmart, Inc.*, Case No. 12-CV-03577(EJD).  I make this Declaration in support of Plaintiffs' Supplemental Brief in support of Plaintiffs' Motion for Preliminary Approval of the class action settlement, which was filed on January 31, 2014. This information is from my personal knowledge and I would testify as to the truthfulness if called as a witness.

2.      I first began working for PetSmart on September 29, 2008 as a groomer (also referred to as "Pet Stylist") in PetSmart's San Leandro store.  Although I recently left PetSmart, I was employed as a Pet Stylist when this lawsuit was filed. I knew that filing a lawsuit against a current employer was a big risk and that there was a chance that I might be fired or somehow retaliated against.  Even thought I was nervous about filing a lawsuit against PetSmart, I thought it was important to do so because of the way they treated me and the other employees. I decided to risk my job because I thought it would be worth it in the long run and I wanted things at work to get better for me and everyone else I worked with.

3.      Before the lawsuit was filed, I spent a lot of time helping my lawyers with the investigation of the claims. I regularly talked to my lawyers, searched for documents, and provided information about other employees they could contact as well as information about PetSmart's employment practices.

4.      After the lawsuit was filed, I felt a nervous and worried at work because I thought that my managers and co-workers might know about the lawsuit.  I thought that my manager might single me out or watch me more closely than the other employees.  I think this may have happened because I remember one time when my salon manager, Vilma, change mine and Alisa Valdez's work schedules without any explanation.  She took away a day from both our schedules and told the store manager that it was because we had an attitude. There was nothing that happened for Vilma to accuse us of having an attitude with her.  Although the day was put back on our schedules, I think this may have happened because Alisa and I are two of the Plaintiffs in this lawsuit.  Although I was not fired, I did feel like I had to be extra careful at work and worried that I could lose my job at any moment and that I was being scrutinized more than other employees.

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF ALANNA HARRISON IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

Exhibit I Page 2 of 4

5.     Over the course of the past three years, since this lawsuit was being investigated, I have spent a lot of time working on this case with my lawyers.  In March 2013, I had my deposition taken by PetSmart in San Francisco.  The day before my deposition, I had to drive from my home in Oakland to San Francisco to meet with my lawyers to prepare for my deposition.  This meeting lasted several hours.  On the day of my deposition, I once again drove from Oakland to San Francisco and stayed all day for my deposition.  I also attended the mediation in April 2013 in Oakland.  I spent the day at the mediation with my lawyers, the other class representatives, and the mediator.  The mediator asked us several questions about our work at PetSmart.

6.     At the mediation, it was explained to me that we were only at the mediation to deal with the class action claims and that we were not negotiating anything related to my individual claims against PetSmart.  When I was told about the request for a service award of $10,000, I understood that the service award was for all of the work I had done in helping my lawyers settle the class action claims.  I also understood that I still have my individual claims against PetSmart, which may or may not be settled and might end up going to trial.

7.     I have spent several years working on this case with my lawyers.  I first met my lawyer, Graham Hollis in mid-2011.  Over the past three years since the investigation into this case first started, I have been committed to helping my lawyers in any way possible and have made myself available to my lawyers and easily accessible to help with whatever needs to be done in the case.

8.     I knew that I was taking a very big risk by filing this lawsuit against my current employer because I knew that it might mean that I would end up losing my job at PetSmart and that filing this lawsuit might affect my ability to find another job as a Pet Stylist in the future.  I also knew that if we didn't win that I might have to pay for PetSmart's attorney's fees.  Although I knew all of these risks, I was willing to do so because I thought it was worth it if some positive changes came out of it.  I am committed to making sure this lawsuit ends with a good result for all of the PetSmart employees.

9.     As explained in my prior declaration in support of Plaintiffs' Motion for Preliminary Approval, I have spent a great deal of time, more than 65 hours, helping my lawyers in this lawsuit.  I think my efforts and all of the time I have invested in this case as well as the fact that I risked my current employment for the sake of this lawsuit justify my request for a service award in the amount of $10,000.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

DECLARATION OF ALANNA HARRISON IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
Exhibit I Page 3 of 4

1  I understand that the amount awarded to me as a service award is up to the Court and is not in lieu of

2  any amount I may ultimately get for my individual claims against PetSmart.

3      10.    I respectfully request the Court grant preliminary approval of the settlement, appoint

4  Class Counsel, appoint myself and the other three plaintiffs as Class Representatives, and do everything

5  else that needs to be done to finalize this settlement. I am committed to this case and will continue to

6  make myself available as needed throughout the settlement process.

7      I declare under penalty of perjury under the laws of the State of California that the foregoing is

8  true and correct.

9      Executed this 21th day of March, 2014, at Oakland, California.

10

11

12

13  Alanna Harrison

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRAHAMHOLLIS APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

4                                    12-CV-03577 EJD
DECLARATION OF ALANNA HARRISON IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL
BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

Exhibit I Page 4 of 4