UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANETTE M. MOORE, LATRESA MYERS, ALANNA HARRISON and ALISA VALDEZ individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PETSMART, INC.,<br><br>Defendant. | Case No.  5:12-cv-03577-EJD<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 91, 92, 93 |

This employment class action suit is brought by Representative Plaintiffs Danette M. Moore, Latresa Myers, Alanna Harrison, and Alisa Valdez (collectively, "Plaintiffs") against Defendant PetSmart, Inc. ("PetSmart") alleging wage-and-hour violations.  Presently before the court are Plaintiffs' motion for final approval of the proposed class action settlement agreement, and motions for attorneys' fees and costs.  See Dkt. Nos. 91, 92, 93.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332(a), or alternatively, pursuant to 28 U.S.C. § 1332(d)(2).  Having carefully considered the parties' briefing along with oral argument, the court GRANTS Plaintiffs' motion for final approval of the proposed class action settlement agreement, and GRANTS IN PART AND DENIES IN PART Plaintiffs' motions for attorneys' fees and costs.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

PetSmart is a nationwide pet supply retailer, and is the largest specialty retailer of pet services that include pet training, pet grooming, and pet adoption.  Plaintiffs are current and

United States District Court
Northern District of California

United States District Court
Northern District of California

former employees of PetSmart who worked either as pet groomers, also known as "pet stylists," or as non-exempt employees at various locations throughout California.  Through this action, Plaintiffs represent a purported class of 19,701 individuals who were employed at one of PetSmart's 132 stores in California during the period between May 23, 2008 and May 14, 2014.

According to Plaintiffs, PetSmart has engaged in a pattern of wage-and-hour abuse towards its employees by denying them certain rights afforded under California law.  Plaintiffs allege that pet stylists earn their wages solely on commission—pet stylists receive 50% of the fee the customer would pay for the grooming service.  In a given week, when pet stylists earned more through commission than they would have earned at their hourly fall back rate, they were considered to be "commissioned out."  Once commissioned out, pet stylists were allegedly put to perform non-grooming tasks for which they were not paid.  Consequently, Plaintiffs allege that PetSmart failed to pay minimum wages for all hours worked because in addition to performing grooming services, pet stylists were required to perform non-grooming services for which they were not paid.  Moreover, since pet stylists only get paid when they perform grooming services, they were getting unpaid rest breaks.  Thus, Plaintiffs allege that PetSmart failed to compensate for meal and rest periods.  Furthermore, Plaintiffs allege that PetSmart failed to provide grooming tools, failed to reimburse pet stylists for grooming supplies, and failed to pay accurate vacation wages.

As to the non-exempt employees, Plaintiffs allege that PetSmart failed to provide employees with meal and rest periods and failed to pay wages for work performed off-the-clock because they were frequently called upon to assist customers during their meal and rest periods. Plaintiffs further allege that between 2005 and 2011, PetSmart maintained an illegal written meal-and-rest-break-policy providing employees one 30-minute unpaid meal break if employees worked more than six hours but less than eight, and one 15-minute rest break if employees worked more than four hours but less than six.

Plaintiffs contend they have satisfied the procedural notice requirement of the Private

2

1   Attorney General Act of 2004 ("PAGA"), exhausted the administrative remedies of the California

2   Department of Fair Employment and Housing Act, and received the requisite right-to-sue notices.

3   See Compl., Dkt. No. 1-2, Exh. A at ¶¶ 31-32, 34.  In May 2012, Plaintiffs filed this action in the

4   Superior Court for the County of Alameda asserting 15 causes of action that include violations of

5   the California Labor Code, the relevant Wage Order of the California Industrial Welfare

6   Commission, and the California Unfair Competition Law.  See Compl.  In July 2012, PetSmart

7   removed the action to this court, asserting diversity jurisdiction, or in the alternative, jurisdiction

8   under the Class Action Fairness Act.  See Dkt. No. 1.

9       In September 2012, Jeanette Negrete filed a similar wage-and-hour action against PetSmart

10  in the Superior Court for the County of Shasta, on behalf of pet stylists.  In June 2013, PetSmart

11  removed that action to federal court in this district.  See Negrete v. PetSmart, Inc., et al., No. 13-

12  cv-04300-WHA (N.D. Cal.) (the "Negrete Action").  Thereafter, Ms. Negrete filed an

13  administrative motion to deem the Negrete Action related to the instant action, which was granted

14  by the undersigned judge in November 2013.  See Dkt. No. 32.  As such, Ms. Negrete is also

15  considered a representative plaintiff in this action.

16      In January 2014, the parties reached a settlement agreement.  See Decl. of Graham S.P.

17  Hollis, Dkt. No. 40-2, Exh. 1 at 28.  Plaintiffs subsequently moved for preliminary approval of the

18  proposed settlement agreement, which this court granted on May 14, 2014.  See Dkt. No. 74.  In

19  November 2014, the parties submitted a joint stipulation regarding certain modifications of the

20  proposed settlement agreement.  See Dkt. No. 83.  Having found that the revised settlement

21  agreement was materially consistent with that approved during preliminary approval, the court

22  authorized the filing of the modified settlement agreement.  See Dkt. No. 86.  Thus, the modified

23  settlement agreement executed in November 2014 is the operative settlement agreement.  See

24  Decl. of Graham S.P. Hollis ("Hollis Decl."), Dkt. No. 93-2, Exh. C ("Settlement Agreement").  In

25  February 2015, Plaintiffs moved for the instant motions for final approval of the proposed

26  settlement agreement, and for attorneys' fees and costs.  See Dkt. Nos. 91-93.  Oral argument was

United States District Court
Northern District of California

3

1    held on March 12, 2015.  See Dkt. No. 119.

2    **II.   LEGAL STANDARD**

3        A class action may not be settled without court approval.  Fed. R. Civ. P. 23(e).  When the

4    parties to a putative class action reach a settlement agreement prior to class certification, "courts

5    must peruse the proposed compromise to ratify both the propriety of the certification and the

6    fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

7        "Approval under 23(e) involves a two-step process in which the Court first determines

8    whether a proposed class action settlement deserves preliminary approval and then, after notice is

9    given to class members, whether final approval is warranted."  Nat'l Rural Telecomms. Coop. v.

10   DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).  At the final approval stage, the primary

11   inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable."

12   Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Having already completed a

13   preliminary examination of the agreement, the court reviews it again, mindful that the law favors

14   the compromise and settlement of class action suits.  See, e.g., Churchill Vill., LLC v. Gen. Elec.,

15   361 F.3d 566, 576 (9th Cir. 2004); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th

16   Cir. 1992); Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

17   Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of

18   the trial judge because he is exposed to the litigants and their strategies, positions, and proof."

19   Hanlon, 150 F.3d at 1026.

20   **III.  DISCUSSION**

21       **A.   Continuing Certification of Settlement Class**

22       The analysis begins with an examination of whether class treatment remains appropriate

23   under Rule 23.  At the preliminary approval stage, the court found that: (1) the numerosity

24   requirement was met because the proposed class consists of approximately 16,400 current and

25   former PetSmart employees who worked in California; (2) questions of law or fact are common to

26   the purported class members because all claims for relief arise from PetSmart's employment

27                                                          4

28   ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
     ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1   policies, which affects all the purported class members; (3) these questions of law or fact

2   predominate over questions affecting only individual members, and thus a class action is a

3   superior method to resolve these claims; (4) Plaintiffs' claims are typical to those of the putative

4   class members as they were subjected to the same employment policies, and thus suffered similar

5   damages; (5) Plaintiffs and Class Counsel would fairly and adequately protect the interests of the

6   purported class; (6) Plaintiffs' interests are representative and consistent with those of the

7   purported class; and (7) Class Counsel is experienced in employment class action litigation.  See

8   Order Granting Preliminary Approval, Dkt. No. 74 at 5-6.

9        Since preliminary approval, there have been two changes.  First, the class size has

10  increased to over 19,000 individuals, which only strengthens the analysis performed during

11  preliminary approval regarding numerosity and the superiority of the class action method.

12  Second, the approved settlement agreement was subsequently modified.  Even with the

13  modifications, however, the class definitions and the Rule 23 analysis remain substantively similar

14  and consistent to that which was preliminarily approved.  Due to the continued viability of this

15  court's prior findings, the court finds it appropriate to grant final approval of the following

16  settlement classes:

17       *Non-Exempt Employee Settlement Class*:  All individuals who were
         employed by PetSmart as an hourly paid, non-exempt employee in
18       California at any period of time during the Covered Timeframe
         [from May 23, 2008 to May 14, 2014] in a position other than a Pet
19       Stylist, Groomer, Grooming Trainee or Salon Manager.

20       *Pet Stylist Settlement Class*:  All individuals in the Settlement Class
         who were employed by PetSmart as a Pet Stylist, Groomer,
21       Grooming Trainee or Salon Manager in California at any period of
         time during the Covered Timeframe [from May 23, 2008 to May 14,
22       2014].

23       *Waiting Time Penalties Settlement Sub-Class*:  Shall mean all
         individual members of the Non-Exempt Employee Settlement Class
24       and/or the Pet Stylist Settlement Class who separated from their
         employment with PetSmart at any time between May 23, 2009 and
25       the date of Preliminary Approval of the Settlement Agreement [May
         14, 2014].
26

27                                          5

United States District Court
Northern District of California

1    Settlement Agreement at § 4.3; Mot. at 7.  The class shall remain certified for settlement purposes.

2          **B.      Appropriateness of the Notice Plan**

3          Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all

4    class members who would be bound by the proposal."  However, actual notice is not required.

5    "The notice must be the best practicable, reasonably calculated, under all the circumstances, to

6    apprise interested parties of the pendency of the action and afford them an opportunity to present

7    their objections."  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) (internal quotations

8    and citations omitted).

9          In this case, the parties selected Simpluris, Inc. as Claims Administrator.  See Decl. of

10   Mary Butler ("Butler Decl."), Dkt. No. 93-3 at ¶ 1.  The Claims Administrator received a class list

11   containing data for 19,701 purported class members that included names, addresses, social

12   security numbers, weeks worked during the class period, and total gross compensation paid during

13   the class period.  Id. at ¶ 6.  The mailing addresses were updated using the National Change of

14   Address Database maintained by the U.S. Postal Service, and through skip tracing.  Id. at ¶¶ 8-9.

15         In November 2014, notice packets were mailed to the 19,701 purported class members via

16   First Class mail.  Id. at ¶ 10.  After 727 notice packets were returned with forwarding address

17   information, the Claims Administrator re-mailed those notice packets to the forwarding address.

18   Id. at ¶ 11.  For notice packets returned as undeliverable and without a forwarding address, the

19   Claims Administrator performed a skip trace to locate a current address.  Id. at ¶ 12.  Of the 2,792

20   skip traces that were performed, the Claims Administrator was able to locate 1,161 updated

21   addresses and notice packets were re-mailed.  Id.  In sum, 18,760 notice packets were delivered

22   successfully, and 941 were found undeliverable.  Id. at ¶ 14.  In December 2014, the Claims

23   Administrator mailed a reminder postcard to 14,857 class members who had not responded to the

24   initial mailing, and in January 2015, the Claims Administrator mailed a second reminder postcard

25   to 2,662 class members who had not responded.  Id. at ¶¶ 15-16.

26         Furthermore, the Claims Administrator established a toll-free telephone number, which

27                                                   6

28   ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
     ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

was operational 24 hours a day, seven days a week, and a website entitled

www.petsmartsettlement.com, which has been operational since November 21, 2014.  Id. at ¶¶ 4,

7.

The Claim Administrator's effort to maximize notice to putative class members, coupled

with the court-approved content and appearance of the class notice and claim form, renders this

notice plan consistent with Rule 23 standard.  Accordingly, the notice plan merits final approval.

### C.     Fairness of the Proposed Settlement

Having evaluated the execution of notice to the proposed class and the response offered by

the putative class members, the court now reexamines the fairness of the proposed settlement

agreement.  It contains the following key terms:

1.     Total Settlement Amount.  The total settlement amount is up to $10 million.  See

Settlement Agreement § 4.1.  The funds are to be allocated in the following way:

- *Payment to the Labor and Workforce Development Agency ("LWDA") pursuant to PAGA*:
  The parties agree that $50,000 shall be allocated as settlement of claims under the PAGA.  Of
  this amount, 75% shall be paid to the LWDA and the remaining 25% shall be distributed to the
  settlement class members.  See id. at § 4.7.
- *Class Counsel's attorneys' fees and costs*:  PetSmart agrees not to oppose a total award of fees
  of up to 33.33% of the total settlement amount, which amounts to $3,333,333, and costs
  incurred by Class Counsel.  See id. at § 4.9.  The parties further agree that any unawarded
  amount will be returned to PetSmart.  See id. at § 4.10.
- *Service payments to class representatives:*  PetSmart agrees not to oppose a service payment
  of up to $10,000 for Plaintiffs Harrison and Valdez, and up to $5,000 for Plaintiffs Moore,
  Myers, and Negrete.  See id. at § 4.8.  This amounts to a total request of $35,000 in service
  awards.  Moreover, the parties agree that any unawarded amount will be returned to PetSmart.
  See id.
- *Costs of administration:*  The parties agree that settlement administration fees will be paid

Case No.: 5:12-cv-03577-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

from the total settlement, which amounts to $105,000.  See id. at § 4.1; Mot. at 19.

- *Reserve fund*:  The parties agree to a reserve fund of $100,000, which will be used for late claims, to compensate settlement class members who raise issues such as errors or inadvertent exclusion, and to resolve any other dispute.  See Settlement Agreement § 1.16.  Any unused funds will be distributed to the settlement class members.  See id.

- *Net distribution amount*:  The parties agree that after the above payments are made, the remaining amount will constitute the net distribution amount that will be allocated to the settlement class members.  See id. at § 4.2.  This amounts to approximately $6,322,500.  Mot. at 13.

- *Plan for allocating net distribution amount*:  The first allocation of funds will be made to the settlement class members in the "waiting time penalties settlement sub-class."  See Settlement Agreement § 4.4.  Each member of this sub-class who was employed in California as a pet stylist, groomer, grooming trainee or salon manager at the time he/she was separated from employment will receive $400 in addition to the individual settlement amount, and all others in the sub-class will receive $200 in addition to the individual settlement amount.  See id.  Next, each settlement class member will receive $20.  See id. at § 4.5.  Thereafter, two-thirds of the remaining funds will be allocated to the members of the "pet stylist settlement class" and one-third will be allocated to the "non-exempt employee settlement class."  See id.  Any remaining funds will be re-distributed to the settlement class members in proportion to their individual settlement amount; however, no class member will receive more than three times his/her original amount.  See id.  If funds continue to remain, then such funds will be allocated to PetSmart's share of employer-side payroll taxes owed, and to the *cy pres* recipient.  See id.

  2.  Injunctive Relief.  The parties agree to the following injunctive relief:

- PetSmart will provide additional grooming tools for its pet stylists, and will provide communication on the use of store tools.  See id. at § 4.11.

- PetSmart agrees to revise its pet stylist pay plans to specifically confirm that grooming

United States District Court
Northern District of California

8

Case No.: 5:12-cv-03577-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
ATTORNEYS' FEES AND COSTS

1   employees are being paid for all hours worked at their regular rate, and any other amounts paid

2   are in addition to the hourly rate.  See id.

- PetSmart will retain a consultant specializing in safety and ergonomic issues to conduct an
  evaluation of its current practices and to review its policies and procedures as to whether to
  allow pet stylists to sit while performing grooming tasks.  See id.  However, PetSmart is not
  obligated to disclose these results and findings, or to make any changes to its current practices.
  See id.

- PetSmart will revise its policies to emphasize that all hours worked will be paid, off-the-clock
  work will be expressly prohibited, any employee who performs off-the-clock work will be
  required to inform his/her manager, and employees who are interrupted during their meal or
  rest breaks will be allowed to take additional time.  See id.

3.      Cy Pres.  The parties agree to designate the Legal Aid Society—Employment Law
Center, located in San Francisco, California, as the *cy pres* recipient.  See id. at § 4.5(c).

4.      Release of Claims.  Settlement class members who do not opt out agree to release
PetSmart of any claims arising from alleged violations of California labor laws, and settlement
class members who submit a claim form further agree to release PetSmart of any claims arising
from alleged violations of the Fair Labor Standards Act.  See id. at § 5.1.

In assessing whether a class action settlement is fair, adequate and reasonable, the court
must balance a series of factors, including "the strength of the plaintiffs' case; the risk, expense,
complexity, and likely duration of further litigation; the risk of maintaining class action status
throughout the trial; the amount offered in settlement; the extent of discovery completed and the
stage of the proceedings; the experience and views of counsel; the presence of a governmental
participant; and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d
at 1026.  "It is the settlement taken as a whole, rather than the individual component parts, that
must be examined for overall fairness." Id.  Furthermore, when settlement occurs before formal
class certification, approval requires a higher standard of fairness in order to ensure that class

Case No.: 5:12-cv-03577-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
ATTORNEYS' FEES AND COSTS

*United States District Court*
*Northern District of California*

1   representatives and their counsel do not secure a disproportionate benefit at the expense of the

2   class.  Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012).

3          **i.**    **Strength of Plaintiffs' Case**

4        In determining the probability and likelihood of a plaintiff's success on the merits of a

5   class action litigation, "the district court's determination is nothing more than an amalgam of

6   delicate balancing, gross approximations and rough justice."  Officers for Justice, 688 F.2d at 625

7   (internal quotations omitted).  There is no "particular formula by which that outcome must be

8   tested," (Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)), and the district court

9   may evaluate "the strength of the plaintiffs' case in its entirety rather than on a claim-by-claim

10  basis."  Lane, 696 F.3d at 823.

11       Here, Plaintiffs contend that their theory of recovery for unpaid wages for non-commission

12  duties and for rest break time was novel and highly risky given the unsettled area of law at the

13  time this case was filed.  Mot. at 10-11.  Plaintiffs further contend that PetSmart vigorously

14  defended against these claims and raised a number of factual issues that would show substantial

15  variation among class members, and thus could present a substantial risk at the class certification

16  stage.  Id. at 12.

17       Given the wage-and-hour theory advanced by Plaintiffs and the factual issues that could

18  have arisen showing variation of work performed between different class members, settlement

19  appears to provide a better result for the putative class members than continued litigation.  Thus,

20  this factor weighs in favor of settlement.

21         **ii.**    **Risk, Expense, Complexity, and Likely Duration of Further Litigation**

22       Plaintiffs contend that further litigation would have posed various risks including a finding

23  that the putative class members had been paid all wages due, that PetSmart did not intentionally

24  fail to furnish accurate itemized wage statements, and a reduction in Plaintiffs' damages.  Id. at 12.

25  Moreover, given that settlement occurred before motions for summary judgment were filed, this

26  case would have gone through various hurdles that would have prolonged litigation and recovery

27  
                                             10

28  

United States District Court
Northern District of California

1    to putative class members.  See Rodriguez, 563 F.3d at 966.  Therefore, this factor weighs in favor

2    of settlement.

3              iii.    **Risk of Maintaining Class Action Status Throughout the Trial**

4              Although a class can be certified for settlement purposes, the notion that a district court

5    could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a

6    settlement.  See id. at 966.  Here, Plaintiffs claim that PetSmart could have raised factual issues

7    showing substantial variation as to the number of dogs groomed per shift and whether pet stylists

8    were commissioned-out in a given week.  Mot. at 12.  This type of variation between putative

9    class members could have posed a risk with class certification.  Therefore, the risk of not obtaining

10   or losing class certification weighs this factor in favor of settlement.

11             iv.    **Amount Offered in Settlement**

12             The proposed settlement yielded a total settlement amount of $10 million.  After all

13   agreed-upon payments are made, the net distribution amount allocated to settlement class

14   members will be approximately $6,322,500, composing 63% of the total settlement fund.

15   According to the Claims Administrator, the average individual payment will amount to

16   approximately $645.02, and the highest individual payment will amount to approximately

17   $15,705.64.  See Butler Decl. at ¶ 18.

18             While the monetary recovery obtained for settlement class members is significant, the

19   injunctive relief agreed upon is less impressive.  In particular, there is minimal value in PetSmart

20   agreeing to retain a consultant specializing in safety and ergonomic issues to conduct an

21   evaluation when PetSmart is not obligated to disclose the results of such evaluation or make any

22   changes to its practices.  Nonetheless, as a whole, the monetary amount offered to purported class

23   members is substantial enough to weigh this factor in favor of settlement.

24             v.    **Extent of Discovery Completed and Stage of the Proceedings**

25             In class action settlements, "formal discovery is not a necessary ticket to the bargaining

26   table where the parties have sufficient information to make an informed decision about

27                                                   11
     Case No.: 5:12-cv-03577-EJD
28   ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
     ATTORNEYS' FEES AND COSTS

settlement." <u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1239 (9th Cir. 1998) (internal quotations omitted).  Here, Plaintiffs contend that the parties engaged in substantial and exhaustive recovery.  Mot. at 15.  Since the putative class members worked at 132 PetSmart locations throughout California, the parties agreed to take a 10% sample whereby PetSmart would produce employment data and documents for non-exempt employees from 14 stores.  <u>Id.</u> at 4.  Plaintiffs state that PetSmart produced in excess of 33,000 pages of documents, as well as electronic personnel and payroll data.  <u>Id.</u>  Plaintiffs also interviewed current and former employees from 19 PetSmart locations throughout California.  <u>Id.</u>  Moreover, Plaintiffs prepared a comprehensive damage analysis based on information gathered by the interviews and employment data, Plaintiffs deposed two PetSmart corporate designees, and PetSmart deposed each of the four named Plaintiffs.  <u>Id.</u> at 4-5.

While the parties had not gone through a round of summary judgment proceedings, extensive discovery and fact gathering was conducted so that Plaintiffs "had a good grasp on the merits of their case before settlement talks began." <u>Rodriguez</u>, 563 F.3d at 967.  Therefore, this factor weighs in favor of settlement.

### vi.    Experience and Views of Counsel

In evaluating this factor, the court notes that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." <u>Id.</u>  Consequently, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." <u>In re Omnivision Techns., Inc.</u>, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009).  Here, Class Counsel have extensive experience litigating wage-and-hour actions, and the involvement of each firm's partners in this case strengthens their commitment to the success of this litigation.  Therefore, this factor weighs in favor of settlement.

### vii.    Reaction of Class Members

A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1027 ("[T]he fact that the

12

ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1   overwhelming majority of the class willingly approved the offer and stayed in the class presents at

2   least some objective positive commentary as to its fairness."); see also Nat'l Rural Telecomms.

3   Coop., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a

4   proposed class action settlement raises a strong presumption that the terms of a proposed class

5   settlement action are favorable to the class members.").

6        As of the filing of the instant motion, the Claims Administrator received claims from 9,914

7   settlement class members, of which 9,799 claims were valid.  See Butler Decl. at ¶ 18.  Since the

8   putative class consisted of approximately 19,701 members, this constitutes a 49% response rate.

9   See id.  These settlement class members claim approximately $4,358,026.83, or 68%, of the net

10  settlement amount for their individual payments, before redistribution of unclaimed funds.  See id.

11  Furthermore, six opt-out requests were received, and only one objection has been filed.  See id. at

12  ¶ 19; see also Dkt. No. 97.

13       Given that nearly half of the putative class submitted a claim form, and less than one

14  percent either opted out or objected, the reaction of the putative class has been very positive.

15  Therefore, this factor strongly favors settlement.

16      **viii.**    **Risk of Collusion Among the Negotiating Parties**

17       Agreements formed prior to formal class certification present a potential for a breach of

18  fiduciary duty towards the class, thus "such agreements must withstand an even higher level of

19  scrutiny for evidence of collusion."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946

20  (9th Cir. 2011).  While collusion may not be evident on its face, there are certain factors the court

21  can consider, such as: (1) "when counsel receive a disproportionate distribution of the settlement,

22  or when the class receives no monetary distribution but class counsel are amply rewarded;" (2)

23  "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys'

24  fees separate and apart from class funds, which carries the potential of enabling a defendant to pay

25  class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on

26  behalf of the class;" and (3) "when the parties arrange for fees not awarded to revert to defendants

27  Case No.: 5:12-cv-03577-EJD

28  ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
ATTORNEYS' FEES AND COSTS

*United States District Court*
*Northern District of California*

1   rather than be added to the class fund." Id. at 947 (internal quotations and citations omitted).

2          As to the first factor, the net distribution amount will be approximately $6,322,500, and

3   counsel's request for attorneys' fees amount to approximately $3,333,333.  It is compelling that all

4   settlement class members who submit a claim form will receive monetary recovery, and that the

5   average individual payment will amount to approximately $645.02.  Moreover, it is significant

6   that any remaining funds will be re-distributed to the settlement class members.  While PetSmart

7   will benefit because any funds that continue to remain will be allocated towards its share of

8   employer-side payroll taxes owed, overall, it does not appear that Class Counsel will receive a

9   disproportionate distribution of the settlement.  Thus, as to this factor, there does not appear to be

10  collusion.

11         As to the second and third factors, the parties did negotiate a "clear sailing" arrangement

12  whereby PetSmart agrees not to oppose an attorneys' fee award of up to 33% of the total

13  settlement fund, or $3,333,333, and costs incurred by Class Counsel.  See Settlement Agreement §

14  4.9.  Moreover, the parties negotiated a kicker provision whereby any fees not awarded to class

15  counsel will revert back to PetSmart.  See id. at § 4.10.  Plaintiffs contend that the parties engaged

16  in substantial arm's length negotiations before mediator Jeffrey Ross.  Mot. at 16.  According to

17  Plaintiffs, on April 9, 2013, the parties participated in mediation with Mr. Ross, and while they

18  were unable to reach a settlement agreement on that date, the parties continued their settlement

19  negotiations through Mr. Ross.  Hollis Decl. at ¶ 11.  In June 2013, Plaintiffs claim that the parties

20  accepted Mr. Ross's proposal and thereby reached the instant settlement agreement, which

21  includes the proposed 33% attorneys' fee request and the kicker provision.  Id.

22         While the presence of a neutral mediator weighs in favor of non-collusiveness, it is not

23  dispositive on its own.  In re Bluetooth, 654 F.3d at 948.  In evaluating the settlement terms

24  independently, it does not appear that the attorneys' fee was the product of collusion because the

25  parties reached an agreement only on the maximum amount PetSmart would not oppose, meaning

26  that the parties agree that any amount below the 33% would be acceptable to both parties.

27                                                    14

28  ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
    SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
    ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1    Similarly, while the kicker provision provides that the unawarded amount of attorneys' fees will

2    revert to PetSmart, this does not impact the benefit to the class.  Regardless of the amount that

3    reverts to PetSmart, the settlement class members will receive their individual settlement amounts.

4    Therefore, these factors do not point to collusion.

5         In sum, all of the applicable factors weigh in favor of granting final approval to the

6    proposed settlement agreement.

7         **D.    Cy Pres**

8         The parties agree that any net distribution amount remaining after the individual settlement

9    amounts have been allocated and payment of PetSmart's employer taxes have been made, will go

10   towards *cy pres*.  Settlement Agreement § 4.5(c).  The *cy pres* recipient will be the Legal Aid

11   Society—Employment Law Center located in San Francisco, California.  Id.  This organization is

12   a non-profit organization that provides civil legal services to the indigent and pro bono

13   employment law advice to low-income communities.  Mot. at 18.  Given the wage-and-hour

14   nature of this action, the work performed by the Employment Law Center bears a substantial

15   nexus to the interests of the class members and is sufficiently related to the nature of Plaintiffs'

16   lawsuit that it is an appropriate *cy pres* recipient.  Thus, the court approves the parties' *cy pres*

17   designation.

18        **E.    Payment of PAGA Penalties to the LWDA**

19        Plaintiffs seek approval of the requested payment to the LWDA as its share of the PAGA

20   penalties.  Mot. at 18.  The parties request a payment of $50,000 of the total settlement amount,

21   75% of which will be paid to the LWDA and 25% of which will be distributed to the settlement

22   class members as part of the net distribution amount.  Id.; Settlement Agreement § 4.7.

23        "PAGA authorizes aggrieved employees, acting as private attorneys general, to recover

24   civil penalties from their employers for violations of the Labor Code."  Baumann v. Chase Inv.

25   Servs. Corp., 747 F.3d 1117, 1119 (9th Cir. 2014).  "If the [LWDA] declines to investigate an

26   alleged labor law violation or issue a citation, an aggrieved employee may commence a PAGA

27                                                   15

28   ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
     ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

action against an employer personally and on behalf of other current or former employees to recover civil penalties[.]"  Id. at 1121 (internal quotations omitted).  Pursuant to California Labor Code § 2699(i), 75% of the civil penalties recovered shall be distributed to the LWDA "for enforcement of labor laws and education of employers and employees about their rights and responsibilities," and 25% shall be distributed "to the aggrieved employees."  Here, the parties' agreement as to the payment of PAGA penalties is in accordance with the statutory requirement, thus it is approved.

### F.    Settlement Administrator's Fees and Costs

The parties retained Simpluris as settlement administrator, which seeks fees and costs of $119,500.  Mot. at 19.  While originally Simpluris estimated its fees and costs to amount to $105,000, it has now documented fees and costs totaling $119,500 because the class size increased by 3,288 individuals and the response rate was about 10.24% higher than anticipated.  Id.  Given the additional fees and costs, Plaintiffs state that $105,000 will be allocated from the total settlement fund, and the additional $14,500 will be allocated from the reserve fund.  Id.  This arrangement is reasonable, thus it is approved.

### G.    Objection to Proposed Settlement Agreement

An objector to a proposed settlement agreement bears the burden of proving any assertions they raise challenging the reasonableness of a class action settlement.  United States v. State of Oregon, 913 F.2d 576, 581 (9th Cir. 1990).  The court iterates that the proper standard for approval of the proposed settlement is whether it is fair, reasonable, adequate, and free from collusion—not whether the class members could have received a better deal in exchange for the release of their claims.  See Hanlon, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

Here, there is only one objector—Lindsey Loomis, who has retained counsel.  Ms. Loomis worked for PetSmart as a pet stylist and in other non-exempt positions from October 2008 to May

16

2014.  Dkt. No. 97 at 2.  Of concern is the timeliness of Ms. Loomis' objections because her objection filed on February 11, 2015—the last filing date for an objection—did not contain Ms. Loomis' signature.  See id. at 3.  At the hearing, Ms. Loomis' counsel presented the court with a black-and-white photocopy document of the objection document that had an original signature in blue ink and a blue stamp saying "original."  See Tr., Dkt. No. 130 at 23-24.  After a discussion with Ms. Loomis' counsel, the court found that there was insufficient proof showing that Ms. Loomis' objection was timely filed.  See id. at 24.  As such, the court struck the objection.  See id.[1]

Although Ms. Loomis' objection has been struck, the court will assume for the present discussion that her objection was timely filed in order to address the merits of her arguments.  Ms. Loomis sets forth two arguments as the basis for her objection.[2]  First, she argues that Class Counsel GrahamHollis cannot concurrently represent the "non-exempt employee settlement class" and the "pet stylist settlement class" because this constitutes a conflict of interest since such an allocation inherently involves trade-offs between the two classes.  Dkt. No. 97 at 2-3; Dkt. No. 110 at 4.  At oral argument, Ms. Loomis argued that Class Counsel should have treated these classes differently because the demand placed on pet stylists was more substantial.  Tr. at 5.

Ms. Loomis' argument is unpersuasive.  To the extent that Class Counsel should have treated pet stylists differently than non-exempt employees, it did so by allocating two-thirds of the net distribution fund to pet stylists and one-third to non-exempt employees.  Moreover, to the extent Ms. Looomis contends Class Counsel has breached its ethical duty of loyalty, there is no

---

[1] Ms. Loomis subsequently filed a motion for reconsideration, which was denied.  See Dkt. Nos. 126, 128.

[2] Ms. Loomis' response brief (Dkt. No. 110) has been the subject of numerous administrative motions.  Given that Ms. Loomis filed an objection, she is entitled to file a reply brief responding to Plaintiffs' arguments concerning her objection.  As such, the court considered Ms. Loomis' response brief.  Accordingly, Plaintiffs' motion to shorten time to hear Plaintiffs' motion to strike objector's unauthorized response (Dkt. No. 115) is DENIED AS MOOT; Plaintiffs' motion to strike objector's response brief (Dkt. No. 116) is DENIED; and Objector's motion for leave to file response in support of objections (Dkt. No. 118) is GRANTED.

17

Case No.: 5:12-cv-03577-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEYS' FEES AND COSTS

1   such indication.  Members of both sub-classes will be obtaining monetary recovery, and their

2   interests are parallel.

3         Second, Ms. Loomis argues that Class Counsel GrahamHollis cannot represent an

4   individual's personal claims against PetSmart because these individuals' interests are not co-

5   extensive with those of the class.  Dkt. No. 97 at 3.  Ms. Loomis argues that the class

6   representatives are pursuing separate claims against PetSmart that will not be released as part of

7   the settlement, and thus Class Counsel's loyalty to the class is compromised.  Dkt. No. 110 at 3.

8   Ms. Loomis further argues that Class Counsel's representation of the class representatives in these

9   individual claims raises the specter of collusion because Class Counsel could later negotiate a

10   more favorable settlement for the class representatives, to the detriment of the other class

11   members.  Id.

12         This argument is equally unavailing.  There is no indication that the class representatives'

13   interests are adverse to those of the class, and there is no indication that Class Counsel's ethical

14   duty of loyalty to the class was compromised as it obtained a significant recovery to the class

15   members.  Furthermore, Ms. Loomis has not shown that Class Counsel represents class

16   representatives in separate claims against PetSmart, or that such representation resulted in a

17   detriment to the class members.  To the extent Ms. Loomis contends that a better deal could have

18   been provided to class members in exchange for the release of their claims, it is unpersuasive

19   because this is not the standard upon which to evaluate the reasonableness of a settlement

20   agreement.

21         In sum, Ms. Loomis has failed to meet her burden of proving any assertion that challenges

22   the reasonableness of the instant settlement agreement.  She has not sufficiently demonstrated that

23   the proposed settlement is unfair, unreasonable, inadequate, or is the product of collusion.

24   Accordingly, Ms. Loomis's objections would be overruled even if considered on its merits.

25         **H.    Conclusion as to Final Approval**

26         The court finds the proposed settlement agreement to be fair, reasonable, and adequate.

27
28   ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
     ATTORNEYS' FEES AND COSTS

1   Based on the foregoing, the court grants final approval.

2   **IV.    MOTIONS FOR ATTORNEYS' FEES AND COSTS**

3           When Class Counsel request attorneys' fees and costs, "courts have an independent

4   obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

5   already agreed to an amount." In re Bluetooth, 654 F.3d at 941.

6           "Where a settlement produces a common fund for the benefit of the entire class, courts

7   have discretion to employ either the lodestar method or the percentage-of-the-recovery method."

8   Id. at 942.  The former method is routinely used when "the relief sought—and obtained—is often

9   primarily injunctive in nature and thus not easily monetized." Id.  The figure is calculated "by

10  multiplying the number of hours the prevailing party reasonably expended on the litigation (as

11  supported by adequate documentation) by a reasonable hourly rate for the region and for the

12  experience of the lawyer." Id.  The court can "adjust [the figure] upward or downward by an

13  appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including

14  the quality of representation, the benefit obtained for the class, the complexity and novelty of the

15  issues presented, and the risk of nonpayment." Id. at 941-42 (internal quotations omitted).

16  "Foremost among these considerations, however, is the benefit obtained for the class." Id. at 942.

17

18          Under the latter method, the court awards as fees a percentage of the common fund in lieu

19  of the lodestar amount. Id.  "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a

20  reasonable fee award, providing adequate explanation in the record of any 'special circumstances'

21  justifying a departure." Id.  Typically courts may consider the following factors: (1) "the extent to

22  which class counsel achieved exceptional results for the class;" (2) "whether the case was risky for

23  class counsel;" (3) "whether counsel's performance generated benefits beyond the cash settlement

24  fund;" (4) "the market rate for the particular field of law (in some circumstances);" (5) "the

25  burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other

26  work);" and (6) "whether the case was handled on a contingency basis." In re Online DVD-Rental

27  Case No.: 5:12-cv-03577-EJD

28  ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
    SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
    ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1    Antitrust Litig., 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotations omitted).  "In addition, a

2    court may cross-check its percentage-of-recovery figure against a lodestar calculation."  Id. at 955.

3          **A.    Percentage of the Fund**

4          Plaintiffs present two motions for attorneys' fees and costs:  The first is on behalf of Lead

5    Class Counsel GahamHollis APC ("GrahamHollis Firm"), and the second is on behalf of Pet

6    Stylist Settlement Class Counsel Capstone Law APC ("Capstone Firm") (collectively, "Class

7    Counsel").  Pursuant to the settlement agreement, the GrahamHollis Firm seeks 28.83% of the

8    total settlement fund (or $2,883,000) and the Capstone Firm seeks 4.5% of the total settlement

9    fund (or $450,000); collectively, they seek 33.33% (or $3,333,333) of the total settlement fund.

10   Settlement Agreement § 4.9.

11         According to Class Counsel, its fee request is reasonable because it is supported by the

12   overall benefit achieved on behalf of the class, and is not disproportionate to the $6,322,500

13   available for distribution to the settlement class members.  Dkt. No. 92-1 at 4.  Class Counsel also

14   emphasize that no amount of the net distribution fund will revert back to PetSmart, but rather will

15   be redistributed to the settlement class members.  Id.  Lastly, they argue that the settlement

16   agreement also confers substantial nonmonetary relief as PetSmart has agreed to revise its

17   compensation policy, and has agreed to furnish additional tools for pet stylists.  Dkt. No. 91 at 10.

18         The court recognizes the importance of representing aggrieved employees in their efforts to

19   vindicate their rights in the workplace, and notes the considerable risk current employees take

20   when challenging their employer's policies and practices.  In order to assert their rights and hold

21   their employers liable for wage-and-hour violations, it is often necessary to litigate such actions as

22   class actions.  Furthermore, from class counsel's perspective, they assume great risk in pursuing

23   wage-and-hour actions where a substantial variance between employees can exist, and thus

24   threaten the viability of the case.  That Class Counsel, here, was able to obtain a favorable

25   settlement agreement is commendable.

26         To the extent the 25% benchmark serves as a starting point, it is appropriate to award an

27                                                  20

1   attorneys' fee of 27% of the total settlement fund, or $2.7 million, given the significant monetary

2   recovery obtained for the class and the public policy stated above.  The court declines to award the

3   requested 33% because the injunctive relief obtained is not of the type that would incur a

4   significant change in policy or practice on behalf of PetSmart, and Class Counsel did not spend an

5   exorbitant amount of time and money litigating this case given the absence of any dispositive

6   motions, such as a motion to dismiss or motion for summary judgment.

7          The court will now perform the lodestar cross-check to ascertain the reasonableness of a

8   27% attorneys' fee request.

9          **B.   Lodestar Comparison**

10         The Ninth Circuit encourages district courts "to guard against an unreasonable result" by

11  cross-checking attorneys' fees calculations against a second method.  In re Bluetooth, 654 F.3d at

12  944.  Since a 25% benchmark award might be reasonable in some cases but arbitrary in cases

13  involving an extremely large settlement fund, the purpose of the comparison is to ensure counsel

14  is not overcompensated."  In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust

15  Litig., 109 F.3d 602, 607 (9th Cir. 1997).

16         Class Counsel has provided the following lodestar calculation:

| Timekeeper | Hours Spent | Billing Rate | Lodestar |
|------------|-------------|--------------|----------|
| **GrahamHollis Firm** | | | |
| Partner | 823.2 | $720 | $592,704 |
| Associates | 1,565.5 | $375-$480 | $738,302.50 |
| Paralegals | 891.9 | $215-$225 | $198,519.50 |
| Others | 86.4 | $140 | $11,827.50 |
| | | | |
| **Capstone Firm** | | | |
| Partners | 236.4 | $595-$695 | $158,468 |
| Senior Counsel | 386.8 | $520-$670 | $233,611 |
| Associates | 371.9 | $395-$470 | $151,473 |
| | | | |
| **TOTAL:** | **4,362.1** | | **$2,084,905.50** |

See Dkt. Nos. 91-1 at ¶ 11; 92-2 at ¶ 45.

        The reasonable hourly rate for computing the lodestar amount is based on the "prevailing

market rates in the relevant community."  Gonzalez v. City of Maywood, 729 F.3d 1196, 1205

Case No.: 5:12-cv-03577-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

(9th Cir. 2013).  The relevant community is the geographic area in which the district court sits, and generally the experience, skill, and reputation of the attorney should be considered.  Id.  In this case, the relevant community is the Northern District of California where reasonable rates for partners range from $560 to $800, associates range from $285 to $510, and paralegals and litigation support staff range from $150 to $240.  See In re Magsafe Apple Power Adapter Litig., No. 09-cv-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) (collecting cases).  Class Counsel's billing rates are within the range approved in this district, thus they are found to be reasonable.

As to the number of hours billed, it must equal the number of hours that can reasonably be billed to a private client.  Gonzalez, 729 F.3d at 1202.  Upon evaluating Class Counsel's itemized billings, it appears that the time spent is reasonable in light of the work performed, which includes conducting factual and legal research, communicating with clients, conferring with colleagues, and engaging in settlement negotiations.

"Though the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  In re Bluetooth, 654 F.3d at 941-42 (internal quotations omitted).  Here, Class Counsel offered high-quality representation given the commendable result of the settlement agreement, the benefit obtained for the class was significant, Plaintiffs' theory of unpaid wages and breaks was novel, and the risk of nonpayment was high.  Given these considerations, a 1.3 upward adjustment to the lodestar figure is appropriate, thereby increasing the lodestar to $2,710,377.15.

In sum, given the circumstances of this case and the lodestar cross-check, an attorneys' fee award of 27% of the settlement fund, or $2.7 million, is reasonable.  This amount is hereby approved.

Case No.: 5:12-cv-03577-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

**C.     Objection to GrahamHollis Firm's Motion for Attorneys' Fees**

Ms. Loomis objects to the GrahamHollis Firm's motion for attorneys' fees on the same basis as her objection to the settlement agreement.[3] Dkt. No. 96 at 2. Namely, she argues that the GrahamHollis Firm has a conflict of interest due to concurrently representing the "non-exempt employee settlement class" and the "pet stylist settlement class," and due to representing individuals with their own individual claims against PetSmart. Id. These arguments are unavailing given that they are identical to the arguments Ms. Loomis presented against the settlement agreement. For the same reasons her arguments above were rejected, these arguments are also rejected. Therefore, Ms. Loomis's objections would be overruled even if considered on its merits.

**D.     Litigation Costs**

In addition, Class Counsel seek reimbursement of litigation costs. The GrahamHollis Firm seeks $42,093.91 and the Capstone Firm seeks $13,717.22 for expenses that include court filing fees, attorney service/messenger, online research, mediator's fee, photocopies, document imaging, faxes, postage, telephone, and travel expenses. See Dkt. Nos. 91-1 at ¶ 15; 92-2 at ¶ 49. Collectively, they seek $55,811.13. Upon evaluating these expenses, the court finds them to be reasonable. Accordingly, $55,811.13 in reimbursement of litigation costs is approved.

**E.     Service Awards**

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977. To determine the appropriateness of incentive awards a district court should use "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing

---

[3] As with her objection to final approval of the settlement agreement, Ms. Loomis' objection to the GrahamHollis Firm's motion for attorneys' fees suffers from the same deficiency—in doubt is whether Ms. Loomis timely filed her objection. See Dkt. No. 96 at 3. As above, however, the court will address the merits of her arguments.

23

United States District Court
Northern District of California

1   the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Id. (internal quotations

2   omitted).

3        Pursuant to the settlement agreement, Plaintiffs request a service award for Plaintiffs

4   Moore, Myers, and Negrete of $5,000 each, and a service award for Plaintiffs Harrison and Valdez

5   of $10,000 each.  Settlement Agreement § 4.8.  The settlement agreement also provides that any

6   unawarded amount will be returned to PetSmart and will not be available for class distribution. Id.

7        According to Plaintiffs Moore, Myers, and Negrete, they took a risk of being located on

8   the internet and having a prospective employer learn that they sued a former employer.  See Decl.

9   of Dannette Moore ("Moore Decl."), Dkt. No. 93-2 at ¶ 4; Decl. of Latresa Myers ("Myers

10  Decl."), Dkt. No. 93-2 at ¶ 4; Decl. of Jeanette Negrete ("Negrete Decl."), Dkt. No. 91-2 at ¶ 3.

11  They participated in investigative and strategy meetings with Class Counsel, have been in contact

12  with the other named plaintiffs and class members, have reviewed documents and information

13  regarding PetSmart's practices and procedures, have participated in discovery, have traveled and

14  participated in depositions and mediation sessions, and have provided input along the process.

15  See Moore Decl. at ¶ 5; Myers Decl. at ¶ 5; Negrete Decl. at ¶¶ 4-9.  In this district, this amount is

16  presumptively reasonable.  See Lilly v. Jamba Juice Co., No. 13-cv-02998-JST, 2015 WL

17  2062858, at *7 (N.D. Cal. May 1, 2015) (finding a $5,000 service award to be reasonable);

18  Nwabueze v. AT&T, Inc., No. C 09-1529 SI, 2013 WL 6199596, at *12 (N.D. Cal. Nov. 27, 2013)

19  (same); Hopson v. Hanesbrands, Inc., No. CV-08-844 EDL, 2009 WL 928133, at *10 (N.D. Cal.

20  Apr. 3, 2009) (same).

21       Plaintiffs Harrison and Valdez seek a $10,000 service award each because, in addition to

22  the risks incurred by the other named plaintiffs and their active participation in this litigation,

23  Plaintiffs Harrison and Valdez were current employees of PetSmart while litigating this case.  See

24  Decl. of Alanna Harrison, Dkt. No. 93-2 at ¶ 1; Decl. of Alisa Valdez, Dkt. No. 93-2 at ¶ 1.

25  Consequently, they incurred the additional risk of fearing retaliation by PetSmart.  Id. at ¶ 3.  By

26  serving as active employees of PetSmart during litigation, Plaintiffs Harrison and Valdez

27

28

United States District Court
Northern District of California

24

1    undertook a unique role in protecting the interests of the class, which may have resulted in a

2    greater benefit to the class since they have the most up-to-date information regarding PetSmart's

3    policies and practices.  Moreover, they have a reasonable fear of workplace retaliation.

4    Collectively, these circumstances warrant a higher service award of $10,000 each.

5         The court, therefore, approves a service award of $5,000 each to Plaintiffs Moore, Myers,

6    and Negrete, and a service award of $10,000 each to Plaintiffs Harrison and Valdez.  This amounts

7    to $35,000, which is less than one percent of the total settlement fund.

8    **V.    CONCLUSION AND ORDER**

9         Based on the preceding discussion, the court rules as follows:

10   1.    Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. No. 93) is

11   GRANTED.  The court finds that the terms of the settlement agreement are fair, adequate, and

12   reasonable, and thus satisfy Rule 23(e).

13   2.    Plaintiffs' Motion for Attorneys' Fees and Costs (Dkt. Nos. 91, 92) is GRANTED IN

14   PART AND DENIED IN PART.  The court finds $2.7 million in attorneys' fees, $55,811.13 in

15   litigation costs, and $35,000 in service awards to be reasonable.

16        Plaintiffs shall file a proposed judgment consistent with this order on or before **August 11,**

17   **2015**.

18

19        **IT IS SO ORDERED.**

20   Dated: August 4, 2015

21



22   EDWARD J. DAVILA
     United States District Judge

23

24

25

26

27                                                  25

28   ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTIONS FOR
     ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California